IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DUCHESNAY INC. and DUCHESNAY USA INC., Plaintiffs, v. ACTAVIS LABORATORIES FL, INC., ACTAVIS, INC., and ACTAVIS PHARMA, INC., Defendants. | ) | C.A. No. 14-912 (SLR)(SRF) |

**PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF**

OF COUNSEL:

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700

Barbara R. Rudolph
Barry W. Graham
Danielle A. Duszczyszyn
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Alissa K. Lipton
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA 02210-2001
(617) 646-1600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
tcurry@mnat.com
*Attorneys for Duchesnay Inc. and Duchesnay USA Inc.*

June 11, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

I. NATURE AND STAGE OF PROCEEDINGS ........ 1

II. SUMMARY OF ARGUMENT ........ 2

III. STATEMENT OF FACTS ........ 3

A. Duchesnay's Development of a Rapid Onset Pyridoxine HCl and Doxylamine Succinate Formulation ........ 3

IV. AGREED UPON CLAIM CONSTRUCTIONS ........ 7

V. ARGUMENT ........ 7

A. "Rapid Onset Formulation" ........ 7

1. The Claim Language Does Not Contain a Limitation Regarding the Timing of Relief from Symptoms ........ 8

2. The Specification and Prosecution History Do Not Alter the Plain Meaning of the Term "Rapid Onset Formulation" ........ 9

B. "Dissolution Profile" / "Dissolution Characteristics" Must Be Construed In Light of the Intrinsic Evidence ........ 13

VI. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Astrazeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010)....................14

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
183 F.3d 1369 (Fed. Cir. 1999)....................9

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
545 F.3d 1340 (Fed. Cir. 2008)....................9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005).................... *passim*

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................8

Pursuant to the Court's Scheduling Order (D.I. 16, so ordered 11/3/2014), Plaintiffs Duchesnay Inc. and Duchesnay USA Inc. (collectively "Duchesnay") submit this opening claim construction brief. The parties' dispute is limited to the meaning of three terms, grouped together into two categories: "rapid onset formulation," and "dissolution profile" / "dissolution characteristics" as recited in the claims of Duchesnay's U.S. Patent No. 6,340,695 ("the '695 patent") [D.I. 38, Ex. 1[1]].

## I. NATURE AND STAGE OF PROCEEDINGS

This patent infringement action arises from Actavis's filing of an Abbreviated New Drug Application which seeks FDA approval to market a generic version of Duchesnay's Diclegis® tablet product prior to the expiration of Duchesnay's Orange Book-listed '695 patent. The Diclegis® product, which is a delayed release tablet containing 10 mg doxylamine succinate (an antihistamine) and 10 mg pyridoxine hydrochloride (a Vitamin B6 analog), was approved by the FDA for the treatment of nausea and vomiting of pregnancy in women who do not respond to conservative management. To support this approval, Duchesnay undertook extensive research, development, and clinical investigations. The '695 patent relates to novel formulations of doxylamine succinate and pyridoxine hydrochloride that meet the claimed rapid onset *in vitro* dissolution profiles and methods of using such formulations to treat nausea and vomiting in pregnant women. Duchesnay brought suit against Actavis Laboratories FL, Inc., Actavis, Inc., and Actavis Pharma Inc. (collectively "Actavis") for infringement of the '695 patent on July 10, 2014, and the Court has scheduled a Markman hearing for August 19, 2015 at 9:30 a.m.

---

[1] Citations to "D.I. 38, Ex. __" are references to exhibits in the Joint Appendix for claim construction (the '695 patent and file history), submitted by the parties.

## II.  SUMMARY OF ARGUMENT

The parties' claim construction dispute centers around the meaning of the terms "rapid onset formulation," and "dissolution profile" / "dissolution characteristics" recited in the claims of the '695 patent. In the context of the '695 patent, the term "rapid onset formulation" means that the claimed formulation rapidly releases the active ingredients at about pH 6.8 as shown by its *in vitro* dissolution profile. In the context of the '695 patent, the terms "dissolution profile" / "dissolution characteristics" mean the average results of dissolution testing in which the amount of pyridoxine HCl and doxylamine succinate released is measured in 1000 ml phosphate buffer at pH 6.8 and 37º C using a USP (United States Pharmacopeia) type 2 dissolution apparatus at 100 rpm. These constructions are fully supported by the intrinsic evidence.

Actavis, however, proposes a construction of "rapid onset formulation" that seeks to import a limitation regarding the timing of a therapeutic effect that is simply not present in the claims. In particular, Actavis proposes that the term should be construed as "a formulation providing a rapid initiation of action (i.e., relief from symptoms) after transitioning through the stomach." The language of the '695 patent claims and the patent specification make clear that whether a formulation is a "rapid onset formulation" is keyed to the release of its active ingredients in the small intestine (which has a pH of about 6.8) as measured by *in vitro* dissolution testing, *not* by the timing of its therapeutic effect, as Actavis suggests.

Actavis also proposes a construction of "dissolution profile" / "dissolution characteristics" that Actavis contends covers both the average results of dissolution testing and also the results of an individual dissolution test run. Such a construction is at odds with the specification which teaches that a dissolution profile is obtained by performing several dissolution runs and averaging the results obtained.

## III. STATEMENT OF FACTS

### A. Duchesnay's Development of a Rapid Onset Pyridoxine HCl and Doxylamine Succinate Formulation

Nausea and Vomiting of Pregnancy (NVP), or "morning sickness" is a common occurrence in pregnant women, and can have varying degrees of severity. [Ex. 1 (DCH-0000152–54), N ENGL J. MED 370; 12, pp. 1081–83, 1081 (March 20, 2014).] In severe cases, NVP can have serious adverse effects, including dehydration and associated salt and vitamin imbalances. [*Id.*] The most severe form of NVP, hyperemesis gravidarum, is an extremely serious medical condition that is characterized by severe vomiting, dehydration, and weight loss, requiring hospitalization and posing risks to both the mother and the fetus. [*Id*.]

The medical community has approached the treatment of NVP with special caution given the risk of drug-induced adverse fetal effects that can accompany some pharmaceutical treatments. [*Id.* at 1082.] The use of thalidomide to treat NVP in the 1950s, which led to tragic birth defects in children born to mothers who took the drug, serves as a notorious example of the teratogenic potential of seemingly safe drugs. [*Id.*] Against this backdrop, the use of the combination of doxylamine succinate and pyridoxine HCl to treat NVP was extensively studied. [*Id.*] The FDA ultimately determined the combination to be safe and not linked to birth defects, but due to the high costs of defending product liability challenges, Merrell Dow, the pharmaceutical company which manufactured the combination under the trade name Bendectin, withdrew the treatment from the U.S. market. [*Id.*]

Duchesnay is a small research-based pharmaceutical company dedicated to improving women's quality of life during pregnancy and lactation while reducing the number of birth defects and impacts on their newborns. [Ex. 2 (http://duchesnay.com/en/about-us/history), Ex. 3 (http://www.duchesnayusa.com/aboutus).] Its mission is to further the medical community's

knowledge and understanding of obstetric and prenatal health and to develop safe and effective pharmacological solutions for use during pregnancy and lactation. [*Id.*] In order to improve the health and well being of pregnant women, Duchesnay decided to provide a doxylamine succinate and pyridoxine HCl (also called "DS-P") treatment for the safe and effective treatment of NVP. [Ex. 1 at 1081.] Prior to the invention of formulations claimed in the '695 patent, Duchesnay marketed in Canada a combination doxylamine succinate/pyridoxine HCl product under the trade name Diclectin®. [D.I. 38, Ex. 1 at col. 1:16–20.] Diclectin® was at that time sold as an enteric coated, delayed release tablet, designed to resist disintegration in the highly acidic environment of the stomach and dislodge its contents in the small intestines, where absorption of both drugs could occur.

While Diclectin® was embraced by the medical community as safe and effective, the inventor of the '695 patent, Eric Gervais, discovered a way in which the release of the active ingredients of Diclectin® could be greatly improved. In particular, the '695 patent discloses novel doxylamine succinate and pyridoxine HCl formulations in which the two active ingredients are more rapidly released in the higher pH environment of the small intestine as compared to the prior art Diclectin®. While the prior Diclectin® could take more than 4 hours to reach nearly full dissolution once it reached the small intestine, the novel formulations of the invention have markedly faster onset dissolution profiles under *in vitro* conditions simulating those of the small intestine. [*Id.* at col. 1:28–31; Abstract ("Provided herein is a novel enterically-coated pyridoxine HCL and doxylamine succinate rapid onset formulation comprising a disintegrating agent such that the following dissolution profiles are satisfied when measured in 1000 ml phosphate buffer at pH 6.8 and 37º C in a type 2 dissolution apparatus at 100 rpm: . . .).]

Consequently, Duchesnay filed U.S. Patent Application No. 09/885,051 on June 21, 2001. The ’695 patent issued on January 22, 2002. The ’695 patent contains 30 claims, including 24 claims directed to pharmaceutical compositions and six claims directed to methods of treating nausea and vomiting. For purposes of the claim-construction dispute here, claims 1 and 2 of Duchesnay’s ’695 patent are representative:

> 1. An enterically-coated pyridoxine HCl and doxylamine succinate ***rapid onset formulation*** comprising a disintegrating agent such that the following ***dissolution profiles*** are satisfied when measured in 1000 ml phosphate buffer at pH 6.8 and 37º C in a type 2 dissolution apparatus at 100 rpm:
>
> (a) at least about 40% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after 30 minutes of measurement;
>
> (b) at least about 70% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after 60 minutes of measurement;
>
> (c) at least about 80% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after 90 minutes of measurement;
>
> (d) at least about 90% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after 120 minutes of measurement.
>
> 2. An enterically-coated pyridoxine HCl and doxylamine succinate ***rapid onset formulation*** as in claim **1**, wherein the following ***dissolution characteristics*** are also satisfied when measured in 1000 ml phosphate buffer at pH 6.8 and 37º C in a type 2 dissolution apparatus at 100 rpm:
>
> (a) at least about 20% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after 15 minutes of measurement;
>
> (b) at least about 60% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after 45 minutes of measurement;

> (c) at least about 80% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after 75 minutes of measurement.

['695 patent, claims 1 and 2 (emphases added)].

The '695 patent discloses *in vitro* dissolution testing comparing the prior Diclectin® to novel formulations of the '695 patent. Figure 1 of the '695 patent reproduced below shows the improved rapid onset *in vitro* dissolution profiles of the novel formulations of the invention (Examples 1 and 2) as compared to the dissolution profile of the prior Diclectin®.

This background underlies the plain meaning of the terms "rapid onset formulation" and "dissolution profile" / "dissolution characteristics." Duchesnay's proposed constructions are based on the usage and meaning of the terms according to their express language, the intrinsic record, and the understanding of a person of ordinary skill in the art. By contrast, Actavis's proposed constructions ignore the express disclosures in the '695 patent, or improperly read in unwarranted limitations that are not required by the intrinsic evidence.

## IV. AGREED UPON CLAIM CONSTRUCTIONS

| Claim Term | Agreed-Upon Construction |
|---|---|
| preamble | Limiting |
| "enterically-coated . . . formulation" | a formulation coated with an enteric coating |
| "enteric coating" | a coating comprising one or more layers generally resistant to disintegration in human gastric fluids, but which will disintegrate in human intestinal fluids, as well as coatings which disintegrate very slowly in human gastric fluids, but more rapidly in human intestinal fluids |
| "at least about [X]% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved after [X] minutes of measurement" | at least approximately [X]% of each of doxylamine succinate and pyridoxine hydrochloride is dissolved in relation to starting quantities after [X] minutes |
| "at least about 40% of the total amounts of each of pyridoxine HCl and doxylamine succinate are dissolved within 5 minutes" | at least approximately 40% of each of doxylamine succinate and pyridoxine hydrochloride is dissolved in relation to starting quantities within 5 minutes |

## V. ARGUMENT

### A. "Rapid Onset Formulation"

| Claim Term | Duchesnay's Proposed Construction | Actavis's Proposed Construction |
|---|---|---|
| rapid onset formulation | a formulation that rapidly releases the active ingredients at about pH 6.8 as shown by its *in vitro* dissolution profile | a formulation providing a rapid initiation of action (i.e., relief from symptoms) after transiting through the stomach |

In view of the claims as a whole and the specification of the '695 patent, the term "rapid onset formulation" would have been understood by the skilled artisan to mean a formulation that rapidly releases the active ingredients as measured by *in vitro* dissolution testing designed to mimic the environment of the small intestine. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–

13 (Fed. Cir. 2005) (*en banc*) (claim construction begins with an inquiry into the ordinary and customary meaning of the claim to a person of ordinary skill in the art at the time of the invention). Actavis, however, proposes that "rapid onset formulation" should be construed to mean "a formulation providing a rapid initiation of action (i.e., relief from symptoms) after transiting through the stomach." But the skilled artisan would not have understood the term to include a limitation regarding the timing of relief from symptoms. Actavis's proposed construction is contrary to the claim language and the patent specification.

**1. The Claim Language Does Not Contain a Limitation Regarding the Timing of Relief from Symptoms**

The Court need look no further than the language of the claims to resolve the parties' dispute regarding the proper construction of "rapid onset formulation." *See Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). On its face, claim 1 does not require the measurement of the timing of any therapeutic outcome but instead directly focuses on the rapid release of the active ingredients in the small intestine as measured by the *in vitro* dissolution performance of the formulation at pH 6.8. Furthermore, the remainder of the composition of matter claims 1–24 set forth additional formulation components and dissolution characteristics and do not mention or imply any particular timing regarding "initiation of action (i.e., relief from symptoms)." Dependent claims 25–30 pertain to the treatment of, or attenuation of symptoms associated with, nausea and vomiting, but again lack any reference to the timing of relief from such symptoms. Thus, the surrounding claim language offers critical context that supports Duchesnay's, not Actavis's, claim construction. *See id.*, 415 F.3d at 1314 (the claims themselves as well as other claims of the patent can shed light on the meaning of particular claim terms); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the

claims themselves, both asserted and nonasserted, to define the scope of the patented invention.”).

In advocating a construction that requires that the formulation be one “providing a rapid initiation of action (i.e., relief from symptoms),” Actavis reads the phrase “rapid onset” out of context. But claim terms cannot be read in a vacuum. *See Kyocera Wireless Corp. v. Int’l Trade Comm’n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008) (“[T]his court does not interpret claim terms in a vacuum, devoid of the context of the claim as a whole.”); *see also Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) (construing claim term in light of its context within the claim and the specification). Indeed, none of the claims of the ’695 patent tie the phrase “rapid onset” to the timing of any particular therapeutic measure. Instead, the claims focus on release and dissolution characteristics of the active ingredients from the formulation.

The drafters of the ’695 patent could have drafted the claims differently to include a limitation regarding the timing of relief from symptoms. But the drafters of the ’695 patent instead chose to use language that requires a formulation in which the two active ingredients are rapidly released, as measured by *in vitro* dissolution testing designed to mimic the environment of the small intestine. On this basis alone, Actavis’s claim construction is unsupportable.

**2. The Specification and Prosecution History Do Not Alter the Plain Meaning of the Term “Rapid Onset Formulation”**

The specification of the ’695 patent fully supports Duchesnay’s construction of “rapid onset formulation.” *Phillips*, 415 F.3d at 1315 (“The claims, of course, do not stand alone. Rather, they are part of ‘a fully integrated written instrument’ . . . . For that reason, claims ‘must be read in view of the specification, of which they are a part’ . . . . Usually, it is dispositive . . . .”). The specification of the ’695 patent repeatedly and consistently discusses rapid onset

formulations, each time making clear that this feature is defined by the formulation's rapid release of active ingredients, as indicated by its dissolution profile.

For example, the specification identifies a "delayed onset of action" as a drawback of the prior Diclectin® formulation, explaining that it "can take more than 4 hours before the two active ingredients (pyridoxine HCl and doxylamine succinate) reach nearly full dissolution in the intestines, where it is absorbed." [D.I. 38, Ex. 1 at col. 1:26–34.] The specification further explains that "since DS-P is orally delivered as an enteric coated tablet, the novel oral formulation must transit through the stomach unscathed and ***rapidly release*** both active ingredients ***once the dosage form reaches its intended designation, namely the intestines***." [*Id.* at col. 1: 58–62 (emphasis added).] Thus the critical function that the claimed formulations must fulfill is the release and dissolution of the active ingredients in the small intestines. This release is measured in the claims and specification of the '695 patent by *in vitro* dissolution testing at conditions that mimic the small intestine. Therefore, the Summary of the Invention portion of the specification describes the invention as "a new aqueous enteric-coated formulation comprising DS-P, the formulation exhibiting a dissolution profile indicative of a rapid onset." [*Id.* at col. 2:8–11; *see also* col. 2:13–17 ("in-vitro dissolution profiles indicative of rapid onset"); Abstract ("Provided herein is a novel enterically-coated pyridoxine HCl and doxylamine succinate ***rapid onset formulation*** comprising a disintegrating agent ***such that the following dissolution profiles are satisfied*** when measured in 1000 ml phosphate buffer at pH 6.8 and 37ºC in a type 2 dissolution apparatus at 100 rpm: . . . ." (emphases added)).]

Furthermore, Examples 1 and 2 of the '695 patent describe *in vitro* dissolution test results for novel formulations of the invention. Example 3 describes *in vitro* dissolution test results for the prior Diclectin®. These test results show that, under *in vitro* conditions simulating those of

the small intestine (1000 ml phosphate buffer at 6.8 and 37º C in a type 2 dissolution apparatus at 100 rpm), the novel formulations of the ’695 patent display markedly faster onset *in vitro* dissolution profiles for both doxylamine succinate and pyridoxine HCl as compared to the prior Diclectin®. [*Id.* at col. 8:50–57.] When presenting these results graphically in Figure 1, the specification again describes the “rapid onset formulation” in terms of its *in vitro* dissolution performance:

> FIG 1 depicts two examples of dissolution profiles in accordance to the rapid onset formulation of the present invention in comparison to a dissolution profile of the prior art formulation. The first dissolution profile (example 1) corresponds to a rapid onset formulation from which nearly 100% of both active ingredients is released within 45 minutes. The second dissolution profile (example 2) corresponds to a rapid onset formulation from which approximately 95% of both active ingredients is released within 120 minutes.

[*Id.* at col. 2:27–36.] The specification concludes: “It follows from these results that the prior art formulation, exhibits a noticeably slower dissolution pattern when compared with the novel formulations. . . . The novel formulations, as depicted by Examples 1 and 2, show markedly faster onset dissolution profiles resulting in a rapid onset of action.” [*Id.* at col. 8: 50–57.]

Tellingly, Example 2 specifically ties the “rapid onset feature” of the formulation to dissolution results. Thus, the specification states that Example 2 “demonstrates that the rapid onset feature of the formulation of the present invention was obtained with a different group of excipients.” [*Id.* at col. 6:33–35.] After setting forth the composition of the core and enteric coating formulation, the specification notes that “[t]he rapid onset formulation of the previous example has exhibited in-vitro dissolution profiles as shown in Table 6 ….” [*Id.* at col. 6:66–67.]

The specification is replete with further evidence that the term “rapid onset” refers to *in vitro* dissolution behavior, and not relief from symptoms, including the specification’s discussion of the composition of the rapid onset formulation. For example, the specification describes the

composition of a "rapid onset core formulation" and notes that "[t]he core can then be enterically coated with an aqueous enteric coating which will allow the formulation to transit through the stomach relatively unscathed while allowing ***rapid dissolution in the intestines***." [*Id.* at col. 4:44–67 (emphasis added).] The specification consistently links the "rapid onset formulation" to dissolution behavior, for example:

- "Provided herein is a novel enterically-coated pyridoxine HCl and doxylamine succinate rapid onset formulation comprising a disintegrating agent such that the following dissolution profiles are satisfied when measured in 1000 ml phosphate buffer at pH 6.8 and 37ºC in a type 2 dissolution apparatus at 100 rpm: . . . ." [*Id.*at Abstract.]
- "In accordance with the present invention, the formulation will satisfy the following dissolution profiles when measured in 1000 ml phosphate buffer at pH 6.8 and 37º C in a type 2 dissolution apparatus at 100 rpm . . . ." [*Id.* at col. 3:3–6.]
- "The rapid onset formulation of the previous example has exhibited in-vitro dissolution profiles as shown in Table 6 below, when measured in 1000 ml phosphate buffer at pH 6.8 and 37º C in a type 2 dissolution apparatus at 100 rpm." [*Id.* at col. 6:33 – col. 7:2.]
- "It follows from these results [of Example 2] that the novel formulation demonstrates a ***rapid onset as shown by its dissolution profile***." [*Id.* at col. 7: 32–34 (emphasis added).]

This clear and consistent usage of the term "rapid onset" throughout the claims and specification to refer to rapid release and dissolution is compelling evidence that Duchesnay's proposed construction is correct. *See Phillips*, 415 F.3d at 1313 (person of ordinary skill in the

art is deemed to have read the claim term not only in the context of the claim in which it appears but also in the context of the entire patent, including the specification). Furthermore, there is nothing in the prosecution history of the ’695 patent (which was granted via a first office action allowance) that would suggest that the term “rapid onset formulation” should be construed to require a limitation regarding the timing of relief from symptoms.

Actavis would ignore the consistent use of the term “rapid onset” to refer to dissolution and would instead construe “rapid onset formulation” to mean “a formulation providing a rapid initiation of action (i.e., relief from symptoms) after transiting through the stomach.” However, the term “rapid onset formulation” is not defined, either expressly or implicitly, in terms of the timing of relief from any particular symptom. *See Phillips*, 415 F.3d at 1315 (claims must be read in view of the specification).

In sum, the intrinsic evidence supports Duchesnay’s construction of “rapid onset formulation” as a “formulation that rapidly releases the active ingredients at about pH 6.8 as shown by its *in vitro* dissolution profile.”

### B. “Dissolution Profile” / “Dissolution Characteristics” Must Be Construed In Light of the Intrinsic Evidence

| Claim Term | Duchesnay’s Proposed Construction | Actavis’s Proposed Construction |
|---|---|---|
| dissolution profile / dissolution characteristics | average results of dissolution testing in which the amount of pyridoxine HCl and doxylamine succinate released is measured in 1000 ml phosphate buffer at pH 6.8 and 37º C using a USP (United States Pharmacopeia) type 2 dissolution apparatus at 100 rpm | results of a dissolution test in which the amount of pyridoxine HCL and doxylamine succinate released is measured in 1000 ml phosphate buffer at pH 6.8 and 37º C using a USP (United States Pharmacopeia) type 2 dissolution apparatus at 100 rpm |

The parties' dispute regarding this claim term rests on whether the terms "dissolution profile" and "dissolution characteristics" refer to average results or can include results from individual tablets. The terms "dissolution profile" and "dissolution characteristics" in the claims of the '695 patent would have been understood by the skilled artisan to mean the *average* results of dissolution testing, thus reflecting the natural variability of the test. Duchesnay's proposed construction is consistent with that understanding and grounded in the intrinsic record. In particular, the specification teaches that a dissolution profile is obtained by performing several dissolution runs and averaging the values obtained. Indeed, the only dissolution profiles disclosed in the specification are based on average results of dissolution testing obtained at each time point, and the average results from those tests are reflected in the numerical values recited in the claims. Where, as here, it is clear from the specification and figures that the inventor considered claim terms to have a particular meaning, it is appropriate to construe the claim terms accordingly. *See Astrazeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1052–54 (Fed. Cir. 2010) (construing the term "budesonide composition" to mean "budesonide dispersed in a solvent in the form of a solution of suspension" because the specification "consistently describe[d] the budesonide compositions in that way").

The specification of the '695 patent sets forth three examples. Examples 1 and 2 of the '695 patent describe *in vitro* dissolution test results for novel formulations of the invention. Example 3 describes *in vitro* dissolution test results for the prior Diclectin®. In each instance, the dissolution test results are presented as the average of six runs. [D.I. 38, Ex. 1 at Tables 3, 6, and 9; Figure 1.]

For example, Table 3 reproduced below sets forth the results of dissolution testing for a novel formulation of the invention:

TABLE 3

| | Dissolution profiles | | | | | | |
|---|---|---|---|---|---|---|---|
| | Run 1 | Run 2 | Run 3 | Run 4 | Run 5 | Run 6 | Avg. |
| Pyridoxine HCl | | | | | | | |
| 5 minutes | 20 | 2 | 0 | 77 | 79 | 79 | 43 |
| 10 minutes | 91 | 90 | 90 | 91 | 94 | 95 | 92 |
| 15 minutes | 96 | 96 | 94 | 94 | 95 | 96 | 95 |
| 30 minutes | 95 | 98 | 96 | 95 | 98 | 96 | 96 |
| 45 minutes | 97 | 96 | 97 | 94 | 99 | 98 | 97 |
| Doxylamine Succinate | | | | | | | |
| 5 minutes | 17 | 2 | 0 | 70 | 75 | 76 | 40 |
| 10 minutes | 90 | 87 | 89 | 89 | 97 | 96 | 91 |
| 15 minutes | 98 | 97 | 96 | 92 | 98 | 97 | 96 |
| 30 minutes | 97 | 98 | 96 | 94 | 99 | 97 | 97 |
| 45 minutes | 98 | 96 | 98 | 92 | 100 | 99 | 97 |

At the 5 minute time point, the percent of pyridoxine HCl dissolved is reported for 6 runs: 20%, 2%, 0%, 77%, 79%, and 79%. The average percent of pyridoxine HCl dissolved is reported as 43%. It is the average value of 43% that is used in Figure 1—which is described as depicting "dissolution profiles"—for the percent of pyridoxine HCl dissolved at the 5 minute time point.

The text of the specification also explains that the dissolution profile is based on the average value at each such time point. [*Id.* at col. 7:32–39 ("It follows from these results that the novel formulation demonstrates a rapid onset as shown by its dissolution profile. Pyridoxine HCl presents an ***average*** dissolution profile of over 90% within 120 minutes of starting the measurements. Similarly, Doxylamine succinate displays an ***average*** dissolution profile of over 90% within 120 minutes of starting the measurements.") (emphases added).] No other method to determine the dissolution profile or dissolution characteristics of a formulation is disclosed by the '695 patent. The specification consistently and exclusively describes the "dissolution profile" and dissolution characteristics" of a formulation as the average results of dissolution testing according to the claimed *in vitro* dissolution test method. Finally, the prosecution history of the '695 patent does not alter the clear meaning of the terms "dissolution profile" and "dissolution characteristics."

Actavis's proposed construction is divorced from the specification and not warranted. In light of the intrinsic evidence, the disputed terms should be construed as "average results of dissolution testing in which the amount of pyridoxine HCl and doxylamine succinate released is measured in 1000 ml phosphate buffer at pH 6.8 and 37 C using a USP (United States Pharmacopeia) type 2 dissolution apparatus at 100 rpm."

## VI.   CONCLUSION

For the foregoing reasons, Duchesnay requests that the Court construe the terms "rapid onset formulation" and "dissolution profile" / "dissolution characteristics" according to their plain meaning in the manner proposed by Duchesnay.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
Derek J. Fahnestock (#4705)
Thomas Curry (#5877)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
dfahnestock@mnat.com
tcurry@mnat.com
   *Attorneys for Duchesnay Inc.*
   *and Duchesnay USA Inc.*

OF COUNSEL:

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700

Barbara R. Rudolph
Barry W. Graham
Danielle A. Duszczyszyn
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Alissa K. Lipton
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Seaport Lane
Boston, MA 02210-2001
(617) 646-1600

June 11, 2015
9225541