IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DUCHESNAY INC. and DUCHESNAY USA INC.,

    Plaintiffs,

v.

ACTAVIS LABORATORIES FL, INC., ACTAVIS, INC., and ACTAVIS PHARMA INC.,

    Defendants.

C.A. No. 14-912-SLR

### DEFENDANTS' SUR-REPLY CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

Chad A. Landmon (*pro hac vice*)
Jonathan A. Harris (*pro hac vice*)
Thomas K. Hedemann (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
90 State House Square
Hartford, Connecticut 06103
(860) 275-8100

Steven J. Fineman (#4025)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19899
(302) 651-7700
fineman@rlf.com
rawnsley@rlf.com

*Attorneys for Defendants Actavis Laboratories FL Inc., Actavis, Inc. and Actavis Pharma Inc.*

Dated: August 11, 2015

RLF1 12788659v.1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii
INTRODUCTION ......................................................................................................................... 1
I.      "Rapid Onset Formulation" .............................................................................................. 2
         A.      Actavis' Proposed Construction Is Rooted in the Intrinsic Record. ........................ 2
         B.      The Extrinsic Evidence Confirms Actavis' Construction. ....................................... 4
II.     "Dissolution Profile"/"Dissolution Characteristics" .......................................................... 7
CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Commc'ns Research, Inc. v. Fore Sys., Inc.*,
    113 F. Supp. 2d 635 (D. Del. 2000)............................................................................................4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..............................................................................................2, 5

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
    511 F.3d 1132 (Fed. Cir. 2007)..................................................................................................7

*Teva Pharm., USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)..................................................................................................................4

## INTRODUCTION

The parties agree. The goal of the claimed formulations is to provide rapid relief from nausea and vomiting after passing through the stomach. Only Actavis' proposed construction of "rapid onset formulation" – a formulation providing a rapid initiation of action (i.e., relief from symptoms) after transiting the stomach – aligns with that goal. Actavis' proposed construction also aligns with the extrinsic evidence, which demonstrates that "onset" is a technical term of art meaning the beginning of therapeutic effect.

Plaintiffs' construction, by contrast, is divorced from the real-world purpose of the claimed formulations and refers solely to an *in vitro* release profile in a beaker. Plaintiffs justify this artificial construction through reference to *in vitro* data in the '695 patent and extrinsic expert opinion attempting to correlate *in vitro* results with therapeutic effect. Plaintiffs' expert, however, never opines that the allegedly faster dissolution profiles attributable to the claimed formulations reflect a rapid onset of therapeutic action. Further, Plaintiffs fail to offer even a single literature reference with an actual definition of "onset" that supports their proposed construction. This Court should reject Plaintiffs' request to focus on *in vitro* dissolution profiles to the exclusion of real-world therapeutic effects.

The patentee provided the proper construction of "dissolution profile" and "dissolution characteristics" when it expressly and unambiguously defined these terms in the '695 patent specification. Plaintiffs do not dispute the existence of this express definition, but fail to cite or follow binding Federal Circuit precedent concerning its application during claim construction. Instead, Plaintiffs seek to modify the express definition by resorting to extrinsic evidence introduced for the first time in Reply. In addition to ignoring the binding precedent concerning express definitions, Plaintiffs' modification is inconsistent with the specification of the

1

'695 patent and in conflict with the ban on reading limitations from the specification into the claims.

I.     "RAPID ONSET FORMULATION"

As an initial matter, it is now clear that the only real debate over proper construction of the disputed limitation "rapid onset formulation" is the meaning of the term "onset." (D.I. 63 at 4-5.) Actavis' proposed construction of "onset" as the start of therapeutic action aligns with the intrinsic record, which characterizes the patentee's alleged invention as providing urgent relief to pregnant women suffering from nausea and vomiting ("NVP"). Plaintiffs' Reply agrees with this characterization as well as many other critical points made in Actavis' Answering Brief. Further, "onset" was and is a technical term of art that confirms Actavis' construction. Although Plaintiffs introduce extensive extrinsic evidence for the first time in Reply, they fail to identify even a single literature reference providing an actual competing definition of "onset," let alone a definition aligned with their proposed construction.

A.     Actavis' Proposed Construction Is Rooted in the Intrinsic Record.

As Actavis explained in its Answering Brief, the key to proper construction of "onset" is "a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (citing *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Here, Plaintiffs do not dispute – in fact they agree – that the patentee regarded rapid or urgent relief from symptoms of NVP as its alleged invention. According to Plaintiffs, "the parties apparently agree that the ultimate goal of the claimed formulations is to provide rapid relief from the debilitating effects of nausea and vomiting." (D.I. 63 at 1.)

The patentee highlighted this important goal in the '695 patent specification because it knew that lone independent claim 1 was nearly identical to Diclectin, which the '695 patent

2

admits as prior art. Indeed, Plaintiffs' Reply does not contest that Diclectin includes each and every one of the formulation components recited by lone independent claim 1 of the '695 patent, or that certain *in vitro* dissolution profiles reported within the '695 patent for Diclectin are highly similar to the profile recited by claim 1.[1] (*Compare* D.I. 47 at 3-4 *with* D.I. 63 at 10-11.)

Plaintiffs' Reply further admits that passages in the '695 patent specification characterizing *in vitro* dissolution profiles as "indicative" of rapid onset define "onset" to mean onset of therapeutic action in the body. Plaintiffs state "Mr. Gervais [the named inventor] invented a class of formulations that have a much faster dissolution profile indicative of a more rapid therapeutic action." (*Id.* at 3, emphasis added.) That is, the various passages within the '695 patent specification stating that the reported *in vitro* dissolution profiles are "indicative of rapid onset" correlate onset with therapeutic action not *in vitro* release. Thus, these passages, as quoted by Plaintiffs, at for example page 12 of their Opening Brief and pages 7-8 of their Reply, support Actavis' proposed construction, not Plaintiffs'. (*See also* Answering Br. at 14-15.)

These key admissions notwithstanding, Plaintiffs take issue with Actavis' characterization of the '695 patent's discussion of "urgent relief of symptoms" in the patent Background. (D.I. 63 at 8-9.) While Plaintiffs acknowledge that the Background touts rapid therapeutic efficacy and relief of symptoms, they contend that "onset" must only correspond to dissolution and absorption in the small intestines. (*Id.*) Plaintiffs selectively parse the '695 patent in this way to avoid having to carry the burden of proving that patients actually do experience a rapid onset of therapeutic effect. At the very least, however, the necessary

---

[1] Although Plaintiffs point generally to Figure 1 to counter Actavis' assertion, Plaintiffs do not and cannot deny that the dissolution values in Run 3 are highly similar to those required by claim 1. Plaintiffs also mistakenly characterize Run 3 as "an outlier." (D.I. 63, Reply Br. at 10, n.5.) Plaintiffs offer no support for this assertion, and overlook that Run 3 is not much different from neighboring Run 5. (Ex. 1 to D.I. 48, *compare* tbl.9, Run 3 *with* tbl.9, Run 5.)

3

implication of the Background and the '695 patent as a whole, is that the claimed formulations accelerate therapeutic action to provide urgent relief from symptoms. (D.I. 47 at 8-10.) Were it any other way, the alleged invention would amount to nothing more than a laboratory experiment in a beaker.

Finally, Plaintiffs' proposed construction reads "onset" out of the claims. (*Id.* at 13.) While not disputing that "onset" means the start or initiation of action, Plaintiffs assert that the phrase "at pH 6.8" in their proposed construction somehow means that release commences "once the formulation reaches the intestines . . . ." (D.I. 63 at 9.) But Plaintiffs' proposed construction does not actually contain the temporal indicator "once." Rather, it states that the active ingredients rapidly release "at" about pH 6.8. Plaintiffs' proposed construction is not, therefore, limited to situations where the start or initiation of release qualifies as rapid; it merely provides that the release, once it commences, must proceed rapidly. Without their attempted substitution of "once" for "at," Plaintiffs' proposed construction impermissibly reads "onset" out of the claims. *See Bell Commc'ns Research, Inc. v. Fore Sys., Inc.*, 113 F. Supp. 2d 635, 653 (D. Del. 2000) (citation omitted).

B.   The Extrinsic Evidence Confirms Actavis' Construction.

Plaintiffs' Reply also misapplies the extrinsic evidence. Plaintiffs not only mistakenly begin their analysis of the term "onset" by criticizing Actavis' extrinsic evidence, but also fail to offer any actual definition of "onset" that supports their proposed construction. The extrinsic record supports Actavis' proposed construction as a matter of fact. *See Teva Pharm., USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

4

In accordance with *Phillips*, Actavis' Answering Brief analyzed the intrinsic record first, and then pointed to the art-recognized definition of "onset."[2] That art-recognized definition is germane to construction because "onset" is a term of art, because the parties sharply diverge on its meaning, and because Plaintiffs' unsupported definition of "onset" as release in a beaker strays significantly from its plain meaning. *See id.*

With respect to the extrinsic evidence, Plaintiffs expend considerable effort attempting to show that "onset" does not have an art-recognized meaning, yet fail to offer even a single reference from the literature actually defining this term. (Reply Br. at 4-6.) The *only* definition of "onset" in the record appears in Actavis' briefing and aligns with its proposed construction:

> *Onset* may be defined as the time required to achieve the minimum effective plasma concentration following administration of the dosage form.

(D.I. 47 at 6 (quoting Ex. 5, Aulton 1988 at 264; Ex. 4, Felton Decl. ¶ 9).) In a misguided attempt to minimize and downplay this definition, Plaintiffs assert that it "does not specifically link 'onset' to 'relief from symptoms.'" (Reply Br. at 5-6.) But Plaintiffs ignore that the definition uses the phrase "minimum effective plasma concentration," which is defined on the very same page as the concentration required to achieve "the desired therapeutic or pharmacological effect. . . ." (Ex. 5, at 176; Ex. 6, Aulton 2002, at 264.)[3] Furthermore, other literature references dated prior to the '695 patent also consistently define "onset" to mean the start of therapeutic action:

---

[2] The subject matter of the '695 patent falls within the chemical/pharmaceutical "arts," where the level of skill is high, with practitioners, for example, holding a Ph.D. or other advanced degree and/or experience in areas related to formulation science, pharmaceutics and/or medicine.

[3] Unless otherwise specified, all exhibit references correspond to the original or supplemental Declaration of Thomas Hedemann, consecutively numbered.

5

> Onset may be defined as the beginning of the desired therapeutic effect, which may be regarded as occurring when the drug concentration exceeds the required minimum.
>
> The time to a minimally effective concentration denotes the onset of drug action, the first measurable response.

(Ex. 11, *Biopharmaceutics and Clinical Pharmacokinetics: An Introduction* 177 (Robert E. Notari ed., 4th ed. 1987); Ex. 12, *Pharmacology: Drug Actions and Reactions* 253 (R.R. Levine et al, ed., 7th ed. 2000).)

Instead of offering actual definitions of "onset," Plaintiffs point to a few instances in the literature where "onset" appears as a modifier for something else, including "onset of release" and "onset of dissolution." (D.I. 63 at 4-5.) That Plaintiffs' literature references use the phrase "onset of release" demonstrates that "onset" alone cannot simply mean "release," as Plaintiffs would have it. Moreover, the claims of the '695 patent do not recite "onset of release" or "onset of dissolution," and these phrases are not up for construction. The fact that Plaintiffs could not locate a single actual definition of "onset" consistent with their proposed construction is telling. Plaintiffs' literature references cannot contradict Actavis' art-recognized definition.

Plaintiffs try to compensate for the absence of such a definition through the Declaration of Dr. Steven Byrn, who opines that the *in vitro* dissolution profiles attributable to the claimed formulations necessarily translate into a more rapid influx of drug into the bloodstream relative to Diclectin. Building on Dr. Byrn's opinion, but not his actual Declaration, Plaintiffs suggest that *in vitro* dissolution data is a proxy for the onset of therapeutic action and that they should not have to actually prove what the patentee told the PTO about rapid onset of therapeutic action. *Compare* D.I. 64, "Byrn Decl." ¶ 33 (last sentence) *to* D.I. 63 at 3 (sentence citing Byrn Decl. ¶ 33). The problem for Plaintiffs is that Dr. Byrn's carefully worded Declaration stops short of opining that the allegedly faster *in vitro* dissolution profiles attributable to the claimed

6

formulations predict a rapid onset of therapeutic action. (Byrn Decl. ¶¶ 31-33.) It cannot, therefore, support Plaintiffs' attempt to redefine "onset" through *in vitro* dissolution testing conducted in a beaker outside the body.

In sum, the extrinsic evidence shows that "onset" is a technical term of art with a defined meaning that supports Actavis' construction, a construction rooted firmly in the intrinsic record.

II.     "DISSOLUTION PROFILE"/"DISSOLUTION CHARACTERISTICS"

In both their Opening and Reply briefs, Plaintiffs fail to cite or follow binding Federal Circuit precedent concerning the use of express definitions during claim construction. It is black letter law that express definitions control claim construction unless they are ambiguous or incomplete. *See Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1138 (Fed. Cir. 2007).

Here, Plaintiffs do not dispute that the '695 patent specification, at col. 3, ll. 20-27, expressly defines "dissolution profile" and "dissolution characteristics." (D.I. 63 at 12.) Further, Plaintiffs do not actually assert that this express definition is ambiguous or incomplete, and they make no effort to distinguish *Sinorgchem*, which Actavis cited and analyzed in its Answering Brief. (D.I. 47 at 16.)

Nor could they. First, Plaintiffs concede that "there can be no ambiguity as to the meaning of dissolution profile or dissolution characteristics based on the portion of the specification relied upon by Actavis." (D.I. 63 at 13.) Second, there is no evidence that the express definition is incomplete. The patentee expressly used the operative term "results" in the definition to capture both individual runs and averages of those runs. Indeed, the '695 patent, which repeatedly reports multiple individual runs as well as averages of those runs, nowhere incorporates the concept of an average into the express definition or the claims. (Ex. 1 to D.I. 48; '695 patent, tbls. 3, 6, 9.) The '695 patent specification also never states that the term

7

"results" excludes individual runs or encompasses only averages. That is why Plaintiffs offer no reason why the patentee attempted to explain away certain individual runs as anomalous.

The best Plaintiffs can muster is that limiting "results" to an average is "a more reasonable interpretation in view of the plain meaning of the terms and the remainder of the specification." (D.I. 63 at 12.) Plaintiffs ignore that this approach violates Federal Circuit precedent concerning express definitions, fails to account for treatment of individual runs by the '695 patent specification, and impermissibly rewrites the claims by reading in the term "average."

Plaintiffs are thus left appealing to expert opinion and other extrinsic evidence regarding allegedly "standard practice" in the field of dissolution testing. (*Id.* at 12-13.) Not only do Plaintiffs introduce this extrinsic evidence for the first time in Reply, they fail to cite any legal precedent authorizing its use as a means to override an express definition.

In the end, this Court should simply adopt the express definition set forth by the patentee.

## CONCLUSION

For the foregoing reasons, and reasons set forth in Defendants' Answering Claim Construction Brief, Actavis requests that the Court adopt Actavis' proposed constructions of disputed claim limitations.

OF COUNSEL:

Chad A. Landmon (*pro hac vice*)
Jonathan A. Harris (*pro hac vice*)
Thomas K. Hedemann (*pro hac vice*)
AXINN, VELTROP & HARKRIDER
90 State House Square
Hartford, Connecticut 06103
(860) 275-8100

/s/ *Steven J. Fineman*
Steven J. Fineman (#4025)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19899
(302) 651-7700
fineman@rlf.com
rawnsley@rlf.com

*Attorneys for Defendants Actavis Laboratories FL Inc., Actavis, Inc. and Actavis Pharma Inc.*

Dated: August 11, 2015

9