# EXHIBIT A

Proposed Admitted Facts

Duchesnay and the '695 Patent

1.      Duchesnay Inc. is a Canadian corporation with its headquarters at 950 Boulevard
Michele-Bohec, Blainville, Quebec, Canada J7C 5E2.

2.      Duchesnay USA, Inc. (collectively with Duchesnay Inc., "Duchesnay") is a
corporation organized and existing under the laws of Delaware with its
headquarters at 919 Conestoga Road, Bryn Mawr, Pennsylvania 19010.

3.      U.S. Patent No. 6,340,695 B1 ("the '695 Patent"), which is entitled "Rapid Onset
Formulation," was issued by the U.S. Patent and Trademark Office ("PTO") on
January 22, 2002.

4.      The '695 Patent issued from Application No. 09/885,051 ("the '051
Application"), which was filed in the PTO on June 21, 2001.

5.      For the purposes of this action, the effective filing date of the '695 Patent is
June 21, 2001.

6.      The filing of the '051 Application on June 21, 2001, included the specification
and drawings, 30 original claims, and a declaration signed by the inventor Eric
Gervais.

7.      On August 22, 2001, the PTO mailed a Notice of Allowance, Issue Fee Due, and
Notice of Allowability, which indicated without any rejection that original claims
1-30 were allowed.

8.      Duchesnay paid the issue fee for the '051 Application on November 13, 2001.

9.      The '695 Patent issued from the '051 Application on January 22, 2002, with the
same 30 claims as originally filed with the '051 Application.

10.     The '695 Patent lists Eric Gervais as the inventor on its face.

Proposed Admitted Facts

11.     Eric Gervais executed an assignment of his rights in the '695 Patent to Duchesnay.

12.     The '695 Patent lists Duchesnay Inc. as the assignee on its face.

13.     As currently listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations*, which is also known as the "Orange Book," the '695 Patent's expiration date is June 21, 2021.

Diclegis®

14.     Duchesnay Inc. is the holder of FDA-approved New Drug Application ("NDA") No. 021876 for the manufacture and sale of doxylamine succinate and pyridoxine hydrochloride delayed-release tablets, 10 mg/10 mg, which Duchesnay markets and sells in the United States under the trademark Diclegis®.

15.     The generic drug name for Diclegis® is doxylamine succinate and pyridoxine hydrochloride delayed-release tablets.

16.     The two active ingredients in Diclegis® are doxylamine succinate (10 mg) and pyridoxine hydrochloride (10 mg).

17.     The FDA-approved product labeling for Diclegis® states that "DICLEGIS is indicated for the treatment of nausea and vomiting of pregnancy ["NVP"] in women who do not respond to conservative management."

18.     Diclegis® is approved by the FDA for the treatment of NVP in women who do not respond to conservative management.

19.     Diclegis® was approved by the FDA on April 8, 2013.

Proposed Admitted Facts

Actavis and Its Generic Diclegis® Product

20.    Actavis Laboratories FL, Inc. ("AF") is a corporation organized and existing under the laws of the State of Florida, having its principal place of business at 4955 Orange Drive, Davie, Florida 33314.

21.    Actavis Inc. is a corporation organized and existing under the laws of the State of Nevada, having a place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054.

22.    Actavis Pharma, Inc. (collectively with AF and Actavis Inc., "Actavis") is a corporation organized and existing under the laws of the State of Delaware, having a place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054.

23.    Under 21 U.S.C. § 355(j), Watson Laboratories, Inc.-Florida, Actavis's predecessor in interest, submitted to the U.S. Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA"), which was assigned No. 205811, to obtain approval for the commercial manufacture, use, and sale of its doxylamine succinate and pyridoxine hydrochloride delayed-release tablets ("Actavis's Generic Product").

24.    Actavis filed ANDA No. 205811 with the FDA seeking approval to market a generic version of Diclegis® prior to the expiration of the '695 Patent.

25.    Diclegis® is the "listed drug" to which ANDA No. 20-5811 refers for purposes of 21 U.S.C. § 355(j)(2).

Proposed Admitted Facts

26.    Actavis submitted, as part of ANDA No. 20-5811, a Paragraph IV certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to, *inter alia*, the '695 Patent.

27.    By letter dated May 30, 2014, as required by 21 U.S.C. § 505(j)(2)(B)(iv), Actavis notified Duchesnay that it had submitted ANDA No. 20-5811 to the FDA seeking approval under the Federal Food, Drug, and Cosmetic Act ("FDCA") to engage in the commercial manufacture, use, and sale of a generic equivalent of Diclegis® (*i.e.*, Actavis's Generic Product) prior to the expiration of, *inter alia*, the '695 Patent.

28.    The active ingredients in Actavis's Generic Product are doxylamine succinate (10 mg) and pyridoxine hydrochloride (10 mg).

29.    Actavis has applied to the FDA for approval to market Actavis's Generic Product to treat nausea and vomiting of pregnancy in women who do not respond to conservative management.

Mylan and Its Generic Diclegis® Product

30.    Mylan Pharmaceuticals, Inc. ("Mylan") is a corporation organized and existing under the laws of the State of West Virginia, having a place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505.

31.    Under 21 U.S.C. § 355(j), Mylan submitted to the U.S. Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA"), which was assigned No. 207825, to obtain approval for the commercial manufacture, use, and sale of its doxylamine succinate and pyridoxine hydrochloride delayed-release tablets ("Mylan's Generic Product").

Proposed Admitted Facts

32.     Mylan submitted, as part of ANDA No. 20-7825, a Paragraph IV certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the '695 Patent and the '122 Patent.

33.     Mylan filed ANDA No. 207825 with the FDA seeking approval to market a generic version of Diclegis® prior to the expiration of the '122 and '695 Patents.

34.     On September 15, 2015, Duchesnay provided Mylan with a covenant not to sue regarding the '122 Patent.

35.     By letter dated April 13, 2015, as required by 21 U.S.C. §505(j)(2)(B)(ii), Mylan notified Duchesnay that it had submitted ANDA No. 20-7825 to the FDA seeking approval under the FDCA to engage in the commercial manufacture, use, and sale of a generic equivalent of Diclegis® (*i.e.*, Mylan's Generic Product) prior to the expiration of, *inter alia*, the '695 Patent.

36.     The active ingredients in Mylan's Generic Product are doxylamine succinate (10 mg) and pyridoxine hydrochloride (10 mg).

37.     Mylan has applied to the FDA for approval to market Mylan's Generic Product to treat nausea and vomiting of pregnancy in women who do not respond to conservative management.

Bendectin® and Patents other than the '695 Patent

38.     A doxylamine succinate/pyridoxine hydrochloride formulation sold under the trade name Bendectin® was approved by the FDA in July 1956.

39.     Prior to June 21, 2000, Bendectin was sold and marketed in the United States.

40.     Prior to June 21, 2000, Bendectin contained doxylamine succinate and pyridoxine hydrochloride as active ingredients.

Proposed Admitted Facts

41.     Prior to June 21, 2000, Bendectin contained about 10 milligrams each of doxylamine succinate and pyridoxine hydrochloride.

42.     Prior to June 21, 2000, Bendectin was approved by the FDA for treatment of nausea and vomiting of pregnancy.

43.     U.S. Patent No. 5,229,134 to Mention et al. ("the '134 Patent") was issued by the PTO on July 20, 1993.

44.     U.S. Patent No. 6,024,981 to Khankari et al. ("the '981 Patent") was issued by the PTO on February 15, 2000.

45.     U.S. Patent No. 4,609,675 to Franz ("Franz") was issued by the PTO on September 2, 1986.

46.     U.S. Patent No. 6,197,329 B1 to Hermelin et al. ("Hermelin") was issued by the PTO on March 6, 2001.

47.     U.S. Patent No. 5,980,951 to Gardner et al. ("Gardner") was issued by the PTO on November 9, 1999.

# EXHIBIT B
## REDACTED IN ITS ENTIRETY

# EXHIBIT C
## REDACTED IN ITS ENTIRETY

# EXHIBIT D

Plaintiffs' Brief Statement of Contested Laws

## <u>TABLE OF CONTENTS</u>

I.    VALIDITY ............................................................................................... 2

II.   INVENTORSHIP ..................................................................................... 2

     A.    Inventorship Under 35 U.S.C. §§ 101 and 102(f) (pre-AIA) .................... 2

     B.    Derivation Under 35 U.S.C. §§ 101 and 102(f) (pre-AIA) ....................... 7

     C.    Correction of Inventorship Under 35 U.S.C. § 256 .................................. 8

III.  STANDING ............................................................................................. 10

     A.    Patent Ownership Under Canadian Law ................................................. 11

IV.   OBVIOUSNESS UNDER 35 U.S.C. § 103 ...................................................... 13

V.    EXCEPTIONAL CASE ................................................................................. 20

In conjunction with the issues discussed in Duchesnay's Brief Statement of Intended Proofs (Exhibit J), Duchesnay presents the following issues of law that it contends remain to be litigated, along with citations to authorities.  In particular, the parties will litigate whether the Defendants can prove, by clear and convincing evidence, that the Asserted Claims of the '695 patent are invalid for improper inventorship, derivation, or obviousness.  Additionally, the parties will litigate whether Duchesnay has standing to bring the instant suit, and whether this is an exceptional case warranting Duchesnay to be awarded its attorney fees and costs.

## I.    VALIDITY

1.    Each claim of a patent is presumed valid.  35 U.S.C. § 282.

2.    The burden of establishing invalidity of any claim of a patent falls on the party asserting invalidity.  35 U.S.C. § 282.

3.    35 U.S.C. § 282 requires an invalidity defense to patent infringement allegations to be proved by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

## II.   INVENTORSHIP

### A.    Inventorship Under 35 U.S.C. §§ 101 and 102(f) (pre-AIA)

The parties will litigate whether the Defendants can prove, by clear and convincing evidence, that the Asserted Claims of the '695 patent are invalid under 35 U.S.C. §§ 101 and 102(f) (pre-AIA).

4.    35 U.S.C. § 101 states:  "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful

improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

5.   35 U.S.C. § 102(f) states that "[a] person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented."

6.   Inventorship is a question of law, premised on underlying questions of fact. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004).

7.   Patent issuance creates a presumption that the named inventors are the true and only inventors. *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997). The party raising an issue of derivation, misjoinder, or nonjoinder of inventors has a heavy burden of establishing the defense by clear and convincing evidence. *Id.* at 979-80.

8.   Thus, in order to rebut the presumption that the named inventor is the correct and only inventor, "a party challenging patent validity for omission of an inventor must present clear and convincing evidence that the omitted person actually invented the claimed invention." *Acromed Corp. v. Sofamor Danek Group Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001).

9.   The clear and convincing burden of proof is an important safeguard against the temptation for even an honest witness to reconstruct his own earlier state of mind and the "strong temptation for persons who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention." *Hess*, 106 F.3d at 980. These temptations are particularly strong when "the patent

has been outstanding for a considerable time and the patented device has been successful." *Id.*

10.    Conception is the touchstone of inventorship. *Acromed*, 253 F.3d at 1379.

11.    A party alleging conception by someone other than a named inventor must identify clear and convincing evidence of the factual underpinnings of that other person's conception. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1063 (Fed. Cir. 2005).

12.    Conception requires that the alleged inventor not merely perform the invention but have in mind "a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Id.*

13.    "Conception must include every feature or limitation of the claimed invention." *Davis v. Reddy*, 620 F.2d 885, 889 (C.C.P.A. 1980).

14.    The inventor must be able to describe his invention with particularity and have a specific, settled idea, and a particular solution to the problem at hand. *Invitrogen*, 429 F.3d at 1063.

15.    Conception requires more than accidental or unappreciated creation. *Id.* "In other words, conception requires that the inventor appreciate that which he has invented." *Id.*

16.    "[E]ach person claiming to be a joint inventor must have contributed to the conception of the invention," and must provide corroborating evidence of any such contributions. *Acromed*, 253 F.3d at 1379.

17.    A joint inventor's contribution must be not insignificant in quality, when measured against the dimension of the full invention. *Acromed*, 253 F.3d at 1379;

*see also Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 776 F.3d 837, 845 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 189 (2015).  For example, if an individual supplies a component essential to an invention, that is an insufficiently significant contribution if the component and the principles of its use were known in the prior art.  *Id.*

18.    An inventor may rely on another's services, ideas, and assistance to develop his invention without losing his right to a patent.  *Hess*, 106 F.3d at 981.

19.    A person merely following the named inventor's instructions does not become a co-inventor.  *See Acromed*, 253 F.3d at 1380-81 (affirming finding that the alleged inventor's contribution was merely the work of an ordinarily skilled [artisan] following instructions to design the device according to the named inventor's conception).

20.    A purported inventor must do more than simply explain or provide what is state of the art.  *Acromed*, 253 F.3d at 1379; *see also Eli Lilly*, 376 F.3d at 1362 (stating that "[a] contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception."); *Hess*, 106 F.3d at 981 (holding that the alleged inventor's suggestion of suitable materials for use in the invention was insufficient to establish joint inventorship); *Acromed*, 253 F.3d at 1380-81 (noting the lack of substantial evidence that purported inventor's work "was more than the work of an ordinarily skilled [artisan] following instructions").

21.    "'No invention can possibly be made, consisting of a combination of different elements . . . without a thorough knowledge of the properties of each of them, and

the mode in which they operate on each other.  And it can make no difference, in this respect, whether [the inventor] derives his information from books, or from conversation with men skilled in the science.  If it were otherwise, no patent, in which a combination of different elements is used could ever be obtained.'" *Hess*, 106 F.3d at 981 (*quoting O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 111 (1853)).

22.    An alleged inventor's testimony, standing alone, cannot rise to the level of clear and convincing evidence; he must supply evidence to corroborate his testimony. *Invitrogen*, 429 F.3d at 1065.

23.    "Indeed, because of the danger in post-hoc rationales by an inventor claiming priority, the court requires objective evidence to corroborate on inventor's testimony concerning his understanding of the invention," including evidence that the purported inventor "timely interpreted or evaluated the results, and understood them to show the existence [of] the invention." *Id.*

24.    A challenger cannot prove improper inventorship by only showing a potential that the named inventor may not have himself invented the claimed subject matter without offering clear and convincing evidence that a different inventor was responsible for the invention.  *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1381-82 (Fed. Cir. 2000).

25.    Only natural persons, not a legal entity, can be inventors.  *See, e.g., Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1247-48 (Fed. Cir. 1993) (holding that "only natural persons can be 'inventors'") (citing 35 U.S.C. §§ 115 to 118).

**B.     Derivation Under 35 U.S.C. §§ 101 and 102(f) (pre-AIA)**

26.   To establish invalidity for derivation under § 102(f) requires: (1) prior conception of the invention by another and (2) communication of that conception to the patentee that is sufficient to enable him to construct and successfully operate the invention.  *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997) (reversing district court's holding of invalidity based on derivation).   The patent challenger must prove both elements by clear and convincing evidence.  *Id.*

27.   Derivation is not found where the source from which the invention was allegedly derived did not reflect the entire claimed invention.  *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1377 (Fed. Cir. 2004) (affirming district court's holding of no derivation where alleged source did not meet all the claims of the invention).

28.   Derivation claim requires proof of conception.  Therefore derivation is *not* found where the source from which the invention was allegedly derived either (i) did not reflect the entire claimed invention or (ii) was not prior.  *Id.*

29.   Conception must include every feature or limitation of the claimed invention, not simply an attribute of the inventive idea.  *See Eli Lilly & Co. v. Sicor Pharm., Inc.*, 705 F. Supp. 2d 971, 993 (S.D. Ind. 2010) (finding no derivation where "it is abundantly clear that [the alleged prior inventor] did not conceive of [the claimed invention] and its utility prior to [the patentee's] having done so"), *aff'd*, 426 F. App'x 892 (Fed Cir. 2011).

30.   Conception of the claimed invention is not met by one who merely conducts experiments at the inventor's direction.  *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) ("Stern simply carried out an experiment previously

done by Bito on different animals—animals that Bito had already determined would be good models for prostaglandins research. Stern's contribution is insufficient to support a claim of co-inventorship.").

31.   Moreover, the testimony of an alleged prior inventor is treated with heightened scrutiny; alone, it is insufficient to demonstrate prior conception and corroboration is required. *Gambro*, 110 F.3d at 1576-77; *Eli Lilly*, 705 F. Supp. 2d at 993-94.

32.   Furthermore, a precondition of a derivation claim under § 102(f) is the identification of another inventor. *Solomon*, 216 F.3d at 1381-82 (affirming denial of section 102(f) where accused infringer did not offer any evidence that someone else actually invented what was claimed).

33.   As such, a derivation claim must name a natural person, not a legal entity as an inventor. *Beech Aircraft*, 990 F.2d at 1247-48.

34.   A patent challenger cannot simply allege that someone other than the named inventor conceived the invention, without naming a "true" inventor; the named inventors of an issued patent are presumed to be correct. *Solomon*, 216 F.2d at 1380-82.

## C.   Correction of Inventorship Under 35 U.S.C. § 256

Should the Court find the inventorship of the '695 patent incorrect, Duchesnay reserves its right to request that the Court order correction of the inventorship under 35 U.S.C. § 256. The parties thus may litigate whether the Court may order correction of inventorship under 35 U.S.C. § 256, to the extent Defendants have proven by clear and convincing evidence that the Asserted Claims of the '695 patent are invalid under 35 U.S.C. §§ 101 or 102(f).

35.    If the inventorship of an issued patent is proven to be incorrect, 35 U.S.C. § 256 provides a correction mechanism "[w]henever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent . . . ."[1] *See Solomon*, 216 F.3d at 1381 (stating that a patent may be "saved from invalidity by operation of 35 U.S.C. § 256").

36.    35 U.S.C. § 256(b) states: "The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.  The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly."

37.    Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity.  *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1340 (Fed. Cir. 2005).  Thus, after it is determined that a patent's inventorship is incorrect, the patentee must then be given an opportunity to correct inventorship pursuant to that section.  *Id.*

38.    Under § 256, omission of an inventor—called nonjoinder—may be corrected on notice and hearing of all parties concerned.  *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed. Cir. 1994).

39.    "Section 256 *does not limit* the time during which inventorship can be corrected." *Id.* (emphasis added); *see also Advanced Cardiovascular Sys., Inc. v. SciMed Life*

---

[1] Section 256 was amended by the America Invents Act ("AIA").  America Invents Act, Pub. L. 112-29, § 20(f), Sept. 16, 2011, 125 Stat. 335.  Because this lawsuit commenced after September 16, 2012, the AIA amendments to Section 256 apply.  America Invents Act, Pub. L. 112-29, § 20(l), Sept. 16, 2011, 125 Stat. 335.

*Sys., Inc.*, 988 F.2d 1157, 1162 (Fed. Cir. 1993) (stating that "[s]ince the defense of patent invalidity based on incorrect inventorship can be raised at any time, correction of inventorship should be similarly available at any time."). In this way, the provision "serves the public policy of preserving property rights from avoidable forfeiture." *Stark*, 29 F.3d at 1573.

### III.   STANDING

40.   Issues of patent ownership are distinct from questions of inventorship. *See Beech Aircraft*, 990 F.2d at 1248 (Fed.Cir.1993) ("It is elementary that inventorship and ownership are separate issues.").

41.   Standing to sue for infringement is based on patent ownership. Although standing stems from 35 U.S.C. § 281, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent," "patentee" includes the person to whom the  patent was issued but also "the successors in title to the patentee." 35 U.S.C. § 100(d).

42.   An issued patent is entitled to a presumption that its named inventor(s) are the true and only inventors. *Hess*, 106 F.3d at 980.

43.   Likewise, an assignment of patent ownership is entitled to a presumption of validity as to the assignment and a party challenging the assignment has the burden to rebut that presumption. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010).

### A.      Patent Ownership Under Canadian Law

44.    To the extent that the Court determines that Mr. Gervais was not the sole inventor of the '695 Patent,[2] Canadian law controls ownership of the Patent.  *See Akazawa v. Link New Technology Int'l. Inc.*, 520 F.3d 1354 (Fed. Cir. 2008) (holding that ownership of U.S. patent depended on operation of Japanese law); *see also Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324 (Fed. Cir. 2001) (concluding that parties to contract intended foreign law to apply and determining patent ownership accordingly).

45.    Under the *Constitution Act 1867*, the Canadian Federal Government is given to the exclusive jurisdiction over "patents of invention," while provinces are given jurisdiction over "property and civil rights."

46.    The Canadian *Patent Act* has no specific provision that controls patent rights for an invention created as part of one's employment or a contractual relationship. Rather, property ownership in these situations is controlled by provincial common law.  *See Techform Products Ltd. v Wolda*, 2000 CanLII 22597 (Can. Ont. S.C.); *Comstock Canada v. Electec Ltd.*(1991) 38 C.P.R. (3d) 29.

47.    Under Canadian common law, employees and independent contractors do not own development work and intellectual property, and ownership transfers automatically to employers and clients, where there is an express contract provision dictating ownership by the employer or client.  *Techform Products Ltd. v Wolda* 56 O.R. (3d) 1 (Ont. CA).

---

[2] Duchesnay vigorously contests Defendants' allegations that Mr. Gervais is not the sole and true inventor of the subject matter of the '695 patent.  Should the court hold otherwise, however, Duchesnay reserves its right to present evidence and argument on the topic of standing.

Plaintiffs' Brief Statement of Contested Laws

48.    *Sattva Capital Corporation v. Creston Moly Corporation*, [2014] 2 S.C.R. 633
(Can.) directs that contracts are interpreted by: (i) reading the contract as a whole;
(ii) giving the words their ordinary and grammatical meaning; and (iii) ensuring
that step (ii) is done consistently with the surrounding circumstances known to the
parties at the time of formation of the contract.   *Id.* at ¶ 47.   Specifically, the
*Sattva* Court instructs that "the meaning of words is often derived from a number
of contextual factors, including the purpose of the agreement and the nature of the
relationship created by the agreement," and "the court should know the
commercial purpose of the contract . . . the genesis of the transaction, the
background, the context, the market in which the parties are operating."   *Id.* at
¶¶ 47-48.   With respect to demonstrating these "surrounding circumstances," the
Canadian Supreme Court has held that "the parol evidence rule does not apply to
preclude evidence of the surrounding circumstances."   *Id.* at ¶ 60.

49.    Canadian court decisions uphold written agreements assigning ownership of
inventions and related intellectual property rights arising from employment and
consulting relationships, even where the agreement is executed after the
commencement of employment or development work.   *See Techform*, 56 O.R.
(d)1 at ¶¶ 18, 20-22.   Continued employment and an express or implied
forbearance from dismissing an employee or independent contractor for a
reasonable period is adequate consideration for an agreement to assign ownership
of inventions and related intellectual property rights.   *Id.*

50.    Development work and intellectual property is owned by clients—not consultants
and independent contractors—where the nature of the employment relationship

indicates the invention was to be owned by the client. *See Techform,* 2000 CanLII 22597 at ¶ 13; *Comstock Canada v. Electec Ltd.*(1991) 38 C.P.R. (3d) 29. Where a client hires another party for the purposing of designing a particular product, there is a presumption that the client will be the owner of the work product, including patent rights. *Seanix Technology Inc. v. Ircha* (1998), 78 C.P.R. (3d) 443 (B.C. S.C.) (finding that patented idea was the result of "doing exactly what he had been hired to do" and therefore belonged to the hiring company).

51.     In addition, courts will imply contract terms granting ownership to the client where such terms give effect to the intention of the parties or are generally part of the custom or usage. *See Techform,* 2000 CanLII 22597 at ¶ 36. In particular, the doctrine of business efficacy dictates that terms should be implied where "a contract would not be effective unless the term were implied." *Id.* at ¶¶ 38-39. In *Techform,* the court applied the business efficiency doctrine and implied terms that Techform owned patent rights for specific items developed by an independent contractor. *Id.* at ¶ 44. The court determined that the independent contractor had been hired to develop specific items that Techform assigned, and that the contracting relationship would not have been effective if the specific items did not become the property of Techform. *Id.*

## IV.     OBVIOUSNESS UNDER 35 U.S.C. § 103

The parties will litigate whether the Defendants can prove, by clear and convincing evidence, that the Asserted Claims of the Patent-in-Suit are invalid as obvious under 35 U.S.C. 103(a).

Plaintiffs' Brief Statement of Contested Laws

52.     A patent claim is obvious only if the differences between the claimed invention

and the identified prior art are such that the claimed invention as a whole would

have been obvious at the time the invention was made to a person having ordinary

skill in the art to which the claimed invention pertains.  35 U.S.C. § 103(a) (pre-

AIA).

53.     Patentability shall not be negated by the manner in which the invention was made;

therefore, the path that led the inventors to the invention is not relevant.

35 U.S.C. § 103(a) (pre-AIA).

54.     "[D]ependent claims are nonobvious if the independent claims from which they

depend are nonobvious." *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520

F.3d 1358, 1365 (Fed. Cir. 2008) (citing *In re Fritch*, 972 F.2d 1260, 1266 (Fed.

Cir. 1992)).

55.     The factors that define the obviousness inquiry are: (1) determining the scope and

content of the prior art, (2) ascertaining the differences between the prior art and

the claims, (3) determining the level of ordinary skill in the pertinent art, and (4)

objective indications of non-obviousness (secondary considerations) such as

commercial success.  *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492

F.3d 1350, 1355 (2007).

56.     Factors that may be considered in determining level of ordinary skill in the art

include: (1) the educational level of the inventor; (2) type of problems

encountered in the art; (3) prior art solutions to those problems; (4) rapidity with

which innovations are made; (5) sophistication of the technology; and (6)

educational level of active workers in the field.  *Envtl. Designs, Ltd. v. Union Oil*

*Co. of Cal.*, 713 F.2d 693, 696-97 (Fed. Cir. 1983).  Not all such factors may be present in every case, and one or more of these or other factors may predominate in a particular case.  *Id.*

57.  A party asserting that a patent is obvious "must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so."  *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 676 F.3d 1063, 1068-69 (Fed. Cir. 2012).

58.  If a party can establish by clear and convincing evidence that a skilled artisan merely pursues "known options" from "a finite number of identified, predictable solutions," the resulting invention may be found to be obvious under Section 103.  *In re Cyclobenzaprine*, 676 F.3d at 1070-71.  Where, however, a defendant urges an obviousness finding by combining various prior art references, but the prior art gave no indication of which parameters were critical and no direction as to which of many possible choices is likely to be successful, courts should reject such hindsight allegations of obviousness.  *Id.*

59.  The art, not hindsight knowledge of a patentee's success, must provide a reason for a person skilled in the art to do what the patentee has done.  *Ortho-McNeil Pharm.*, 520 F.3d at 1364.  Hindsight reconstruction cannot be used to pick and choose among isolated disclosures in the prior art to depreciate the claimed invention.  *In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988).

Plaintiffs' Brief Statement of Contested Laws

60.     The scope and content of the prior art must be considered as a whole.   *In re Wesslau*, 353 F.2d 238, 241 (C.C.P.A. 1965) ("It is impermissible . . . to pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art."); *see generally In re Kuderna*, 426 F.2d 385, 389 (C.C.P.A. 1970) ("We must approach the issue of patentability in terms of what would have been obvious to one of ordinary skill in the art at the time the invention was made in view of the sum of all the relevant teachings in the art, not in view of first one and then another of the isolated teachings in the art.").

61.     "An invention can often be the recognition of a problem itself."   *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1353, 1356-57 (Fed. Cir. 2013) (finding invention not obviousness because inventors recognized and solved a problem with the storage stability of certain formulations—a problem that the prior art did not recognize and a problem that was not solved for over a decade; "[t]he problem was not known, the possible approaches to solving the problem were not known or finite, and the solution was not predictable"); *see also Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 859 (Fed. Cir. 2015) ("often the inventive contribution lies in defining the problem in a new revelatory way.").

62.     "Obviousness cannot be predicated on what is unknown, even if the unknown is inherent in a prior art reference."   *In re Rijckaert*, 9 F.3d 1531, 1534 (Fed. Cir. 1993) (citing *In re Spormann*, 363 F.2d 444, 448 (C.C.P.A. 1966)).

63.     "Any obviousness assertion based on inherency necessarily requires that the inherent property would have been obvious to a person of ordinary skill in the art in view of the teachings of the prior art, not based on information developed after the time of the invention." *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1571 (Fed. Cir. 1986), overruled on other grounds by *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

64.     Prior art teaching away from the claimed invention is an important indicia of nonobviousness. *See United States v. Adams*, 383 U.S. 39, 43-44, 51-52 (1966) (initial skepticism upon learning of invention is strong evidence of nonobviousness); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1309 (Fed. Cir. 2010) (teaching away and unpredictable results yield nonobviousness); *In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986) (proceeding contrary to the accepted wisdom is strong evidence that a patent is not obvious).

65.     "A prior art reference may be considered to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *Allergan*, 796 F.3d at 1305 (citation omitted).

66.     The Federal Circuit has explained that "[t]o the extent an art is unpredictable, as chemical arts often are, *KSR*'s focus on these 'identified, predictable solutions' may present a difficult hurdle because potential solutions are less likely to be genuinely predictable." *Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008); *see also In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995) ("unpredictable fields such as chemistry, where minor changes in a product or

process may yield substantially different results") and *In re Cyclobenzaprine*, 676 F.3d at 1072 ("Evidence of obviousness, especially when that evidence is proffered in support of an 'obvious-to-try' theory, is insufficient unless it indicates that the possible options skilled artisans would have encountered were 'finite,' 'small,' or 'easily traversed,' and that skilled artisans would have had a reason to select the route that produced the claimed invention.").

67. "Evidence that the variables interacted in an unpredictable or unexpected way could render the combination nonobvious." *Allergan*, 796 F.3d at 1306 (citations omitted).

68. The assessment of obviousness also requires examination of objective indicia of nonobviousness. Secondary considerations, when present, must always be considered in determining obviousness. *In re Cyclobenzaprine*, 676 F.3d at 1079-80 (citation omitted).

69. Objective evidence "is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness." *Ortho-McNeil*, 520 F.3d at 1365 (citing *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1288 (Fed. Cir. 2002) ("Objective indicia may often be the most probative and cogent evidence of nonobviousness in the record.")).

70. Evidence rebutting obviousness may include, but are not limited to: commercial success, copying, skepticism, and long-felt but unresolved need. *Advanced Display Sys., Inc. v. Kent State Univ.* 212 F.3d 1272, 1285-86 (Fed. Cir. 2000); *Monarch*, 139 F.3d at 885; *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,

Plaintiffs' Brief Statement of Contested Laws

370 F.3d 1354, 1368 (Fed. Cir. 2004); *In re Cyclobenzaprine* (long-felt need for a therapeutically effective extended-release formulation of cyclobenzaprine).

71.   The rationale for giving weight to these so-called "secondary factors" is that "they provide objective evidence of how the patented product is viewed in the marketplace, by those directly interested in the product." *Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988).

72.   Secondary considerations extend beyond what was known at the time of the invention and may include later discovered unexpected properties of the invention. *Daiichi Sankyo Co., Ltd. v. Mylan Pharms.*, 670 F. Supp. 2d 359, 381 (D.N.J. 2009), *aff'd sub nom. Daiichi Sankyo Co. v. Matrix Labs., Ltd.*, 619 F.3d 1346 (Fed. Cir. 2010).

73.   Unpredictability in the art and unexpected results are important indicia of nonobviousness. *See, e.g.*, *Adams*, 383 U.S. at 51-52.

74.   Chemistry is unpredictable art, and unexpected results are most applicable in chemical inventions to demonstrate nonobviousness.

> One way for a patent applicant to rebut a *prima facie* case of obviousness is to make a showing of "unexpected results," *i.e.*, to show that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected. The basic principle behind this rule is straightforward—that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious. The principle applies most often to the less predictable fields, such as chemistry, where minor changes in a product or process may yield substantially different results.

*In re Soni*, 54 F.3d at 750.

75.   Evidence of a long-felt but unsolved need in the industry for the solution offered

by the patented invention also supports a finding that the invention would not

have been obvious at the time it was made.  *See, e.g.*, *Leo Pharm.* 726 F.3d at

1359.

76.   "The success of [a drug] and its benefits compared with [others] is . . . supported

by the efforts of generic drug manufactures, including Defendants, to copy the

claimed invention[,]" when the generic versions of the other drugs are available.

*Forest Labs., Inc. v. Ivax Pharms., Inc.*, 438 F. Supp. 2d 479, 496 (D. Del. 2006),

*aff'd*, 501 F.3d 1263 (Fed. Cir. 2007) (the court found it telling that the generic

manufacturers sought to copy escitalopram (a pure enantiomer) while the racemic

form citalopram was already available as a generic drug).

77.   "Copying the claimed invention, rather than one in the public domain, is

indicative of unobviousness."  *Merck Sharp & Dohme Corp. v. Sandoz Inc.*, No.

3:12-CV-03289, 2015 WL 5089543, at *46 (D.N.J. Aug. 27, 2015), *appeal*

*dismissed*, No. 16-1207 (Fed. Cir. Dec. 9, 2015) (citations omitted) (finding the

evidence weighs in favor of nonobvious, when generic manufacturer was able to

market a generic drug due to expiration of the patent, it is nevertheless attempting

to copy the patented pro-drug of the generic drug in its ANDA).

## V.   EXCEPTIONAL CASE

The parties will litigate whether this is an exceptional case warranting Duchesnay

to be awarded its attorney fees and costs.

78.   In exceptional cases, courts may award reasonable attorney's fees to the

prevailing party.  35 U.S.C. § 285.

Plaintiffs' Brief Statement of Contested Laws

79. When a patent has been infringed by the filing of an ANDA, 35 U.S.C. § 271(e)(4) provides for the grant of attorney's fees under 35 U.S.C. § 285.

80. The Supreme Court recently loosened the preexisting standard for what makes a case "exceptional" in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756.

81. To determine whether a case is exceptional, courts must consider the totality of the circumstances. *Id.* Courts may consider factors including, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (internal quotations marks omitted).

82. The filing of a meritless Paragraph IV certification supports a finding of exceptional case. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1388, (Fed. Cir. 2008) (affirming district court's finding of exceptional case where defendants filed "baseless" Paragraph IV certifications that failed to present even a prima facie case of invalidity).

83. The Hatch-Waxman Act requires "a certification, in the opinion of the applicant *and to the best of his knowledge*," that each patent for which the applicant is seeking approval is invalid, and imposes a duty of care on the certifying party. *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000) (emphasis original) (citing 21 U.S.C. § 355(j)(2)(A)(vii)(IV)).

84.  Courts have also found cases to be "exceptional" under 35 U.S.C. § 285 and 35 U.S.C. § 271(e)(4) where defendants pursued meritless defenses to patent infringement.  *Takeda,* 549 F.3d at 1388 (finding that defendants' "utterly frivolous" defenses contributed to exceptional case determination); *see also Yamanouchi*, 231 F.3d at 1347-48 ("[Defendant's] misconduct in filing a wholly unjustified ANDA certification and misconduct during the litigation that followed warranted the district court's finding that this case was exceptional.").

EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DUCHESNAY INC. and DUCHESNAY USA
INC.,

      Plaintiffs,

v.

ACTAVIS LABORATORIES FL, INC.,
ACTAVIS, INC., ACTAVIS PHARMA INC.,
and MYLAN PHARMACEUTICALS INC.

      Defendants.

Case No. 14-912-SLR-SRF
(Consolidated)

**EXHIBIT E**

**DEFENDANTS' JOINT STATEMENT OF**
**ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

# TABLE OF CONTENTS

I.      Invalidity ................................................................................................................. 2

     A.      Applicable Law ............................................................................................. 2

II.     Invalidity for Improper Inventorship and/or Derivation ................................... 2

     A.      Issues ............................................................................................................. 2

     B.      Applicable Law ............................................................................................. 2

          1.      Improper Inventorship: 35 U.S.C. §§ 101, 102(f) (pre-AIA) .................... 2

          2.      Derivation: 35 U.S.C. §§ 101, 102(f) (pre-AIA) ...................................... 8

III.    Standing ................................................................................................................. 8

     A.      Issue ............................................................................................................... 8

     B.      Applicable Law ............................................................................................. 8

IV.     Invalidity for Obviousness ................................................................................. 11

     A.      Issue ............................................................................................................. 11

     B.      Applicable Law ........................................................................................... 11

          1.      Scope and Content of the Prior Art ......................................................... 12

               a.      Level of Ordinary Skill in the Art ................................................ 14

               b.      Differences Between the Claimed Invention and the Prior Art .... 15

               c.      Secondary Considerations ............................................................. 21

                    i.      Long-felt Need ................................................................. 22

                    ii.     Unexpected Results ......................................................... 24

                    iii.    Industry Praise ................................................................ 25

                    iv.     Recognition of a Problem ............................................... 25

                    v.      Teaching Away / Skepticism .......................................... 26

                    vi.     Copying ........................................................................... 27

V.      Exceptional Case ................................................................................................ 27

     A.      Issues ........................................................................................................... 27

     B.      Applicable Law ........................................................................................... 27

Pursuant to Local Rule 16.3(c)(5), Defendants Actavis Laboratories FL, Inc., Actavis, Inc., Actavis Pharma Inc. (collectively "Actavis") and Mylan Pharmaceuticals Inc. ("Mylan") (collectively, "Defendants") submit the following statement of issues of law that remain to be litigated.

To the extent that Defendants' statement of issues of fact set forth in Exhibit 3 contains issues of law, those issues are incorporated herein by reference.  Should the Court determine that any issue identified in this Exhibit as an issue of law is more appropriately considered an issue of fact, it should be treated as an issue of fact as if listed by Defendants in Exhibit 3.

Defendants' identification of the issues of law that remain to be litigated is based on their understanding of the arguments Plaintiffs Duchesnay Inc. and Duchesnay USA Inc. (collectively "Plaintiffs") are likely to make in attempting to respond to Defendants' invalidity case, based upon the pleadings and discovery in the action to date.  To the extent that Plaintiffs intend or attempt to introduce different or additional legal arguments, Defendants reserve their right to contest those legal arguments, and to present any and all rebuttal evidence in response to those arguments, and will not be bound by this summary of issues of law to be litigated.  Defendants further reserve the right to amend or revise these issues in view of any amendments or revisions of Plaintiffs' statements of issues of fact and/or law remaining to be litigated.

I.      INVALIDITY

      A.      Applicable Law

      1.      An invention that is patentable in the United States must satisfy the requirements

of, *inter alia*, 35 U.S.C. §§ 101, 102, 103 and 112.

      2.      Although 35 U.S.C. § 282 does not explicitly set forth a standard of proof for

overcoming the presumption of validity, the patent challenger bears the burden of proving

invalidity by clear and convincing evidence.  Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95

(2011).  Clear and convincing evidence is evidence that "could place in the ultimate factfinder an

abiding conviction that the truth of [the] factual contentions are 'highly probable.'"  Colorado v.

New Mexico, 467 U.S. 310, 316 (1984); see also Aventis Pharma S.A. v. Hospira, Inc., 743 F.

Supp. 2d 305, 336 n.14 (D. Del. 2010).

II.     INVALIDITY FOR IMPROPER INVENTORSHIP AND/OR DERIVATION

      A.      Issues

      3.      Whether U.S. Patent No. 6,340,695 ("the '695 patent") is invalid under 35 U.S.C.

§§ 101 and 102(f) (pre-AIA) for improper inventorship.

      4.      Whether the '695 patent is invalid under 35 U.S.C. §§ 101 and 102(f) (pre-AIA)

for derivation.

      B.      Applicable Law

         1.      Improper Inventorship: 35 U.S.C. §§ 101, 102(f) (pre-AIA)

      5.      "A person shall be entitled to a patent unless . . . he did not himself invent the

subject matter sought to be patented."  35 U.S.C. § 102(f) (pre-AIA).  Inventorship requires a

determination of who conceived of the invention.  Burroughs Wellcome Co. v. Barr Labs., Inc.,

40 F.3d 1223, 1227-28 (Fed. Cir. 1994) ("Conception is the touchstone of inventorship.").

Conception is the "formation in the mind of the inventor, of a definite and permanent idea of the

complete and operative invention, as it is hereafter to be applied in practice." Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986); Burroughs, 40 F.3d at 1228 ("Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.") (citing Sewall v. Walters, 21 F.3d 411, 415 (Fed. Cir. 1994)).

6.      The test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention. Burroughs, 40 F.3d at 1228. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. Fiers v. Revel, 984 F.2d 1164, 1169 (Fed. Cir. 1993). A corollary to this principle is that conception of subject matter that already exists in the prior art does not qualify one as an inventor. See Nartron Corp. v. Schukra USA, Inc., 558 F.3d 1352, 1357 (Fed. Cir. 2009) ("The basic exercise of the normal skill expected of one skilled in the art, without an inventive act, also does not make one [an] inventor . . . . [A] person will not be [an] inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art") (citing Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997)); Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("One who simply provides the inventor with well-known principles or explains the state of the art without ever having a firm and definite idea of the claimed combination as a whole does not qualify as a joint inventor"). That is, the inventor must "make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." Pannu v. Iolab Corp., 155 F.3d 1344, 1351 (Fed. Cir. 1998). Requesting a product that will fulfill certain requirements, for example, even if providing continuous input as to the

acceptability of the offered products, is insufficient to establish inventorship.  See Ethicon, Inc.
v. U.S. Surgical Corp., 937 F. Supp. 1015, 1035 (D. Conn. 1996), aff'd, 135 F.3d 1456 (Fed. Cir.
1998).

7.     The Supreme Court case of Collar Co. v. Van Dusen, 90 U.S. 530 (1874), is
instructive.  In that case, the Supreme Court considered whether a patent claiming an
improvement in paper shirt collars was invalid for improper inventorship where the sole named
inventor, who was not a paper-maker, communicated with skilled paper-makers to create an
improvement in paper shirt collars he requested.  Id. at 536-37.  The named inventor gave the
paper-makers general research goals, for example, providing that the paper was not "thick
enough," or that he wanted "the hard finish, so that it may be strong."  Id. at 538.  Ultimately the
named inventor "got just the paper that he wanted."  Id. at 539.  The patent challenger claimed
that the sole named inventor only conceived general research goals and did not conceive the
claimed means for achieving those goals

> [The named inventor] simply told Crane & Co. what he wanted;
> and told them as they brought to him from time to time what they
> made, that was not what he wanted; telling them this till *they* went
> on, by their own processes, made what he did want.  [The named
> inventor] suggested no improvements in machinery or processes.
> All improvement, if any was made in either, was made by Crane &
> Co.

Id. at 556.  The Supreme Court agreed.  Id. at 564 ("[I]t is clear that the original patentee was not
entitled to a patent either for the paper or the process, as he never made any invention or
discovery upon the subject.").  The Court then recognized that

> persons employed, as much as employers, are entitled to their own
> independent inventions, and if the suggestions communicated
> constitute the whole substance of the improvement, . . . *the patent,*
> *if granted to the employer, is invalid, because the real invention or*
> *discovery belongs to the person who made the suggestions.*

Id. at 564 (citing Agawam Co. v. Jordan, 74 U.S. 584, 603 (1868)) (emphasis added).

4

8.      Conception analysis thus turns on the inventor's ability to conceive and describe the ideas that form the basis for the alleged invention with particularity.  Until an inventor can describe the actual alleged invention with particularity, he or she cannot prove possession of the complete mental picture of the invention.  Burroughs, 40 F.3d at 1228.

9.      Given the foregoing, inventors must prove conception through corroborating evidence, preferably through contemporaneous disclosure and/or documentary evidence.  Id. Corroborating evidence, whether documentary, physical, or testimonial, is evaluated under a "rule of reason" standard.  See Adenta GmbH v. OrthoArm, Inc., 501 F.3d 1364, 1371 (Fed. Cir. 2007).  The rule of reason standard hinges on eight factors, including "(1) the relationship between the corroborating witness and the alleged prior user; (2) the time period between the event and trial; (3) the interest of the corroborating witness in the subject matter in suit; (4) contradiction or impeachment of the witness' testimony; (5) the extent and details of the corroborating testimony; (6) the witness' familiarity with the subject matter of the patented invention and the prior use; (7) probability that a prior use could occur considering the state of the art at the time; and (8) impact of the invention on the industry, and the commercial value of its practice."  See Ohio Willow Wood Co. v. Alps S., LLC, 735 F.3d 1333, 1346-47 (Fed. Cir. 2013) (quoting Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1386, 1371 (Fed. Cir. 1998).

10.      A patent may be invalid for improper inventorship based on either or both nonjoinder (i.e., failure to name a proper inventor) or misjoinder (i.e., naming an improper inventor).  See Stark v. Advanced Magnetics, Inc., 119 F.3d 1551, 1553 (Fed. Cir. 1997); see also Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc., 61 F. Supp. 3d 437, 443 (D. Del. 2014) (quoting Pannu, 155 F.3d at 1349).

11.     When an invention is made by two or more persons jointly, they shall apply for a patent jointly." 35 U.S.C. § 116.  Because conception is the touchstone of inventorship, each "joint inventor must contribute in some significant manner to the conception of the invention." Fina Oil & Chem. Co., 123 F.3d at 1473; see also Ethicon, 135 F.3d at 1460 ("Conception is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'") (citing Hybritech, 802 F.2d at 1376 (Fed. Cir. 1986)).  "The conceived invention must include every feature of the subject matter claimed in the patent."  Ethicon, 135 F.3d at 1460.  Each of the joint inventors need not "make the same type or amount of contribution" to the conception of the invention; "[r]ather, each needs to perform only a part of the task which produces the invention."  Id. (citing 35 U.S.C. § 116).  Regarding joint inventorship, 35 U.S.C. §102(f) neither states nor implies that two inventors can be 'joint inventors' if they have had no contact whatsoever and are completely unaware of each other's work.  "For persons to be joint inventors . . . , there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting."  Kimberly-Clark Corp.v. Procter & Gamble Distrib. Co., 973 F.2d 911, 917 (Fed. Cir. 1992).

12.     Joint inventors presumptively share a pro rata undivided interest in the whole patent, irrespective of their individual contributions.  Ethicon, 135 F.3d at 1465.  As co-owners without any agreement to the contrary, each joint inventor "may make, use, offer to sell, or sell the patented invention . . . without the consent of and without accounting to the other owners." 35 U.S.C. § 262.

13.     Standing to bring suit for patent infringement requires ownership of the underlying patent(s).  Isr. Bio-Eng'g Project v. Amgen, Inc., 475 F.3d 1256, 1264-65 (Fed. Cir. 2007) (citations omitted).  A single co-owner of a patent must join all other co-owners to establish standing to bring suit.  Id.

14.     To assign any interest in a patent, an owner or co-owner must employ a written instrument to effectuate the transfer.  35 U.S.C. § 261 ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing.").

15.     In certain cases incorrect inventorship can be corrected, which precludes invalidity for improper inventorship.  See 35 U.S.C. § 256.  To the extent Plaintiffs seek to correct inventorship and address standing deficiencies, Defendants reserve all rights to cite additional law in response.

16.     Section 256 addresses the two types of inventorship errors – nonjoinder and misjoinder.  See Stark, 119 F.3d at 1553.  When invalidity is asserted under Section 102(f) for nonjoinder, a district court should first determine whether there exists clear and convincing proof of improper inventorship.  See Pannu, 155 F.3d at 1349.  If incorrect inventorship is found, a patentee may then invoke Section 256 to correct inventorship.  The patentee bears the burden of showing the identity of the proper inventors and the absence of deceptive intent.  See id.  A patentee cannot correct inventorship if it does not know the identity of the individuals who conceived the claimed subject matter.  See 35 U.S.C. §§ 116 & 256; 37 C.F.R. § 1.48; Pannu, 144 F.3d at 1350-51.

17.     To correct inventorship, proof of the absence of deceptive intent on the part of the unnamed, or nonjoined inventor, is necessary.  See Stark, 119 F.3d at 1556 (holding that "Section 256 merely precludes any deceptive intention in the inventor that seeks to be restored to

a rightful place in the patent").  If the patentee does not claim relief under Section 256 and the party asserting invalidity proves incorrect inventorship, the patent is invalid for failure to comply with Section 102(f).  See id. at 1351.

        2.      Derivation: 35 U.S.C. §§ 101, 102(f) (pre-AIA)

18.      Under Section 102(f), a patent applicant cannot claim someone else's alleged invention as his or her own.  35 U.S.C. § 102(f) (pre-AIA).  So-called "derivation" requires clear and convincing evidence that someone else first conceived the claimed subject matter and communicated that conception to the purported inventor.  Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1576 (Fed. Cir. 1997).  For derivation, "the communication [must] enable[] one of ordinary skill in the art to make the patented invention."  Id. at 1578.

19.      No courts appear to have reached the question of whether a patent proven invalid on grounds of derivation may be saved by the patentee invoking the corrective power of Section 256.  See, e.g., Gambrio Lundia, 110 F.3d at 1578 (declining to reach the issue of correction of inventorship under 35 U.S.C. § 256); Auxilium Pharm., Inc. v. Watson Labs., Inc., No. 12-3084, 2014 WL 9859224, at *34 (D.N.J. Dec. 16, 2014) (same).

III.    STANDING

    A.     Issue

20.      Whether Plaintiffs lack standing to assert infringement of the '695 patent for want of ownership or failure to join all co-owners.

    B.     Applicable Law

21.      "Only a patentee may bring an action for patent infringement."  Abbott Point of Care Inc. v. Epocal, Inc., 666 F.3d 1299, 1302 (Fed. Cir. 2012) (citing 35 U.S.C. § 281).  "[A] patent co-owner seeking to maintain an infringement suit must join all other co-owners."

STC.UNM v. Intel Corp., 754 F.3d 940, 944 (Fed. Cir. 2014), cert. denied, 135 S. Ct. 1700 (2015).

22.     The plaintiff in a patent infringement suit "has the burden to show necessary ownership rights to support standing to sue." Abbott Point, 666 F.3d at 1302.  "[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit." Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (internal quotation omitted).

23.     Plaintiffs incorrectly characterize SiRF Technology, Inc. v. International Trade Commission, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010), as providing that assignments of patent ownership are entitled to a presumption of validity as to the assignment and a party challenging the assignment has the burden to rebut that presumption by "substantial evidence."  That is not what the Federal Circuit held in SiRF Tech.  Rather, the Federal Circuit stated that "[t]he recording of *an assignment with the PTO* . . . . creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." SiRF Tech., 601 F.3d at 1327-28 (emphasis added).  Thus, in the absence of an assignment from all inventors recorded with the PTO, the burden remains with Plaintiffs to establish standing.  Id. at 1327.  Should the Court determine that Mr. Gervais is not the sole inventor (or an inventor at all), there is no evidence of any recorded assignment by any non-joined inventor.[1]

24.     Plaintiffs also misconstrue Federal Circuit precedent concerning conflicts of law pertaining to patent ownership.  While Plaintiffs are correct that Canadian law governs whether non-joined Canadian inventors employed by Canadian companies Patheon or Global had an

---

[1] Also contrary to Plaintiffs' assertion, the Federal Circuit did not state that a rebuttal of the validity of a recorded assignment must be supported with "substantial evidence."  Rather, the appellate court merely noted that the ITC determination under review was "supported by substantial evidence." Id. at 1328.

obligation to assign patentable subject matter, the laws of the United States govern the sufficiency of an assignment for conferring ownership in a patentee.  Where, as here, ownership is alleged to have been transferred by an assignment, 35 U.S.C. § 261 controls and requires an assignment in writing.  Akazawa v. Link New Tech. Int'l, Inc., 520 F.3d 1354, 1356 (Fed. Cir. 2008); see also Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1250 (Fed. Cir. 2000).  When transference of ownership is alleged to have been accomplished by means other than an assignment, i.e., by operation of law, foreign law may control whether the transference was successful.  See Akazawa, 520 F.3d at 1356 (holding that Japanese intestacy law established ownership by operation of law).  In this case, Plaintiffs have not alleged transference of ownership by means other than assignment.

25.     Therefore, if the Court determines that Mr. Gervais was not the sole inventor of the '695 patent, Plaintiffs must prove ownership at two levels.  First, Plaintiffs must prove that any non-joined inventors assigned the alleged invention to their employer Patheon or Global.  Second, Plaintiffs must prove that Patheon and Global assigned the same to Plaintiffs.  Pursuant to 35 U.S.C. § 261, Plaintiffs must provide written instruments demonstrating actual assignment of present interest in the '695 patent.  In that regard, an obligation to assign inventions contained in an employment agreement does not create an automatic assignment.  See Abraxis, 625 F.3d at 1364-65 ("[C]ontracts that obligate the owner to grant rights in the future do not vest legal title to the patents in the assignee.")  Whether an employment agreement creates an automatic assignment or merely an obligation to assign is "a matter of federal law."  DDB Techs., L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284, 1289-90 (Fed. Cir. 2008).

26.     Regarding the obligation to assign under the laws of Canada, Canadian employees only have an obligation to assign inventions to employers if a written contract provides so

expressly or if such a contract may be implied as necessary under the circumstances of the case.

See, e.g., Comstock Canada v. Electec Ltd. (1991) 38 C.P.R. (3d) 29 (Federal Court Trial

Division).  Circumstances that have been assessed to determine an implied contract include:

- whether the employee was hired for the express purpose of inventing, and the invention was in that technical area for which the person was hired to invent;
- whether the employee at the time he was hired had previously made inventions;
- whether the employer had incentive plans encouraging product development;
- whether the conduct of the employee once the invention had been created suggested ownership was held by the employer;
- whether the invention is the product of the problem the employee was instructed to solve (i.e., whether it was his duty to make inventions);
- whether the employee's invention arose following his consultation through normal company channels (i.e., was help sought?);
- whether the employee was dealing with highly confidential information or confidential work; and
- whether it was a term of the servant's employment that he could not use the ideas that he developed to his own advantage.

(Id.)  Regardless, a written assignment remains necessary to effectuate transfer of ownership

from the employee to the employer and/or the patentee.  See 35 U.S.C. § 261; Abraxis, 625 F.3d

at 1364-65.

## IV.     INVALIDITY FOR OBVIOUSNESS

### A.     Issue

27.     Whether the asserted claims of the '695 patent are invalid as obvious under

35 U.S.C. § 103.

### B.     Applicable Law

28.     "A patent may not be obtained . . . if the differences between the subject matter

sought to be patented and the prior art are such that the subject matter as a whole would have

been obvious at the time the invention was made to a person having ordinary skill in the art to

which said subject matter pertains."  35 U.S.C. § 103(a).

29.     "Obviousness under 35 U.S.C. § 103(a) is ultimately a legal question, based on underlying factual determinations." Eisai Co. v. Dr. Reddy's Labs., Ltd., 533 F.3d 1353, 1356 (Fed. Cir. 2008). "The factual determinations underpinning the legal conclusion of obviousness include 1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between the claimed invention and the prior art, and 4) evidence of secondary factors, also known as objective indicia of non-obviousness." Id. (citing Graham v. John Deere Co., 383 U.S. 1, 17 (1966)); see also Prometheus Labs., Inc. v. Roxane Labs., Inc., 805 F.3d 1092, 1097-98 (Fed. Cir. 2015) (citing KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007); Graham, 383 U.S. at 17-18).

1.     Scope and Content of the Prior Art

30.     "[T]he scope of the relevant prior art . . . include[s] that reasonably pertinent to the particular problem with which the inventor was involved." In re GPAC Inc., 57 F.3d 1573, 1577 (Fed. Cir. 1995) (quotation omitted). "A reference qualifies as analogous prior art if it is 'from the same field of endeavor, regardless of the problem addressed' or 'if the reference is not within the field of the inventor's endeavor, . . . the reference is still reasonably pertinent to the particular problem with which the inventor is involved.'" Apple Inc. v. Samsung Elecs. Co., 816 F.3d 788, 802 (Fed. Cir. 2016) (citing Wyers v. Master Lock Co., 616 F.3d 1231, 1237 (Fed. Cir. 2010)) (alteration in original). "The field of endeavor is determined 'by reference to explanations of the invention's subject matter in the patent application, including the embodiments, function, and structure of the claimed invention.'" Id. (citing In re Bigio, 381 F.3d 1320, 1325 (Fed. Cir. 2010)).

31.     "Under § 103, however, a reference need not be enabled; it qualifies as a prior art, regardless, for whatever is disclosed therein." Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1357 (Fed. Cir. 2003); accord Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569,

1578 (Fed. Cir. 1991).  With respect to "a prior art patent," however, "a presumption arises that both [its] claimed and unclaimed disclosures . . . are enabled."  <u>Amgen</u>, 314 F.3d at 1355.

32.     A prior art reference that is "not published in peer-reviewed journals or authored by one skilled in the art" nevertheless may "support the conclusion that [the] claims . . . are invalid as obvious."  <u>Merck & Co., Inc. v. Teva Pharm. USA, Inc.</u>, 395 F.3d 1364, 1374-75 (Fed. Cir. 2005).

33.     A "commonsense principle that the Federal Circuit has recognized throughout its existence" is "that new evidence supporting an invalidity defense may carry more weight in an infringement action than evidence previously considered by the PTO."  <u>Microsoft</u>, 564 U.S. at 110 (quotation omitted).  While the Supreme Court has "not reach[ed] the question whether the failure to disclose [an invalidating prior art reference] during the prosecution of [the patent-in-suit] voids the presumption of validity given to issued patents," it "nevertheless . . . note[d] that the rationale underlying the presumption—that the PTO, in its expertise, has approved the claim—seems much diminished" in that context.  <u>KSR</u>, 550 U.S. at 426.

34.     Apart from prior art references, "[a]dmissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness." <u>PharmaStem Therapeutics, Inc. v. ViaCell, Inc.</u>, 491 F.3d 1342, 1362 (Fed. Cir. 2007) (citing <u>Constant v. Advanced Micro-Devices, Inc.</u>, 848 F.2d 1560, 1570 (Fed. Cir. 1988) ("A statement in the patent that something is in the prior art is binding on the applicant and patentee for determinations of anticipation and obviousness."); <u>Sjolund v. Musland</u>, 847 F.2d 1573, 1577-79 (Fed. Cir. 1988) (providing that an admission in the patent specification "must [be] accepted . . . as prior art, as a matter of law.").  This is true regardless of whether the admissions in question cover subject matter that qualifies as prior art under 35 U.S.C. §§ 102 and 103:

> [It is a] basic proposition that a statement by an applicant, whether in the application or in other papers submitted during prosecution, that certain matter is 'prior art' to him, is an admission that that matter is prior art for all purposes, whether or not a basis in s 102 can be found for its use as prior art.

In re Nomiya, 509 F.2d 566, 570-71 n.5 (C.C.P.A. 1975) (providing that representations in the specification are "accepted at face value as admissions" of what is "considered 'prior art' for any purpose, including use as evidence of obviousness under § 103")).

35.     Products that have been on sale or in public use can be prior art references for purposes of the obviousness analysis.  See 35 U.S.C. § 102(b) (pre-AIA).  If a drug product qualifies as prior art because it was on sale or in public use prior to one year before the filing of a patent, its underlying ingredients, including the active and inactive ingredients, constitute prior art for purposes of an obviousness analysis regardless of whether or not they are secret.  Taro Pharm. U.S.A., Inc. v. Perrigo Isr. Pharm. Ltd., No. 14-989, 2015 WL 7737310, at *2 (D. Del. Dec. 1, 2015); see also In re Blaisdell, 242 F.2d 779, 785 (C.C.P.A. 1957) (affirming board's denial of patentability because the alleged invention had been in public use more than one year prior to the filing of the patent).

a.     Level of Ordinary Skill in the Art

36.     The person of ordinary skill in the art is a hypothetical person presumed to know all of the teachings of the prior art references at the time the invention was made.  See Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1576 (Fed. Cir. 1984) (describing the person of ordinary skill in the art as "the inventor working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him").  The person of ordinary skill in the art is attributed with knowledge of all prior art references.  In re Sernaker, 702 F.2d 989, 994 (Fed. Cir. 1983).

37.     In determining the level of ordinary skill in the art, a court should consider the following factors: (1) the types of problems encountered in the art; (2) prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology involved; and (5) the educational level of active workers in the field.  Daiichi Sankyo Co., Ltd. v. Apotex Inc., 501 F.3d 1254, 1256 (Fed. Cir. 2007); see also U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1564 (Fed. Cir. 1997).  "Not all such factors may be present in every case, and one or more . . . may predominate."  Envtl. Designs, Ltd. v. Union Oil Co. of Cal., 713 F.2d 693, 696-97 (Fed. Cir. 1983).

            b.     Differences Between the Claimed Invention and the Prior Art

38.     Obviousness is judged under "an expansive and flexible approach" driven by "common sense."  KSR, 550 U.S. at 403, 415.  The Court's obviousness "analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ."  Id. at 418.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  Id. at 416.

39.     There are also various ways to satisfy claim limitations without express teachings in the prior art, including inherency and routine optimization.  As the Federal Circuit has explained, an otherwise obvious formulation does not become non-obvious simply by adding an inherent feature to the claims:

> The initial blood serum concentration resulting from administering a . . . dosage is an inherent property of the formulation, and an obvious formulation cannot become nonobvious simply by administering it to a patient and claiming the resulting serum concentrations.  To hold otherwise would allow any formulation— no matter how obvious—to become patentable merely by testing and claiming an inherent property.

Santarus, Inc. v. Par Pharm., Inc., 694 F.3d 1344, 1354 (Fed. Cir. 2012) (citing In re Kao, 639 F.3d 1057, 1070 (Fed. Cir. 2011)).

40.     Similarly, with respect to routine optimization,"[t]he normal desire of scientists or artisans to improve upon what is already generally known provides the motivation to determine where in a disclosed set of percentage ranges is the optimum combination of percentages."  In re Peterson, 315 F.3d 1325, 1330 (Fed. Cir. 2003) (citing In re Boesch, 617 F.2d 272, 276 (C.C.P.A. 1980)).  Routine experimentation on the part of an artisan does not support non-obviousness.  See Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1368 (Fed. Cir. 2007) ("The experimentation needed, then, to arrive at the subject matter claimed in the '303 patent was 'nothing more than routine' application of a well-known problem-solving strategy.") (citing Merck, 874 F.2d at 809).  That is, optimization of result effective variables is "within the grasp of one of ordinary skill in the art" unless the claimed range exhibits criticality versus the prior art.  See In re Applied Materials, Inc., 692 F.3d 1289, 1295-96 (Fed. Cir. 2012).

41.     Where a claim "simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious."  KSR, 550 U.S. at 417 (quotation omitted).  In general, a claim is invalid for obviousness if "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention," and "would have had a reasonable expectation of success in doing so."  Pfizer, 480 F.3d at 1361.

42.     A patent claim may be found obvious when there is a teaching, suggestion or motivation within the prior art, or within the general knowledge of a person of ordinary skill in the field of the invention, to look to particular sources of information, select particular elements

from those information sources, and combine them in the way they were combined by the

inventor.  See KSR, 550 U.S. at 418-20.

      43.      But, the obviousness inquiry is not limited to this teaching-suggestion-motivation

("TSM") test.  See KSR, 550 U.S. at 419-20.  In KSR, the Supreme Court held that rigid

application of the TSM test for obviousness is inconsistent with 35 U.S.C. § 103 and Supreme

Court precedent, particularly Graham v. John Deere.  KSR, 550 U.S. at 413.  The Supreme Court

established that the subject matter of a patent claim can be proved obvious if there existed at the

time of the alleged invention "a known problem for which there was an obvious solution

encompassed by the patent's claims."  Id. at 420.  If "a person of ordinary skill can implement a

predictable variation" or if "a technique has been used to improve one device[] and a person of

ordinary skill in the art would recognize that it would improve similar devices in the same way,"

Section 103 bars patentability.  Id. at 417.  "[A]ny need or problem known in the field of

endeavor at the time of invention and addressed by the patent can provide a reason for combining

the elements in the manner claimed."  Id. at 420.  In the case of routine optimization, "[t]he

normal desire of scientists or artisans to improve upon what is already generally known provides

the motivation" to satisfy the obviousness inquiry.  See Peterson, 315 F.3d at 1330.

      44.      Thus, recognition of the particular problem the patentee is trying to solve is not a

prerequisite for finding a motivation to combine prior art sources.  See KSR, 550 U.S. at 419-20

("Under the correct analysis, any need or problem known in the field of endeavor at the time of

invention and addressed by the patent can provide a reason for combining the elements in the

manner claimed.")  Similarly, to be used as references in an obviousness analysis, prior art

references need not be attempts to solve the same problem that the patentee attempted to solve.

Id. at 420 ("Common sense teaches, however, that familiar items may have obvious uses beyond

their primary purposes, and in many cases a person of ordinary skill will be able to fit the

teachings of multiple [references] together like pieces of a puzzle.").  "A person of ordinary skill

is also a person of ordinary creativity, not an automaton."  Id.

45.     "Far from requiring evidence of an explicit motivation to combine," the Federal

Circuit has likewise made clear that "an *implicit* motivation" is enough.  DyStar Textilfarben

GmbH v. C.H. Patrick Co., 464 F.3d 1356, 1366 (Fed. Cir. 2006).  The Federal Circuit has

"repeatedly held" that a combination may be obvious "even absent any hint of suggestion in the

[prior art] references themselves."  Id. at 1368.

46.     A court that requires the prior art to "clearly and unequivocally disclose" a

"motivation to combine" therefore "err[s] by taking an overly cramped view of what the prior art

teaches."  Allergan, Inc. v. Apotex Inc., 754 F.3d 952, 963-64 (Fed. Cir. 2014), cert. denied, 135

S. Ct. 956, 190 L. Ed. 2d. 832 (2015).  "[T]here is no requirement that the prior art contain an

express suggestion to combine known elements to achieve the claimed invention."  Motorola,

Inc. v. Interdigital Tech. Corp., 121 F.3d 1461, 1472 (Fed. Cir. 1997).

47.     The Federal Circuit's "case law does not require that a particular combination

must be the preferred, or the most desirable, combination described in the prior art in order to

provide motivation for the current invention."  In re Fulton, 391 F.3d 1195, 1200 (Fed. Cir.

2004).  Obviousness does not require proof that something is "the best option, only that it be a

suitable option from which the prior art did not teach away."  Par Pharm. Inc. v. TWI Pharm.,

Inc., 773 F.3d 1186, 1198 (Fed. Cir. 2014); Millenium Pharm., Inc. v. Sandoz Inc., No. 12-1011,

2015 WL 4966438, at *11 (D. Del. Aug. 20, 2015).  "[J]ust because better alternatives exist in

the prior art does not mean that an inferior combination is inapt for obviousness purposes."  In re

Mouttet, 686 F.3d 1322, 1334 (Fed. Cir. 2012); see also Merck, 874 F.2d at 807 (providing that

the fact "[t]hat the [prior art] discloses a multitude" of other "combinations does not render [a]

particular formulation less obvious"); In re Gurley, 27 F.3d 551, 553 (Fed. Cir. 1994) ("[A]

known or obvious composition does not become patentable simply because it has been described

as somewhat inferior to some other product for the same use.").

48.     Prior art can provide powerful evidence of obviousness even when it "expresses a

general preference for an alternative invention." Gator Tail, LLC v. Mud Buddy LLC, 618 F.

App'x 992, 999 (Fed. Cir. 2015) (citation omitted).   "A reference does not teach away . . . if it

merely expresses a general preference for an alternative invention but does not 'criticize,

discredit, or otherwise discourage' investigation into the invention claimed." DePuy Spine, Inc.

v. Medtronic Sofamor Danek Inc., 567 F.3d 1314, 1327 (Fed. Cir. 2009); see also Galderma

Labs., L.P. v. Tolmar, Inc., 737 F.3d 731, 738 (Fed. Cir. 2013), cert. denied, 134 S. Ct. 2740, 189

L. Ed. 2d 768 (2014).

49.     In determining whether the subject matter of a patent claim is obvious, neither the

particular motivation nor the avowed purpose of the patentee controls.  What matters is the

objective reach of the claim.  If the claim extends to what is obvious, it is invalid under Section

103.  KSR, 550 U.S. at 420-21; see also Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318,

1328 n.4 (Fed. Cir. 2008) (acknowledging the long-standing rule that claims which are broad

enough to read on obvious subject matter are unpatentable even though they also read on

nonobvious subject matter) (quotations and citations omitted).

50.     "[T]he person of ordinary skill need only have a reasonable expectation of success

of developing the *claimed* invention." Allergan, Inc. v. Sandoz Inc., 726 F.3d 1286, 1292 (Fed.

Cir. 2013) (emphasis added), cert. denied, 134 S. Ct. 1764, 188 L. Ed. 2d 594 (2014).

51.     "Obviousness does not require absolute predictability of success," but rather, "[a]ll that is required is a reasonable expectation of success" in making the invention.  Id.; see also In re Merck & Co. 800 F.2d 1091, 1097 (Fed. Cir. 1986) (citations omitted) ("Obviousness does not require absolute predictability.  Only a reasonable expectation that the beneficial result will be achieved is necessary to show obviousness.").  Thus, "obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success."  Pfizer, 480 F.3d at 1364.

52.     Test results or data are not required to show a reasonable expectation of success. Where the "prior art . . . predicted [that] the results" of such testing would be favorable, the fact that a skilled artisan would have "had to verify through routine testing" a claimed drug's "expected traits" "does not compel a conclusion of non-obviousness."  Id. at 1367.  "To conclude" a claimed invention "would have been obvious," the prior art "merely ha[s] to suggest" that it "would work for its intended purpose."  Id. at 1368 (quotations omitted).

53.     Human testing data in particular are not required to establish a reasonable expectation of success, especially when the patent-in-suit does not disclose human testing data either.  See Alcon Research, Ltd. v. Apotex Inc., 687 F.3d 1362, 1369 (Fed. Cir. 2012) (providing that the "argu[ment] that [the prior art] would not give a skilled artisan an expectation of success because it does not teach that [the claimed drug] is safe for the human eye . . . [was] without merit," because "[w]hile it [wa]s true that [the prior art] d[id] not expressly disclose that [the drug] would be safe for use in human eyes, neither d[id] the [] patent" at issue, which was "not based on testing in humans; instead it report[ed] only in vitro tests") (citations omitted).

54.     In addition, courts have found that a person of ordinary skill is particularly likely to have a reasonable expectation of success when optimizing methods are already practiced in

the prior art.  See, e.g., Pfizer, 480 F.3d at 1371 (holding that patentee's claimed compound was obvious because patentee merely "engaged in routine, verification testing to optimize selection of one of several known and clearly suggested pharmaceutically-acceptable salts").

c.      Secondary Considerations

55.      A *prima facie* case of invalidity based on obviousness can be rebutted by showing secondary considerations of nonobviousness.  Graham, 383 U.S. at 17-18; Geo M. Martin Co. v. Alliance Mach. Sys. Int'l, 618 F.3d 1294, 1300, 1305 (Fed. Cir. 2010).

56.      To weigh against a finding of obviousness, such "objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support."  Asyst Techs. v. Emtrak, Inc., 544 F.3d 1310, 1316 (Fed. Cir. 2008).  Secondary considerations can also affirmatively support a finding of obviousness.  Graham, 383 U.S. at 18 ("As indicia of *obviousness or nonobviousness*, these inquiries may have relevancy.") (emphasis added).

57.      The patentee bears the burden of producing evidence to establish the existence of secondary considerations supporting non-obviousness. See Novo Nordisk v. Caraco Pharm. Labs. Ltd., 719 F.3d 1346, 1353 (Fed. Cir. 2013) ("[T]he presumption of validity does not relieve the patentee of any responsibility to set forth evidence in opposition to a challenger's prima facie case which, if left unrebutted, would be sufficient to establish obviousness").  In this regard, "argument and conjecture are insufficient."  Demaco Corp. v. F. Von Langsdorff Licensing, Ltd., 851 F.2d 1387, 1393 (Fed. Cir. 1988) (quotations and citation omitted).  "These legal inferences or subtests . . . focus attention on economic and motivational rather than technical issues and are, therefore, more susceptible of judicial treatment than are the highly technical facts often present in patent litigation."  Graham, 383 U.S. at 35-56.

58.     A "nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision." Muniauction, 532 F.3d at 1327 (citations omitted). "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." Kao, 639 F.3d at 1068 (quotations omitted). Even "impressive" evidence of secondary considerations is not "entitled to weight" unless "it is relevant to the claims at issue." In re Paulsen, 30 F.3d 1475, 1482 (Fed. Cir. 1994). In addition, secondary considerations must be commensurate in scope with the claimed subject matter. See Kao, 639 F.3d at 1068; In re Hiniker, 150 F.3d 1362, 1369 (Fed. Cir. 1998).

59.     While evidence of these factors must be considered, such secondary considerations will not overcome a strong showing that the claimed invention was prima facie obvious. Leapfrog Enters., Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007) ("[G]iven the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion that [the claim] would have been obvious."); see, e.g., Agrizap, Inc. v. Woodstream Corp., 520 F.3d 1337, 1344 (Fed. Cir. 2008) ("[O]bjective evidence of nonobviousness simply cannot overcome . . . a strong prima facie case of obviousness.").

i.     *Long-felt Need*

60.     Evidence that an invention "satisfied a long-felt and unmet need that existed on the patent's filing date is a secondary consideration of nonobviousness." Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1332 (Fed. Cir. 2009); see also KSR, 550 U.S. at 398-399 (termed "long felt but unsolved need"). Establishing long-felt need requires evidence that an art-recognized problem existed for a long period of time without a solution. In re Gershon, 372 F.2d

535, 539 (C.C.P.A. 1967).  "[O]nce a long-felt need is established, evidence must show that the claimed invention satisfied that need."  In re Gardner, 449 Fed. App'x 914, 918 (Fed. Cir. 2011) (quoting In re Cavanagh, 436 F.2d 491, 496 (C.C.P.A. 1971)).  It has also been recognized that "evidence of long-felt need can cut two ways: On the one hand, long-felt need might be considered evidence of nonobviousness, but on the other hand, to the extent that other factors support obviousness, the existence of 'market pressure to solve a problem' can support a finding of obviousness . . . ."  Shuffle Master, Inc. v. MP Games LLC, 553 F. Supp. 2d 1202, 1225 (D. Nev. 2008) (citing KSR, 550 U.S. at 420-421).

61.    Federal Circuit precedent "requires that the applicant submit actual evidence of long-felt need, as opposed to argument."  In re Kahn, 441 F.3d 977, 990-91  (Fed. Cir. 2006). "[A]bsent a showing of long-felt need or the failure of others, the mere passage of time without the claimed invention is not evidence of nonobviousness."  Id. (citing Iron Grip Barbell Co. v. USA Sports, Inc., 392 F.3d 1317, 1325 (Fed. Cir. 2004)).

62.    "[L]ong-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem."  Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n, 988 F.2d 1165, 1178 (Fed. Cir. 1993).  Evidence of "long-felt need" is not probative in "a niche market," where "it is not surprising that it took a few years for a company to expand on the prior art."  Tokyo Keiso Co., v. SMC Corp., 307 F. App'x 446, 453 (Fed. Cir. 2009). "Where the differences between the prior art and the claimed invention are . . . minimal," "it cannot be said that any long-felt need was unsolved."  Geo. M. Martin, 618 F.3d at 1304.  An assertion of long-felt need must be rejected where the patentee "provided no evidence to explain how long [any relevant] need was felt, . . . when the problem first arose," or how the "need [was] alleviated by the patent."  Perfect Web Techs., 587 F.3d at 1332.  Even if there is evidence that the

"claimed [invention] may have been beneficial," that evidence is not probative if "others had previously solved the long-felt need." In re PepperBall Techs., Inc., 469 F. App'x 878, 882-83 (Fed. Cir. 2012); see also Newell Co. v. Kenney Mfg. Co., 864 F.2d 757, 768 (Fed. Cir. 1988) ("[O]nce another supplied the key element, there was no long-felt need . . . .").

ii.   *Unexpected Results*

63.   For a patentee to rely on unexpected results as secondary evidence of nonobviousness, "the results must be shown to be unexpected compared with the closest prior art." Abbott Labs. v. Andrx Pharm., Inc., 452 F.3d 1331, 1345 (Fed. Cir. 2006) (citing In re Baxter Travenol Labs., 952 F.2d 388, 392 (Fed. Cir. 1991)); see also In re Geisler, 116 F.3d 1465, 1469 (Fed. Cir. 1997) (opining that the patentee must "show that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected"). A party advancing evidence of unexpected results must, therefore, provide evidence of what would have been expected by a skilled artisan. Pfizer, 480 F.3d at 1371. Only by comparison to what would have been expected can the patentee then show that its claimed invention has superior properties that were unexpected. Id.

64.   "It is well settled that unexpected results must be established by factual evidence." In re De Blauwe, 736 F.2d 699, 705 (Fed. Cir. 1984). "Mere argument or conclusory statements" by the patentee "do[] not suffice." Id. In addition, unexpected results must be commensurate in scope with the claimed subject matter. See Kao, 639 F.3d at 1066; Hiniker, 150 F.3d at 1369.

65.   "[I]n order to properly evaluate whether a superior property was unexpected, the Court should . . . consider[] what properties were expected." Pfizer, 480 F.3d at 1371.

66.   "Unexpected results that are probative of non-obviousness are those that are different in kind and not merely in degree from the results of the prior art." Galderma Labs., 737

F.3d at 739 (citations omitted); see also Iron Grip Barbell, 392 F.3d at 1322-23 ("[E]ven though

[a] modification results in great improvement and utility over the prior art, it may still not be

patentable if the modification was within the capabilities of one skilled in the art, unless the

claimed [invention] produce[s] a new and unexpected result which is different in kind and not

merely in degree from the results of the prior art.") (quotation omitted); Bristol-Myers Squibb

Co. v. Teva Pharm., 752 F.3d 967,  977  (Fed. Cir. 2014) ("[A] 'mere difference in degree' is

insufficient.").

67.     Moreover, just as unexpected results may provide evidence of nonobviousness,

"[e]xpected beneficial results" provide additional "evidence of obviousness." Gershon, 372 F.2d

at 537.

### iii.     *Industry Praise*

68.     Secondary considerations of nonobviousness may also include industry praise and

acceptance.  See Chicago Mercantile Exchange, Inc. v. Tech. Research Grp., LLC, 782 F. Supp.

2d 674, 683 (N.D. Ill. 2011) (citing Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,

229 F.3d 1120, 1129 (Fed. Cir. 2000)).  For a patentee to rely on industry praise as secondary

evidence of nonobviousness, the patentee "must establish a nexus between the industry praise

and the patented technology." Cot'n Wash Inc. v. Henkel Corp., 56 F. Supp. 3d 626, 650 (D.

Del. 2014) (citing Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.,

699 F.3d 1340, 1351 (Fed. Cir. 2012).  Without such nexus, evidence of industry praise is

accorded little weight.  See Merck & CIE v. Gnosis S.P.A., 808 F.3d 829, 838 (Fed. Cir. 2015).

### iv.     *Recognition of a Problem*

69.     Though Plaintiffs have characterized "recognition of a problem" as a secondary

consideration of nonobviousness, (see Pls.' Supp. Resps. to Actavis's Interrogs. 37), Plaintiffs

cite no case law supporting "recognition of a problem" as a secondary consideration of nonobviousness.

v.      *Teaching Away / Skepticism*

70.      Evidence of industry skepticism can be an indication of nonobviousness.  <u>See,</u> <u>e.g.</u>, <u>AstraZeneca LP v. Breath, Ltd.</u>, 542 F. App'x 971, 980 (Fed. Cir. 2013) (affirming district court's finding of obviousness and dismissal of purported evidence of skepticism as simply evidence of "corporate prudence").  Circumstantial evidence is insufficient to prove skepticism, instead, a patentee must produce direct evidence that "directly address[es] whether there was actual skepticism concerning the invention."  <u>Dow Jones & Co., Inc. v. Ablaise Ltd.</u>, 606 F.3d 1338, 1352 (Fed. Cir. 2010) (rejecting proffered evidence of expert skepticism that did not "directly address whether there was actual skepticism concerning the invention."); <u>see also</u> <u>Bayer</u> <u>Healthcare Pharm., Inc. v. Watson Pharm., Inc.</u>, 713 F.3d 1369, 1377 (Fed. Cir. 2013) (holding patent invalid as obvious and dismissing purported evidence of skepticism based on the FDA's request for clinical safety data as only evidence not of skepticism but merely "the FDA's normal duties").  Further, teaching away evidence is insufficient unless the prior art criticizes, discourages or discredits the subject matter in question.  <u>See</u> <u>Syntex (U.S.A.) LLC v. Apotex,</u> <u>Inc.</u>, 407 F.3d 1371, 1380 (Fed. Cir. 2005) ("A statement that a particular combination is not a preferred embodiment does not teach away absent clear discouragement of that combination.").  A teaching away must relate to the technological feasibility of the claimed invention rather than its economic feasibility.  <u>See, e.g.</u>, <u>Orthopedic Equip. Co. v. United States</u>, 702 F.2d 1005, 1013 (Fed. Cir. 1983); <u>Intellectual Ventures I, LLC v. Motorola Mobility, LLC</u>, 13 F. Supp. 3d 369, 399 (D. Del. 2014).

vi.   *Copying*

71.   Because copying "is required for FDA approval" of generic drugs, "evidence of copying in the ANDA context is not probative of nonobviousness."  Bayer, 713 F.3d at 1377; accord Purdue Pharma Prods. L.P. v. Par Pharm., Inc., 642 F. Supp. 2d 329, 373-74 (D. Del. Aug. 14, 2009), aff'd, 377 F. App'x 978, 983 (Fed. Cir. 2010); Cephalon Inc. v. Mylan Pharm. Inc., 962 F Supp. 2d 688, 721 (D. Del. 2013); Galderma, 737 F.3d at 740 ("The mere fact that generic pharmaceutical companies seek approval to market a generic version of a drug . . . does not support a finding of non-obviousness."); Allergan, Inc. v. Watson Labs., Inc.-Fla., 869 F. Supp. 2d 456, 485 (D. Del. 2012) ("[A]s several courts have recognized, demonstration that a defendant has copied a patented invention is not compelling evidence of non-obviousness in the Hatch–Waxman context due to the unique nature of the ANDA process."), aff'd, 470 F. App'x 903 (Fed. Cir. 2012), cert. denied, 133 S. Ct. 497, 184 L. Ed. 2d 311 (2012).  "A stipulation of infringement," moreover, "is not probative of copying."  Tokai Corp. v. Easton Enters., Inc., 632 F.3d 1358, 1370 (Fed. Cir. 2011).

V.   EXCEPTIONAL CASE

A.   Issues

72.   Whether Plaintiffs' conduct qualifies this litigation as an exceptional case justifying an award of attorney fees and costs to Defendants.

B.   Applicable Law

73.   Courts may award reasonable attorney fees and costs to the prevailing parties in exceptional cases arising under the Patent Act.  35 U.S.C. § 285.

74.   "[A]n 'exceptional case' is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and

the facts of the case) or the unreasonable manner in which the case was litigated." <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 134 S. Ct. 1749, 1756 (2014).

75.     District courts consider the totality of the circumstances to determine whether a case is exceptional. <u>Id.</u> A non-exhaustive list factors a court could consider includes: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." <u>Id.</u> at n.6 (citing <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 n.19 (1994)).

76.     Courts can award attorney fees in exceptional cases involving infringement arising under 35 U.S.C. 271(e). <u>See</u> 35 U.S.C. § 271(e)(4). Plaintiffs do not cite and Defendants are not aware of any instance where a court has awarded attorney fees solely because a Paragraph IV certification was deemed meritless. <u>See</u> <u>Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.</u>, 549 F.3d 1381, 1388 (Fed. Cir. 2008) (affirming district court's finding of exceptional case where trial court found that defendant's ANDA filing was "baseless" *and* that defendant engaged in litigation misconduct during litigation); <u>Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.</u>, 231 F.3d 1339, 1347 (affirming district court's award in part because defendant filed a wholly unjustified ANDA certification *and* engaged in misconduct during the litigation that followed); <u>see also</u> <u>Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.</u>, No. IP 99-38, 2001 WL 1397304, at *26 (S.D. Ind. Oct. 29, 2001) (finding that defendant committed willful infringement and attempted in bad faith to prepare an advice-of-counsel defense); <u>Elan Corp., PLC v. Andrx Pharm., Inc.</u>, No. 98-7164, 2008 WL 4709251, at *79, *113 (S.D. Fla. Aug. 13, 2008) (finding that defendant committed willful infringement and intentionally deleted references to prior art and product characterization from a noninfringement opinion).

# EXHIBIT F

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | 1/22/2002 | Certified U.S. Patent 6,340,695 | | | |
| 2 | | | | | 1/22/2002 | U.S. Patent 6,340,695 | | | Exhibit 59; Gervais 19; Greaves 8 |
| 3 | | | | | | Certified Copy of Prosecution History of U.S. Patent No. 6,340,695 | DCH-0000001 | DCH-0000087 | |
| 4 | H, I, R, U | | | | | Certified Recorded Assignment of U.S. Patent No. 6,340,695 | DCH-0022403 | DCH-0022405 | |
| 5 | N, H, R, U | | | | 9/6/2001 | Excerpt from Prosecution History of U.S. Patent No. 6,340,695: Notice of Recordation of Assignment Document | DCH-0167224 | DCH-0167225 | |
| 6 | H, R, U | | | | | Non-certified Copy of Prosecution History of U.S. Patent No. 6,340,695 | ACTDIC00119498 | ACTDIC00119551 | Gervais 20 |
| 7 | H, R, U | | | | 10/27/2004; 09/21/2004; 10/15/2004 | Letter to FDA re Abbreviated New Drug Application (ANDA) Diclectin (doxylamine succinate, pyridoxine hydrochloride) 10 mg /10 mg Delayed Release Tablets; Letter to FDA re Field Copy Sumission Original Abbreviated New Drug Application (ANDA) Diclectin (10 mg, 10 mg) Delayed Release Tablets; Form FDA 365h | DCH-0014884 | DCH-0014896 | Gallo 3 |
| 8 | H, I, R, U | | | | | Excerpt from Duchesnay's ANDA: 1.5.1 Basis for submission | DCH-0014995 | DCH-0014998 | Gallo 4 |
| 9 | H, I, R, U | | | | | Excerpt from Duchesnay's ANDA: 1.5.1 Basis for submission | DCH-0127047 | DCH-0127050 | |
| 10 | H, I, R, U | | | | | Excerpt from Duchesnay's ANDA: 2.3.P.1 Description and Composition of the Drug Product | DCH-0127202 | DCH-0127243 | |
| 11 | H, I, R, U | | | | | Excerpt from Duchesnay's ANDA: 2.3.P.2 Drug Product | DCH-0015145 | DCH-0015186 | |
| 12 | H, I, R, U | | | | | Excerpt from Duchesnay's ANDA: 2.7.1 Summary of Biopharmaceutic Studies and Associated Analytical Methods | DCH-0015203 | DCH-0015260 | Gallo 5 |
| 13 | H, I, R, U | | | | | Excerpt from Duchesnay's ANDA: 3.2.P.1 Description and Composition of the Drug Product | DCH-0127390 | DCH-0127392 | |
| 14 | H, I, R, U | | | | | Excerpt from Duchesnay's ANDA: 3.2.P.2 Drug Product | DCH-0127397 | DCH-0127403 | |
| 15 | H, I, R, U | | | | 12/17/2004 | Letter to FDA re New Drug Application, NDA 21-876 Diclectin (doxylamine succinate, pyridoxine hydrochloride) 10 mg / 10 mg Delayed Release Tablets | DCH-0122420 | DCH-0122423 | Gallo 6 |
| 16 | H, R, U | | | | 4/8/2013 | Diclegis Approval Letter | DCH-0000679 | DCH-0000698 | |
| 17 | H, I, R, U | | | | 6/8/2012 | Excerpt from Duchesnay's NDA: Cover Letter | DCH-0138895 | DCH-0138896 | |
| 18 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 2.3.P Drug Product | DCH-0138956 | DCH-0139008 | |
| 19 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 2.3.P.5.4 Batch Analyses | DCH-0138990 | DCH-0138992 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 20 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 2.5 Clinical Overview | DCH-0139069 | DCH-0139129 | |
| 21 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 2.7.1 Summary of Biopharmaceutic Studies and Associated Analytical Methods | DCH-0139138 | DCH-0139157 | |
| 22 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 3.2.P.1 Description and Composition of the Drug Product | DCH-0139238 | DCH-0139240 | |
| 23 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 3.2.P.2.1 Components of the Drug Product | DCH-0139241 | DCH-0139245 | |
| 24 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 3.2.P.5.4 Batch Analyses | DCH-0140095 | DCH-0140108 | |
| 25 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 3.2.P.5.6 Justification of Specification(s) | DCH-0140483 | DCH-0140483 | |
| 26 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: Table 5.2-1 Tabular Listing of Clinical Studies | DCH-0142108 | DCH-0142111 | |
| 27 | H, R, U | | | | 8/27/2003 | Final Report Amendment II, Project No. 02163, Randomized, 2-Way Crossover, Relative Bioavailability Study of Diclectin Delayed Release Tablets and a Combination of Doxylamine Succinate 10mg/10mL and Pyridoxine Hydrochloride 10mg/10mL Oral Solutions Administered as a 2 x 10 mg-10 mg Delayed Release Tablets or 1 x 20 mL + 1 x 20 mL of Oral Solutions in Healthy Adult Females Under Fasting Conditions | DCH-0143305 | DCH-0143458 | |
| 28 | H, R, U | | | | 8/27/2003 | Final Report Amendment II, Project No. 02191, Randomized, 2-Way Crossover, Relative Bioavailability Study of Diclectin Delayed Release Tablets Administered as 2 x 10 mg-10 mg Delayed Release Tablets in Healthy Adult Females Under Fasting and Fed Conditions | DCH-0144596 | DCH-0144749 | |
| 29 | H, R U | | | | 3/10/2011 | Final Integrated Clinical and Statistical Report, Project No. 70294, Randomized, open-label, 2-way crossover, relative bioavailability study of doxylamine-pyridoxine 10 mg-10 mg (Diclectin ) delayed-release tablets following a 2 x 10 mg-10 mg dose in healthy adult females under fasting and fed conditions | DCH-0145207 | DCH-0145765 | |
| 30 | H, R, U | | | | 2/16/2009 | Final Bioanalytical Report, Project No. 70294, Randomized, open-label, 2-way crossover, relative bioavaiability study of Doxylamine-Pyridoxine 10 mg-10 mg (Diclectin ) delayed-release tablets following a 2 x 10 mg-10 mg dose in healthy adult females under fasting and fed conditions | DCH-0145944 | DCH-0146260 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 31 | H, R, U | | | | 2/23/2009 | Final Bioanalytical Report, Project No. 70381 (Sponsor Project No. 20070068), Single and multiple dose safety and pharmacokinetic study of Diclectin in healthy non-pregnant female subjects | DCH-0146261 | DCH-0146525 | |
| 32 | H, R, U | | | | 11/13/2009 | Final Bioanalytical Report, Project No. 60612 (Sponsor Project No. DIC-301), A double-blind, multicenter, randomized, placebo-controlled trial of the efficacy of Diclectin for nausea and vomiting of pregnancy | DCH-0146787 | DCH-0149126 | |
| 33 | H, R, U | | | | 3/11/2011 | Final Integrated Clinical and Statistical Report, Project No. 70381 (Sponsor Project No. 20070068), Single and Multiple Dose Safety and Pharmacokinetic Study of Diclectin in Healthy Non-pregnant Female Subjects | DCH-0149973 | DCH-0150381 | |
| 34 | H, I, R, U | | | | | Excerpt from Duchesnay's NDA: 16.1.1 Protocol and Protocol Amendments | DCH-0150393 | DCH-0150555 | |
| 35 | H, R U | | | | 1/18/2010 | Clinical Study Report DIC-301, A Double-blind, Multicenter, Randomized, Placebo-controlled Trial of the Efficacy of Diclectin for Nausea and Vomiting of Pregnancy | DCH-0155698 | DCH-0155781 | |
| 36 | H, I, R, U | | | | 6/8/2012 | Excerpt from Duchesnay's NDA: 3.2.P.8.1 Stability Summary and Conclusion | DCH-0167089 | DCH-0167093 | |
| 37 | H, R, U | | | | 04/00/2013 | Diclegis Full Prescribing Information | DCH-0096990 | DCH-0097001 | |
| 38 | H, R, U | | | | 05/00/2013 | Diclegis Full Prescribing Information | DCH-0163995 | DCH-0164007 | |
| 39 | H, R, U | | | | 9/30/2013 | Letter from FDA to Duchesnay re Supplemental Approval | DCH-0163992 | DCH-0164017 | |
| 40 | H, I, R, U | | | | 9/7/2011 | 2011 Diclectin Product Monograph submitted in Duchesnay NDA | DCH-0138844 | DCH-0138867 | |
| 41 | H, R, U | | | | 4/5/2013 | FDA Memorandum re OCP Approach to Bridging for the 505(b)(2) application for NDA 021876 | DCH-0157452 | DCH-0157456 | |
| 42 | H, R, U | | | | | Duchesnay presentation | DCH-0000750 | DCH-0000783 | Gallo 18 |
| 43 | H, R, U | | | | 6/20/2013 | Email Chain re Public Relations Recap: Dr. Clark's interview with It's Your Health Radio | DCH-0001467 | DCH-0001468 | |
| 44 | H, R, U | | | | 4/25/2013 | Email Chain re Diclegis | DCH-0001469 | DCH-0001469 | |
| 45 | H, R, U | | | | 4/4/2014 | Presentation "Treating Nausea and Vomiting of Pregnancy" | DCH-0065184 | DCH-0065217 | |
| 46 | H, R, U | | | | 6/21/2004 | Consultation - Drug Submission Application | DCH-0168102 | DCH-0168171 | |
| 47 | H, R, U | | | | 8/18/2004 | E-mail from Nick McCandie Glustien to Siddika Mithani re Diclectin SNDS 092646 | DCH-0168346 | DCH-0168352 | |
| 48 | N, H, R, U, | | | | 10/29/2015 | Linkedin profile of Eric Gervais | | | Gervais 1 |
| 49 | H, R, U | | | | | Manufacturing plant, Reformulation and Manufacturing of Diclectin | DCH-0161821 | DCH-0161822 | Gervais 29 |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 50 | H, R, U | | | | 12/8/1997 | Letter from Eric Gervais to Peter Yuen (Global Pharm) | DCH-0021116 | DCH-0021116 | Gervais 5 |
| 51 | H, R, U | | | | 12/8/1997 | Letter from Eric Gervais to Peter Yuen (Global Pharm) | DCH-0021116 | DCH-0021117 | |
| 52 | H, R, U | | | | 01/05/1997 (01/05/1998) | Protocol #DCN-FQ-001-1297-R0, Formulation Development for Diclectin Tablets | DCH-0021118 | DCH-0021127 | Gervais 17 |
| 53 | H, R, U | | | | 1/28/1998 | Letter from Peter Yuen (Global Pharm) to Eric Gervais, enclosing Proposal #DCN-FQ-001-1297-R1, Formulation Development for Diclectin Tablets | DCH-0159720 | DCH-0159728 | Gervais 6; Gallo 22 |
| 54 | H, R, U | | | | 2/10/1998 | Development Agreement (Diclectin Tablets) between Global Pharm Inc. and Duchesnay Inc. | DCH-0162193 | DCH-0162195 | Gervais 31 |
| 55 | H, R, U | | | | 3/5/1998 | Letter from Eric Gervais to Peter Yuen (Global Pharm) returing a signed copy of the Development Agreement | DCH-0162192 | DCH-0162195 | |
| 56 | H, R, U | | | | 6/9/1998 | Letter from Peter Yuen (Global Pharm) to Kerr Clark (Patheon) | DCH-0161588 | DCH-0161588 | |
| 57 | H, R, U | | | | 6/9/1998 | Letter from Peter Yuen to Kerr Clark re authorization of Patheon to release materials for use in reformulation of Diclectin Tablet | DCH-0021363 | DCH-0021363 | |
| 58 | H, R, U | | | | 6/15/1998 | Letter from Peter Yuen (Global Pharm) to Kerr Clark (Patheon) | DCH-0021372 | DCH-0021372 | |
| 59 | H, R, U | | | | 6/17/1998 | Email chain re: Duchesnay Raw Material Release | DCH-0021362 | DCH-0021362 | |
| 60 | H, R, U | | | | 8/11/1998 | Email from Kerr Clark to Joe Salmon re Diclectin Coating Trials | DCH-0021391 | DCH-0021391 | |
| 61 | H, R, U | | | | 2/17/1999 | Notes re Discussion with Peter Yuen of Global Pharm | DCH-0021286 | DCH-0021287 | |
| 62 | H, R, U | | | | 2/17/1999 | Certified Translation of Notes re Discussion with Peter Yuen of Global Pharm | DCH-0021286 | DCH-0021287 | |
| 63 | H, R, U | | | | 2/19/1999 | Notes re Discussion with Jean-Yves St-Onge of Global | DCH-0021285 | DCH-0021285 | |
| 64 | H, R, U | | | | 2/19/1999 | Certified Translation of Notes re Discussion with Jean-Yves St Onge of Global Pharm | DCH-0021285 | DCH-0021285 | |
| 65 | H, R, U | | | | 2/24/1999 | Letter from Peter Yuen (Global Pharm) to Eric Gervais enclosing revised Proposal for Pilot & Validation Lots of Diclectin Enteric Coated Tablets, for Duchesnay Inc. Revision 2, dated February 24th, 1999 | DCH-0022251 | DCH-0022262 | |
| 66 | H, R, U | | | | 2/25/1999 | Notes re Global | DCH-0021284 | DCH-0021284 | |
| 67 | H, R, U | | | | 2/25/1999 | Certified Translation of Notes re Global | DCH-0021284 | DCH-0021284 | |
| 68 | H, R, U | | | | 3/1/1999 | Letter from Eric Gervais to Peter Yuen (Global Pharm) re accepting Contract "Revision 2, Feb 24/99" | DCH-0021274 | DCH-0021282 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 69 | H, R, U | | | | 3/12/1999 | Letter from Peter Yuen (Global Pharm) to Eric Gervais attaching qualification protocol for approval | DCH-0161800 | DCH-0161815 | |
| 70 | H, R, U | | | | 3/31/1999 | Notes re Global Pharm / Reformulation of Diclectin | DCH-0021273 | DCH-0021273 | |
| 71 | H, R, U | | | | 3/31/1999 | Certified Translation of Notes re Global Pharm / Reformulation of Diclectin | DCH-0021273 | DCH-0021273 | |
| 72 | H, R, U | | | | 4/1/1999 | Amendment to Agreement dated April 01, 1999 | DCH-0177214 | DCH-0177214 | |
| 73 | H, R, U | | | | 4/1/1999 | Notes re Global Pharm / Reformulation of Diclectin | DCH-0021271 | DCH-0021272 | |
| 74 | H, R, U | | | | 4/1/1999 | Certified Translation Global Pharm/Reformulation of Diclectin | DCH-0021271 | DCH-0021272 | |
| 75 | H, R, U | | | | 4/5/1999 | Letter from Peter Yuen (Global Pharm) to Eric Gervais attaching summary of conference call on 04/01/1999 | DCH-0021268 | DCH-0021270 | |
| 76 | H, R, U | | | | 4/23/1999 | Notes re Global-Pharm | DCH-0021266 | DCH-0021266 | |
| 77 | H, R, U | | | | 4/23/1999 | Certified Translation of Notes re Global-Pharm | DCH-0021266 | DCH-0021266 | |
| 78 | H, R, U | | | | 5/3/1999 | Letter from Duchesnay to Peter Yuen (Global Pharm) confirming acceptance of Proposal #DCN-FQ-002-0499-R2 and authorizing enteric coating optimization of Diclectin tablets | DCH-0021256 | DCH-0021260 | |
| 79 | H, R, U | | | | 5/6/1999 | Fax from Peter Yuen (Global Pharm) to Eric Gervais attaching Protocol DCN-MIS-002-0499-RO for Enteric Coating Optimization - Diclectin Tablets | DCH-0021261 | DCH-0021265 | |
| 80 | H, R, U | | | | 6/21/1999 | Letter from Kerr Clark (Patheon) to Eric Gervais enclosing coated tablets and tablet cores to be packaged for stability for the Diclectin reformulation and forwarded to Neo-Pharm | DCH-0021137 | DCH-0021137 | |
| 81 | H, R, U | | | | 8/6/1999 | Memorandum from Geoffery Khan (Global Pharm) re Minutes of Conference Call (10am, Aug 6th '99) on Duchesnay's Diclectin | DCH-0021253 | DCH-0021254 | Greaves 9 |
| 82 | H, R, U | | | | 8/6/1999 | Memorandum from Geoffery Khan (Global Pharm) re Minutes of Conference Call (10am, Aug 6th '99) on Duchesnay's Diclectin | DCH-0021253 | DCH-0021255 | |
| 83 | H, R, U | | | | 8/10/1999 | Summary of conversation between Eric and Vic Schulman of Darvic Consulting | DCH-0021249 | DCH-0021249 | |
| 84 | H, R, U | | | | 8/10/1999 | Certified Translation of Summary of conversation between Eric and Vic Schulman of Darvic Consulting | DCH-0021249 | DCH-0021249 | |
| 85 | H, R, U | | | | 8/19/1999 | Fax from Global Pharm to Eric Gervais | DCH-0021247 | DCH-0021248 | |
| 86 | H, R, U | | | | 8/30/1999 | Letter from Vic Shulman to Eric Gervais re a problem with the slow disintegration of the cores | DCH-0021239 | DCH-0021239 | Gervais 14 |
| 87 | H, R, U | | | | 09/00/1999 | Eastacryl/30D Acrylic Polymer Dispersion for Enteric Coatings | DCH-0022235 | DCH-0022242 | |
| 88 | H, R, U | | | | 9/2/1999 | Core Feasibility Manufacturing Diclectin EC Tablets for Proposal #DCN-FQ-003-0999-R0 | DCH-0021196 | DCH-0021198 | |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|-----|--------------------------|---------|--------|----------|---------------|-------------|---------------|---------------|---------------------------|
| 89 | H, R, U | | | | 9/7/1999 | Letter from Peter Yuen to Eric Gervais attaching Proposal #DCN-FQ-003-0999-R0, Core Feasibility Manufacturing Diclectin EC Tablets dated 7-Sep-99; Letter from Duchesnay to Peter Yuen (Global Pharm) confirming acceptance of proposal #DCN-FQ-003-0999-R0, dated September 7, 1999, and receipt of manufacturing schedule | DCH-0021243 | DCH-0021246; DCH-0021240 | Gervais 15 |
| 90 | H, R, U | | | | 9/10/1999 | Letter from Duchesnay to Peter Yuen (Global Pharm) confirming acceptance of proposal #DCN-FQ-003-0999-R0, dated September 7, 1999, and receipt of manufacturing schedule | DCH-0021240 | DCH-0021246 | |
| 91 | H, R, U | | | | 9/17/1999 | Protocol #DCN-FP-003-0999-R0, Formulation Modification for Diclectin Tablets | DCH-0021132 | DCH-0021135 | Gervais 16; Greaves 10 |
| 92 | H, R, U | | | | 9/17/1999 | Formulation Modification for Diclectin Tablets | DCH-0021027 | DCH-0021044 | |
| 93 | H, R, U | | | | 11/10/1999 | Fax from Eric Gervais to Vic Shulman attaching Global Pharm estimate to manufacture the new formulated Diclectin | DCH-0021215 | DCH-0021228 | |
| 94 | H, R, U | | | | 11/11/1999 | Email Chain re: Diclectin Dissolution results and next action… | DCH-0021229 | DCH-0021229 | |
| 95 | H, R, U | | | | 11/16/1999 | Letter from Eric Gervais to Vic Shulman attaching production batch record for Diclectin tablets | DCH-0021414 | DCH-0021428 | |
| 96 | H, R, U | | | | 12/23/1999 | Letter from Eric Gervais to Peter Yuen (Global Pharm) re authorization of Vic Shulman to act on behalf of Duchesnay | DCH-0021180 | DCH-0021180 | |
| 97 | H, R, U | | | | 12/23/1999 | Letter from Kerr Clark (Patheon) to Vic Shulman enclosing draft Diclectin Coating Optimization Report, Document Control No. DCN-FR-004-1299-R0 | DCH-0020966 | DCH-0020980 | |
| 98 | H, R, U | | | | | Attachment I Certificate of Analysis | DCH-0020981 | DCH-0020995 | |
| 99 | H, R, U | | | | | Attachment II Chromatograms of the Placebo | DCH-0020996 | DCH-0021026 | |
| 100 | H, R, U | | | | | Letter from Vic Shulman | DCH-0021204 | DCH-0021204 | |
| 101 | H, R, U | | | | 1/6/2000 | Letter from Martina Machikas (Patheon) to Vic Shulman regarding Patheon formulation abilities | DCH-0021114 | DCH-0021115 | |
| 102 | H, R, U | | | | 1/6/2000 | Letter from Martina Machikas (Patheon) to Vic Shulman regarding Patheon formulation abilities | DCH-0021182 | DCH-0021204 | |
| 103 | H, R, U | | | | 1/28/2000 | Letter from Eric Gervais to Vic Shulman | DCH-0022247 | DCH-0022262 | |
| 104 | H, R, U | | | | 2/2/2000 | Diclectin Core Modification and Coating Optimization Report, Document Control No. DCN-FR-005-1299-R0 | DCH-0022358 | DCH-0022377 | Gervais 18 |
| 105 | H, R, U | | | | 2/2/2000 | Diclectin Core Modification and Coating Optimization Report, Document Control No. DCN-FR-005-1299-R0 | DCH-0022358 | DCH-0022402 | Greaves 12; Gallo 21 |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 106 | H, R, U | | | | 4/13/2000 | Letter from Eric Gervais to Michael Wechselberger (Global Pharm) | DCH-0022222 | DCH-0022222 | |
| 107 | H, R, U | | | | 12/21/2000 | Email from Kerr Clark (Patheon) re Diclectin Telcon | DCH-0021764 | DCH-0021764 | |
| 108 | H, R, U | | | | | Unexecuted Scale-Up of Diclectin Enteric Coated Tablets Protocol, Document Control No.: DCN-FP-006-0101-R1 | DCH-0021753 | DCH-0021762 | |
| 109 | H, R, U | | | | 01/31/2001; 02/02/2001 | Signed scale-Up of Diclectin Enteric Coated Tablets Protocol, Document Control No.: DCN-FP-006-0101-R1 | DCH-0021728 | DCH-0021739 | |
| 110 | H, R, U | | | | 2/12/2001 | Proposal #DCN-FQ-0004-0101-R0, Diclectin Coated Tablets, Process Scale-Up/Feasiblity and Biobatch Manufacturing | DCH-0021781 | DCH-0021785 | |
| 111 | H, R, U | | | | 9/24/2001 | Letter to E. Gervais regarding Amendment # 4 to Quotation # DCN-FQ-0004-0101-R0 | DCH-0162183 | DCH-0162189 | |
| 112 | H, R, U | | | | 2002 | Eastacryl/30D Acrylic Polymer Dispersion for Enteric Coatings | DCH-0161780 | DCH-0161787 | Greaves 4 |
| 113 | H, R, U | | | | 2/1/2010 | E-mail from Victor Shulman to Frederic Paulet re Eastacryl Coating | DCH-0161779 | DCH-0161787 | Gervais 8 |
| 114 | H, R, U | | | | 3/1/2001 | Unexecuted Processing Order for Code No. F0742/S (Lot No. F0742) | DCH-0021779 | DCH-0021780 | |
| 115 | H, R, U | | | | 3/2/2001 | Processing Order for Code No. F0742/S (Lot No. F0742001) | DCH-0022021 | DCH-0022022 | |
| 116 | H, R, U | | | | 3/7/2001 | Batch Record for Code No. F0742/S (Lot No. F0742001) | DCH-0022020 | DCH-0022045 | |
| 117 | H, R, U | | | | 3/7/2001 | Master#1 Product: F0742/S | DCH-0022027 | DCH-0022027 | |
| 118 | H, R, U | | | | 5/17/2001 | Certificate of Analysis for Code No. F0742/S (Lot No. F0742001) with dissolution testing | DCH-0033457 | DCH-0033457 | |
| 119 | H, R, U | | | | 4/30/3001 | Certificates of Analysis (manufacturing process validation) for Code No. F0742/S (Lot No. F0742001) | DCH-0021679 | DCH-0021680 | |
| 120 | H, R, U | | | | 03/21/2001; 07/23/2002 | HPLC method for the stability-indicating assay and the determination of the content uniformity of Pyridoxine HCl and Doxylamine Succinate in Diclectin Tablets, Procedure NPLC-988; HPLC method for determining the dissolution of Diclectin Tablets, Procedure NPLC-995 | DCH-0122599 | DCH-0122604 | |
| 121 | H, R, U | | | | 9/5/2007 | HPLC method for determining the dissolution of Diclectin Tablets, Method NPLC-995 (Exhibit D of Bugay Expert Report) | DCH-0019904 | DCH-0019913 | |
| 122 | H, R, U | | | | 6/19/1998 | Processing Order for FD-134/S | DCH-0021349 | DCH-0021350 | |
| 123 | H, R, U | | | | 6/19/1998 | Processing Order for FD-134/S | DCH-0003468 | DCH-0003479 | Gervais 11 |
| 124 | H, R, U | | | | 6/19/1998 | Processing Order for FD-134/S | DCH-0003468 | DCH-0003468 | Greaves 7 |
| 125 | H, R, U | | | | 6/26/1998 | Batch Record for FD-134/S | DCH-0021348 | DCH-0021361 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 126 | H, R, U | | | | 6/26/1998 | Batch Record for FD-134/S | DCH-0021348 | DCH-0021373 | |
| 127 | H, R, U | | | | 6/26/1998 | Batch Record for FD-134/S | DCH-0161594 | DCH-0161607 | |
| 128 | H, R, U | | | | 6/26/1998 | Batch Record for FD-134/S | DCH-0161594 | DCH-0161620 | |
| 129 | H, R, U | | | | 7/26/1998 | Batch Record for FD-172/S | DCH-0021374 | DCH-0021390 | |
| 130 | H, R, U | | | | 7/26/1998 | Batch Record for FD-172/S | DCH-0021374 | DCH-0021389 | |
| 131 | H, R, U | | | | 7/29/1998 | Processing Order for FD-172/S | DCH-0021375 | DCH-0021376 | |
| 132 | H, R, U | | | | 7/29/1998 | Processing Order for FD-172/S | DCH-0161928 | DCH-0161944 | Gervais 9 |
| 133 | H, R, U | | | | 7/29/1998 | Processing Order for FD-172/S | DCH-0001736 | DCH-0001736 | Greaves 6 |
| 134 | H, R, U | | | | 8/24/1998 | Certificate of Analysis for Lot No. FD-172/S with disintegration testing | DCH-0021395 | DCH-0021395 | |
| 135 | H, R, U | | | | 06/19/1998; 07/29/1998; 02/28/2001 | Batch Records for FD-134/S and FD/172/S with Certificate of Analysis for Lot No. FD172134S | DCH-0003468 | DCH-0003498 | Gervais 22 |
| 136 | H, R, U | | | | 2/28/2001 | Certificate of Analysis for Lot No. FD172134S with dissolution testing | DCH-0021392 | DCH-0021393 | |
| 137 | H, R, U | | | | 2/28/2001 | Certificate of Analysis for Lot No. FD172134S with dissolution testing | DCH-0003463 | DCH-0003464 | |
| 138 | H, R, U | | | | 4/6/1999 | Production Batch Record for Lot 997 (ICN Lot No. 9D7139) with formulation | DCH-0021303 | DCH-0021304 | Gervais 3 |
| 139 | H, R, U | | | | 10/26/1999 | Certificate of Analysis of Lot 1000 with disintegration testing | DCH-0021325 | DCH-0021325 | |
| 140 | H, R, U | | | | 10/27/1999 | Verification Sheet at Reception for Lot 1000 (Lot 997 recoated) (ICN Lot No. 9D7139) | DCH-0021324 | DCH-0021324 | |
| 141 | H, R, U | | | | 7/28/2000 | Certificate of Analysis for Lot 1000 with dissolution testing | DCH-0021336 | DCH-0021347 | Gervais 24 |
| 142 | H, R, U | | | | 6/25/1998 | Batch Record for FD-082/S Core | DCH-0161572 | DCH-0161593 | |
| 143 | H, R, U | | | | 6/25/1998 | Batch Record for FD-082/S Core | DCH-0161572 | DCH-0161583 | |
| 144 | H, R, U | | | | 6/26/1998 | Batch Record for FD-136/S | DCH-0161874 | DCH-0161889 | |
| 145 | H, R, U | | | | 6/26/1998 | Batch Record for FD-136/S | DCH-0161673 | DCH-0161690 | |
| 146 | H, R, U | | | | 7/29/1998 | Processing Order for FD-136/S | DCH-0001685 | DCH-0001699 | Gervais 7 |
| 147 | H, R, U | | | | 7/29/1998 | Processing Order for FD-137/S | DCH-0161893 | DCH-0161893 | |
| 148 | H, R, U | | | | 7/29/1998 | Processing Order for FD-137/S | DCH-0001701 | DCH-0001701 | Greaves 5 |
| 149 | H, R, U | | | | 6/26/1998 | Batch Record for FD-137/S | DCH-0161691 | DCH-0161708 | |
| 150 | H, R, U | | | | 7/29/1998 | Processing Order for FD-138/S | DCH-0161711 | DCH-0161711 | |
| 151 | H, R, U | | | | 6/26/1998 | Batch Record for FD-138/S | DCH-0161709 | DCH-0161725 | |
| 152 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-439/S | DCH-0020982 | DCH-0020983 | |
| 153 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-439/S | DCH-0021138 | DCH-0021139 | |
| 154 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-440/S | DCH-0020984 | DCH-0020985 | |
| 155 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-440/S | DCH-0021140 | DCH-0021141 | |
| 156 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-441/S | DCH-0020986 | DCH-0020987 | |
| 157 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-441/S | DCH-0021142 | DCH-0021143 | |
| 158 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-442/S | DCH-0020988 | DCH-0020989 | |
| 159 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-442/S | DCH-0021144 | DCH-0021145 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 160 | H, R, U | | | | 7/28/1999 | Certificate of Analysis for FD-443/S | DCH-0020990 | DCH-0020991 | |
| 161 | H, R, U | | | | 7/28/1999 | Certificate of Analysis for FD-443/S | DCH-0021146 | DCH-0021147 | |
| 162 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-444/S | DCH-0020992 | DCH-0020993 | |
| 163 | H, R, U | | | | 7/26/1999 | Certificate of Analysis for FD-444/S | DCH-0021148 | DCH-0021149 | |
| 164 | H, R, U | | | | 7/28/1999 | Certificate of Analysis for FD-445/S | DCH-0020994 | DCH-0020995 | |
| 165 | H, R, U | | | | 7/28/1999 | Certificate of Analysis for FD-445/S | DCH-0021150 | DCH-0021151 | |
| 166 | H, R, U | | | | 11/5/1999 | Certificate of Analysis for F0036/S Core | DCH-0020927 | DCH-0020927 | |
| 167 | H, R, U | | | | 11/5/1999 | Certificate of Analysis for F0037/S Core | DCH-0020928 | DCH-0020928 | |
| 168 | H, R, U | | | | 11/9/1999 | Certificate of Analysis for F0038/S Core | DCH-0020929 | DCH-0020929 | |
| 169 | H, R, U | | | | 11/9/1999 | Certificate of Analysis for F0039/S Core | DCH-0020930 | DCH-0020930 | |
| 170 | H, R, U | | | | 11/9/1999 | Certificate of Analysis for F0040/S Core | DCH-0020931 | DCH-0020931 | |
| 171 | H, I, R, U | | | | 1999-2000 | Attachment III Certificate of Analysis for coated tablets FD0088/S and FD0089/S | DCH-0020932 | DCH-0020965 | |
| 172 | H, R, U | | | | 12/8/1999 | Certificate of Analysis for F0088/S 002 | DCH-0020933 | DCH-0020935 | |
| 173 | H, R, U | | | | 10/27/1999 | Processing Order for F0088/S | DCH-0021094 | DCH-0021111 | |
| 174 | H, R, U | | | | 12/9/1999 | Certificate of Analysis for F0089/S 001 | DCH-0020936 | DCH-0020938 | |
| 175 | H, R, U | | | | 10/27/1999 | Processing Order for F0089/S | DCH-0021076 | DCH-0021093 | |
| 176 | H, R, U | | | | 1999-2000 | Certificate of Analysis of F0089/S 001 and FD0088/S 002 accelerated stability with disintegration and dissolution testings | DCH-0022179 | DCH-0022221 | |
| 177 | H, R, U | | | | 12/07/2000; 11/13/2000; 10/18/2000; 09/13/2000; 08/14/2000; 05/29/2000; 07/19/2000; 07/18/2000; 07/13/2000; 06/29/2000; | Certificates of Analysis for EZ48M | DCH-0022109 | DCH-0022128 | |
| 178 | H, R, U | | | | 02/21/2001; 01/15/2001 | Certificates of Analysis for EZ48M | DCH-0022176 | DCH-0022178 | |
| 179 | H, R, U | | | | 1999-2000 | Batch Record for ICN Lot No. 9H5042, Lot 1003 (ICN Lot No. 90H40), and ICN Lot No. 9D7140 | DCH-0159739 | DCH-0159770 | |
| 180 | H, I, R, U | | | | 5/30/2014 | Actavis Paragraph IV Notice Letter | ACTDIC00058451 | ACTDIC00058467 | Exhibit 43 |
| 181 | H, R, U | | | | 04/00/2013 | Diclegis Full Prescribing Information | ACTDIC00097971 | ACTDIC00097982 | |
| 182 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: 1.3.5.2 Patent Certification (ANDA # 205811, Sequence # 0000) | ACTDIC00000041 | ACTDIC00000045 | |
| 183 | H, R, U | | | | 12/7/2009 | Excerpt from Actavis ANDA: Letter of Authorization pertaining to DMF 2584 EUDRAGIT L 30 D-55 | ACTDIC00000052 | ACTDIC00000054 | |
| 184 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.4.1 Letter of Authorization (ANDA # 205811, Sequence # 0000) | ACTDIC00000063 | ACTDIC00000069 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 185 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.12.11 Basis of Submission (ANDA # 205811, Sequence # 0000) | ACTDIC00000070 | ACTDIC00000072 | |
| 186 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.12.12 Comparison Between Generic Drug & Reference Listed Drug (ANDA # 205811, Sequence # 0000) | ACTDIC00000073 | ACTDIC00000075 | Exhibit 8 |
| 187 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.1 Draft Labeling - 1.14.1.1 Proposed Labeling - Container Labels (ANDA # 205811, Sequence # 0000) | ACTDIC00000084 | ACTDIC00000088 | Exhibit 11 |
| 188 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.1 Draft Labeling - 1.14.1.1 Proposed Labeling - Container Labels (ANDA # 205811, Sequence # 0000) | ACTDIC00000089 | ACTDIC00000093 | |
| 189 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.1.3 Draft Labeling Text - 1.14.1.3 Draft Labeling Patient Information Leaflet (ANDA # 205811, Sequence # 0000) | ACTDIC00000094 | ACTDIC00000099 | Exhibit 10 |
| 190 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.1.3 Draft Labeling Text - 1.14.1.3.1 Draft Outsert (ANDA # 205811, Sequence # 0000) | ACTDIC00000106 | ACTDIC00000123 | Exhibit 9 |
| 191 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.1 Draft Labeling - 1.14.3.1 Side-By-Side Comparison - Outsert (ANDA # 205811, Sequence # 0000) | ACTDIC00000142 | ACTDIC00000175 | |
| 192 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: Form FDA 365h | ACTDIC00000204 | ACTDIC00000210 | |
| 193 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: Letter from Watson to FDA re: Preassigned Original ANDA Application (ANDA # 205811, Sequence # 0000) for Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets, 10 mg/10 mg | ACTDIC00000226 | ACTDIC00000227 | Exhibit 2 |
| 194 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: Form FDA 3674 Certification of Compliance, under 42 U.S.C. § 282(j)(5)(B), with Requirements of ClinicalTrials.gov Data Bank (42 U.S.C. § 282(j)) | ACTDIC00000228 | ACTDIC00000229 | |
| 195 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.2 Introduction (ANDA # 205811, Sequence # 0000) | ACTDIC00000257 | ACTDIC00000257 | |
| 196 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.3 Quality Overall Summary (ANDA # 205811, Sequence # 0000) | ACTDIC00000258 | ACTDIC00000383 | Exhibit 12 |
| 197 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.3 Quality Overall Summary (ANDA # 205811, Sequence # 0000) | ACTDIC00000384 | ACTDIC00000509 | |
| 198 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.7.1.1 Background and Overview (ANDA # 205811, Sequence # 0000) | ACTDIC00000510 | ACTDIC00000533 | Exhibit 63 |
| 199 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.7.1.2 Summary of Results of Individual Studies (ANDA # 205811, Sequence # 0000) | ACTDIC00000534 | ACTDIC00000578 | Exhibit 26 |
| 200 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.7 Clinical Summary (ANDA # 205811, Sequence # 0000) | ACTDIC00000603 | ACTDIC00000688 | Exhibit 24 |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 201 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.7 Clinical Summary (ANDA # 205811, Sequence # 0000) | ACTDIC00000689 | ACTDIC00000774 | |
| 202 | H, I, R, U | | | | 7/23/2013 | Excerpt from Actavis ANDA: Certificate of Analysis RLD Lot # KZKB | ACTDIC00000775 | ACTDIC00000776 | Exhibit 25 |
| 203 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 3.2.P.1 Description and Composition of the Drug Product - Table of Contents (ANDA # 205811, Sequence # 0000) | ACTDIC00000784 | ACTDIC00000790 | Exhibit 27 |
| 204 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: Product Development Report (ANDA # 205811, Sequence # 0000) | ACTDIC00000794 | ACTDIC00000919 | Exhibit 23 |
| 205 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 3.2.P.3.2 Batch Formula (ANDA # 205811, Sequence # 0000) | ACTDIC00000934 | ACTDIC00000936 | Exhibit 28 |
| 206 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 3.2.P.3.3 Description of Manufacturing Process and Process Controls (ANDA # 205811, Sequence # 0000) | ACTDIC00000937 | ACTDIC00000946 | Exhibit 29 |
| 207 | H, R, U | | | | 11/00/2011 | Eudragit L 30 D-55 - Product Regulatory Datasheet | ACTDIC00001202 | ACTDIC00001212 | |
| 208 | H, I, R, U | | | | 8/1/2012 | Excerpt from Actavis ANDA: Assay by Potentiometric Titration in Methacrylic Acid and Ethyl Acrylate Copolymer Dispersion, NF (Methacrylic Acid Copolymer Dispersion, NF), Method Validation Report No. ARVR-12-0139 | ACTDIC00001556 | ACTDIC00001563 | |
| 209 | H, I, R, U | | | | 7/23/2013 | Excerpt from Actavis ANDA: Standard Test Method STM-AR-FP-187: Doxylamine Succinate, Pyridoxine Hydrochloride Delayed Release Tablets, 10 mg/10 mg/and Intermediates | ACTDIC00001834 | ACTDIC00001856 | Exhibit 49 |
| 210 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 3.2.P.5.6 Justification of Specification(s) (ANDA # 205811, Sequence # 0000) | ACTDIC00001956 | ACTDIC00001961 | Exhibit 30 |
| 211 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 3.2.R Regional Information (ANDA # 205811, Sequence # 0000) | ACTDIC00002217 | ACTDIC00002233 | Exhibit 13 |
| 212 | H, I, R, U | | | | | Excerpt from Actavis ANDA: Table Listing of All Clinical Studies (ANDA # 205811, Sequence # 0000) | ACTDIC00002602 | ACTDIC00002603 | |
| 213 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: Study ACT- 13-03/ACT-12557, A Three-Period, Two-Treatment, Partial Replicate Crossover Bioequivalence Study of Doxylamine Succinate/Pyridoxine Hydrochloride Delayed Release Tablets 10 mg/1 0 mg X2 Under Fasted Conditions | ACTDIC00002604 | ACTDIC00002662 | Exhibit 64 |
| 214 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: Study ACT- 13-03/ACT-12557, A Three-Period, Two-Treatment, Partial Replicate Crossover Bioequivalence Study of Doxylamine Succinate/Pyridoxine Hydrochloride Delayed Release Tablets 10 mg/1 0 mg X2 Under Fasted Conditions | ACTDIC00002604 | ACTDIC00005216 | |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 215 | H, I, R, U | | | | 8/1/2013 | Excerpt from Actavis ANDA: Study ACT- 13-03/ACT-12557, A Three-Period, Two-Treatment, Partial Replicate Crossover Bioequivalence Study of Doxylamine Succinate/Pyridoxine Hydrochloride Delayed Release Tablets 10 mg/1 0 mg X2 Under Fasted Conditions | ACTDIC00076426 | ACTDIC00079038 | |
| 216 | H, I, R, U | | | | 7/31/2013 | Excerpt from Actavis ANDA: Protocol ACT-2013-004 - Clinical Study Report, A Randomized, Open-Label, Single-Dose, Partial Replicate-Design Study to Assess the Bioequivalence of a Test Formulation of Doxylamine Succinate/Pyridoxine HCl Delayed Release (10 mg/10 mg) X 2 Tablets, Compared to the Reference Listed Drug, Diclegis (doxylamine succinate/pyridoxine HCl) DR (10 mg/10 mg) X 2 Tablets, in Healthy Adults Under Fed Conditions | ACTDIC00009634 | ACTDIC00009715 | Exhibit 65 |
| 217 | H, I, R, U | | | | 7/31/2013 | Excerpt from Actavis ANDA: Protocol ACT-2013-004 - Clinical Study Report, A Randomized, Open-Label, Single-Dose, Partial Replicate-Design Study to Assess the Bioequivalence of a Test Formulation of Doxylamine Succinate/Pyridoxine HCl Delayed Release (10 mg/10 mg) X 2 Tablets, Compared to the Reference Listed Drug, Diclegis (doxylamine succinate/pyridoxine HCl) DR (10 mg/10 mg) X 2 Tablets, in Healthy Adults Under Fed Conditions | ACTDIC00009634 | ACTDIC00009771 | |
| 218 | H, I, R, U | | | | 02/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0021 | ACTDIC00041339 | ACTDIC00041351 | Exhibit 16 |
| 219 | H, I, R, U | | | | 02/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0023 | ACTDIC00041365 | ACTDIC00041383 | Exhibit 17 |
| 220 | H, I, R, U | | | | 02/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0019 | ACTDIC00041390 | ACTDIC00041404 | Exhibit 15 |
| 221 | H, I, R, U | | | | 02/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0017 | ACTDIC00041512 | ACTDIC00041531 | Exhibit 14 |
| 222 | H, I, R, U | | | | 03/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0039 | ACTDIC00042817 | ACTDIC00042836 | Exhibit 18 |
| 223 | H, I, R, U | | | | 03/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0040C | ACTDIC00042939 | ACTDIC00042952 | Exhibit 22 |
| 224 | H, I, R, U | | | | 03/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0040 | ACTDIC00042960 | ACTDIC00042977 | Exhibit 19 |
| 225 | H, I, R, U | | | | 03/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0040B | ACTDIC00042982 | ACTDIC00042995 | Exhibit 21 |
| 226 | H, I, R, U | | | | 03/00/2013 | Excerpt from Actavis ANDA: Batch/Packaging Record Batch # 2132R0040A | ACTDIC00043403 | ACTDIC00043416 | Exhibit 20 |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 227 | H, I, R, U | | | | 4/22/2014 | Excerpt from Actavis ANDA: Letter from Actavis to FDA re: General Correspondence - Company Name Change | ACTDIC00024883 | ACTDIC00024887 | Exhibit 6 |
| 228 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.3.1 Labeling - 1.14.3.1 Side-by-Side Comparison - Outsert (ANDA # 205811, Sequence # 0002) | ACTDIC00024908 | ACTDIC00024991 | |
| 229 | H, I, R, U | | | | 8/13/2014 | Excerpt from Actavis ANDA: Addendum to Analytical Method Validation Report for Doxylamine Succinate, Pyridoxine Hydrochloride Delayed Release Tablets, 10 mg/10 mg and Intermediates, STM-AR-FP-0187, Report No. ARVA-13-0060-02 | ACTDIC00029523 | ACTDIC00029527 | Exhibit 51 |
| 230 | H, I, R, U | | | | 8/6/2014 | Excerpt from Actavis ANDA: Standard Test Method STM-AR-FP-0187: Doxylamine Succinate, Pyridoxine Hydrochloride Delayed Release Tablets, 10 mg/10 mg/and Intermediates | ACTDIC00050294 | ACTDIC00050319 | Exhibit 36 |
| 231 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.7.1.2 Summary of Results of Individual Studies (ANDA # 205811, Sequence # 0003) | ACTDIC00090650 | ACTDIC00090656 | Exhibit 35 |
| 232 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 2.7.1.2 Summary of Results of Individual Studies (ANDA # 205811, Sequence # 0003) | ACTDIC00090661 | ACTDIC00090667 | |
| 233 | H, I, R, U | | | | 8/22/2014 | Excerpt from Actavis ANDA: Letter from Actavis to FDA Re Bioequivalence Dissolution Acknowledgement - Bioequivalence Response to Information Request (ANDA # 205811, Sequence # 0003) | ACTDIC00090676 | ACTDIC00090677 | Exhibit 34 |
| 234 | H, I, R, U | | | | 9/14/2015 | Excerpt from Actavis ANDA: Letter from Actavis to FDA re: ANDA # 205811 Sequence # 0005 | ACTDIC00118609 | ACTDIC00118625 | Exhibit 38 |
| 235 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.1.2. Side-By-Side Comparison of Containers with All Differences Annotated and Explained (ANDA # 205811, Sequence # 0005) | ACTDIC00118636 | ACTDIC00118642 | Exhibit 41 |
| 236 | H, I, R, U | | | | | Excerpt from Actavis ANDA: 1.14.3.1 Labeling - 1.14.3.1 Side-by-Side Comparison - Outsert (ANDA # 205811, Sequence # 0005) | ACTDIC00118666 | ACTDIC000118703 | Exhibit 42 |
| 237 | H, I, R, U | | | | 9/14/2015 | Excerpt from Actavis ANDA: Form FDA 356h | ACTDIC00118713 | ACTDIC00118721 | |
| 238 | H, I, R, U | | | | 9/2/2015 | Excerpt from Actavis ANDA: Analytical Research Finished Product Specification and Analytical Report | ACTDIC00118766 | ACTDIC00118767 | Exhibit 40 |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|-----|--------------------------|---------|--------|----------|---------------|-------------|---------------|---------------|---------------------------|
| 239 | H, I, R, U | | | | 9/2/2015 | Excerpt from Actavis ANDA: Standard Test Method: Doxylamine Succinate, Pyridoxine Hydrochloride Delayed Release Tablets, 10 mg/10 mg/and Intermediates | ACTDIC00118768 | ACTDIC00118791 | Exhibit 39 |
| 240 | H, I, R, U | | | | 9/2/2015 | Excerpt from Actavis ANDA: Stability Report for Lot # 21320040A | ACTDIC00119488 | ACTDIC00119497 | Exhibit 52 |
| 241 | H, I, R, U | | | | 5/28/2014 | Excerpt from Actavis ANDA: Letter from FDA to Actavis acknowledging receipt of ANDA for Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets, 10 mg/10 mg | ACTDIC00000001 | ACTDIC00000004 | Exhibit 7 |
| 242 | H, I, R, U | | | | 7/3/2014 | Excerpt from Actavis ANDA: Letter from FDA to Watson Regarding Bioequivalence Amendment | ACTDIC00000005 | ACTDIC00000007 | Exhibit 31 |
| 243 | H, I, R, U | | | | 4/21/2015 | Excerpt from Actavis ANDA: Letter from FDA to Actavis re: ANDA review | ACTDIC00097237 | ACTDIC00097245 | Exhibit 37 |
| 244 | H, I, R, U | | | | 4/18/2016 | Letter from Actavis to FDA re 180-day exclusivity period for ANDA No. 205811 | ACTDIC00119554 | ACTDIC00119558 | |
| 245 | H, I, R, U | | | | | Letter from FDA to Actavis re Complete Response | ACTDIC00119559 | ACTDIC00119577 | |
| 246 | H, I, R, U | | | | 5/24/2016 | Email from FDA to Actavis re response to Question 5 in the resubmission dated 03/18/2016 | ACTDIG00119578 | ACTDIG00119578 | |
| 247 | H, R, U | | | | 3/29/2012 | NPSC March 2012 - US Product Recommendations | ACTDIC00058662 | ACTDIC00058677 | Exhibit 4 |
| 248 | H, R, U | | | | 5/20/2012 | Email Chain re: New Project Assigned to Florida - Doxylamine & Pyridoxine ER Tabs | ACTDIC00110707 | ACTDIC00110709 | Exhibit 3 |
| 249 | H, R, U | | | | 7/20/2012 | Email Chain re: New Project - Doxylamine + Pyridoxine ER Tabs - Diclectin - SRP4# and OEL Requested | ACTDIC00099210 | ACTDIC00099211 | Exhibit 44 |
| 250 | H, R, U | | | | 8/2/2012 | Email Chain re: Price of Doxylamine Succinate and Pyridoxine Hydrochloride | ACTDIC00097272 | ACTDIC00097273 | Exhibit 57 |
| 251 | H, R, U | | | | 8/6/2012 | Copy of Laboratory Notebook WSR2929 | ACTDIC00062802 | ACTDIC00062918 | Exhibit 54 |
| 252 | H, R, U | | | | 10/12/2012 | Email Chain re: Doxylamine-Pyridoxine results-update | ACTDIC00097338 | ACTDIC00097338 | Exhibit 58 |
| 253 | H, R, U | | | | 10/23/2012 | US Pipeline Summary | ACTDIC00056938 | ACTDIC00056939 | Exhibit 70 |
| 254 | H, R, U | | | | 11/6/2012 | Analytical Results Datasheet Diclegis Lot #1212 | ACTDIC00103047 | ACTDIC00103047 | Exhibit 53 |
| 255 | H, R, U | | | | 1/3/2013 | Business Case Document for Doxylamine Pyridoxine DR | ACTDIC00050885 | ACTDIC00050932 | Exhibit 71 |
| 256 | H, I, R, U | | | | 3/14/2013 | Copy of Laboratory Notebook WSR3156 | ACTDIC00036631 | ACTDIC00036730 | Exhibit 46 |
| 257 | H, I, R, U | | | | 3/14/2013 | Copy of Laboratory Notebook WSR3155 | ACTDIC00046523 | ACTDIC00046574 | Exhibit 56 |
| 258 | H, I, R, U | | | | 3/18/2013 | Copy of Laboratory Notebook WSR3157 | ACTDIC00037037 | ACTDIC00037086 | Exhibit 47 |
| 259 | H, R, U | | | | 4/9/2013 | Email Chain re: Pipeline update: FDA approves Duchesnay USA's Diclegis for Treatment of Nausea and Vomiting of Pregnancy (NVP) (doxylamine/pyridoxine DR), attaching "Diclegis_Full_Prescribing_Information.pdf" | ACTDIC00097968 | ACTDIC00097982 | Exhibit 62 |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 260 | H, R, U | | | | 4/12/2013 | Email Chain re: US Pipeline Updates & Intelligence Report - April 8-12, 2013 | ACTDIC00098046 | ACTDIC00098051 | Exhibit 5 |
| 261 | H, R, U | | | | 4/12/2013 | Email re: US Pipeline Updates & Intelligence Report - April 8-12, 2013 | ACTDIC00099028 | ACTDIC00099031 | Exhibit 72 |
| 262 | H, R, U | | | | 4/25/2013 | US Pipeline Summary | ACTDIC00051066 | ACTDIC00051068 | Exhibit 73 |
| 263 | H, R, U | | | | 5/24/2013 | "Doxylamine Succinate, Pyridoxine Hydrochloride Delayed-Release Tablets, 10 mg/ 10 mg" Presentation | ACTDIC00063852 | ACTDIC00063892 | Exhibit 68 |
| 264 | H, R, U | | | | 5/31/2013 | Email Chain re: Doxylamine+pyridoxine | ACTDIC00099041 | ACTDIC00099043 | Exhibit 75 |
| 265 | H, R, U | | | | 6/4/2013 | Email Chain re: Doxylamine/Pyridoxine Tablets, final dosing strategy | ACTDIC00099047 | ACTDIC00099048 | Exhibit 76 |
| 266 | H, I, R, U | | | | 6/13/2013 | Copy of Laboratory Notebook WSR3323 | ACTDIC00037187 | ACTDIC00037242 | Exhibit 50 |
| 267 | H, R, U | | | | 9/23/2013 | Email Chain re: Doxylamine/Pyridoxine | ACTDIC00117940 | ACTDIC00117940 | Exhibit 67 |
| 268 | H, R, U | | | | 7/7/2014 | Email Chain re Doxylamine Succinate and Pyridoxine Delayed-release Tablets, 10 mg/10 mg ANDA # 205811 - Bioequivalence Deficiency Facsimile | ACTDIC00098668 | ACTDIC00098669 | Exhibit 32 |
| 269 | H, R, U | | | | 7/25/2014 | Email re US Gx Metrics ahead of 2Q14 Earnings Call - FTF and ANDA counts, attaching "Actavis FTF Summary July 23 2014 FINAL.xlsx" and "US Pipeline Summary July 23 2014 FINAL.xlsx" | ACTDIC00099142 | ACTDIC00099147 | Exhibit 78 |
| 270 | H, R, U | | | | 8/8/2014 | Email Chain re Doxylamine and Pyridoxine BE DL dissolution profile attaching "Summary-FDA100rpmActavis vs Brand.xlsx" | ACTDIC00098719 | ACTDIC00098722 | Exhibit 33 |
| 271 | H, R, U | | | | 8/22/2014 | Email Chain re: Can you get estimated peak & actual sales data for these projects. I need it for my presentation. attaching "Pradeep 1.xlsx" | ACTDIC00099148 | ACTDIC00099150 | Exhibit 79 |
| 272 | H, R, U | | | | 1/8/2015 | 2014 Paragraph IV Patent Certifications | ACTDIC00051026 | ACTDIC00051027 | Exhibit 80 |
| 273 | H, R, U | | | | 1/26/2015 | Email re: IPD Life Cycle Forecast, New Brand/PDUF A Tracker, Pipeline Forecast & Biologic Tracker Changes For Week of 01/26/2015 | ACTDIC00051436 | ACTDIC00051444 | Exhibit 81 |
| 274 | H, R, U | | | | 2/20/2015 | Email re: 5 year plan Florida.xlsx | ACTDIC00057094 | ACTDIC00057156 | Exhibit 82 |
| 275 | H, R, U | | | | 2/27/2015 | Email Chain re: Florida's Future Product List | ACTDIC00060321 | ACTDIC00060327 | Exhibit 83 |
| 276 | H, R, U | | | | 3/9/2015 | Email Chain re: Launch Review, attaching "Gx product launch forecast.xlsx" | ACTDIC00102492 | ACTDIC00102499 | Exhibit 84 |
| 277 | H, R, U | | | | | Request for Analysis and Dissolution Results Lot/Batch # WSR 2929-83B | ACTDIC00030791 | ACTDIC00030821 | Exhibit 55 |
| 278 | H, R, U | | | | 04/00/2013 | 2013 US filing plans, 2013 budget filings | ACTDIC00056942 | ACTDIC00056943 | Exhibit 74 |
| 279 | H, R, U | | | | | Request for Analysis and Dissolution Results Lot/Batch # 2132R0040 & KZKB | ACTDIC00026797 | ACTDIC00026803 | Exhibit 45 |
| 280 | H, R, U | | | | 07/00/2013 | 2013 US filing plans, 2013 budget filings | ACTDIC00050868 | ACTDIC00050869 | Exhibit 77 |
| 281 | H, R, U | | | | | Formulation Composition and Process Lot # 2132R0040 | ACTDIC00083921 | ACTDIC00083922 | Exhibit 48 |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 282 | H, R, U | | | | | Dissolution Data of Doxylamine Succinate-Pyridoxine HCl DR Tabs, 10 mg/10 mg | ACTDIC00080036 | ACTDIC00080036 | Exhibit 61 |
| 283 | H, R, U | | | | | Listing of studies | ACTDIC00079386 | ACTDIC00079391 | Exhibit 66 |
| 284 | H, R, U | | | | | Email re: Update & Action Item from Today FL NPD Meeting | ACTDIC00065039 | ACTDIC00065041 | Exhibit 69 |
| 285 | H, I, R, U | | | | 4/13/2015 | Mylan Paragraph IV Notice Letter | | | |
| 286 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 1.14.1.2 Annotated Comparison with Listed Drug (Container) | MYLA_DOXY00000028 | MYLA_DOXY00000031 | |
| 287 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 1.14.3.1 Annotated comparison with reference listed drug (side-by-side labeling) outsert/patient information leaflet annotations | MYLA_DOXY00000032 | MYLA_DOXY00000051 | Exhibit 152 |
| 288 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 1.12.12 Comparison Between Generic and Reference Listed Drug | MYLA_DOXY00000053 | MYLA_DOXY00000055 | Exhibit 138 |
| 289 | H, I, R, U | | | | 6/19/2014 | Excerpt from Mylan ANDA: Letter from Mylan to FDA re Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets, 10 mg/10 mg, ANDA 207825 (Pre-Assigned ANDA Original Application) Sequence Number: 0000 | MYLA_DOXY00000056 | MYLA_DOXY00000059 | Exhibit 135 |
| 290 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 1.14.1.1 Draft Carton and/or Container Labels | MYLA_DOXY00000072 | MYLA_DOXY00000073 | Exhibit 153 |
| 291 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 1.14.1.1 Draft Carton and/or Container Labels | MYLA_DOXY00000074 | MYLA_DOXY00000075 | |
| 292 | H, I, R, U | | | | 12/00/2013 | Excerpt from Mylan ANDA: Draft Labeling | MYLA_DOXY00000076 | MYLA_DOXY00000090 | Exhibit 149 |
| 293 | H, I, R, U | | | | 12/00/2013 | Excerpt from Mylan ANDA: Patient Information | MYLA_DOXY00000106 | MYLA_DOXY00000109 | Exhibit 150 |
| 294 | H, I, R, U | | | | 6/19/2014 | Excerpt from Mylan ANDA: Form FDA 365h | MYLA_DOXY00000116 | MYLA_DOXY00000121 | Exhibit 136 |
| 295 | H, I, R, U | | | | 6/19/2014 | Excerpt from Mylan ANDA: Certificatin of Compliance, under 42 U.S.C. § 282(j)(5)(B), with Requirements of ClinicalTrials.gov Data Bank (42 U.S.C. § 282(j)) | MYLA_DOXY00000122 | MYLA_DOXY00000123 | |
| 296 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 1.14.1.5 labeling History | MYLA_DOXY00000130 | MYLA_DOXY00000131 | Exhibit 151 |
| 297 | H, I, R, U | | | | 6/19/2014 | Excerpt from Mylan ANDA: Letter from Mylan to FDA from Mylan re Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets, 10 mg/10 mg, ANDA 207825, U.S. Patent No. 6,340,695 and 7,560,122, Paragraph IV Certifications | MYLA_DOXY00000146 | MYLA_DOXY00000147 | Exhibit 137 |
| 298 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 2.2 Introduction to Summaries | MYLA_DOXY00000177 | MYLA_DOXY00000177 | Exhibit 139 |
| 299 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 2.2 Introduction to Summaries | MYLA_DOXY00000178 | MYLA_DOXY00000178 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 300 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 2.3.P.1 Description and Composition of the Drug Product | MYLA_DOXY00000181 | MYLA_DOXY00000211 | Exhibit 105 |
| 301 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 2.3.P Drug Product | MYLA_DOXY00000242 | MYLA_DOXY00000268 | Exhibit 140 |
| 302 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 2.3.P Drug Product | MYLA_DOXY00000269 | MYLA_DOXY00000295 | |
| 303 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 2.7 Submission Summary | MYLA_DOXY00000352 | MYLA_DOXY00000425 | Exhibit 106 |
| 304 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 2.7.1 Summary of Biopharmaceutical Studies and Associated Analytical Methods | MYLA_DOXY00000502 | MYLA_DOXY00000504 | Exhibit 109 |
| 305 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 3.2.P.1 Description and Composition | MYLA_DOXY00000511 | MYLA_DOXY00000517 | Exhibit 143 |
| 306 | H, I, R, U | | | | 10/18/2013 | Excerpt from Mylan ANDA: Product Development Report - Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets 10/10 mg, Report Number PDR-DXP0TDR-001-00 | MYLA_DOXY00000538 | MYLA_DOXY00000626 | Exhibit 101 |
| 307 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 3.2.P.3.2 Batch Formula | MYLA_DOXY00000627 | MYLA_DOXY00000628 | Exhibit 144 |
| 308 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 3.2.P.3.3 Description of Manufacturing Process and Process Controls | MYLA_DOXY00000769 | MYLA_DOXY00000773 | Exhibit 116 |
| 309 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 3.2.P.3.3 Description of Manufacturing Process and Process Controls | MYLA_DOXY00000769 | MYLA_DOXY00000773 | Exhibit 145 |
| 310 | H, I, R, U | | | | 9/27/2013 | Excerpt from Mylan ANDA: Manufacturing Summary | MYLA_DOXY00000778 | MYLA_DOXY00000797 | Exhibit 146 |
| 311 | H, I, R, U | | | | 5/16/2014 | Excerpt from Mylan ANDA: Finished Product, Standard Test Procedure, Product Code: DXP0TDR10X1A, STP No. FPPDXP-153R-04 | MYLA_DOXY00001079 | MYLA_DOXY00001105 | Exhibit 107 |
| 312 | H, I, R, U | | | | 6/6/2014 | Excerpt from Mylan ANDA: Long Term/ Intermediate/ Accelerated Storage Condition – Stability Study Data | MYLA_DOXY00001635 | MYLA_DOXY00001656 | Exhibit 148 |
| 313 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 3.2.P.8.1 Stability Summary and Conclusions | MYLA_DOXY00001659 | MYLA_DOXY00001663 | Exhibit 147 |
| 314 | H, I, R, U | | | | | Excerpt from Mylan ANDA: 5.2 Tablar Listing of All Clinical Studies | MYLA_DOXY00002274 | MYLA_DOXY00002274 | |
| 315 | H, I, R, U | | | | | Excerpt from Mylan ANDA: Appendix 16.1.1 Protocol and protocol amendments along all appendices and Notification of Decision of IEC And Study meal menu, Project No.: DOXY-1795-13 | MYLA_DOXY00002736 | MYLA_DOXY00002897 | |
| 316 | H, I, R, U | | | | 5/31/2014 | Excerpt from Mylan ANDA: Comparative Bioavailability Project Report, Project No.: DOXY-1795-13 (Fasting Study) | MYLA_DOXY00002981 | MYLA_DOXY00003088 | Exhibit 141 |
| 317 | H, I, R, U | | | | | Excerpt from Mylan ANDA: Appendix 16.1.1 Protocol and protocol amendments along all appendices and Notification of Decision of IEC And Study meal menu, Project No.: DOXY-1796-13 | MYLA_DOXY00005600 | MYLA_DOXY00005765 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 318 | H, I, R, U | | | | 6/8/2014 | Excerpt from Mylan ANDA: Comparative Bioavailability Project Report, Project No.: DOXY-1796-13 (Fed Study) | MYLA_DOXY00005841 | MYLA_DOXY00005956 | Exhibit 142 |
| 319 | H, I, R, U | | | | 8/7/2015 | Excerpt from Mylan ANDA: Letter from Mylan to FDA Regarding Information Request, Bioequivalence - Dissolution, Reference # 133135, ANDA 207825, Sequence Number 0004 (Response to Agency Correspondence Dated July 13, 2015) | MYLB_DOXY_00036916 | MYLB_DOXY_00036919 | Exhibit 110 |
| 320 | H, I, R, U | | | | 8/6/2015 | Excerpt from Mylan ANDA: Finished Product Regulatory Specification, Product Code: DXP0TDR10X1A, STP No. FPPDXP153R-06, Supersedes: FPSDXP153R-05 | MYLB_DOXY_00036922 | MYLB_DOXY_00036927 | Exhibit 156 |
| 321 | H, I, R, U | | | | 7/30/2015 | Excerpt from Mylan ANDA: Justification for Dissolution Specification for Doxylamine Succinate and Pyridoxine Hydrochloride Delayed Release Tables 10mg/10mg. | MYLB_DOXY_00036928 | MYLB_DOXY_00036931 | Exhibit 111 |
| 322 | H, I, R, U | | | | 8/4/2015 | Excerpt from Mylan ANDA: Query and Response, attaching Finished Product (Regulatory and Shelf Life) Standard Test Procedure effective 08/25/2013 | MYLB_DOXY_00036932 | MYLB_DOXY_00036954 | Exhibit 158 |
| 323 | H, I, R, U | | | | 8/6/2015 | Excerpt from Mylan ANDA: Finished Product Shelf Life Specification, , Product Code: DXP0TDR10X1A, STP No. FPPDXP153R-06, Supersedes: FPSDXP153R-05 | MYLB_DOXY_00036955 | MYLB_DOXY_00036960 | Exhibit 157 |
| 324 | H, I, R, U | | | | 9/30/2015 | Excerpt from Mylan ANDA: Letter from Mylan to FDA Regarding Information Request, Bioequivalence - Dissolution, Reference # 158288 , ANDA 207825, Sequence Number 0005 (Response to Agency Correspondence Dated September 4, 2015) | MYLB_DOXY_00036969 | MYLB_DOXY_00036972 | Exhibit 113 |
| 325 | H, I, R, U | | | | 9/30/2015 | Excerpt from Mylan ANDA: Finished Product Regulatory Specification, Product Code: DXP0TDR10X1A, STP No. FPPDXP153R-06, Supersedes: FPSDXP153R-06 | MYLB_DOXY_00036976 | MYLB_DOXY_00036980 | Exhibit 159 |
| 326 | H, I, R, U | | | | 9/30/2015 | Excerpt from Mylan ANDA: Justification for Dissolution specifications for Doxylamine Succinate and Pyridoxine Hydrochloride Delayed Release Tables 10mg/10mg. | MYLB_DOXY_00036981 | MYLB_DOXY_00036984 | Exhibit 114 |
| 327 | H, I, R, U | | | | 9/30/2015 | Excerpt from Mylan ANDA: Finished Product Shelf Life Specification, , Product Code: DXP0TDR10X1A, STP No. FPPDXP153R-06, Supersedes: FPSDXP153R-06 | MYLB_DOXY_00036985 | MYLB_DOXY_00036989 | Exhibit 160 |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 328 | H, R, U | | | | 7/19/2014 | Email from Mylan to FDA re: Controlled Correspondence for Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets, 10 mg/ 10 mg (Request for Bioequivalence and Dissolution Recommendations) | MYLB_DOXY_00011159 | MYLB_DOXY_00011160 | Exhibit 127 |
| 329 | H, I, R, U | | | | 7/15/2015 | Letter from FDA to Mylan Regarding Information Request - Original ANDA | MYLA_DOXY00018042 | MYLA_DOXY00018043 | Exhibit 155 |
| 330 | H, I, R, U | | | | 9/4/2015 | Letter from FDA to Mylan Regarding Information Request - Original ANDA | MYLB_DOXY_00036904 | MYLB_DOXY_00036906 | Exhibit 112 |
| 331 | H, R, U | | | | 9/30/2015 | Email from FDA to Mylan re: Target Action Date Notification on ANDA 207825 | MYLB_DOXY_00036907 | MYLB_DOXY_00036907 | Exhibit 161 |
| 332 | H, R, U | | | | 12/1/2015 | Email from FDA to Mylan re: Information Request ANDA 207825 | MYLB_DOXY_00039168 | MYLB_DOXY_00039169 | Exhibit 115 |
| 333 | H, R, U | | | | 12/22/2015 | Email Chain between FDA and Mylan re: ANDA 207825 - Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets, 10mg/10mg - Information Request Letter | MYLB_DOXY_00039191 | MYLB_DOXY_00039192 | |
| 334 | H, I, R, U | | | | 1/9/2013 | Mylan Lab Notebook 1100, Doxylamine Succinate & Pyridoxine HCl Delayed Release tablet 10mg/10mg | MYLB_DOXY_00028934 | MYLB_DOXY_00029149 | Exhibit 102 |
| 335 | H, I, R, U | | | | 3/7/2012 | Mylan Lab Notebook 0951, Doxylamine Succinate & Pyridoxine HCl Delayed Release tablet 10mg/10mg | MYLB_DOXY_00028717 | MYLB_DOXY_00028932 | Exhibit 104 |
| 336 | H, R, U | | | | | Analytical Test Method, Dissolution of Doxylamine Hydrogen Succinate and Pyridoxine Hydrochloride in Doxylamine Succinate and Pyridoxine Hydrochloride Delayed Release Tablets (10mg/10mg Strength), Test Method No. DXP-DRT-DS-01/05, Supersedes No. DXP-DRT-DS-01/04 | MYLB_DOXY_00036990 | MYLB_DOXY_00036998 | Exhibit 108 |
| 337 | H, I, R, U | | | | 9/6/2013 | Mylan Lab Notebook No. 1264 | MYLB_DOXY_00029150 | MYLB_DOXY_00029257 | Exhibit 117 |
| 338 | H, R, U | | | | 8/29/2013 | Email re: Documentation for: Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets MLL-US | MYLB_DOXY_00033730 | MYLB_DOXY_00033746 | Exhibit 118 |
| 339 | H, R, U | | | | 4/4/2014 | Email re: Monthly Review Meeting - MLL Meeting Material April 2014 | MYLB_DOXY_00013911 | MYLB_DOXY_00013940 | Exhibit 119 |
| 340 | H, R, U | | | | 8/14/2013 | Master Formulation Card, Product Code: DXP0TDR10X1A | MYLB_DOXY_00021793 | MYLB_DOXY_00021796 | Exhibit 120 |
| 341 | H, R, U | | | | 4/10/2013 | Email Fw: U.S. Food & Drug Administration (FDA) Daily Digest Bulletin | MYLB_DOXY_00010075 | MYLB_DOXY_00010080 | Exhibit 121 |
| 342 | H, R, U | | | | 4/12/2013 | Email Chain re: Duchesnay; Alkermes; Elan; Diclegis | MYLB_DOXY_00010066 | MYLB_DOXY_00010068 | Exhibit 122 |
| 343 | H, R, U | | | | 7/30/2013 | Email re: PRB1b-13 Project Brief.xls | MYLB_DOXY_00011169 | MYLB_DOXY_00011173 | Exhibit 123 |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 344 | H, R, U | | | | 8/21/2013 | Email Chain Re: MPC for Doxylamine succinate and Pyridoxine Hydrochloride Delayed Release Tablets, 10/10mg [Market ; USA] | MYLB_DOXY_00033563 | MYLB_DOXY_00033572 | Exhibit 124 |
| 345 | H, R, U | | | | 9/20/2013 | Email re: list | MYLB_DOXY_00011318 | MYLB_DOXY_00011326 | Exhibit 125 |
| 346 | H, R, U | | | | 6/6/2014 | Email re: MLL global monthly review | MYLB_DOXY_00009712 | MYLB_DOXY_00009748 | Exhibit 126 |
| 347 | H, R, U | | | | 9/24/2013 | Email re: FOIA request for Summary basis of Approval - DICLEGIS (NDA 021876) | MYLB_DOXY_00011184 | MYLB_DOXY_00011185 | Exhibit 128 |
| 348 | H, R, U | | | | 9/24/2013 | Email re: Doxylamine/Pyridoxine CC | MYLB_DOXY_00011186 | MYLB_DOXY_00011203 | Exhibit 129 |
| 349 | H, R, U | | | | 10/1/2013 | Email Chain re: Doxylamine/Pyridoxine CC | MYLB_DOXY_00011222 | MYLB_DOXY_00011222 | Exhibit 130 |
| 350 | H, R, U | | | | 10/3/2013 | Minutes of North American Portfolio Review Board Meeting (Phase II New Product Selection) of September 9, 2013 | MYLB_DOXY_00039170 | MYLB_DOXY_00039174 | Exhibit 131 |
| 351 | H, R, U | | | | 11/14/2013 | Email Chain Re: Q4 Remaining New ANDAs- For Discussion on Labeling Conference Call | MYLB_DOXY_00011347 | MYLB_DOXY_00011348 | Exhibit 132 |
| 352 | H, R, U | | | | 11/28/2013 | Email Chain Re: Q4 Remaining New ANDAs- For Discussion on Labeling Conference Call | MYLB_DOXY_00011349 | MYLB_DOXY_00011350 | Exhibit 133 |
| 353 | H, R, U | | | | 4/11/2014 | Email Chain Re: Q2 Submissions | MYLB_DOXY_00008443 | MYLB_DOXY_00008444 | Exhibit 134 |
| 354 | H, R, U | | | | 4/10/2015 | Email re: Doxylamine Succinate and Pyridoxine Hydrochloride Delayed-release Tablets, 10 mg/1 0 mg (ANDA 207825) - Receipt of Acceptance for Filing Letter, attaching 2015-04-10-fda-accepat-ltr.pdf | MYLB_DOXY_00008401 | MYLB_DOXY_00008404 | Exhibit 154 |
| 355 | H, R, U | | | | 01/05/1997 (01/05/1998) | Protocol #DCN-FQ-001-1297-R0, Formulation Development for Diclectin Tablets | PATH00000095 | PATH00000104 | |
| 356 | H, R, U | | | | | Formulation Development Report Diclectin Tablets, Document Control No.: DCN-FR-001-0898-R0 | PATH00000038 | PATH00000075 | |
| 357 | H, R, U | | | | | Dissolution Performance: FD-136/S Lot 001 (Eastacryl Coat), Exhibit A(i) to Formulation Development Report, Document Control No.: DCN-FR-001-0898-R0 | PATH00000088 | PATH00000088 | |
| 358 | H, R, U | | | | | Dissolution Performance: FD-137/S Lot 001 (Sureteric Coat), Exhibit B to Formulation Development Report, Document Control No.: DCN-FR-001-0898-R0 | PATH00000094 | PATH00000094 | |
| 359 | H, R, U | | | | | Table 6, Stability Data Summary, Lot FD137082S, Formulation Development Report, Document Control No.: DCN-FR-001-0898-R0 | PATH00000142 | PATH00000143 | |
| 360 | H, R, U | | | | | Table 7, Stability Data Summary, Lot FD136082E, Formulation Development Report, Document Control No.: DCN-FR-001-0898-R0 | PATH00000144 | PATH00000144 | |
| 361 | H, R, U | | | | 4/27/1999 | Proposal #DCN-FQ-002-0499-R2, Enteric Coating Optimization/Placebo Manufacturing Diclectin Tablets, dated 27-Apr-99 | PATH00000105 | PATH00000108 | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 362 | H, R, U | | | | | Diclectin Coated Tablets, Weight Gain - Enteric Coat | PATH00000145 | PATH00000145 | |
| 363 | H, R, U | | | | | Protocol DCN-MIS-002-0499-RO for Enteric Coating Optimization - Diclectin Tablets | PATH00000077 | PATH00000080 | |
| 364 | H, R, U | | | | 9/2/1999 | Proposal #DCN-FQ-003-0999-R0, Core Feasibility Manufacturing Diclectin EC Tablets dated 2-Sep-99 | PATH00000109 | PATH00000111 | |
| 365 | H, R, U | | | | | Protocol #DCN-FP-003-0999-RO, Formulation Modification for Diclectin Tablets | PATH00000112 | PATH00000116 | |
| 366 | H, R, U | | | | | Diclectin Coating Optimization Report, Document Control No. DCN-FR-004-1299-R0 | PATH00000018 | PATH00000032 | |
| 367 | H, R, U | | | | | Diclectin Core Modification and Coating Optimization Report, Document Control No. DCN-FR-005-1299-R0 | PATH00000001 | PATH00000017 | |
| 368 | H, R, U | | | | 1/30/2001 | Unexecuted Scale-Up of Diclectin Enteric Coated Tablets Protocol, Document Control No.: DCN-FP-006-0101-R1 | PATH00000117 | PATH00000127 | |
| 369 | H, R, U | | | | | Study report: Efficacy of the Ingredient of Bendectin Alone and in Combination Versus Placebo for Nausea and Vomiting of Pregnancy | SANOFI0007308 | SANOFI0007315 | |
| 370 | H, R, U | | | | 5/19/2016 | Certificate of Authenticity of Business Records SANOFI0007308-7315 | DCH-0179344 | DCH-0179344 | |
| 371 | N, H, R, U | | | | | "About Duchesnay" https://duchesnay.com/en/about-us | | | |
| 372 | N, H, R, U | | | | 7/24/2013 | "Brazil's new generation of Thalidomide babies" http://www.bbc.com/news/magazine-23418102 | | | |
| 373 | N, H, R, U | | | | | "Center for Disease Control, "DES Update" http://www.cdc.gov/des/consumers/download/cdc_des_update.pdf | | | |
| 374 | N, H, R, U | | | | | "Chapter VI - Human Studies" Food Guidance Regulation http://www.fda.gov/downloads/Food/GuidanceRegulation/UCM078753.pdf] | | | |
| 375 | N, H, R, U | | | | | "Duchesnay History" https://duchesnay.com/en/about-us/history | | | |
| 376 | N, H, R, U | | | | | "Eastman Eastacryl 30D Emulsion NF" http://www.worldofchemicals.com/chemicals/chemical-properties/eastman-eastacryl- 30d-emulsion-nf.html | | | |
| 377 | N, H, R, U | | | | | "FDA Approved Obstetrics Drugs: THeir Effects on Mother and Baby" http://www.aimusa.org/obstetricdrugs.htm | | | |
| 378 | N, H, R, U | | | | | "Fueling R&D with ~1.7 Billion Investment" http://www.actavis.us/en-us/products/research-development | | | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 379 | H, R, U | | | | | "Patheon History and Milestones" http://www.patheon.com/en-us/About-Us/Our-History | | | |
| 380 | N, H, R, U | | | | 12/15/2015 | "Phthalates" http://toxtown.nlm.nih.gov/text_version/chemicals.php?id=24 | | | |
| 381 | N, H, R, U | | | | 09/00/2012 | "Synthroid®" http://www.rxabbvie.com/pdf/sythroid.pdf | | | |
| 382 | N, H, R, U | | | | 7/28/2009 | "The Thalidomide Tragedy: Lessons for Drug Safety and Regulation" https://helix.northwestern.edu/article/thalidomide-tragedy-lessons-drug-safety-andregulation | | | |
| 383 | N, H, R, U | | | | | "Therapeutic Innovation" http://www.mylan.com/en/products/therapeutic-innovation | | | |
| 384 | N, H, R, U | | | | 2013 | Andersen, Jon T. et al., Ondansetron Use in Early Pregnancy and the Risk of Congenital Malformations-A Register Based Nationwide Cohort Study (2013) | | | |
| 385 | N, H, R, U | | | | 12/8/2011 | Avorn, Jerry, "Learning about the Safety of Drugs -- A Half-Century of Evolution," N. Engl. J. Med. 365:2151-53 (2011) (Exhibit 23 of Elmquist Rebuttal Expert Report) | | | |
| 386 | N, H, R, U | | | | 02/00/1987 | Barash, C. & Lasagna,  L., "Bendectin: A Case History," Clin. Pharmacol. Ther. 41:194 (1987) (Abstract) | | | |
| 387 | H, R, U | | | | 10/5/1981 | Bendectin - Letter from FDA to Merrell Dow Regarding Review of Dissolution Data | DCH-0014947 | DCH-0014952 | |
| 388 | H, R, U | | | | | Bendectin Product Information as of February 1976 | DCH-0123061 | DCH-0123061 | |
| 389 | H, R, U | | | | | Bendectin Product Information as of January 1978 | DCH-0123062 | DCH-0123064 | |
| 390 | H, R, U | | | | | Bendectin Product Information as of July 1982 | DCH-0123066 | DCH-0123067 | |
| 391 | N, H, R, U | | | | 1983 | Bendectin Product Information as of July 1982, Physician's Desk Reference (Medical Economics Company Inc. 37th ed. 1983), pp. 1345-46 | | | |
| 392 | H, R, U | | | | | Bendectin Product Information as of September 1972 | DCH-0123058 | DCH-0123060 | |
| 393 | H, R, U | | | | | Bentyl Product Information as of July 1982, Physician's Desk Reference (Medical Economics Company Inc. 37th ed. 1983) | DCH-0123079 | DCH-0123082 | |
| 394 | H, R, U | | | | 2000 | Bishai, Raafat et al., "Critical appraisal of drug therapy for nausea and vomiting in pregnancy: II. Efficacy and safety of Diclectin (doxylamine-B6)," Can. J. Clin. Pharmacol. 7:138-43 (2000) | DCH-0010270 | DCH-0010275 | |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 395 | H, R, U | | | | 2000 | Bishai, Raafat et al., "Critical appraisal of drug therapy for nausea and vomiting of pregnancy: II. Efficacy and safety of Diclectin (doxylamine-B6)," Can. J. Clin. Pharmacol. 7:138-43 (2000) | | | |
| 396 | H, R, U | | | | 2000 | Bishai, Raafat et al., "Critical appraisal of drug therapy for nausea and vomiting of pregnancy: II. Efficacy and safety of Diclectin (doxylamine-B6)," Can. J. Clin. Pharmacol. 7:138-43 (2000) | DCH-0066027 | DCH-0066032 | |
| 397 | H, R, U | | | | 1999 | Bishai, Raafat et al., "The Efficacy and Safety of Diclectin (Doxylamine/Pyridoxine) for Nausea and Vomiting of Pregnancy," Can. J. Clin. Pharmacol. 7:138-43 (1999) | DCH-0120142 | DCH-0120148 | |
| 398 | N, H, R, U | | | | 12/00/2006 | Cefali, E. A. et al., "Improved control of niacin-induced flushing using an optimized once-daily, extended-release niacin formulation," Clin. Pharmacol. Ther. 44:633-40 (2006) (Exhibit 9 of Elmquist Rebuttal Expert Report) | | | |
| 399 | N, H, R, U | | | | 2000 | Chemburkar, Sanjay R. et al., "Dealing with the Impact of Ritonavir Polymorphs on the Late Stages of Bulk Drug Process Development," Org. Process Res. Dev. 4:413-17 (2000) | | | |
| 400 | N, H, R, U | | | | 5/15/2015 | Cooper, Dustin L. et al., "Effects of formulation design on niacin therapeutics: mechanism of action, metabolism, and drug delivery," Int. J. Pharm. 490:55-64 (2015) (Exhibit 8 of Elmquist Rebuttal Expert Report) | | | |
| 401 | N, H, R, U | | | | 10/31/2014 | Danielsson, Bengt et al., "Use of ondansetron during pregnancy and congenital malformations in the infant." Reprod. Toxicol. 50:134 -37(2014) | | | |
| 402 | H, R, U | | | | 2/20/1990 | Diclectin Product Monograph | DCH-0007996 | DCH-0008002 | |
| 403 | N, H, R, U | | | | 3/8/2016 | Diclectin Product Monograph | | | |
| 404 | H, R, U | | | | 02/00/2014-03/00/2014 | Fantasia, Heidi Collins "A New Pharmacologic Treatment for Nausea and Vomiting of Pregnancy," Nurs Womens Health, 18:73-77 (2014) | DCH-0000087 | DCH-0000091 | |
| 405 | H, R, U | | | | 7/29/1977 | Federal Register - Antiemetic Combination Preparation Containing Dicyclomine Hydrochloride, Doxylamine Succinate, and Pyridoxine Hydrochloride, Withdrawal of Approval of Part of New Drug Application, Federal Register, Vol. 42, No. 146, Friday, July 29, 1977 | DCH-0122981 | DCH-0122981 | |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 406 | H, R, U | | | | 10/7/1977 | Federal Register - Combination Drug Containing Doxylamine Succinate and Pyridoxine Hydrochloride, Drugs for Human Use; Drug Efficacy Study Implementation | DCH-0122983 | DCH-0122984 | |
| 407 | H, R, U | | | | 8/9/1999 | Federal Register - Determination That Bendectin Was Not Withdrawn From Sale for Reasons of Safety or Effectiveness, Federal Register, Vol. 64, No. 152, 43190-91 | DCH-0029749 | DCH-0029750 | |
| 408 | H, R, U | | | | 8/9/1999 | Federal Register - Determination That Bendectin Was Not Withdrawn From Sale for Reasons of Safety or Effectiveness, Federal Register, Vol. 64, No. 152, 43190-91 | DCH-0029771 | DCH-0029772 | Gallo 1 |
| 409 | N, H, R, U | | | | 11/00/2015 | Feghali, Maisa et al., "Pharmacokinetics of drugs in pregnancy," Semin. Perinatol. 39:512-19 (2015) (Exhibit 11 of Elmquist Rebuttal Expert Report) | | | |
| 410 | N, H, R, U | | | | 06/00/2001 | Frederiksen, Marilynn C., "Physiologic Changes in Pregnancy and Their Effect on Drug Disposition," Semin. Perinatol. 25:120-23 (2001) (Exhibit 12 of Elmquist Rebuttal Expert Report) | | | |
| 411 | N, H, R, U | | | | 1989 | Friedman, H. et al., "Clearance of the Antihistamine Doxylamine Reduced in Elderly Men But Not in Elderly Women," Clin. Pharmacokinet. 16:312-16 (1989) (Exhibit 14 of Elmquist Rebuttal Expert Report) | | | |
| 412 | N, H, R, U | | | | 03/00/2003 | Guidance for Industry, Bioavailability and Bioequivalence Studies for Orally Administered Drug Products-General Considerations (Rev. ed. 2003) | | | |
| 413 | H, R, U | | | | 2009 | Handbook of Pharmaceutical Excipients (6th ed. 2009) | | | |
| 414 | N, H, R, U | | | | 2000 | Handbook of Pharmaceutical Excipients (Arthur H. Kibbe ed., 3rd ed. 2000), pp. 99-106, 143-45, 160-62, 256-60, 276-85, 305-10, 401-06 | | | |
| 415 | N, H, R, U | | | | 12/17/1998 | Knopp, Robert H., "Clinical Profiles of Plain Versus Sustained-Release Niacin (Niaspan) and the Physiologic Rationale for Nighttime Dosing," Am. J. Cardiol. 82:24U-28U (1998) (Exhibit 7 of Elmquist Rebuttal Expert Report) | | | |
| 416 | N, H, R, U | | | | 12/21/2000 | Knopp, Robert H., "Evaluating Niacin in its Various Forms," Am. J. Cardiol. 86(suppl):51L-56L (2000) (Exhibit 6 of Elmquist Rebuttal Expert Report) | | | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|-----|------|------|------|------|------|------|------|------|------|
| 417 | H, R, U | | | | 2003 | Koch, Kenneth L. & Frissora, Christine L. "Nausea and vomiting during pregnancy," Gastroenterol. Clin. N. Am. 32:201-34 (2003) | DCH-0014227 | DCH-0014260 | |
| 418 | H, R, U | | | | 4/16/1998 | Koren, Gideon et al., "Drugs in Pregnancy," N. Eng. J. Med. 338:1128-37 (1998) | DCH-0122303 | DCH-0122312 | |
| 419 | H, R, U | | | | 2010 | Koren, Gideon et al., "Effectiveness of delayed-release doxylamine and pyridoxine for nausea and vomiting of pregnancy: a randomized placebo controlled trial." Am. J. Obstet. Gynecol. 1.e1-7 (2010) | DCH-0165971 | DCH-0165981 | |
| 420 | H, R, U | | | | 2015 | Koren, Gideon et al., "Maternal safety of the delayedrelease doxylamine and pyridoxine combination for nausea and vomiting of pregnancy; a randomized placebo controlled trial," BMC Pregnancy Childbirth. 15:59 (2015) | DCH-0163679 | DCH-0163684 | |
| 421 | H, R, U | | | | 2013 | Koren, Gideon et al., "Sex Differences in the Pharmacokinetics and Bioequivalence of the Delayed-Release Combination of Doxylamine Succinate-Pyridoxine Hydrochloride; Implications for Pharmacotherapy in Pregnancy," J. Clin. Pharmacol. (2013) | DCH-0001522 | DCH-0001530 | |
| 422 | N, H, R, U | | | | 04/00/2005 | Koren, Gideon et al., "Validation Studies of the Pregnancy Unique-Quantification of Emesis (PUQE) Scores," J. Ob. Gyn. 25:241-44 (2005) (Exhibit 4 of Zimmerman Expert Report) | | | |
| 423 | N, H, R, U | | | | 11/15/1993 | Kousen, Morton, "Treatment of Nausea and Vomiting in Pregnancy," Clin. Pharmacol. 48:1279-83 (1993) (Exhibit 21 of Elmquist Rebuttal Expert Report) | | | |
| 424 | N, H, R, U | | | | 03/00/2000 | Larimore, Walter L. & Petrie, Kent A., "Drug Use During Pregnancy and Lactation," Prim. Care, 27:35-53 (2000) (Exhibit 22 of Elmquist Rebuttal Expert Report) | | | |
| 425 | N, H, R, U | | | | 05/00/1999 | Little, Bertis B., "Pharmacokinetics during pregnancy: Evidence-based maternal dose formulation," Obstet. Gynecol. 93:858-68 (1999) (Exhibit 13 of Elmquist Rebuttal Expert Report) | | | |
| 426 | H, R, U | | | | 09/00/2013 | Lyerly, Anne Drapkin & Faden, Ruth R. "Mothers Matter: Ethics and Research during Pregnancy," Virtual Mentor, 15:775-78 (2013) | DCH-0001491 | DCH-0001494 | |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 427 | H, R, U | | | | 2/27/2014 | Madjunkova, Svetlana et al., "The Delayed-Release Combination of Doxylamine and Pyridoxine (Diclegis /Diclectin ) for the Treatment of Nausea and Vomiting of Pregnancy," Pediatr. Drugs, 16:199-211 (2014) | DCH-0041487 | DCH-0041499 | |
| 428 | N, H, R, U | | | | 2014 | Matok, Ilan et al., "Studying the Antiemetic Effect of Vitamin B6 for Morning Sickness: Pyridoxine and Pyridoxal Are Prodrugs," J. Clin. Pharmacol. 54:1429-33 (2014) (Exhibit 16 of Elmquist Rebuttal Expert Report) | | | |
| 429 | H, R, U | | | | 04/00/2000 | Mazzotta, Paolo & Magee, Laura A., "A Risk-Benefit Assessment of Pharmacological and Nonpharmacological Treatment for Nausea and Vomiting of Pregnancy," Drugs 59:781-800 (2000) | ACTDIC00025267 | ACTDIC00025287 | |
| 430 | N, H, R, U | | | | 1990 | Merrill Jr., Alfred H. & Henderson, J. Michael, "Vitamin B6 Metabolism by Human Liver," Ann. N. Y. Acad. Sci. 585:110-17 (1990) (Exhibit 15 of Elmquist Rebuttal Expert Report) | | | |
| 431 | N, H, R, U | | | | 1977 | Middleton III, Henry M., "Uptake of Pyridoxine Hydrochloride by the Rat Jejunal Mucosa in vitro," J. Nutr. 107:126-32 (1977) (Exhibit 18 of Elmquist Rebuttal Expert Report) | | | |
| 432 | N, H, R, U | | | | 2013 | Montgomery, Douglas C., Introduction to Statistical Quality Control (John Wiley and Sons, 7th ed. 2013), Sections 4.3 and 4.4 | | | |
| 433 | N, H, R, U | | | | 12/17/1998 | Morgan, John M. et al., "A New Extended-Release Niacin (Niaspan): Efficacy, Tolerability, and Safety in Hypercholesterolemic Patients," Am. J. Cardiol. 82:29U-34U (1998) (Exhibit 5 of Elmquist Rebuttal Expert Report) | | | |
| 434 | H, R, U | | | | 02/00/2015 | Nausea and Vomiting of Pregnancy, APGO Educational Series on Women's Health Issues, 1-28 (2015) | DCH-0163685 | DCH-0163713 | |
| 435 | H, R, U | | | | 02/00/2014 | Niebyl, Jennifer R. & Briggs, Gerald G. "The Pharmacologic Management of Nausea and Vomiting of Pregnancy," J. Fam. Pract. 63(suppl):S31-S37 (2014) | DCH-0000477 | DCH-0000484 | |
| 436 | N, H, R, U | | | | 1/19/2016 | NIST/SEMATECH e-Handbook of Statistical Methods, § 1.3.6.2 Related Distributions, | | | |
| 437 | N, H, R, U | | | | 1/19/2016 | NIST/SEMATECH e-Handbook of Statistical Methods, § 1.3.6.6.9. Lognormal Distribution, www.itl.nist.gov/div898/handbook/eda/section3/eda3669.htm (last visited Jan. 19, 2016) | | | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 438 | N, H, R, U | | | | 6/9/2016 | Orange Book - Bendectin http://www.accessdata.fda.gov/scripts/cder/ob/docs/ob detail.cfm?Appl_No=010598&TABLE1=OB_Disc | | | |
| 439 | N, H, R, U | | | | 2000 | Orange Book - Bendectin, U.S. Food & Drug Administration, Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, 20th ed. | | | |
| 440 | N, H, R, U | | | | 6/9/2016 | Orange Book - Diclegis http://www.accessdata.fda.gov/scripts/cder/ob/docs/ob detail.cfm?Appl_No=021876&TABLE1=OB_Rx | | | |
| 441 | N, H, R, U | | | | 6/9/2016 | Orange Book - Diclegis Patent List http://www.accessdata.fda.gov/scripts/cder/ob/docs/pa texclnew.cfm?Appl_No=021876&Product_No=001&table 1=OB_Rx | | | |
| 442 | N, H, R, U | | | | 2016 | Orange Book - Excerpt of U.S. Food & Drug Administration Center for Drug Evaluation and Research, Approved Drug Products with Therapeutic Equivalence Evaluations, Prescription and OTC Drug Product Patent and Exclusivity List (36th ed. 2016), available at http://www.fda.gov/downloads/Drugs/DevelopmentApp rovalProcess/UCM071436.pdf. | | | |
| 443 | N, H, R, U | | | | 3/2/2016 | Orange Book - Niacin, U.S. Food & Drug Administration, Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, available at http://www.accessdata.fda.gov/scripts/cder/ob/docs/ob detail.cfm?Appl_No=020381&TABLE1=OB_Rx | | | |
| 444 | H, R, U | | | | 11/1/1995 | Ornstein, Melanie et al., "Bendectin/Diclectin for Morning Sickness: A Canadian Follow-up of an American Tragedy," Reprod. Toxicol. 9:1-6 (1995) | DCH-0066021 | DCH-0066026 | |
| 445 | N, H, R, U | | | | 10/00/1985 | Parry, Gareth J. & Bredesen, Dale E. "Sensory neuropathy with low-dose pyridoxine," Neurology, 35:1466-68 (1985) (Exhibit 17 of Elmquist Rebuttal Expert Report) | | | |
| 446 | N, H, R, U | | | | 2000 | Physician's Desk Reference (54th ed. 2000) | | | |
| 447 | N, H, R, U | | | | 2000 | Physician's Desk Reference (Medical Economics Company Inc. 54th ed., 2000), p. 3164 | | | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 448 | N, H, R, U | | | | 12/21/2000 | Piepho, Robert W. "The Pharmacokinetics and Pharmacodynamics of Agents Proven to Raise High-Density Lipoproterol," Am. J. Cardiol. 86(suppl):35L-40L (2000) (Exhibit 10 of Elmquist Rebuttal Expert Report) | | | |
| 449 | N, H, R, U | | | | 11/2/2001 | Power, Michael L. et al., "A Survey on the Management of Nausea and Vomiting in Pregnancy by Obstetrician/Gynecologists," Prim. Care Update Ob/Gyns 8:69-72 (2001) | | | |
| 450 | H, R, U | | | | 4/8/2013 | Press Release "FDA Approves Duchesnay USA's Diclegis for Treatment of Nausea and Vomiting of Pregnancy (NVP)" | DCH-0038893 | DCH-0038896 | |
| 451 | N, H, R, U | | | | 04/00/2000 | Random House Webster's College Dictionary at 824 (2d ed. 2000) (Exhibit 3 of Zimmerman Expert Report) | | | |
| 452 | N, H, R, U | | | | 1995 | Remington: The Science and Practice of Pharmacy (Alfonson R. Gennaro ed., 19th ed. 1995), pp. 929, 1127, 1226 | | | |
| 453 | N, H, R, U | | | | 2000 | Remington: The Science and Practice of Pharmacy (Alfonson R. Gennaro ed., 20th ed. 2000), pp. 273, 1042, 1469, 1809-10 | | | |
| 454 | N, H, R, U | | | | 1995 | Rowland, Malcolm & Tozer, Thomas N., Clinical Pharmacokinetics: Concepts and Applications (Lippincott Williams & Wilkins, 3rd ed. 1995) (Exhibit 3 of Elmquist Rebuttal Expert Report) | | | |
| 455 | N, H, R, U | | | | 2011 | Rowland, Malcolm & Tozer, Thomas N., Clinical Pharmacokinetics and Pharmacodynamics: Concepts and Applications (Lippincott Williams & Wilkins, 4th ed. 2011) (Exhibit 4 of Elmquist Rebuttal Expert Report) | | | |
| 456 | N, H, R, U | | | | 7/16/2003 | Said, Hamid M. et al., "A carrier-mediated mechanism for pyridoxine uptake by human intestinal epithelial Caco-2 cells: regulation by a PKA-mediated pathway," Am. J. Physiol. Cell. Physiol. 285:C1219-C1225 (2003) (Exhibit 19 of Elmquist Rebuttal Expert Report) | | | |
| 457 | N, H, R, U | | | | 1999 | Shargel, Leon & Yu, Andrew, Applied Biopharmaceutics and Pharmacokinetics (4th ed. 1999), pp. 29, 257 | | | |
| 458 | H, R, U | | | | 3/20/2014 | Slaughter, Shelley et al., "FDA Approval of Doxylamine-Pyridoxine Therapy for Use in Pregnancy," N. Engl. J. Med. 370:1081-83 (2014) | DCH-0000152 | DCH-0000154 | |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 459 | N, H, R, U | | | | 2/3/1973 | Smithells, R. W., "Defects and Disabilities of Thalidomide Children," Brit. Med. J. 1:269-72 (1973) | | | |
| 460 | N, H, R, U | | | | 2001 | The Merck Index: An Encyclopedia of Chemicals, Drugs, and Biologics (Merck Research Laboratories 13th ed. 2001), pp. 3479, 8075 | | | |
| 461 | N, H, R, U | | | | 1/1/1995 | U.S. Pharmacopeia (23rd ed. 1995), pp. 1791-96, 2085, 2106, 2205-06 | | | |
| 462 | N, H, R, U | | | | 2000 | U.S. Pharmacopeia (24th ed. 2000), pp. 1944-47 | | | |
| 463 | N, H, R, U | | | | 2015 | U.S. Pharmacopeia (39th edition, 2015), Chapter 711: Dissolution (Exhibit B of Bugay Expert Report) | | | |
| 464 | N, H, R, U | | | | 1990 | van Tonder, E.C. et al. "Polymorphism of Doxylamine Succinate and X-Ray Structural Study of Form I and of Doxylamine Succinate 0.5 Succinic Acid," Int'l J. Pharm. 63:35-42 (1990) | | | |
| 465 | N, H, R, U | | | | 1/30/2014 | WO 2014/016850 A1 by Mylan Laboratories Limited | | | Exhibit 103 |
| 466 | N, H, R, U | | | | 2013 | Wood, Heather et al., "Nausea and vomiting in pregnancy: Blooming or bloomin' awful? A review of the literature," Women Birth. 26:100-04 (2013) (Exhibit 20 of Elmquist Rebuttal Expert Report) | | | |
| 467 | N, H, R, U | | | | | U.S. Patent 6,340,695 | | | Apley 2 |
| 468 | E, R, U | | | | | Memorandum Order - D.I. 109 | | | Apley 3 |
| 469 | N, H, R, U | | | | | Hahn and Meeker, "Sample Size Requirements for Tolerance Intervals, Tolerance Bounds, and Demonstration Tests" Statistical Intervals: A Guide for Practitioners pp. 150-153,168-171,186, 350-351 (1991) | | | Apley 4 |
| 470 | N, H, R, U | | | | | "Bendectin" Physician's Desk Reference 30th ed. p. 1089 (1976) | | | Boghigian 2 |
| 471 | N, H, R, U | | | | | "Bendectin" Physician's Desk Reference 31st ed. (1977) | | | Boghigian 3 |
| 472 | N, H, R, U | | | | | Horbal and Bernstein, "Azelastine HCl: A Review of the Old and New Formulations" Clinical Medicine Insights: Therapeutics 2010:2 427-437 | | | Boghigian 5 |
| 473 | N, H, R, U | | | | | Murteira et al., "Drug reformulations and repositioning in pharmaceutical industry and its impact on market access: reassessment of nomenclature" Journal of Market Access & Health Policy (2013) | | | Boghigian 6 |
| 474 | N, H, R, U | | | | | U.S. Patent No. 6,024,981 | | | Felton 10 |
| 475 | H, I, R, U | | | | | Curriculum Vitae of Linda Felton (Appendix A) | | | Felton 11 |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 476 | A, B, H, I, R, U | | | | | Documents Referenced in Whole or in Part by Linda Felton (Appendix B) | | | Felton 12 |
| 477 | H, I, R, U | | | | | Email re: Felton Deposition | | | Felton 13 |
| 478 | H, I, R, U | | | | | Prior Testimony by Linda Felton (Appendix C) | | | Felton 14 |
| 479 | A, B, H, I, R, U | | | | | Documents Considered in Whole or in Part by Linda Felton Ph.D. | | | Felton 15 |
| 480 | N, H, R, U | | | | | Raisch and Felton, "The New Drug Approval Process and Clinical Trial Design" Remington The Science and Practice of Pharmacy 21st ed. pp. 965-975 (2006) | | | Felton 16 |
| 481 | N, H, R, U | | | | | U.S. Patent 6,340,695 | | | Felton 3 |
| 482 | N, H, R, U | | | | | U.S. Patent 5,229,134 | | | Felton 4 |
| 483 | N, H, R, U | | | | | International Publication Number WO 99/03453 | | | Felton 5 |
| 484 | N, H, R, U | | | | | Kibbe, "Contents" Handbook of Pharmaceutical Excipients pp. v-vi (2000) | | | Felton 6 |
| 485 | N, H, R, U | | | | | Kibbe, Handbook of Pharmaceutical Excipients 3rd ed. pp. 60- | | | Felton 7 |
| 486 | N, H, R, U | | | | | Banakar, "Factors that Influence Dissolution Testing" Pharmaceutical Dissolution Testing pp. 133-187 (1992) | | | Felton 8 |
| 487 | N, H, R, U | | | | | "711 - Dissolution" USP 23 | | | Felton 9 |
| 488 | N, H, R, U | | | | | Levy and Jusko, "Factors Affecting the Absorption of Riboflavin in Man" Journal of Pharmaceutical Scienes pp. 285-289 (1966) | | | Mayersohn 10 |
| 489 | N, H, R, U | | | | | Madjunkova, et al., "The Delayed-Release Combination of Doxylamine and Pyridoxine (Diclegis/Diclectin) for the Treatment of Nausea and Vomiting of Pregnancy Pediatr Drugs (2014) 16:199-211 | | | Mayersohn 11 |
| 490 | N, H, R, U | | | | | Matok, et al., "Studying the Antiemetic Effect of Vitamin B6 for Morning Sickness: Pyridoxine and Pyridoxal Are Prodrugs" The Journal of Clinical Pharmacology S4(12) 1429-1433 | | | Mayersohn 12 |
| 491 | N, H, R, U | | | | | U.S. Patent No. 9,089,489 | | | Mayersohn 13 |
| 492 | H, R, U | | | | | 14.2 Pharmacokinetic Data Summary Figures and Tables | ACTDIC00076471 | ACTDIC00076479 | Mayersohn 14 |
| 493 | N, H, R, U | | | | | Nulman and Koren, "Pharmacokinetic Comparison of a Delayed-Release Combination of Doxylamine Succinate and Pyridoxine Hydrochloride (Diclectin) and Oral Solutions of these Drugs in Healthy Women of Childbearing Age" Can J Clin Pharmacol Vol 16 (3) Fall 2009:e400-406; October 29, 2009 | | | Mayersohn 15 |
| 494 | H, R, U | | | | | 1.5.1 Basis for Submission | DCH-0014995 | DCH-0014998 | Mayersohn 16 |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 495 | N, H, R, U | | | | | Mayersohn, "Principles of Drug Absorption" Modern Pharmaceutics 4th ed. Chapter 2 pp. 23-66 | | | Mayersohn 17 |
| 496 | H, I, R, U | | | | | Curriculum vitae of Michael Mayersohn, Ph.D (Appendix A) | | | Mayersohn 2 |
| 497 | A, B, H, I, R, U | | | | | Documents Considered in Whole or in Part by Michael Mayersohn, Ph.D. | | | Mayersohn 3 |
| 498 | N, H, R, U | | | | | The Merck Index of Chemical and Drugs pp. 376-379 (1952) | | | Mayersohn 4 |
| 499 | N, H, R, U | | | | | "Antitussive Product Table" Handbook of Nonprescription Drugs 7th ed. pp. 151, 162, 164 | | | Mayersohn 5 |
| 500 | N, H, R, U | | | | | Slikker, et al., "Metabolism of 14C-Labeled Doxylamine Sucinate (Bendectin) In the Rhesus Monkey (Macaca mulatta)" Journal of Analytical Toxicology, Vol. 10, May/June 1986 pp. 87-92 | | | Mayersohn 6 |
| 501 | N, H, R, U | | | | | U.S. Patent No. 6,340,695 | | | Mayersohn 7 |
| 502 | N, H, R, U | | | | | Cada, et al., "Doxylamine Succinate/Pyridoxine Hydrochloride" Hosp Pharm 2013;48(9): 762-766 | | | Mayersohn 8 |
| 503 | N, H, R, U | | | | | Ink and Henderson, "Vitamin B6 Metabolism" Ann. Rev. Nutr. 1984 4:455-70 | | | Mayersohn 9 |
| 504 | H, I, R, U | | | | | Prior Testimony by Anthony R. Scialli M.D. (Appendix B) | | | Scialli 1 |
| 505 | N, H, R, U | | | | | Scialli, "Bendectin/Diclectin for Morning Sickness: A Canadian Follow-Up of an American Tragedy" Reproductive Toxicology, Vol. 9, No. 1, pp. 1-6, 1995 | | | Scialli 10 |
| 506 | N, H, R, U | | | | | Sonawane and Yaffe, "Physiologic Disposition of Drugs in the Fetus and Newborn" Drugs and Chemical Action pp. 103-104, 484-485 | | | Scialli 11 |
| 507 | N, H, R, U | | | | | Power, et al., "A Survey on the Management of Nausea and Vomiting in Pregnancy by Obstetrician/Gynecologists" Volume 8, Number 2, 2001 pp. 69-72 | | | Scialli 12 |
| 508 | N, H, R, U | | | | | Barash and Lasagna, "The Bendectin Saga: "Voluntary" Discontinuation" Journal of Clinical Research and Drug Development 1, 277-292 (1987) | | | Scialli 13 |
| 509 | N, H, R, U | | | | | Fong, "The Gummy Deficiency" Double Science (2013) | | | Scialli 14 |
| 510 | N, H, R, U | | | | | Finkelstein, et al., "Inactive Pharmaceutical Ingredients: Implications for Pregnancy" Can J Clin Pharmacol Vol 14(1) Winter 2007: e17-e28 | | | Scialli 15 |
| 511 | N, H, R, U | | | | | Guidance for Industry: Nonclinical Studies for the Safety Evaluation of Pharmaceutical Excipients. May 2005 | | | Scialli 16 |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 512 | N, H, R, U | | | | | Scialli, "Risk Assessment and Counseling" A Clinical Guide to Reproductive and Developmental Toxicology pp. 231-233, 266-272 | | | Scialli 17 |
| 513 | H, I, R, U | | | | | Curriculum Vitae of Anthony R. Scialli M.D. (Appendix A) | | | Scialli 2 |
| 514 | N, H, R, U | | | | | About Reprotox | | | Scialli 3 |
| 515 | N, H, R, U | | | | | Dr. Scialli - A Leading Expert | | | Scialli 4 |
| 516 | H, I, R, U | | | | | Documents Referenced in Whole or in Part by Anthony Scialli (Appendix B) | | | Scialli 6 |
| 517 | H, I, R, U | | | | | Documents Referenced in Whole or in Part by Anthony Scialli (Appendix A) | | | Scialli 8 |
| 518 | N, H, R, U | | | | | Madjunkova, et al., "The Delayed-Release Combination of Doxylamine and Pyridoxine (Diclegis/Diclectin) for the Treatment of Nausea and Vomiting of Pregnancy" Pediatr Drugs (2014) 16:199-211 | | | Scialli 9 |
| 519 | H, R, U | | | | | Curriculum Vitae of Daniel W. Apley, PhD. | | | |
| 520 | H, R, U | | | | | Curriculum Vitae of Harry C. Boghigian | | | |
| 521 | A, B, F, H, I, O, R, U | | | | 1/27/2016 | Opening Expert Report of Diane J. Burgess, Ph.D. | | | |
| 522 | H, I, R, U | | | | | Abbreviated CV of Diane J. Burgess, Ph.D. (Exhibit A of Burgess Opening Expert Report) | | | |
| 523 | H, I, R, U | | | | | List of Materials Considered (Exhibit B of Burgess Opening Expert Report) | | | |
| 524 | A, B, F, H, I, O, R, U | | | | 1/27/2016 | Expert Report of Cheryl L. Zimmerman, Ph.D. | | | |
| 525 | H, I, R, U | | | | | Curriculum Vitae of Cheryl L. Zimmerman (Exhibit 1 of Zimmerman Expert Report) | | | |
| 526 | A, B, H, I, R, U | | | | | List of Materials Considered (Exhibit 2 of Zimmerman Expert Report) | | | |
| 527 | A, B, F, H, I, O, R, U | | | | 1/25/2016 | Expert Report of David E. Bugay, Ph.D. | | | |
| 528 | H, I, R, U | | | | | Curriculum Vitae of David E. Bugay (Exhibit A of Bugay Expert Report) | | | |
| 529 | A, B, H, I, R, U | | | | | Photos of Diclgeis, Actavis, and Mylan tablets received for dissolution testing (Exhibit C of Bugay Expert Report) | | | |
| 530 | A, B, H, I, R, U | | | | | Dissolution and HPLC Method for Pyridoxine HCl and Doxylmaine Succinate Tablets, 10 mg/ 10 mg (Exhibit E of Bugay Expert Report) | | | |
| 531 | A, B, H, I, R, U | | | | | Dissolution and HPLC Method for Pyridoxine HCl and Doxylmaine Succinate Tablets, 10 mg/ 10 mg (Exhibit F of Bugay Expert Report) | | | |
| 532 | A, B, H, I, R, U | | | | | Dissolution testing results (Exhibit G of Bugay Expert Report) | | | |
| 533 | A, B, F, H, I, O, R, U | | | | 2/29/2016 | Responsive Expert Report of Stephen R. Byrn, Ph.D. | | | |

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|---|---|---|---|---|---|---|---|---|---|
| 534 | H, I, R, U | | | | | Curriculum Vitae of Dr. Stephen R. Byrn (Exhibit 1 of Byrn Responsive Expert Report) | | | |
| 535 | A, B, H, I, R, U | | | | | List of Materials Considered (Exhibit 2 of Byrn Reponsive Expert Report) | | | |
| 536 | A, B, F, H, I, O, R, U | | | | 2/27/2016 | Rebuttal Expert Report of Willaim F. Elmquist, Pharm.D., Ph.D. | | | |
| 537 | H, I, R, U | | | | | Curriculum Vitae of William Frederick Elmquist (Exhibit 1 of Elmquist Rebuttal Expert Report) | | | |
| 538 | A, B, H, I, R, U | | | | | List of Documents Made Available (Exhibit 2 of Elmquist Rebuttal Expert Report) | | | |
| 539 | A, B, F, H, I, O, R, U | | | | 2/17/2016 | Rebuttal Expert Report of Kenneth Blank, M.D. | | | |
| 540 | H, I, R, U | | | | | Curriculum Vitae of Kenneth Alan Blank, M.D. F.A.C.O.G. (Exhibit A of Blank Rebuttal Expert Report) | | | |
| 541 | A, B, H, I, R, U | | | | | List of Materials Considered (Exhibit B of Blank Rebuttal Expert Report) | | | |
| 542 | A, B, F, H, I, O, R, U | | | | 2/16/2016 | Rebuttal Expert Report of Jason G. Umans, M.D., Ph.D. | | | |
| 543 | H, I, R, U | | | | | Curriculum Vitae of Jason G. Umans, M.D., Ph.D. (Exhibit 1 of Umans Rebuttal Expert Report) | | | |
| 544 | A, B, H, I, R, U | | | | | List of Materials Considered (Exhibit 2 of Umans Rebuttal Expert Report) | | | |
| 545 | A, B, F, H, I, O, R, U | | | | 2/24/2016 | Expert Report of Ronald D. Snee, Ph.D. | | | |
| 546 | H, I, R, U | | | | | Curriculum Vitae of Ronald D. Snee (Exhibit 1 of Snee Expert Report) | | | |
| 547 | E, R, U | | | | 11/18/2015 | Claim Construction Memorandum Order | | | |
| 548 | E, R, U | | | | 7/17/2015 | Plaintiffs' First Notice of Rule 30(b)(6) Deposition of Actavis Laboratories FL, Inc. | | | Exhibit 1 |
| 549 | E, R, U | | | | 10/22/2015 | Plaintiffs' First Notice of Rule 30(b)(6) Deposition of Mylan Pharmaceuticals, Inc. | | | Exhibit 100 |
| 550 | E, R, U | | | | 11/20/2015 | Plaintiffs' Objections to Defendant Mylan Pharmaceuticals Inc.'s Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) | | | Gervais 28 |
| 551 | E, R, U | | | | 12/18/2015 | Mylan Pharmaceuticals Inc's Responses and Objections to Platintiffs' Requests for Admission (Nos. 1-99) to Defendant Mylan Pharmaceuticals Inc. | | | |
| 552 | E, R, U | | | | 1/5/2016 | Defendants' Responses and Objections to Plaintiffs Requests for Admission (Nos. 1-100) to Defendants Actavis Laboratories FL, Inc., Actavis Inc., and Actavis Pharma Inc. | | | |
| 553 | E, R, U | | | | 9/14/2015 | Covenant Not to Sue - '122 Patent | | | |

Duchesnay Trial Exhibit List

| PTX | Defendants' Objection(s) | Offered | Marked | Admitted | Document Date | Description | Beg Bates No. | End Bates No. | Deposition Exhibit Number |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 554 | E, R, U | | | | 12/11/2015 | Stipulation and Proposed Order to Amend the Scheduling Order (D.I. 127) | | | |
| 555 | E, R, U | | | | 5/31/2016 | Stipulation with Actavis (D.I. 171) | | | |
| 556 | E, R, U | | | | 6/10/2016 | Stipulation with Mylan (D.I. 174) | | | |
| 557 | E, R, U | | | | 6/14/2016 | Consent Decree and Final Judgment of Non-Infringement of U.S. Patent No. 7,560,122 (D.I. 175) | | | |

Key for Defendants' Objection Codes

| LETTER | OBJECTION | APPLICABLE RULE(S) |
|-----|-----|-----|
| A | Requires authentication or identification | FRE 901 |
| B | Best evidence rules prohibit introduction | FRE 1001-1002 |
| C | Improper compilation of separate documents | FRE 403, 901 |
| D | Improper designation (designation is neither a question or testimony) | FRE 401, 402 |
| E | Improper examination (vague, ambiguous, loaded, leading, etc.) | FRE 402, 403, 602, 611 |
| F | Lack of foundation/personal knowledge (including calls for speculation) | FRE 402, 403, 602, 611 |
| H | Hearsay if offered for the truth of the matter asserted | FRE 801, 802 |
| I | Incomplete document or testimony | FRE 106, 403 |
| M | Offer or discussion for settlement or compromise | FRE 408 |
| N | Exhibit not produced in discovery | FRE 403 |
| O | Improper opinion testimony | FRE 701-704 |
| P | Privileged or attorney work product | FRE 501, 502 |
| R | Lack of relevance | FRE 401, 402 |
| S | Summary requiring underlying data or information | FRE 1006 |
| T | Beyond the scope of the Rule 30(b)(6) topic for which a witness has been designated | FRE 602, FRCP 30(b)(6) |
| U | Unduly prejudicial, wasteful, confusing, misleading or cumulative | FRE 403 |

EXHIBIT G

United States District Court for the District of Delaware, C.A. 14-912 (SLR)(SRF)

## Defendants' Trial Exhibit List
### Exhibit G to the Pretrial Order

| DTX | Objections | Offered | Marked | Admitted | Date | Description | Bates - Begin | Bates - End | Previous Designations |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | 1/22/2002 | U.S. Patent No. 6,340,695 | | | Byrn Report; Felton Reply Report; Greaves Dep. Ex. 8; Elmquist Report; Snee Report; Mayersohn Report; Apley Dep. Ex. 2; Felton Opening Report; Byrn Dep. Ex. 4; Felton Dep. Ex. 3; Umans Report; Gervais Dep. Ex. 19; Blank Report; Elmquist Dep. Ex. 2; Mayersohn Dep. Ex. 2; Blank Dep. Ex. 5 |
| 2 | | | | | 6/21/2001 | Prosecution History of U.S. Patent No. 6,340,695 (certified as of October 14, 2014) | DCH-00000001 ACTDIC00119498 | DCH-00000086 ACTDIC00119550 | Gervais Dep Ex. 20; Elmquist Report |
| 3 | H, EX | | | | 1985 | Abdou, *Dissolution* in Remington's Pharmaceutical Sciences, 17th ed., Alfonso R. Gennaro et al. eds., pp. 653-659 (1985) | | | Byrn Report; Felton Opening Report |
| 4 | H | | | | 1959 | Abels, *The Physiologic Mechanism of Vitamin B₁₂ Absorption*, 165 Acta Medica Scandinavica 105 (1959) | | | Mayersohn Report |
| 5 | | | | | Undated | Actavis ANDA 14.2 Pharmacokinetic Data Summary Figures and Tables | ACTDIC00076471 | ACTDIC00076479 | Mayersohn Dep Ex. 14; Mayersohn Report |
| 6 | H, EX | | | | 1991 | Agyilirah, *Polymers for Enteric Coating Applications* in Polymers for Controlled Delivery, Peter J. Tarcha ed., pp. 39-66 (1991) | | | Byrn Dep. Ex. 15; Felton Reply Report; Byrn Report |
| 7 | | | | | 6/21/2001 | Assignment of Invention (certified as of August 4, 2014) | DCH-0022403 | DCH-0022405 | |
| 8 | H, R | | | | 1940 | Avrami, *Kinetics of Phase Change. II Transformation-Time Relations for Random Distribution of Nuclei*, 8 Journal of Chemical Physics 212 (1940) | | | Apley Report |
| 9 | | | | | 1992 | Banakar, Pharmaceutical Dissolution Testing, Marcel Dekker, Inc. ed., pp. 133-186 (1992) | | | Felton Dep Ex. 8; Felton Opening Report; Felton Reply Report; Byrn Report |
| 10 | A, H, EX, IL | | | | Undated | Bendectin - A Study to Determine In Vivo Availability of Pyridium from a Special Delayed Release Tablet | DCH-0126953 | DCH-0126965 | |
| 11 | H | | | | 1999 | Boneva, *Nausea During Pregnancy and Congenital Heart Defects: A Population Based Case-Control Study*, 149(8) Am J Epidemiol 717 (1999) | | | Scialli Reply Report |
| 12 | | | | | Undated | Books and Articles on Quality by Design, Lean Six Sigma and Statistical Thinking by Ronald D. Snee, Ph.D. | | | Snee Dep. Ex. 3 |
| 13 | | | | | 2013 | Cada, *Doxylamine Succinate/Pyridoxine Hydrochloride*, 48 Hospital Pharmacy 762 (2013) | | | Mayersohn Dep. Ex. 8; Mayersohn Report |
| 14 | H | | | | 11/17/2003 | Canada Minister of Health, Official Method: Determination of the Disintegration Time of Tablets, III.(10), available at http://www.hc-sc.gc.ca/dhpmps/alt_formats/hpfb-dgpsa/pdf/prodpharma/tab_com-eng.pdf (July 5, 1989; updated Nov. 17, 2003) | | | Felton Reply Report |
| 15 | H | | | | 1983 | Chambliss, *The Forgotten Dosage Form: Enteric-Coated Tablets*, 7 Pharm. Tech. 124 (1983) | | | Byrn Dep. Ex. 13; Felton Opening Report; Felton Reply Report; Byrn Report |
| 16 | | | | | 2000 | Chemburkar *Dealing with the Impact of Ritonavir Polymorphs on the Late Stages of Bulk Drug Process Development*, 4 Organic Process Res. & Dev. 413 (2000) | | | Felton Reply Report; Byrn Report |
| 17 | | | | | 4/5/2013 | Clinical Pharmacology and Biopharmaceutics Review(s) for NDA 21876 | DCH-0157442 | DCH-0157528 | |
| 18 | H, EX | | | | 1998 | Compendium of Pharmaceuticals and Specialties, 33rd ed., pp. B58, 477 (1998) | | | Byrn Report; Felton Opening Report; Felton Reply Report; Mayersohn Report |
| 19 | | | | | Various | Compilation of correspondence between Duchesnay and Patheon regarding new formulation for Diclectin | DCH-0021112 | DCH-0021140 | Byrn Report; Felton Opening Report |
| 20 | | | | | Various | Compilation of Raymond Herbert consultation documents | DCH-0167957 | DCH-0168553 | |
| 21 | A, H, EX, DE | | | | Undated | Components and Composition of Diclectin | DCH-0122048 | DCH-0122056 | Byrn Report; Felton Opening Report |
| 22 | | | | | 4/8/2013 | Cross Discipline Team Leader Review for NDA 21876 | DCH-0157529 | DCH-0157564 | |
| 23 | | | | | 11/30/2015 | Curriculum Vitae of Anthony R. Scialli | | | Scialli Opening Report App. A |
| 24 | | | | | Undated | Curriculum Vitae of Daniel William Apley | | | Apley Report App. B |
| 25 | | | | | Undated | Curriculum Vitae of Frank Greaves | | | Greaves Dep. Ex. 1 |
| 26 | | | | | Undated | Curriculum Vitae of Harry C. Boghigian | | | Boghigian Opening Report App. A |
| 27 | | | | | Undated | Curriculum Vitae of Linda Felton | | | Felton Dep. Ex. 11; Felton Opening Report App. A |
| 28 | | | | | 6/2015 | Curriculum Vitae of Michael Mayersohn, Ph.D. | | | Mayersohn Dep. Ex. 2; App. A to Mayersohn Report |
| 29 | | | | | 8/9/1999 | Determination that Bendectin Was Not Withdrawn From Sale for Reasons of Safety of Effectiveness, 64(152) Federal Register 43190 (1999) | DCH-0029749 DCH-0029771 | DCH-0029750 DCH-0029772 | Umans Report; Scialli Reply Report; Elmquist Report; Byrn Report; Gallo Dep. Ex. 1; Byrn Report |
| 30 | | | | | 2/10/1998 | Development Agreement (Diclectin Tablets) between Global Pharm Inc. and Duchesnay Inc. | DCH-0162193 | DCH-0162195 | Gervais Dep. Ex. 31 |

| DTX | Objections | Offered | Marked | Admitted | Description | Begin Bates | End Bates | Previous Designations |
|---|---|---|---|---|---|---|---|---|
| 31 | H, EX | | | 2012 | Devore, Probability and Statistics for Engineering and the Sciences, Brooks/Cole, Boston, MA (2012) | | | Apley Report |
| 32 | | | | Undated | Diclectin ANDA 1.5.1 Basis for Submission | DCH-0014995 | DCH-0014998 | Gallo Dep Ex. 04; Mayersohn Report; Mayersohn Ex. 16 |
| 33 | | | | Undated | Diclectin ANDA 2.7.1 Summary of Biopharmaceutics Studies and Associated Analytical Methods | DCH-0015203 | DCH-0015260 | Gallo Dep. Ex. 5 |
| 34 | | | | Undated | Diclectin ANDA 3.2.P.1 Description and Composition of the Drug Product | DCH-0139238 | DCH-0139240 | |
| 35 | | | | 2/20/1990 | Diclectin Canada Product Monograph | DCH-0014926 | DCH-0014933 | Byrn Report; Mayersohn Report; Felton Opening Report |
| 36 | | | | Undated | Diclectin NDA 1.4.1 Reference Listed Drug (RLD) Information | DCH-0133007 | DCH-0133009 | |
| 37 | H, MD | | | Undated | Diclectin NDA 1.5 Meetings | DCH-0133017 | DCH-0133136 | |
| 38 | | | | Undated | Diclectin NDA 2.5 Clinical Overview | DCH-0133274 | DCH-0133289 | |
| 39 | | | | Undated | Diclectin NDA 2.7.1 Summary of Biopharmaceutics Studies and Associated Analytical Methods | DCH-0133290 | DCH-0133347 | |
| 40 | | | | Undated | Diclectin NDA 3.2.P.1 Description and Composition of the Drug Product | DCH-0134482 | DCH-0134484 | |
| 41 | | | | Undated | Diclectin NDA 3.2.P.2 Pharmaceutical Development | DCH-0162154 | DCH-0162169 | Gervais Dep. Ex. 2 |
| 42 | H, MD | | | Undated | Diclectin NDA 5.4 Literature References (March 2000 Meeting Request by Duchesnay and FDA Response) | DCH-0156652 | DCH-0156771 | |
| 43 | MD | | | 9/21/2007 | Diclectin Stability Results for Lot No. 1121 | DCH-0020108 | DCH-0020144 | Felton Reply Report |
| 44 | IT, A, H, MD, IL | | | 5/28/1996 | Diclectin Verification Report – Lot No. 5E7035 | DCH-0161129 | DCH-0161137 | Felton Reply Report |
| 45 | IT, A, H, MD, IL, DE | | | 11/18/1998 | Diclectin Verification Report – Lot No. 990 | DCH-0161240 | DCH-0161275 | Felton Reply Report |
| 46 | IT, A, H, MD, IL, DE | | | 11/19/1998 | Diclectin Verification Report – Lot No. 991 | DCH-0161276 | DCH-0161311 | Felton Reply Report |
| 47 | | | | 11/27/2015 | Discovery - Actavis' Third Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to Duchesnay, Inc. | | | |
| 48 | | | | 7/14/2015 | Discovery - Defendants' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to Duchesnay Inc. | | | Gervais Dep. Ex. 25; Gallo Dep. Ex. 16 |
| 49 | | | | 11/3/2015 | Discovery - Defendants' Second Notice of Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) to Duchesnay Inc. | | | Gallo Dep Ex. 17 |
| 50 | A, H, MD, IL, DE | | | Undated | Dissolution Data for Bendectin Batch No. 27931A | DCH-0122175 | DCH-0122186 | |
| 51 | H | | | 10/26/2009 | Doxylamine in Drugs in Pregnancy and Lactation, 8th ed., Gerald G. Briggs et al. eds. (2009) | DCH-0002119 | DCH-0002130 | |
| 52 | | | | Undated | Draft Patheon Diclectin Core Modification and Coating Optimization Report | PATH00000001 | PATH00000017 | |
| 53 | | | | Undated | Draft Sampling Protocol - Coated Tablets, Lot F0743 | DCH-0021677 | DCH-0021719 | |
| 54 | A, H | | | 4/18/2016 | Drugs @ FDA – Bendectin, available at http://www.accessdata.fda.gov/scripts/cder/drugsatfda/- index.cfm | | | Felton Opening Report; Boghigian Opening Report |
| 55 | | | | Various | Duchesnay and MDS Certificates of Analysis for Diclectin (New Formulation) - FD-442/S | DCH-0021141 | DCH-0021156 | Felton Opening Report |
| 56 | | | | Undated | Duchesnay presentation entitled Diclegis® | DCH-0000750 | DCH-0000783 | Gallo Dep Ex. 18 |
| 57 | H, NS | | | 5/16/2007 | Email from Betty Thompson to Annie Arbour regarding Diclectin dissolution data | DCH-0014418 | DCH-0014419 | Gallo Dep Ex. 12 |
| 58 | A, H, NS | | | 11/7/2012 | Email from Curtis Hannon to John Killackey et al. enclosing Diclectin Dissolution Report | DCH-0005574 | DCH-0005592 | |
| 59 | PRIV, NPTX | | | 9/16/2010 | Email from Fatima Lux to Eric Gervais enclosing Patheon Processing Order for F0742/S and MDS Certificate of Analysis for Diclectin Filmo-Enrobe dissolution profile | DCH-0033429 | DCH-0033457 | Portion of Gervais Dep. Ex. 21; Byrn Report |
| 60 | | | | 11/14/2012 | Email from Frederic Morneau to John Killackey et al. enclosing appendices to Diclectin Dissolution Report | DCH-0006456 | DCH-0006585 | |
| 61 | | | | 4/6/2013 | Email from Frederic Morneau to Michael Gallo regarding Diclegis patient information | DCH-0022454 | DCH-0022456 | Gallo Dep Ex. 15 |
| 62 | | | | 2/1/2010 | Email from Frederic Paulet to Jean-Luc St. Onge enclosing Eastacryl 30D Acrylic Polymer Dispersion for Enteric Coatings Report and Summary | DCH-0161789 | DCH-0161799 | |
| 63 | A, H, NS | | | 11/11/2009 | Email from Genevieve Bilodeau to Michael Gallo enclosing presentation for APGO Educational Series on Women's Health Issues – Nausea and Vomiting of Pregnancy | DCH-0013876 | DCH-0013921 | |
| 64 | CU of DTX-64 | | | 11/14/2012 | Email from Guylaine Pelchat to Frederic Morneau enclosing appendices to Diclectin Dissolution Report | DCH-0005603 | DCH-0005725 | |
| 65 | A, H, IT, NS | | | 2/26/2013 | Email from Guylaine Pelchat to Frederic Morneau enclosing Certificates of Analysis for NeoPharm dissolution testing | DCH-0005793 | DCH-0005803 | |
| 66 | DE, NSNO | | | 3/16/2012 | Email from John Killackey to Michael Gallo et al. regarding ANDA Filing Strategy | DCH-0005044 | DCH-0005045 | |
| 67 | DR, NS, H | | | 3/15/2012 | Email from John Killackey to Michael Gallo et al. enclosing FDA's classification of delayed versus extended release | DCH-0005063 | DCH-0005065 | |
| 68 | | | | 11/11/1999 | Email from Kerr Clark to Vic Shulman et al. regarding Diclectin dissolution results and next action | DCH-0021229 | DCH-0021229 | |

| DTX | Objections | Offered | Marked | Admitted | Date | Description | Begin Bates | End Bates | Previous Designations |
|---|---|---|---|---|---|---|---|---|---|
| 69 | | | | | 5/2/2007 | Email from Michael Gallo to Betty Thompson regarding Diclectin dissolution timeline for 505(b)(2) filing | DCH-0014181 | DCH-0014181 | Gallo Dep Ex. 11 |
| 70 | | | | | 12/20/2013 | Email from Michael Gallo to Elizabeth Cooper regarding Short Statement on Cariban and Nausefe | DCH-0000940 | DCH-0000942 | Gallo Dep Ex. 19 |
| 71 | H, NS | | | | 11/15/2006 | Email from Michael Gallo to Liubov Gargun regarding clarification of pharmacology issues identified by FDA | DCH-0100220 | DCH-0100223 | Gallo Dep Ex. 9 |
| 72 | H, NS | | | | 8/10/2005 | Email from Michael Gallo to Nenita Crisostomo enclosing presentation for Diclectin NDA 21-876 - Meeting with FDA Division of Reproductive & Urologic Drug Products | DCH-0014074 | DCH-0014093 | |
| 73 | A, H, NS | | | | 3/28/2013 | Email from Michael Gallo to Nick Fleischer regarding FDA Division Review for Diclectin/Diclegis NDA | DCH-0159213 | DCH-0159262 | Gallo Dep Ex. 2 |
| 74 | | | | | 1/25/2007 | Email from Michael Gallo to Susan Cusack et al. enclosing dissolution data for Lots 1018 and 1094 | DCH-0036282 | DCH-0036293 | Gallo Dep Ex. 10 |
| 75 | | | | | 11/14/2006 | Email from Michael Gallo to Susan Cusack regarding dissolution profiles and chemical structures at alternate rotation speeds | DCH-0099113 | DCH-0099146 | Gallo Dep Ex. 8 |
| 76 | | | | | 6/14/2005 | Email from Michael Gallo to Betty Thompson enclosing response to FDA's June 9, 2005 Clinical Pharmacology/Biopharmaceutics Information Request | DCH-0013014 | DCH-0013021 | |
| 77 | | | | | 8/21/2012 | Email from Michael Gallo to Eric Gervais et al. enclosing FDA letter regarding Filing Comments for NDA 21876 | DCH-0004893 | DCH-0004897 | Gallo Dep Ex. 13 |
| 78 | | | | | 11/6/2012 | Email from Micheal Gallo to Frederecic Morneau enclosing dissolution method report entitled Plan de justification pour methode de dissolution pour Diclectin FDA NDS | DCH-0004877 | DCH-0004892 | Gallo Dep Ex. 14 |
| 79 | | | | | 5/9/2016 | Email from Stacie Ropka to Jill MacAlpine regarding corrections to Linda Felton's expert reports | | | Felton Dep Ex. 13 |
| 80 | NSNO | | | | 5/1/2007 | Email from Susan Cusack to Liubov Gargaun et al. enclosing Type C Meeting Minutes for Diclectin IND 72,300 | DCH-0014182 | DCH-0014189 | |
| 81 | H, MD, NS | | | | 2/5/2004 | Email from Tina Fong to Eric Gervais enclosing Diclectin executed work orders | DCH-0001681 | DCH-0001752 | Portion of Greaves Dep. Ex. 3, Felton Opening Report; Greaves Dep. Ex. 5; Greaves Dep. Ex. 6 |
| 82 | | | | | 9/30/1999 | Email from Vic Shulman to Eric Gervais regarding Patheon manufacturing of Diclectin | DCH-0021238 | DCH-0021239 | Byrn Report; Gervais Dep. Ex. 14 |
| 83 | | | | | 2/1/2010 | Email from Vic Shulman to Frederic Paulet regarding Eastacryl coating | DCH-0161779 | DCH-0161787 | Gervais Dep. Ex. 8; portion of Greaves Dep. Ex. 4 |
| 84 | NS, A, H, DE | | | | Various | Excerpts from Duchesnay Lab Notebook | DCH-0021481 | DCH-0021520 | Boghigian Reply Report |
| 85 | H, IL | | | | Various | Excerpts from NDA 10598 for Bendectin | SANOFI0000576 | SANOFI0000650 | Boghigian Opening Report; Boghigian Reply Report; Mayersohn Report |
| 86 | DE | | | | Various | Excerpts of NDA for Diclectin and corresponding relating to same | DCH-0162111 | DCH-0162429 | Byrn Report; portion of Gervais Dep. Ex. 27; Felton Opening Report; Felton Reply Report |
| 87 | H | | | | 3/1/2001 | Fax from Vic Shulman to Kerr Clark regarding Diclectin EFCT | DCH-0021778 | DCH-0021780 | Gervais Dep Ex. 12 |
| 88 | H, R | | | | 10/24/2006 | FDA Approves New BAK-Free Formulation of Travatan, Review of Optometry (Oct. 24, 2006), available at http://www.reviewofoptometry.com/content/d/therapeutics/c/17029/ | | | Boghigian Reply Report |
| 89 | H | | | | 5/2005 | FDA Guidance for Industry, Nonclinical Studies for the Safety of Pharmaceutical Excipients | | | Scialli Reply Report |
| 90 | H | | | | 1997 | FDA Guidance for Industry, SUPAC-MR: Modified Release Solid Oral Dosage Forms 30-32 (1997) | | | Felton Opening Report; Byrn Report |
| 91 | H | | | | 3/30/2016 | FDA Inactive Ingredient Database, available online at http://www.accessdata.fda.gov/scripts/cder/iig/index.cfm | | | Scialli Reply |
| 92 | | | | | 4/5/2013 | FDA Pharmacology Reviews(s) of NDA 21876 (Diclegis) | | | Scialli Reply Report |
| 93 | H | | | | 1995 | FIP Guidelines for Dissolution Testing of Solid Oral Products, 57 Pharm. Ind. 362 (1995) | | | Byrn Report; Felton Opening Report |
| 94 | | | | | Undated | First Manufacture, Public Disclosure, Use, Shipment Offer for Sale, and Sale of Diclegis | | | Felton Reply Report; Gervais Dep. Ex. 10 |
| 95 | | | | | 7/21/2013 | Fong, The Gummy Deficiency, Double X Science, available at http://www.doublexscience.org/the-gummy-deficiency/ | | | Scialli Reply Report |
| 96 | A, H | | | | Undated | Frank Greaves Patents and Publications | | | |
| 97 | | | | | 1985 | Friedman, The Pharmacokinetics of Doxylamine: Use of Automated Gas Chromatography With Nitrogen-Phosphorus Detection , 25 J. of Clin. Pharmacology 448 (1985) | | | Mayersohn Report |
| 98 | H | | | | 1986 | Funaki, Discontinuous Absorption Property of Cimetidine , 31 International Journal of Pharmaceutics 119 (1986) | | | Felton Reply Report |
| 99 | H | | | | 1959 | Geiger, Bendectin in the Treatment of Nausea and Vomiting in Pregnancy , 14 Obstetrics and Gynecology, 688 (1959) | | | Felton Reply Report |
| 100 | H | | | | 1993 | Gordon, Effect of the Mode of Super Disintegrant Incorporation on Dissolution in Wet Granulated Tablets , 82 J. Pharm. Scis. 220 (1993) | | | Felton Reply Report; Byrn Report; Felton Opening Report |
| 101 | H | | | | 1982 | Gorman, An Evaluation of Croscarmellose as a Tablet Disintegrant in Direct Compression Systems , 8 Drug Dev. & Indus. Pharmacy 397 (1982) | | | Byrn Dep. Ex. 9; Felton Opening Report; Byrn Report; Felton Reply Report |
| 102 | H | | | | 1982 | Graf, Studies on the Direct Compression of Pharmaceuticals , 44 Pharm. Ind. 317 (1982) | | | Felton Opening Report; Felton Reply Report; Byrn Report |
| 103 | H, DE | | | | 2010 | Guo, Dissolution Testing: In Vitro Characterization of Oral Controlled Release Dosage Forms in Oral Controlled Release Formulation Design and Drug Delivery, Hong Wen & Kinam Park eds., pp. 245-256 (2010) | | | Felton Opening Report; Byrn Report |
| 104 | H, EX | | | | 1991 | Hahn and Meeker, Statistical Intervals: A Guide for Practitioners, John Wiley & Sons, Inc. ed., pp. 150-153, 168-171, 186, 350-351 (1991) | | | Apley Dep. Ex. 4 |

| DTX | Objections | Offered | Marked / Admitted | Date | Description | Bates Begin | Bates End | Previous Designations |
|---|---|---|---|---|---|---|---|---|
| 105 | H | | | 2012 | Hale, *Bendectin: How a Safe and Effective Drug was Removed from the Market by Our Legal System*, Clinical Review, 25-27, (Sep.-Oct. 2012) | | | Scialli Reply |
| 106 | | | | 1982 | Handbook of Nonprescription Drugs, 7th ed., American Pharmaceutical Association, Washington, DC. 1982 | | | Mayersohn Dep. Ex. 5 |
| 107 | | | | 2000 | Handbook of Pharmaceutical Excipients, 3rd ed., Arthur H. Kibbe ed., copyright and table of contents pages | | | Felton Dep. Ex. 6 |
| 108 | | | | 2000 | Handbook of Pharmaceutical Excipients., 3rd ed., Arthur H. Kibbe ed., pp. 60-67, 99-106, 143-145, 160-162, 256-260, 276-285, 305-310, 329-331, 358-359, 401-406 (2000) | | | Felton Dep. Ex. 7; Felton Opening Report; Felton Reply Report; Byrn Report; Byrn Dep. Ex. 5 |
| 109 | | | | 1991 | Hardy, *Evaluation of an Enteric-Coated Naproxen Pellet Formulation*, 5 Aliment. Pharmacol. Therap. 69 (1991) | | | Byrn Report; Felton Opening Report |
| 110 | | | | 1999 | Hardy, *Functionality of Nutrients & Thermal Treatments of Food*, 58 Proceedings of the Nutrition Soc'y 579 (1999) | | | Felton Reply Report |
| 111 | | | | 1989 | Healey, *Enteric Coatings and Delayed Release* in Drug Delivery to the Gastrointestinal Tract, J. G. Hardy et al. eds., pp. 83-96 (1989) | | | Byrn Dep. Ex. 16; Byrn Report; Felton Opening Report; Felton Reply Report |
| 112 | | | | 2010 | Horbal, *Azelastine HCl: A Review of the Old and New Formulations*, 2 Clinical Medicine Insights; Therapeutics 427 (2010) | | | Boghigian Dep. Ex. 5; Boghigian Reply Report |
| 113 | | | | 1999 | Hosmer, *Applied Survival Analysis: Regression Modeling of Time-to-Event Data*, 317 Wiley Interscience (1999) | | | Apley Report |
| 114 | | | | 1984 | Ink, *Vitamin B6 Metabolism*, 4 Annual Reviews of Nutrition 455 (1984) | | | Mayersohn Dep. Ex. 9; Mayersohn Report |
| 115 | | | | 11/1997 | IPEC – European Safety Committee, *The Proposed Guidelines for the Safety Evaluation of New Excipients*, European Pharmaceutical Review, November 1997 | | | Scialli Reply Report |
| 116 | | | | 2000 | Knopp, *Evaluating Niacin in its Various Forms*, 86(suppl.) Am. J. Cardiol. 51L (2000) | | | Elmquist Dep. Ex. 7; Elmquist Report Ex. 6 |
| 117 | | | | 2003 | Kouzi, *Nausea and Vomiting in Pregnancy*, 67(2) Am J of Pharmaceutical Education Article 66 (2003) | | | Scialli Reply Report |
| 118 | | | | 2003 | Kutcher, *Bendectin and Birth Defects II: Ecological Analyses*, 67 Birth Defects Research (Part A) 88 (2003) | DCH-0002134 | DCH-0002143 | Felton Reply Report |
| 119 | | | | 5/28/1998 | Laboratory Notebook No. PDS-NB-114 | PATH00000731 | PATH00000761 | Byrn Report; Felton Opening Report |
| 120 | A, H, R | | | 1/6/2012 | Letter from Alissa Lipton to Ryan Cook regarding document production | | | Felton Reply |
| 121 | | | | 3/1/1999 | Letter from Eric Gervais to Peter Yuen regarding acceptance of Proposal for Pilot & Validation Lots of Diclectin Enteric Coated Tablets | DCH-0021274 | DCH-0021284 | |
| 122 | | | | 12/8/1997 | Letter from Eric Gervais to Peter Yuen requesting reformulation of Diclectin to aqueous enteric film coating | DCH-0021116 | DCH-0021116 | Gervais Dep. Ex. 5; Byrn Dep. Ex. 7 |
| 123 | NS, H, DE, EX | | | 10/29/1999 | Letter from Eric Gervais to Vic Shulman enclosing information pertaining to F.O.I. | DCH-0021451 | DCH-0021492 | Boghigian Reply Report; Gervais Dep. Ex. 23 |
| 124 | | | | 1/28/2000 | Letter from Eric Gervais to Vic Shulman regarding packing/bottle specification | DCH-0022247 | DCH-0022247 | |
| 125 | | | | 9/30/2013 | Letter from FDA to Duchesnay regarding supplemental approval of NDA 21876 for labeling | DCH-0163992 | DCH-0164017 | Blank Report; Elmquist Report; Mayersohn Report |
| 126 | A, H | | | 5/10/1979 | Letter from FDA to Thomas O'Dall regarding Supplemental NDA No. 10598 | DCH-0121751 | DCH-0121761 | |
| 127 | | | | 10/27/2014 | Letter from Mark Uacura to FDA enclosing Duchesnay's ANDA for Diclectin | DCH-0014884 | DCH-0014896 | Gallo Dep. Ex. 3; Mayersohn Report |
| 128 | | | | 12/17/2004 | Letter from Mark Yacura to FDA regarding NDA 21876 application | DCH-0122420 | DCH-0122423 | Gallo Dep Ex. 6 |
| 129 | EX, DE, IL | | | 3/1/2000 | Letter from Mark Yacura to FDA regarding Request for Meeting by Duchesnay, Inc. and Outline of Proposed Protocol for a Bioavailability Study of Diclectin | DCH-0014982 | DCH-0014994 | |
| 130 | MD, DE | | | 12/17/2004 | Letter from Mark Yacura to FDA regarding submission of NDA 21876 | DCH-0018324 | DCH-0018329 | |
| 131 | | | | 4/5/1999 | Letter from Peter Yuen to Eric Gervais regarding Patheon development proposal | DCH-0021268 | DCH-0021270 | Byrn Report; Felton Opening Report |
| 132 | | | | 9/7/1999 | Letter from Peter Yuen to Eric Gervais regarding proposal for Patheon development work | DCH-0021240 | DCH-0021246 | Gervais Dep. 15 |
| 133 | | | | 1/28/1998 | Letter from Peter Yuen to Eric Gervais regarding reformulation proposal | DCH-0159720 | DCH-0159728 | Gervais Dep. Ex. 6; Gallo Dep. Ex. 22; Felton Opening Report; Byrn Report |
| 134 | | | | Undated | Letter from Vic Shulman regarding Diclectin reformulation dissolution results | DCH-0020924 | DCH-0020925 | |
| 135 | | | | Undated | Letter from Vic Shulman regarding rationale for crosscarmellose | DCH-0021250 | DCH-0021250 | |
| 136 | H | | | 8/8/1999 | Letter from Vic Shulman regarding summary and comments on analytical results of Diclectin tablets | DCH-0021251 | DCH-0021252 | Gervais Dep Ex. 13 |
| 137 | H | | | 5/5/1999 | Letter from Vic Shulman to Eric Gervais regarding analytical formulation summary | DCH-0161788 | DCH-0161788 | |
| 138 | H | | | 12/21/1999 | Letter from Vic Shulman to Eric Gervais regarding Diclectin manufacturing process | DCH-0021288 | DCH-0021297 | Felton Reply Report |
| 139 | H | | | 1971 | Levy, *Evidence in Man for Different Specialized Intestinal Transport Mechanisms for Riboflavin and Thiamin*, 24 American J. Clinical Nutrition 401 (1971) | | | Mayersohn Report |
| 140 | | | | 1966 | Levy, *Factors Affecting the Absorption of Riboflavin in Man*, 55 J. Pharmaceutical Sciences 285 (1966) | | | Mayersohn Dep. Ex. 10; Mayersohn Report |
| 141 | | | | 10/29/2015 | Linkedin Profile of Eric Gervais | | | Gervais Dep. Ex. 1 |
| 142 | H, R | | | 2002 | Livingston, *Fractal Nucleation and Growth Model for the Hydration of Tricalcium Silicate*, 30 Cement and Concrete Research 1853-60 (2000) | | | Apley Report |
| 143 | H | | | 1989 | Luna, *Doxylamine and Diphenhydramine Pharmacokinetics in Women on Low-Dose Estrogen Oral Contraceptives*, 29 J. of Clin. Pharmacology. 257 (1989) | | | Mayersohn Report |

| DTX | Objections | Offered | Marked | Admitted | Date | Description | Begin Bates | End Bates | Previous Designations |
|-----|-----------|---------|--------|----------|------|-------------|-------------|-----------|----------------------|
| 144 | | | | | 2014 | Madjunkova, *The Delayed-Release Combination of Doxylamine and Pyridoxine (Diclegis®/Diclectin®) for the Treatment of Nausea and Vomiting of Pregnancy* , 16 Pediatr. Drugs 199 (2014) | DCH-0041487 | DCH-0041499 | Scialli Reply Report; Byrn Report; Scialli Opening Report; Mayersohn Report; Blank Report; Elmquist Report; Mayersohn Dep. Ex. 11 |
| 145 | H, R | | | | 2002 | Mahieu, *Phase Transformation and Mechanical Properties of Si-Free CmnAl Transformation-Induced Plasticity-Aided Steel* , 33A Metallurgical and Materials Transactions 2573-80 (2002) | | | Apley Report |
| 146 | | | | | 2014 | Matok *Studying the Antiemetic Effect of Vitamin B6 for Morning Sickness: Pyridoxine and Pyridoxal Are Prodrugs* , 54 J. Clin. Pharmacol. 1429 (2014) | | | Mayersohn Dep Ex. 12; Mayersohn Report; Elmquist Dep. Ex. 4; Elmquist Report |
| 147 | H | | | | 1972 | Mayersohn, *Ascorbic Acid Absorption in Man-Pharmacokinetic Implications* , 19 European J. Pharmacology 140 (1972) | | | Mayersohn Report |
| 148 | | | | | 2002 | Mayersohn, *Principles of Drug Absorption* in Modern Pharmaceutics, 4th ed., G.S. Banker & C.T. Rhodes eds., pp. 23-66 (2002) | | | Mayersohn Report; Mayersohn Dep Ex. 17 |
| 149 | | | | | 2000 | Mazzotta, *A Risk-Benefit Assessment of Pharmacological and Nonpharmacological Treatments for Nausea and Vomiting of Pregnancy* , 59 Drugs 782 (2000) | | | Byrn Dep. Ex. 19; Byrn Report; Elmquist Report; Felton Reply Report |
| 150 | | | | | 7/28/2000 | MDS Certificate of Analysis for Diclectin dissolution profile | DCH-0021336 | DCH-0021347 | Gervais Dep. Ex. 24; Felton Reply Report; Byrn Report; Felton Opening Report; portion of Gervais Dep. Ex. 4 |
| 151 | | | | | Various | MDS Certificates of Analysis and Draft Patheon Diclectin Coating Optimization Report | DCH-0020960 | DCH-0020980 | Felton Opening Report |
| 152 | | | | | Various | MDS Certificates of Analysis for Diclectin Filmo-Enrobe dissolution profile | DCH-0021392 | DCH-0021413 | Byrn Report; Felton Reply Report; Apley Report |
| 153 | A, H, EX, IL | | | | 6/13/1979 | Memorandum from FDA regarding Review of Bioequivalence Study relating to NDA 10598 | DCH-0121797 | DCH-0121804 | |
| 154 | A, H, IL, MD, DE | | | | 3/17/1981 | Memorandum from FDA regarding Review of Dissolution Date of NDA 10598 | DCH-0126966 | DCH-0126974 | |
| 155 | | | | | 8/6/1999 | Memorandum from Geoffrey Khan regarding minutes of Global Pharm, Patheon and Duchesnay conference call regarding Diclectin | DCH-0021253 | DCH-0021254 | Felton Reply; Greaves Dep. Ex. 9 |
| 156 | H, DUP of DTX-138 | | | | 12/20/1999 | Memorandum from Vic Shulman regarding History of the Production of Diclectin (Bendectin) Tablets | DCH-0159671 | DCH-0159677 | Gervais Dep Ex. 26 |
| 157 | A, H, EX, IL | | | | 10/5/1981 | Memorandum from William Sohary regarding Review of Dissolution Data for NDA 10598 | DCH-0122198 | DCH-0122203 | |
| 158 | | | | | 2013 | Murteira, *Drug Reformulations and Repositioning in Pharmaceutical Industry and its Impact on Market Access: Reassessment of Nomenclature* , J. Mkt. Access & Health Pol'y, Aug. 2013 | | | Boghigian Dep. Ex. 6; Boghigian Reply Report |
| 159 | H | | | | 1995 | Neutel, *Measuring Drug Effectiveness By Default: The Case of Bendectin* , 86 Can J Public Health 66 (1995) | | | Scialli Opening Report; Scialli Reply Report |
| 160 | | | | | 3/31/1999 | Notes from conversation with Global Pharma regarding reformulation of Diclectin (French) | DCH-0021273 | DCH-0021273 | |
| 161 | | | | | 2009 | Nulman, *Pharmacokinetic Comparison of a Delayed-Release Combination of Doxylamine Succinate and Pyridoxine Hydrochloride (Diclectin®) and Oral Solutions of These Drugs in Healthy Women of Childbearing Age* , 16 Canadian J. Clin. Pharmacology e400 (2009) | | | Mayersohn Dep. Ex. 15; Mayersohn Report |
| 162 | H | | | | 1994 | Obara, *Properties of Free Films Prepared From Aqueous Polymers by a Spraying Technique* , 11 Pharm. Research 1562 (1994) | | | Felton Opening Report; Felton Reply Report; Byrn Report |
| 163 | | | | | 1995 | Ornstein, *Bendectin/Diclectin for Morning Sickness: A Canadian Follow-Up of an American Tragedy* , 9(1) Reproductive Technology 1 (1995) | DCH-0066021 | DCH-0066026 | Scialli Opening Report; Scialli Reply Report; Umans Report; Elmquist Report; Byrn Report |
| 164 | | | | | 1985 | Parry, *Sensory Neuropathy with Low-Dose Pyridoxine* , 35 Neurology 1466 (1985) | | | Elmquist Dep. Ex. 6; Elmquist Report Ex. 17; Elmquist Report; Mayersohn Report |
| 165 | | | | | 4/7/1998 | Patheon Data Sheet for Diclectin – Code No. FD-138/S | DCH-0161709 | DCH-0161725 | Byrn Report |
| 166 | | | | | 4/7/1998 | Patheon Data Sheet for Diclectin – Code No. FD-138/S | DCH-0161910 | DCH-0161926 | |
| 167 | | | | | 4/7/1998 | Patheon Data Sheet for Diclectin – Code No. FD-172/S | DCH-0161927 | DCH-0161944 | Byrn Report; Felton Reply Report; portion of Gervais Dep. Ex. 9; Felton Opening Report |
| 168 | | | | | 9/17/1998 | Patheon Data Sheet for Diclectin – Code No. FD-742/S | DCH-0022020 | DCH-0022045 | Felton Opening Report; Felton Reply Report; Byrn Report |
| 169 | | | | | 7/27/1998 | Patheon Data Sheet for Diclectin (Lot 001) – Code No. FD-082/S | DCH-0001581 | DCH-0001602 | Felton Opening Report |
| 170 | | | | | Undated | Patheon draft Diclectin Protocol entitled Scale-Up of Diclectin Enteric Coated Tablets | DCH-0021753 | DCH-0021771 | |
| 171 | | | | | 8/26/2015 | Patheon draft Protocol No. DCN-FP-003-0999-RO entitled Formulation Modification for Diclectin Tablets | PATH00000112 | PATH00000116 | |
| 172 | | | | | Undated | Patheon draft Protocol No. DCN-FP-006-0101-R1 entitled Scale-Up of Diclectin Enteric Coated Tablets | PATH00000128 | PATH00000138 | |
| 173 | | | | | Undated | Patheon draft Protocol No. DCN-FP-006-0101-R1 entitled Scale-Up of Diclectin Enteric Coated Tablets (revision 1) | PATH00000117 | PATH00000127 | |
| 174 | | | | | 8/26/2015 | Patheon draft Protocol No. DCN-MIS-002-0499-RO entitled Enteric Coating Optimization - Diclectin Tablets | PATH00000077 | PATH00000080 | |
| 175 | | | | | Illeg. | Patheon Processing Order for Diclectin – Code No. F0088/S | DCH-0021094 | DCH-0021111 | Felton Opening Report |
| 176 | | | | | 10/27/1999 | Patheon Processing Order for Diclectin – Code No. F0089/S | DCH-0021076 | DCH-0021093 | Felton Opening Report |

| DTX | Objections | Offered | Marked/Admitted | Date | Description | Begin Bates | End Bates | Previous Designations |
|-----|-----------|---------|----------------|------|-------------|-------------|-----------|----------------------|
| 177 | | | | 8/11/1998 | Patheon Processing Order for Diclectin – Code No. FD-134/S | DCH-0003468 | DCH-0003498 | Felton Opening Report; Felton Reply Report; Gervais Dep. Ex. 22; Greaves Dep. Ex. 7; portion of Gervais Dep. Ex. 11 |
| 178 | | | | 7/29/1998 | Patheon Processing Order for Diclectin - Code No. FD-136/S | DCH-0001685 | DCH-0001699 | Gervais Dep. Ex. 7 |
| 179 | | | | 1/5/1997 | Patheon Proposal No. DCN-FQ-001-1297-RO entitled Formulation Development for Diclectin Tablets | DCH-0021118 | DCH-0021127 | Gervais Dep. Ex. 17 |
| 180 | | | | 4/27/1999 | Patheon Proposal No. DCN-FQ-002-0499-R2 for Enteric Coating Optimization/Placebo Manufacturing Diclectin Tablets | PATH00000105 | PATH00000108 | |
| 181 | | | | 9/18/1999 | Patheon Protocol No. DCN-FP-003-0999-RO entitled Formulation Modification for Diclectin Tablets | DCH-0021132 | DCH-0021135 | Gervais Dep. Ex. 16; Greaves Dep. Ex. 10 |
| 182 | | | | 9/17/1999 | Patheon Protocol No. DCN-FP-003-0999-RO entitled Formulation Modification for Diclectin Tablets | DCH-0021027 | DCH-0021044 | Felton Opening Report; Felton Reply Report |
| 183 | | | | 1/15/2001 | Patheon Protocol No. DCN-FP-006-0101-R0 entitled Scale-Up of Diclectin Enteric Coated Tablets | DCH-0021717 | DCH-0021752 | Greaves Dep. Ex. 13 |
| 184 | | | | 2/2/2000 | Patheon Report No. DCN-FR-005-1299-R0 entitled Diclectin Core Modification and Coating Optimization | DCH-0022358 | DCH-0022402 | Greaves Dep. Ex. 12; portion of Gervais Dep. Ex. 18; Byrn Report; Felton Opening Report; Gallo Dep. Ex. 21; portion of Byrn Dep. Ex. 6 |
| 185 | | | | Undated | Patheon Scale-Up of Diclectin Enteric Coated Tablets Protocol (Process Outline/Formulation) | DCH-0021720 | DCH-0021752 | |
| 186 | | | | 6/16/2008 | Periodic Safety Update Report (PSUR) for Diclectin | DCH-0155936 | DCH-0155970 | Felton Opening Report; Felton Reply Report |
| 187 | A, H, EX, ID, R, BE | | | 3/21/1988 | Pharma Intelligence Pink Sheet, Stuart's Stuartnatal 1+1 Rx Multivitamin/Multimineral, available at https://www.pharmamedtechbi.com/publications/the-pinksheet/50/012/stuarts-stuartnatal-1--1-rx-multivitaminmultimineral | | | Scialli Reply |
| 188 | H | | | 1999 | Pharmaceutical Dosage Forms & Drug Delivery Systems, 7th ed., Howard C. Ansel, et al. eds., p. 225 (1999). | | | Felton Reply Report |
| 189 | H | | | 1989 | Pharmaceutical Dosage Forms, 2nd ed., Herbert A. Lieberman ed., pp. 108, 124-125 (1989) | | | Felton Opening Report |
| 190 | A, H | | | 1989 | Pharmaceutical Dosage Forms, 2nd ed., Herbert A. Lieberman ed., pp. 75-193 (1989) | DCH-0172143 | DCH-0172262 | |
| 191 | A, H | | | 12/10/2015 | Pharmaceutical Systems Consulting Inc. Website | | | Greaves Dep. Ex. 2 |
| 192 | CU of DTX-92 | | | 4/5/2013 | Pharmacology Review(s) for NDA 21876 | DCH-0157826 | DCH-0157869 | |
| 193 | H, IL | | | 1959 | Physician's Desk Reference, 13th ed., p. 733 (1959) | | | Boghigian Opening Report |
| 194 | H, IL | | | 1966 | Physician's Desk Reference, 20th ed., pp. 794-795 (1966) | | | Boghigian Opening Report |
| 195 | | | | 1976 | Physician's Desk Reference, 30th ed., p. 1089 (1976) | | | Boghigian Dep. Ex. 2; Boghigian Opening Report |
| 196 | | | | 1977 | Physician's Desk Reference, 31st ed., p. 1109 (1977) | | | Boghigian Dep. Ex. 3; Boghigian Opening Report; Mayersohn Report |
| 197 | H, IL | | | 1978 | Physician's Desk Reference, 32nd ed., p. 1170 (1978) | | | Boghigian Opening Report |
| 198 | H, IL | | | 1979 | Physician's Desk Reference, 33rd ed., p. 1193 (1979) | | | Blank Dep. Ex. 7; Scialli Opening Report; Scialli Reply Report |
| 199 | H, IL | | | 1980 | Physician's Desk Reference, 34th ed., p. 1205 (1980) | | | Scialli Opening Report; Scialli Reply Report |
| 200 | H, IL | | | 1981 | Physician's Desk Reference, 35th ed., p. 1239 (1981) | | | Scialli Opening Report; Scialli Reply Report |
| 201 | H, IL | | | 1982 | Physician's Desk Reference, 36th ed., pp. 1290-1291 (1982) | | | Scialli Opening Report; Scialli Reply Report; Boghigian Opening Report |
| 202 | | | | 1983 | Physician's Desk Reference, 37th ed., pp. 1345-1346 (1983) | | | Scialli Opening Report; Scialli Reply Report; Felton Opening Report; Byrn Report; Blank Dep. Ex. 8 |
| 203 | H | | | 1998 | Physician's Desk Reference, 52nd ed., pp. 446, 2806, 2918-2919 (1998) | | | Felton Reply Report |
| 204 | | | | 2000 | Piepho, The Pharmacokinetics and Pharmacodynamics of Agents Proven to Raise High-Density Lipoprotein Cholesterol, 86(suppl.) Am. J. Cardiol. 35L (2000) | | | Elmquist Report Ex. 10 |
| 205 | | | | 2001 | Power, A Survey on the Management of Nausea and Vomiting in Pregnancy by Obstetrician/Gynecologists, 8(2) Prim Care Update Ob/Gyns 69 (2001) | | | Scialli Opening Report; Scialli Reply Report; Blank Report |
| 206 | NS, H | | | 8/9/2005 | Presentation entitled Diclectin® NDA 21-876 - Meeting with FDA Division of Reproductive & Urologic Drug Products | DCH-0100989 | DCH-0101030 | Gallo Dep Ex. 7 |
| 207 | A, H, EX, IL | | | 8/18/1978 | Project Report No. R-78-07 entitled Bioequivalence of Two Batches of Bendectin as Measured by Urinary Excretion of Doxylamine and Pyridoxine Hydrochloride, Protocol 008-CB-006 | DCH-0121949 | DCH-0121973 | |
| 208 | | | | Undated | Proposed Label for Duchesnay's Diclectin NDA Product | DCH-0133137 | DCH-0133159 | |
| 209 | A, H, ID, R, PR | | | 4/14/2016 | Purdue University Website - Profile of Stephen R. Byrn | | | Byrn Dep. Ex. 3 |
| 210 | | | | Undated | Reformulation and Manufacturing History of Diclectin - Manufacturing Plant | DCH-0161821 | DCH-0161822 | Gervais Dep. Ex. 29 |
| 211 | H, NCP | | | 2000 | Remington: The Science and Practice of Pharmacy, 20th ed., pp. 656-57 (2000) | | | Felton Reply |
| 212 | | | | 2006 | Remington: The Science and Practice of Pharmacy, 21st ed., p. 965 (2006) | | | Felton Dep. Ex. 16 |
| 213 | H | | | 1/25/2016 | Report - Expert Report of Anthony R. Scialli, M.D. | | | Blank Report; Felton Reply Report; Umans Report; Byrn Report; Elmquist Report |

| DTX | Objections | Offered | Marked | Admitted | Date | Description | Beg Bates | End Bates | Previous Designations |
|---|---|---|---|---|---|---|---|---|---|
| 214 | H | | | | 3/30/2016 | Report - Expert Report of Daniel W. Apley, Ph.D. | | | Apley Dep. Ex. 1; Snee Dep. Ex. 2 |
| 215 | H | | | | 1/27/2016 | Report - Expert Report of Harry C. Boghigian | | | Boghigian Dep Ex. 1; Blank Report; Umans Report; Elmquist Report; Byrn Report |
| 216 | H | | | | 1/27/2016 | Report - Expert Report of Linda Felton Concerning Invalidity of U.S. Patent No. 6,340,695 | | | Felton Dep. Ex. 2 |
| 217 | H | | | | 3/30/2016 | Report - Expert Report of Michael Mayersohn, Ph.D. | | | Elmquist Dep Ex. 3; Felton Reply Report; Scialli Reply Report; Mayersohn Dep. Ex. 1 |
| 218 | H | | | | 3/30/2016 | Report - Reply Expert Report of Anthony R. Scialli, M.D. | | | Blank Dep. Ex. 6; Mayersohn Report |
| 219 | H | | | | 3/30/2016 | Report - Reply Expert Report of Harry C. Boghigian | | | Boghigian Dep. Ex. 4 |
| 220 | H | | | | 3/30/2016 | Report - Reply Expert Report of Linda Felton Concerning Obviousness | | | Apley Report; Byrn Dep. Ex. 19; Felton Dep. Ex. 1 |
| 221 | | | | | 2011 | Rowland & Tozer, Clinical Pharmacokinetics and Pharmacodynamics: Concepts and Applications, 4th ed., Lippincott Williams & Wilkins ed., pp. 73-215, 445-482, 603-631 (2011) | | | Elmquist Report Ex. 4 |
| 222 | | | | | 1995 | Rowland & Tozer, Clinical Pharmacokinetics: Concepts and Applications, 3rd ed., Lippincott Williams & Wilkins eds., pp. 34-50, 109-136, 156-183, 367-423 (1995) | | | Elmquist Report Ex. 3; Mayersohn Report |
| 223 | H, EX | | | | 1996 | Rudnic, *Tablet Dosage Forms* in Modern Pharmaceutics, 3rd ed., Gilbert S. Banker & Christopher T. Rhodes eds., pp. 333-394 (1996) | | | Byrn Dep. Ex. 14; Felton Opening Report; Byrn Report; Felton Reply Report |
| 224 | H | | | | 1989 | Sangalli, *Cross-Linked Sodium Carboxymethylcellulose as a Carrier for Dissolution Rate Improvement of Drugs*, 128 Boll Chim Farm 242 (1989) | | | Greaves Dep Ex. 11 |
| 225 | H | | | | 1980 | Shangraw, *A New Era of Tablet Disintegrants* , 4 Pharm. Technol. 49 (1980) | | | Byrn Report; Byrn Dep. Ex. 10; Felton Reply Report; Felton Opening Report |
| 226 | | | | | 2014 | Slaughter, *FDA Approval of Doxylamine-Pyridoxine Therapy for Use in Pregnancy* , 370 New Engl. J. Med. 1081 (2014) | DCH-0000152 | DCH-0000154 | Blank Dep. Ex. 4; Umans Report; Elmquist Report; Blank Report; Byrn Report |
| 227 | | | | | 1986 | Slikker, *Metabolism of <sup>14</sup>C-labeled Doxylamine Succinate (Bendectin®) in the Rhesus Monkey (Macaca mulatta)*, 10 J. of Analytical Toxicology 87 (1986) | | | Mayersohn Dep. Ex. 6; Mayersohn Report |
| 228 | H, A | | | | Undated | Spreadsheet regarding example ingredients | DCH-0097482 | DCH-0097483 | |
| 229 | A, H, EX, IL | | | | Undated | Study No. 649-B-28 entitled Bendectin Tables Dissolution - Dissolution of Doxylamine Succinate/Pyridoxine HCl Formulation | DCH-0122045 | DCH-0122047 | |
| 230 | | | | | 1952 | The Merck Index of Chemicals and Drugs, 6th ed., pp. 376-379 (1952) | | | Mayersohn Dep. Ex. 4; Mayersohn Report |
| 231 | | | | | 4/18/2016 | Tox Town – Phthalates, available at http://toxtown.nlm.nih.gov/text_version/chemicals.php?id=24 | | | |
| 232 | H, R | | | | 4/18/2014 | Trademark Registration No. 74561314 (Eastacryl) | | | Byrn Report; Felton Opening Report |
| 233 | R, PR, NPTX | | | | 1992 | *Turpin v. Merrell Dow Pharm., Inc.* , 959 F.2d 1349, 1350 (6th Cir. 1992) | | | Boghigian Opening Report |
| 234 | H | | | | 11/4/2010 | U.S. Patent Application 2010/0278913 | | | |
| 235 | H | | | | 4/12/1977 | U.S. Patent No. 4,017,647 | | | Byrn Report; Felton Opening Report |
| 236 | H | | | | 9/2/1986 | U.S. Patent No. 4,609,675 | DCH-0172453 | DCH-0172474 | Byrn Dep Ex. 11; Byrn Report; Felton Opening Report; Felton Reply Report |
| 237 | | | | | 7/20/1996 | U.S. Patent No. 5,229,134 | | | Felton Dep. Ex. 4; Felton Reply Report; Byrn Dep. Ex. 12; Byrn Report; Felton Opening Report |
| 238 | H | | | | 8/24/1993 | U.S. Patent No. 5,238,686 | | | Byrn Report; Felton Opening Report |
| 239 | H | | | | 9/17/1996 | U.S. Patent No. 5,556,639 | DCH-0172272 | DCH-0172288 | Felton Opening Report |
| 240 | H | | | | 3/31/1998 | U.S. Patent No. 5,733,575 | DCH-0173129 | DCH-0173139 | Felton Opening Report |
| 241 | H | | | | 7/27/1999 | U.S. Patent No. 5,928,668 | | | |
| 242 | H | | | | 11/2/1999 | U.S. Patent No. 5,976,570 | | | |
| 243 | H | | | | 11/9/1999 | U.S. Patent No. 5,980,951 | | | Felton Opening Report; Byrn Report |
| 244 | H | | | | 2/15/2000 | U.S. Patent No. 6,024,981 | MYLB_DOXY00034387 | MYLB_DOXY00034399 | Felton Dep Ex. 10; Felton Reply Report; Byrn Report; Felton Opening Report; Byrn Dep. Ex. 17 |
| 245 | H | | | | 3/6/2001 | U.S. Patent No. 6,197,329 | MYLB_DOXY00034321 | MYLB_DOXY00034332 | Byrn Report; Felton Opening Report; Felton Reply Report |
| 246 | H | | | | 7/28/2015 | U.S. Patent No. 9,089,489 | | | Gallo Dep. Ex. 20; Elmquist Dep. Ex. 5; Mayersohn Report; Mayersohn Dep. Ex. 13 |
| 247 | | | | | 1995 | United States Pharmacopeia, 23rd ed., pp. 560, 1348, 1791-1793, 1795-1796, 2085, 2106, 2205-2206 (1995) | | | Felton Opening Report; Felton Reply Report; Byrn Report; Felton Dep. Ex. 9 |
| 248 | | | | | 2000 | United States Pharmacopeia, 24th ed., pp. 1944-1947 (2000) | | | Felton Opening Report; Byrn Report; Felton Reply Report |
| 249 | IT, A, H, MD | | | | 11/23/1999 | Verification Report for Diclectin Lot No. 1001 | DCH-0159737 | DCH-0159762 | Felton Reply Report; Byrn Report |
| 250 | IT, A, H, MD | | | | 3/29/2000 | Verification Report for Diclectin Lot No. 1007 | DCH-0159792 | DCH-0159854 | |

| DTX | Objections | Offered | Marked | Admitted | Date | Description | Bates Begin | Bates End | Previous Designations |
|---|---|---|---|---|---|---|---|---|---|
| 251 | IT, A, H, MD | | | | 7/30/1999 | Verification Report for Diclectin Lot No. 997 | DCH-0021298 | DCH-0021335 | Byrn Report; Felton Opening Report; Apley Reply Report; portion of Gervais Dep. Ex. 3 |
| 252 | H | | | | 1971 | Wagner, *Enteric Coatings* in Biopharmaceutics and Relevant Pharmacokinetics, pp. 158-165 (1971) | | | Felton Reply Report; Felton Opening Report; Byrn Report |
| 253 | H | | | | 1942 | Willis, *Clinical Observation in Treatment of Nausea and Vomiting in Pregnancy with Vitamins B₁ and B₆*, 44 Am. J. Obstetrics & Gynecology 265 (1942) | | | Felton Opening Report |
| 254 | H | | | | 12/31/1997 | WO 1997/49394 | DCH-0173086 | DCH-0173109 | Byrn Report; Felton Opening Report |
| 255 | | | | | 1/28/1999 | WO 1999/03453 | | | Felton Dep. Ex. 5; Byrn Dep. Ex. 20; Felton Opening Report; Byrn Report; Felton Reply Report |
| 256 | H | | | | 11/9/2000 | WO 2000/066082 | | | Byrn Report; Felton Opening Report |
| 257 | H | | | | 2/8/2011 | WO 2001/08661 | DCH-0173481 | DCH-0173510 | Byrn Report; Felton Opening Report; Felton Reply Report |
| 258 | | | | | 1995 | Zempleni, *Pharmacokinetics of Vitamin B₆ Supplements in Humans*, 14(6) Journal of the American College Nutrition 579 (1995) | DCH-0126995 | DCH-0127002 | |
| 259 | | | | | Undated | Drugs @ FDA – Decapryn, available at http://www.accessdata.fda.gov/scripts/cder/drugsatfda/ index.cfm | | | |
| 260 | | | | | 12/23/1999 | Letter from Eric Gervais to Peter Yuen regarding authorization of Vic Shulman to act on behalf of Duchesnay for Diclectin manufacturing | DCH-0021180 | DCH-0021204 | |
| 261 | A, H | | | | 11/9/2015 | Letter from Thomas Hedemann to Alissa Lipton requesting production of documents and confirmation as to stability testing | | | |
| 262 | | | | | 2/28/2001 | MDS Certificate of Analysis for Diclectin Filmo-Enrobe (dissolution profile) | DCH-0003463 | DCH-0003464 | |
| 263 | | | | | | Patheon Formulation Development Report, Diclectin Tablets (Doxylamine Succinate, 10 mg & Pyridoxine HCl, 10 mg) | PATH00000038 | PATH00000075 | |
| 264 | | | | | 5/3/1999 | Letter from C. Boyer to P. Yuen re Proposal #DCN-FO-002-0499-R2 | DCH-0021256 | DCH-0021265 | |
| 265 | | | | | 2/15/2002 | Duchesnay Amendment to Agreement dated April 01, 1999 | DCH-0177214 | DCH-0177214 | |

Objection Codes

A – Lack of authenticity

B – Violates best evidence rule

BR – Improper bates range listed

CU or DUP – Cumulative of another DTX

DE – Description is inaccurate and/or incomplete

EX – Document is an improper excerpt from a larger document

H – Hearsay

ID – Incomplete document

IL – Some portion of the document is illegible or of insufficient quality (or a page is blank or missing)

IT – Improper and/or inaccurate translation, or no translation provided

MD – Document improperly consists of multiple documents

NCP – No PDF copy provided

NS – Duchesnay does not believe that a proposed stipulation applies

NSNO – Duchesnay does not believe that a proposed stipulation applies, but no objections are offered

NPTX – Not a proper trial exhibit

PR – Probative value outweighed by unfair prejudice, confusion of issues, undue delay, and/or waste of time

PRIV – Privileged document that has been clawed back

R – Not relevant

# EXHIBIT H

Plaintiffs identify the following witnesses whom they may call live or by deposition at trial.  This list is not a commitment that Plaintiffs will call any particular witness at trial, or a representation that any of the witnesses listed are available or will appear for trial.  If any third-party or other witness is unavailable, Plaintiffs reserve the right to use his or her deposition testimony.  With respect to Defendants' witnesses, Plaintiffs reserve the right to introduce testimony through deposition or live examination, as appropriate.  Plaintiffs also reserve the right to call any witnesses called by Defendants, and to revise or supplement this list in light of issues raised after the submission of this list, further rulings by the Court, in response to changes made by Defendants to their arguments or other positions, or any other changed circumstances. Plaintiffs further reserve the right to call anyone appearing on Defendants' witness list or otherwise designated as a trial witness by Defendants, to call additional witnesses to the extent necessary to provide foundational testimony if Defendants contest the authenticity or admissibility of any materials to be offered at trial, to call any witness for the purpose of impeachment, and to substitute witnesses for any listed witnesses should any of the listed witnesses become unavailable for trial.

## I.      FACT WITNESSES

### A.      Witnesses in Connection with Duchesnay

1.      Eric Gervais (live and/or by deposition)
        ** Deposition Designations in Exhibit I

2.      Michael Gallo (live and/or by deposition)
        ** Deposition Designations in Exhibit I

### B.      Third-Party Witness

3.      Frank Greaves (live and/or by deposition)
        **Deposition Designations in Exhibit I

C. **Witnesses in Connection with Actavis**

    4.      Craig E. Jones (live and/or by deposition)

    5.      Suparna Mukherjee (live and/or by deposition)

    6.      Sandeep Pandita (live and/or by deposition)

    7.      Guocai Tang (live and/or by deposition)

    8.      Janet Vaughn (live and/or by deposition)

D. **Witnesses in Connection with Mylan**

    9.      Santanu Chakraborty (live and/or by deposition)

    10.     David Mitchell (live and/or by deposition)

    11.     Joseph Sobecki (live and/or by deposition)

## II.   EXPERT WITNESSES

Plaintiffs list hereunder the name and general specialties of the experts they propose to call as live witnesses at trial.  The listed experts' more specific specialties and matters of testimony are set forth in detail in their expert reports that have been served in this case.  Plaintiffs include in their expert witness list those fact witnesses listed above, to the extent that the testimony of those fact witnesses, because of its technical nature, may be considered hybrid fact/expert testimony.

    1.  Kenneth Blank, M.D.
       Treatment of patients with nausea and vomiting during pregnancy

    2.  David E. Bugay, Ph.D.
       Analytical testing, specifically dissolution testing of Diclegis® and Defendants' ANDA products

    3.  Stephen R. Byrn, Ph.D.
       Pharmaceutical formulation

    4.  Diane J. Burgess, Ph.D.
       Pharmaceutical formulation and dissolution testing

Plaintiffs' Witness List & Deposition Designations

5. William F. Elmquist, Ph.D.
   Pharmacokinetics, pharmacodynamics, and biopharmaceutics

6. Ronald D. Snee, Ph.D.
   Applied statistics regarding the '695 Patent

7. Jason G. Umans, M.D., Ph.D.
   Treatment of patients with nausea and vomiting during pregnancy

8. Cheryl L. Zimmerman, Ph.D.
   Pharmacokinetics and biopharmaceutics

**Deposition Testimony of Craig E. Jones**
**December 15, 2015**

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 11:16 12:10 | R, U | | |
| 13:18-25 | R, U | | |
| 14:4-16:16 | R, U | 16:17-17:1 | |
| 17:2-5 | R, U | | |
| 17:13-19:3 | R, U | | |
| 19:7-10 | R, U | 19:11-13 | |
| 19:14-20:3 | R, U | | |
| 20:18-23:5 | R, U | | |
| 23:9-17 | R, U | | |
| 24:1-25:20 | R, U | | |
| 29:12-24 | R, U | | |
| 30:4-8 | R, U | | |
| 30:12-18 | R, U | | |
| 30:22-31:10 | R, U | | |
| 31:12-15 | R, U | | |
| 32:23-33:12 | R, U | | |
| 33:14-19 | R, U | | |
| 33:23-36:11 | R, U | 36:12-15 | |
| 37:11-38:1 | R, U | 38:2-4 | I (38:5-6) |
| 38:10-39:6 | R, U | | |
| 39:17-40:15 | R, U | 40:16-20 | D, U, R |
| 41:10-42:10 | R, U | 42:11-17 | |
| 42:18-43:23 | R, U | | |
| 45:13-46:12 | R, U | | |
| 46:17-47:4 | R, U | 47:5-9 | |
| 47:10-16 | R, U | | |
| 48:1-3 | R, U | | |
| 48:9-22 | R, U | | |
| 49:3-10 | R, U | | |
| 49:17-22 | R, U | | |
| 50:21-51:5 | R, U | | |
| 54:20-22 | R, U | 54:23-55:1 | |
| 55:10-18 | R, U | | |
| 56:6-15 | R, U | | |
| 58:4-59:3 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 61:3-17 | R, U | | |
| 62:9-18 | R, U | | |
| 64:17-65:6 | R, U | 65:7-10 | |
| 65:11-20 | R, U | | |
| 66:7-67:10 | R, U | | |
| 67:21-68:7 | R, U | | |
| 68:11-70:15 | R, U | | |
| 70:19-71:21 | R, U | | |
| 72:3-74:10 | R, U | | |
| 83:19-84:20 | R, U | | |
| 87:5-88:19 | R, U | | |
| 89:13-25 | R, U | | |
| 90:12-15 | R, U | | |
| 90:17-91:4 | R, U | | |
| 91:17-24 | R, U | | |
| 92:21-93:10 | R, U | | |
| 93:13-17 | R, U | | |
| 94:8-12 | R, U | 94:3-7 | |
| 94:17-95:21 | R, U | 95:22-25 | D, U, R |
| 96:1-5 | R, U | | |
| 96:7-15 | R, U | | |
| 97:8-11 | R, U | 97:12-17 | D, U, R |
| 98:17-20 | R, U | 98:21-22 | D, U, R |
| 98:23-99:8 | R, U | | |
| 99:11-14 | R, U | | |
| 100:15-18 | R, U | | |
| 100:22-101:20 | R, U | | |
| 102:19-103:9 | R, U | | |
| 104:16-19 | R, U | | |
| 104:21-105:18 | R, U | | |
| 107:13-108:19 | R, U | | |
| 108:22-109:6 | R, U | 109:7-8 | |
| 109:9-110:14 | R, U | | |
| 112:8-17 | R, U | | |
| 112:20-21 | R, U | | |
| 113:11-21 | R, U | | |
| 114:11-18 | R, U | | |
| 114:21-115:24 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 116:15-117:8 | R, U | | |
| 117:17-118:4 | R, U | | |
| 119:15-120:15 | R, U | | |
| 121:9-12 | R, U | | |
| 121:14-19 | R, U | | |
| 121:22-122:5 | R, U | | |
| 122:12-123:2 | R, U | | |
| 123:21-124:13 | R, U | | |
| 124:16-125:3 | R, U | 125:5 | |
| 125:6-126:9 | R, U | | |
| 126:16-20 | R, U | | |
| 126:25-127:12 | R, U | | |
| 128:3-129:16 | R, U | | |
| 129:19-130:11 | R, U | | |
| 130:21-131:3 | R, U | | |
| 132:15-18 | R, U | | |
| 132:20-133:25 | R, U | | |
| 134:2-7 | R, U | | |
| 134:25-135:9 | R, U | 135:10-11 | D, U, R |
| 135:12-14 | R, U | | |
| 136:17-137:22 | R, U | | |
| 138:2-6 | R, U | | |
| 138:9-25 | R, U | | |
| 139:4-141:17 | R, U | | |
| 142:19-144:20 | R, U | | |
| 145:12-25 | R, U | | |
| 146:2-5, 146:7-147:25 | R, U | 148:1-14 | |
| 148:22-25 | R, U | | |
| 149:2-150:15 | R, U | | |
| 151:2-12 | R, U | | |
| 151:19-22 | R, U | | |
| 151:24-153:3 | R, U | | |
| 155:3-9 | R, U | | |
| 155:12-13 | R, U | | |
| 155:15-156:6 | R, U | | |
| 157:18-158:7 | R, U | | |
| 161:2-9 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 170:20-23 | R, U | | |
| 170:25-171:8 | R, U | | |
| 171:15-172:3 | R, U | | |
| 172:17-24 | R, U | | |
| 173:16-174:1 | R, U | | |
| 174:22-175:8 | R, U | 175:13-16 | |
| 175:17-177:24 | R, U | | |
| 178:3-23 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

**Deposition Testimony of Suparna Mukherjee**
**November 20, 2015**

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 5:17-19 | R, U | | |
| 7:20-8:19 | R, U | 8:20-21 | D, U, R |
| 8:22-9:8 | R, U | | |
| 9:10-13 | R, U | 9:14-15 | D, U, R |
| 9:16-17 | R, U | | |
| 11:12-16 | R, U | 11:17-18 | D, U, R |
| 11:19-21 | R, U | | |
| 12:1-5 | R, U | | |
| 12:7-18 | R, U | | |
| 12:20-13:2 | R, U | | |
| 13:14-22 | R, U | | |
| 14:16-20 | R, U | | |
| 15:9-16:9 | R, U | | |
| 16:12-19 | R, U | | |
| 18:3-21 | R, U | | |
| 19:7-20:9 | R, U | | |
| 20:20-21:1 | R, U | | |
| 21:6-13 | R, U | 21:14-17 | D, U, R |
| 21:18-21 | R, U | | |
| 22:1-23:8 | R, U | 23:9-14 | D, U, R |
| 23:16-24:5 | R, U | | |
| 24:11 | R, U | | |
| 27:3-28:3 | R, U | | |
| 28:9-15 | R, U | | |
| 28:19-29:8 | R, U | | |
| 32:11-12 | R, U | | |
| 32:14-16 | R, U | | |
| 32:18-33:2 | R, U | 33:3-4 | D, U, R |
| 33:5-9 | R, U | | |
| 33:11-34:3 | R, U | | |
| 34:6-9 | R, U | | |
| 34:11-13 | R, U | | |
| 34:17-35:1 | R, U | | |
| 35:9-11 | R, U | | |
| 36:17-37:9 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 37:13-20 | R, U | | |
| 40:11-21 | R, U | | |
| 43:1-4 | R, U | | |
| 43:7-44:1 | R, U | | |
| 44:4-5 | R, U | | |
| 51:18-52:18 | R, U | | |
| 52:22-53:12 | R, U | | |
| 56:2-22 | R, U | | |
| 57:9-15 | R, U | 57:16-18 | D, U, R |
| 57:19-58:1 | R, U | | |
| 58:3-5 | R, U | | D, U, R (58:14-15) |
| 58:8-9 | R, U | 58:11-16 | |
| 61:17-62:7 | R, U | | |
| 63:21-64:5 | R, U | | |
| 64:8-9 | R, U | | |
| 64:11-20 | R, U | | |
| 66:17-68:3 | R, U | | |
| 71:11-72:3 | R, U | | |
| 72:11-73:20 | R, U | | |
| 74:2-13 | R, U | | |
| 74:19-75:13 | R, U | | |
| 75:15-76:3 | R, U | | |
| 77:6-11 | R, U | | |
| 77:20-78:13 | R, U | | |
| 82:21-83:5 | R, U | | |
| 83:9-18 | R, U | 83:6-8 | |
| 86:7-19 | R, U | | |
| 87:12-88:20 | R, U | | |
| 89:2-90:3 | R, U | | |
| 90:5-19 | R, U | | |
| 91:9-92:20 | R, U | | |
| 92:22-93:21 | R, U | | |
| 94:1 | R, U | | |
| 94:3-11 | R, U | | |
| 95:7-97:20 | R, U | | |
| 98:6-99:4 | R, U | 97:21-98:5 | |
| 121:4-7 | R, U | | |
| 121:19-123:12 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 123:22-124:4 | R, U | | |
| 125:4-11 | R, U | | |
| 125:16-126:10 | R, U | 126:11-15 | D, U, R |
| 126:16-18 | R, U | | |
| 126:20-127:3 | R, U | 127:4-6 | |
| 127:7-128:3 | R, U | | |
| 132:11-15 | R, U | | |
| 132:17-22 | R, U | | |
| 133:3-15 | R, U | 133:1-2; 133:16-134:8 | D, U, R (134:1-2, 134:4-5) |
| 137:8-16 | R, U | 137:17-18 | D, U, R |
| 137:19-20 | R, U | | |
| 137:22-138:6 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

**Deposition Testimony of Sandeep Pandita**
**November 5, 2015**

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 6:24-7:1 | R, U | | |
| 8:15-9:9 | R, U | | |
| 9:12-17 | R, U | | |
| 10:9-11:11 | R, U | | |
| 15:8-16:1 | R, U | | |
| 17:5-9 | R, U | | |
| 17:13-16 | R, U | | |
| 17:20-23 | R, U | | |
| 18:3-11 | R, U | | |
| 18:16-24 | R, U | | |
| 19:3-6 | R, U | 19:7-14 | |
| 19:19-20 | R, U | | |
| 19:24-20:19 | R, U | 20:20-21:4 | D, U, R |
| 21:5 | R, U | | |
| 22:23-23:13 | R, U | 23:14-22 | D, U, R |
| 23:23-25 | R, U | | |
| 24:15-25:4 | R, U | | |
| 25:10-23 | R, U | | |
| 26:2-3 | R, U | | |
| 26:13-16 | R, U | | |
| 26:18-19 | R, U | | |
| 27:12-22 | R, U | | |
| 29:17-30:9 | R, U | | |
| 31:9-14 | R, U | | |
| 31:20-24, 32:1-9 | R, U | | |
| 32:15-20 | R, U | | |
| 33:5-11 | R, U | | |
| 33:21-34:2 | R, U | | |
| 34:8-14 | R, U | | |
| 35:18-36:16 | R, U | | |
| 41:13-24 | R, U | | |
| 42:3-13 | R, U | | |
| 42:15-18 | R, U | 43:9-19 | D, U, R (43:12-14) |
| 43:21-44:4 | R, U | | |
| 44:24-45:12 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 45:16-46:8 | R, U | | |
| 47:1-8 | R, U | | |
| 48:2-50:2 | R, U | 50:3-13 | D, U, R (50:8-10) |
| 50:19-51:2 | R, U | | |
| 51:6-52:7 | R, U | | |
| 52:11-13 | R, U | | |
| 52:20-24 | R, U | 52:25-53:13 | |
| 53:14-54:13 | R, U | 54:14-15 | D, U, R |
| 54:16-18 | R, U | | |
| 54:20-57:19 | R, U | | |
| 59:24-60:13 | R, U | 60:14-15 | D, U, R |
| 60:16-18 | R, U | | |
| 61:5-20 | R, U | | |
| 62:6-24 | R, U | | |
| 63:2-5 | R, U | | |
| 63:7-65:8 | R, U | | |
| 65:10-11 | R, U | | |
| 65:16-20 | R, U | | |
| 66:6-25 | R, U | | |
| 67:2-5 | R, U | | |
| 67:17-18 | R, U | | |
| 67:22-68:4 | R, U | | |
| 68:11-19 | R, U | | |
| 73:11-74:21 | R, U | | |
| 74:24-25 | R, U | | |
| 75:2-3 | R, U | 75:4-6 | D, U, R |
| 75:7-8 | R, U | | |
| 75:10-15 | R, U | | |
| 76:9-19 | R, U | 76:4-8 | U, R |
| 77:7-18 | R, U | 77:19-20 | U, R |
| 77:21-25 | R, U | | |
| 78:2-12 | R, U | | |
| 84:17-85:5 | R, U | | |
| 85:9-12 | R, U | | |
| 85:14-22 | R, U | 80:23-84:15 | D, U, R (81:1-2) |
| 89:14-90:2 | R, U | | |
| 90:9-13 | R, U | | |
| 99:20-24 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 100:6-10 | R, U | 100:1-5 | |

**Deposition Testimony of Guocai Tang**
**November 3, 2015**

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 6:25-7: 4 | R, U | | |
| 8:22-11:6 | R, U | | |
| 11:13-12:11 | R, U | | |
| 12:25-13:5 | R, U | | |
| 14:15-20 | R, U | | |
| 14:24-15:18 | R, U | | |
| 15:21-25 | R, U | 16:1-6 | D, U, R |
| 17:6-22 | R, U | | |
| 18:5-13 | R, U | | |
| 18:21-19:8 | R, U | | |
| 23:17-24:20 | R, U | | |
| 25:14-15 | R, U | | |
| 25:17 | R, U | | |
| 25:23-26:1 | R, U | | |
| 26:25-28:13 | R, U | | |
| 28:17-29:3 | R, U | | |
| 29:9-11 | R, U | | |
| 29:24-30:13 | R, U | | |
| 33:10-34:4 | R, U | | |
| 41:12-15 | R, U | | |
| 41:19-43:2 | R, U | | |
| 43:14-46:16 | R, U | | |
| 46:25-47:18 | R, U | | |
| 48:4-11 | R, U | | |
| 48:20-49:1 | R, U | | |
| 49:7-13 | R, U | | |
| 49:18-50:12 | R, U | | |
| 50:24-51:16 | R, U | | |
| 51:20-53:2 | R, U | 51:17-19 | |
| 54:13-55:20 | R, U | | |
| 56:10-57:13 | R, U | | |
| 59:20-25 | R, U | 59:26-60:2 | D, U, R |
| 60:3 | R, U | | |
| 60:5-7 | R, U | | |
| 62:23-65:4 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 65:6-10 | R, U | | |
| 65:12-67:6 | R, U | | |
| 67:23-69:10 | R, U | | |
| 69:15-70:13 | R, U | | |
| 70:15-71:7 | R, U | | |
| 71:17-72:3 | R, U | | |
| 72:19-24 | R, U | | |
| 73:5-74:9 | R, U | 73:1-4 | |
| 76:3-7 | R, U | | |
| 76:9-17 | R, U | | |
| 78:1-80:3 | R, U | | |
| 81:11-12 | R, U | 81:13-14 | D, U, R |
| 81:15-16 | R, U | | |
| 81:18-82:4 | R, U | | |
| 82:6 - 84:7, 84:9-25 | R, U | | |
| 85:13-20 | R, U | | |
| 85:22-86:2 | R, U | | |
| 86:4-17 | R, U | | |
| 86:24-90:22 | R, U | 90:23-24 | D, U, R |
| 90:25-91:4 | R, U | 91:9-10 | D, U, R |
| 91:6-8 | R, U | | |
| 92:3-6 | R, U | 92:7-8 | D, U, R |
| 92:9 | R, U | | |
| 92:11-15 | R, U | 92:16-22 | D, U, R |
| 92:23-93:2 | R, U | 93:3 | D, U, R |
| 93:4 | R, U | | |
| 93:6-8 | R, U | | |
| 94:6-95:3 | R, U | 93:23-94:5 | |
| 95:5-97:1 | R, U | | |
| 97:11-98:24 | R, U | | |
| 99:3-100:1 | R, U | | |
| 100:9-102:6 | R, U | 102:7-13 | 102:14-23 |
| 103:2-25 | R, U | | |
| 104:10-106:9 | R, U | 106:10-15 | |
| 106:16-107:1 | R, U | 107:2-5 | |
| 107:6-108:23 | R, U | | |
| 108:25-109:3 | R, U | | |
| 109:7-23 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 110:9-11 | R, U | | |
| 110:15-111:14 | R, U | | |
| 112:17-21 | R, U | | |
| 112:23-114:16 | R, U | 114:17-25 | |
| 118:2-4 | R, U | | |
| 118:19-121:21 | R, U | 121:22-23 | D, U, R |
| 121:25-122:2 | R, U | - | |
| 122:8-17 | R, U | 122:3-7 | |
| 122:21-123:3 | R, U | 123:4-8 | |
| 123:11-124:4 | R, U | | |
| 127:1-4 | R, U | | |
| 127:8-20 | R, U | | |
| 127:25-133:11 | R, U | | |
| 134:5-8 | R, U | | |
| 134:10-15 | R, U | | |
| 134:17-135:3 | R, U | 133:12-134:4 | D, U, R |
| 135:12-17 | R, U | | |
| 136:5-137:15 | R, U | | |
| 137:19-21 | R, U | | |
| 137:24-138:2 | R, U | | |
| 138:6-20 | R, U | | |
| 138:24-139:4 | R, U | | |
| 139:11-140:14 | R, U | | |
| 140:20-141:3 | R, U | 140:15-19 | |
| 141:7-143:3 | R, U | | |
| 144:8-24 | R, U | 143:4-144:7 | D, U, R (143:7-8, 143:15-16) |
| 149:11-15 | R, U | | |
| 149:19-151:21 | R, U | | |
| 152:14-153:14 | R, U | | |
| 153:24-157:3 | R, U | 153:15-23 | |
| 157:7-159:4 | R, U | | |

## Deposition Testimony of Janet Vaughn
## October 30, 2015

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 7:24-8:1 | R, U | | |
| 9:7-10:15 | R, U | | |
| 11:1-13:9 | R, U | | |
| 14:8-12 | R, U | | |
| 14:22-15:7 | R, U | | |
| 15:10-15 | R, U | 15:16-20 | D, U, R |
| 15:23-16:3 | R, U | | |
| 18:5-20 | R, U | | |
| 19:11-16 | R, U | | |
| 19:24-20:17 | R, U | | |
| 20:24-21:8 | R, U | | |
| 21:24-22:3 | R, U | | |
| 22:5-25 | R, U | 23:14-18 | |
| 23:19-24:1 | R, U | 24:2-4 | D, U, R |
| 24:5-13 | R, U | | |
| 24:22-26:6 | R, U | 24:15-20 | D, U, R (24:18-19) |
| 26:11-13 | R, U | 26:7-10 | D, U, R |
| 26:15-27:2 | R, U | | |
| 27:11-15 | R, U | | |
| 29:7-11 | R, U | | |
| 30:4-7 | R, U | | |
| 30:11-13 | R, U | | |
| 30:19-31:14 | R, U | 30:14-18 | |
| 37:19-23 | R, U | | |
| 37:25-38:8 | R, U | | |
| 41:22-42:19 | R, U | | |
| 48:6-8 | R, U | | |
| 48:12-49:16 | R, U | | |
| 51:7-9 | R, U | | |
| 51:13-52:3 | R, U | 52:4-10 | |
| 53:12-14 | R, U | 53:15-16 | D, U, R |
| 53:17-18 | R, U | | |
| 53:20-54:3 | R, U | | |
| 54:5-19 | R, U | | |
| 54:23-55:1 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 55:4-6 | R, U | | |
| 55:8-17 | R, U | | |
| 55:20-21 | R, U | | |
| 55:23-56:2 | R, U | | |
| 56:5 | R, U | | |
| 56:16-18 | R, U | 56:7-14 | D, U, R (56:10-13) |
| 56:21-22 | R, U | | |
| 56:24-57:1 | R, U | | |
| 57:4-6 | R, U | | |
| 58:3-5 | R, U | 57:8-58:1 | D, U, R (57:11-15, 57:22-25) |
| 58:9-11 | R, U | | |
| 58:13-18 | R, U | 58:19-22 | D, U, R |
| 58:23-25 | R, U | | |
| 59:2-4 | R, U | | |
| 59:7-8 | R, U | | |
| 59:14-60:3 | R, U | | |
| 60:7-25 | R, U | | |
| 61:8-9 | R, U | 61:1-6 | D, U, R |
| 61:11-12 | R, U | | |
| 61:14-20 | R, U | | |
| 61:22-24 | R, U | | |
| 62:1-16 | R, U | | |
| 63:6-64:3 | R, U | | |
| 64:9-65:10 | R, U | 65:11-14 | D, U, R |
| 65:15-17 | R, U | | |
| 65:19-23 | R, U | | |
| 66:1-3 | R, U | | |
| 66:5-10 | R, U | | |
| 66:13-14 | R, U | 66:16-67:11 | D, U, R (66:21-24, 67:7) |
| 67:13-68:5 | R, U | | |
| 68:7-8 | R, U | | |
| 68:10-11 | R, U | | |
| 68:14-16 | R, U | | |
| 68:18-20 | R, U | | |
| 68:23-25 | R, U | 69:2-13 | D, U, R (69:6-7) |
| 69:14-18 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 69:20-70:22 | R, U | | |
| 72:22-73:2 | R, U | 70:23-72:20 | D, U, R (71:1-2, 71:9-11, 71:24-25, 72:7-8, 72:19-20) |
| 73:17-19 | R, U | 73:3-15 | D, U, R (73:5, 73:12-13) |
| 73:22-24 | R, U | | |
| 74:11-20 | R, U | | |
| 74:23-25 | R, U | | |
| 75:2-12 | R, U | | |
| 75:16-18 | R, U | | |
| 75:20-21 | R, U | 75:22-23 | D, U, R |
| 75:24-76:1 | R, U | | |
| 76:3-5 | R, U | | |
| 76:8-9 | R, U | | |
| 76:11-16 | R, U | | |
| 76:23-24 | R, U | | |
| 77:3-14 | R, U | | |
| 79:1-4 | R, U | | |
| 79:8-81:3 | R, U | | |
| 81:10-21 | R, U | | |
| 82:5-15 | R, U | | |
| 83:22-84:22 | R, U | | |
| 90:2-5 | R, U | | |
| 90:13-91:2 | R, U | 91:3 | |
| 91:24-92:3 | R, U | | |
| 94:20-22 | R, U | | |
| 95:1-15 | R, U | | |
| 99:14-19 | R, U | | |
| 99:23-100:21 | R, U | | |
| 100:25-101:25 | R, U | | |
| 102:2-25 | R, U | | |
| 103:4-104:5 | R, U | | |
| 104:7-105:5 | R, U | | |
| 106:3-7 | R, U | | |
| 106:9-107:8 | R, U | | |
| 107:10-108:6 | R, U | | |
| 108:10-109:4 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 110:7-23 | R, U | | |
| 111:1-3 | R, U | | |
| 111:7-23 | R, U | | |
| 113:25-114:21 | R, U | | |
| 115:4-116:1 | R, U | | |
| 116:10-16 | R, U | | |
| 117:3-119:5 | R, U | 116:17-117:1 | D, U, R (116:20-23) |
| 119:18-120:2 | R, U | 119:14-17 | |
| 120:4-18 | R, U | | |
| 121:1-16 | R, U | | |
| 121:18-122:20 | R, U | | |
| 123:3-9 | R, U | | |
| 124:15-125:25 | R, U | | |
| 126:11-13 | R, U | 126:1-9; 126:14-16 | D, U, R |
| 126:17-19 | R, U | | |
| 126:21-127:15 | R, U | | |
| 127:18-19 | R, U | | |
| 127:21-23 | R, U | | |
| 128:1-4 | R, U | | |
| 128:6-14 | R, U | | |
| 128:16-130:6 | R, U | | |
| 130:12-131:1 | R, U | | |
| 131:4-5 | R, U | | |
| 131:7-22 | R, U | | |
| 132:2-8 | R, U | | |
| 132:12-133:12 | R, U | | |
| 133:21-134:2 | R, U | | |
| 134:15-17 | R, U | 134:3-13 | D, U, R (134:8-9) |
| 134:20-21 | R, U | | |
| 134:23-135:6 | R, U | | |
| 136:5-9 | R, U | | |
| 136:11-137:8 | R, U | 137:9-10 | D, U, R |
| 137:11-12 | R, U | | |
| 137:14-21 | R, U | | |
| 137:23-138:2 | R, U | | |
| 138:4-140:5 | R, U | 140:6-19 | D, U, R (140:10-11, 140:18) |
| 140:21-24 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 141:2-3 | R, U | | |
| 141:12-142:1 | R, U | 142:2-3 | D, U, R |
| 142:4 | R, U | | |
| 142:6-10 | R, U | 142:11-12 | D, U, R |
| 142:13-14 | R, U | | |
| 142:16-22 | R, U | | |
| 142:24-143:1 | R, U | | |
| 143:5-144:17 | R, U | | |
| 144:22-145:1 | R, U | | |
| 145:3-146:3 | R, U | | |
| 147:20-148:3 | R, U | 147:3-19 | D, U, R (147:12-14) |
| 148:5-18 | R, U | | |
| 149:4-6 | R, U | | |
| 149:8-10 | R, U | | |
| 149:22-151:2 | R, U | 151:3-4 | D, U, R |
| 151:5-6 | R, U | | |
| 151:8-12 | R, U | 151:13-14 | D, U, R |
| 151:15-16 | R, U | | |
| 151:22-152:1 | R, U | | |
| 152:3-15 | R, U | | |
| 153:3-154:9 | R, U | | |
| 154:13-155:6 | R, U | 155:7-9 | D, U, R |
| 155:11-13 | R, U | 155:14-15 | D, U, R |
| 155:16-23 | R, U | 155:24-156:1 | D, U, R 156:2 |
| 156:4-7 | R, U | | |
| 158:13-17 | R, U | | |
| 158:19-160:8 | R, U | | |
| 160:17-22 | R, U | 160:9-15 | D, U, R (160:13-14) |
| 160:24-161:4 | R, U | | |
| 161:6-162:15 | R, U | | |
| 162:17-19 | R, U | | |
| 162:23-163:21 | R, U | | |
| 163:24-164:3 | R, U | | |
| 164:5-6 | R, U | | |
| 164:9-10 | R, U | | |
| 164:12-13 | R, U | | |
| 164:15-16 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 164:18-19 | R, U | | |
| 164:21-23 | R, U | | |
| 168:5-169:4 | R, U | | |
| 169:9-170:15 | R, U | | |
| 170:19-172:22 | R, U | | |
| 172:24-175:5 | R, U | | |
| 175:19-23 | R, U | | |
| 175:25-180:8 | R, U | | |
| 180:15-18 | R, U | | |
| 181:10-13 | R, U | 181:4-7 | |
| 182:19-183:2 | R, U | | |
| 183:4-14 | R, U | 183:15-18 | |
| 183:19-25 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

**Deposition Testimony of Santanu Chakraborty**
**December 3, 2015**

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 14:17-22 | R, U | | |
| 15:1-3 | R, U | | |
| 17:1-11 | R, U | | |
| 17:14-16 | R, U | | |
| 17:19 - 18:8 | R, U | | |
| 25:3-7 | R, U | | |
| 25:16 - 26:24 | R, U | | |
| 28:15-18 | R, U | | |
| 29:8 - 30:11 | R, U, I | 30:15-21 | D, U, R |
| 30:22-25 | R, U | | |
| 32:7-8 | R, U | | |
| 32:11 | R, U | | |
| 33:3-5 | R, U | | |
| 33:16-20 | R, U | | |
| 34:3-6 | R, U | | |
| 34:11-13 | R, U | | |
| 34:19-21 | R, U | | |
| 35:1-3 | R, U, I | 35:4-5 | |
| 35:6-10 | R, U | | |
| 35:13-17 | R, U | | |
| 35:21-22 | R, U | | |
| 36:24 - 37:5 | R, U | | |
| 37:9 | R, U, I | 37:6-8 | D, U, R |
| 37:21 - 38:2 | R, U | | |
| 38:6 | R, U, I | 38:3-5 | D, U, R |
| 38:16-21 | R, U | | |
| 38:25 | R, U, I | 38:22-24 | D, U, R |
| 40:1-6 | R, U | | |
| 40:10 | R, U, I | 40:7-9 | D, U, R |
| 40:23 - 41:3 | R, U | | |
| 41:7 | R, U, I | 41:4-6 | D, U, R |
| 41:20-24 | R, U | | |
| 42:3 | R, U, I | 41:25-42:2 | D, U, R |
| 42:17-21 | R, U | | |
| 42:25 | R, U, I | 42:22-24 | D, U, R |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 44:1-5 | R, U | | |
| 44:12 | R, U, I | 44:6-11 | D, U, R |
| 48:16 - 49:10 | R, U | | |
| 50:3-6 | R, U, I | 50:24-51:9 | |
| 53:11-12 | R, U | | |
| 53:15-20 | R, U | | |
| 54:23 - 55:5 | R, U | | |
| 56:10 - 57:1 | R, U | | |
| 63:2-7 | R, U | | |
| 63:12 - 64:10 | R, U, I | 64:11-19 | |
| 64:20 - 65:4 | R, U | | |
| 68:1-7 | R, U | | |
| 69:5 - 71:18 | R, U | | |
| 71:24 - 72:7 | R, U, I | 72:8-12 | |
| 72:16 - 73:3 | R, U, I | 73:4-6 | |
| 73:8-10 | R, U | | |
| 73:14-23 | R, U, I | 75:2-8 | |
| 74:14-18 | R, U, I | 75:2-8 | |
| 75:18 - 77:14 | R, U | | |
| 77:17 | R, U | | |
| 77:19 - 78:19 | R, U, I | 78:20-79:5 | |
| 79:6-13 | R, U | | |
| 80:4-15 | R, U, I | 80:16-24 | |
| 81:5 - 82:11 | R, U, I | 82:12-16 | |
| 82:17-25 | R, U, I | 83:1-12 | |
| 85:1-20 | R, U, I | 85:21-86:8 | |
| 87:25 - 88:4 | R, U | | |
| 90:10-11 | R, U | | |
| 90:16-20 | R, U, I | 90:21-91:23; 92:1-7 | E |
| 92:8-12 | R, U | | |
| 96:2-8 | R, U, I | 95:23-96:1; 96:19-97:7; 97:10-11 | E, F, O |
| 98:15 - 99:23 | R, U | | |
| 100:1-5 | R, U | | |
| 100:7 - 16 | R, U | | |
| 100:20 - 101:4 | R, U | | |
| 101:18-20 | R, U, I | 101:9-17; 102:4-103:3 | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 104:4-23 | R, U, I | 104:24-105:1 | |
| 105:8 - 106:1 | R, U, O, T, I | 106:2-3; 106:6-13; 106:16-22; 106:25 | |
| 109:23 - 110:2 | R, U, O, T, I | 109:15-18; 109:22; 110:8-11 | |
| 110:18 - 112:7 | R, U, O, T | | |
| 112:17-25 | R, U, O, T | | |
| 113:7-14 | R, U, O, T, I | 113:17 – 114:2 | 113:15-16 |
| 114:3 - 115:1 | R, U, O, T, I | 115:2-12 | F, O |
| 115:13 - 116:5 | R, U, O, T, I | 115:2-12; 116:6-8 | F, O, R, U |
| 116:9-14 | R, U, O, T, I | 116:6-8 | F, O, R, U |
| 116:17 | R, U, O, T | | |
| 116:21 - 117:4 | R, U, O, T | | |
| 117:21 - 118:7 | R, U, O, T, I | 118:8-119:14 | 120:10-13 |
| 120:1-9 | R, U, O, T, I | 120:14-19 | |
| 120:20 - 121:8 | R, U, O, T, I | 121:9-12 | |
| 123:14 - 124:7 | R, U | | |
| 124:17-22 | R, U, I | 124:8-16 | |
| 125:1-4 | R, U | | |
| 132:22 - 133:15 | R, U | | |
| 135:4-21 | R, U, I | 135:22-136:16 | |
| 136:17 - 137:6 | R, U, I | 137:7-20 | |
| 139:18 - 140:5 | R, U, I | 140:6-11 | |
| 141:18-23 | R, U | | |
| 143:18 - 144:5 | R, U, I | 144:6-22 | |
| 145:14-20 | R, U | | |
| 146:21 - 147:18 | R, U | | |
| 147:24 - 148:24 | R, U | | |
| 150:18 - 151:7 | R, U, O, T | | |
| 151:17 - 152:8 | R, U, O, T | | |
| 153:1 - 154:7 | R, U, O, T | | |
| 158:8 - 159:11 | R, U, O, T, I | 159:12-13 | |
| 159:15 - 160:7 | R, U, O, T, I | 160:8-9 | |
| 161:13 - 163:13 | R, U | | |
| 163:16 - 164:19 | R, U | | |
| 164:22 - 165:9 | R, U | | |
| 166:22 - 167:1 | R, U, I | 167:2-18 | |
| 167:19 - 168:6 | R, U, I | 169:5-10 | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 168:15-23 | R, U, I | 169:5-10 | |
| 170:20 - 172:19 | R, U, O, T, I | 169:5-10 | |
| 173:4-14 | R, U, O, T | | |
| 173:21 - 174:11 | R, U, O, T, I | 174:12-15 | |
| 175:7-11 | R, U, O, T, I | 175:12-176:3 | |
| 176:10 - 177:14 | R, U, O, T, I | 176:6-9; 177:25-178:20 | |
| 178:21 - 179:16 | R, U, O, T, I | 179:17-23 | F, O |
| 180:10-13 | R, U, O, T, I | 180:14-17 | F, O |
| 182:4 - 184:5 | R, U, O, T | | |
| 184:14 - 186:15 | R, U, O, T | | |
| 187:23 - 188:11 | R, U, I | 192:8-11 | |
| 188:15 - 189:23 | R, U, I | 192:8-11 | |
| 190:6 - 192:7 | R, U, I | 192:8-11 | |
| 192:12-15 | R, U, I | 192:8-11 | |
| 193:1-25 | R, U, O, T, I | 192:8-11 | |
| 202:15-18 | R, U, O, T | | |
| 202:22 - 205:22 | R, U, O, T, I | 205:23 – 207:3 | |
| 207:4 - 208:1 | R, U, O, T, I | 208:2-10 | |
| 208:11 - 209:2 | R, U, O, T, I | 208:2-10 | |
| 209:7 - 210:2 | R, U, I | 210:3-21 | |
| 210:22 - 211:14 | R, U, T, I | 211:15-19; 213:7-12 | |
| 213:14 - 214:11 | R, U, T, I | 214:12-18 | |
| 214:21 - 215:24 | R, U, O | | |
| 216:1 - 220:10 | R, U, O, T, I | 220:11-221:11 | |
| 221:12-14 | R, U, O, T | | |
| 221:18-21 | R, U, O, T | | |
| 221:23 - 222:18 | R, U, O, T | | |
| 222:22 - 223:10 | R, U, O, T | | |
| 223:13 - 224:23 | R, U, O, T | | |
| 225:3-16 | R, U | | |
| 226:3-8 | R, U | | |
| 228:17-19 | R, U, I | 228:9-16; 228:20-25 | |
| 230:5-17 | R, U, I | 230:18-21 | |
| 230:23 - 231:12 | R, U, I | 230:18-21 | |
| 231:22 - 233:12 | R, U, I | 233:13-16 | |
| 237:19 - 238:7 | R, U | | |
| 239:5-19 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 241:11-20 | R, U | | |
| 242:13 - 243:10 | R, U | | |
| 244:19 - 245:5 | R, U | | |
| 246:16 - 247:6 | R, U, I | 247:7-13 | |
| 247:18 - 248:10 | R, U, I | 248:11-13; 248:17-21 | |
| 249:18 - 251:2 | R, U | | |
| 251:8 - 252:6 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

**Deposition Testimony of David Mitchell**
**December 8, 2015**

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 5:12-14 | R, U | | |
| 5:21-22 | R, U | | |
| 7:3-14 | R, U | | |
| 7:24 - 9:4 | R, U, I | 9:5-9 | |
| 10:5 - 11:6 | R, U | | |
| 11:12 - 13:22 | R, U | | |
| 29:11 - 30:6 | R, U | | |
| 34:14 - 35:18 | R, U, I | 35:19-36:3 | D, R, U |
| 36:4-6 | R, U | | |
| 37:2-14 | R, U, I | 37:15-17 | D, R, U |
| 37:19-20 | R, U, I | 37:21-23 | |
| 37:24 - 38:1 | R, U | | |
| 40:8-17 | R, U | | |
| 40:23 - 41:24 | R, U | | |
| 42:20 - 44:17 | R, U, I | 44:18-24 | |
| 48:21 - 49:11 | R, U | | |
| 49:23 - 50:9 | R, U | | |
| 50:21 - 51:21 | R, U | | |
| 52:4-17 | R, U | | |
| 53:5-8 | R, U | | |
| 53:16 - 54:12 | R, U | | |
| 55:20 - 56:8 | R, U | | |
| 57:15-23 | R, U, I | 57:24-58:3 | |
| 59:9 - 60:19 | R, U | | |
| 61:7 - 62:3 | R, U | | |
| 62:15 - 63:8 | R, U | | |
| 64:11 - 65:1 | R, U | | |
| 70:24 - 71:15 | R, U | | |
| 71:22 - 72:7 | R, U, I | 72:8-12 | |
| 73:19 - 74:12 | R, U | | |
| 74:18 - 75:3 | R, U | | |
| 76:12 - 77:3 | R, U, I | 77:4-6 | |
| 77:17-21 | R, U | | |
| 77:24 - 78:7 | R, U | | |
| 78:10-22 | R, U, I | 78:23-25 | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 80:10-15 | R, U, I | 80:16-19 | |
| 80:20-23 | R, U, I | 80:16-19 | |
| 81:8-14 | R, U, I | 81:15-17 | |
| 83:8-17 | R, U | | |
| 84:5-12 | R, U, I | 84:13-15 | |
| 84:19 - 85:6 | R, U | | |
| 86:14-22 | R, U, I | 86:23-87:1 | 89:2-4 |
| 87:16 - 88:4 | R, U, I | 88:5-7 | |
| 88:8-10 | R, U, I | 88:5-7 | |
| 89:8-12 | R, U | | |
| 89:21 - 90:4 | R, U | | |
| 90:16-22 | R, U, I | 91:1-7 | |
| 91:8 - 92:5 | R, U, I | 92:6-22 | |
| 92:23 - 94:1 | R, U | | |
| 96:2-8 | R, U | | |
| 96:16 - 97:12 | R, U | | |
| 98:9 - 99:5 | R, U | | |
| 99:24 - 100:11 | R, U, I | 100:12-19 | |
| 100:20-24 | R, U | | |
| 101:11 - 103:3 | R, U, I | 103:4-6 | 103:7-9 |
| 107:2-9 | R, U, I | 107:10-12 | |
| 107:13-23 | R, U, I | 107:10-12 | |
| 108:1-15 | R, U, I | 107:10-12 | |
| 109:14 - 110:19 | R, U, I | 107:10-12 | |
| 111:12-17 | R, U | | |
| 111:19 - 113:4 | R, U | | |
| 113:18 - 114:5 | R, U, I | 114:6-14 | |

Plaintiffs' Witness List & Deposition Designations

**Deposition Testimony of Joseph Sobecki**
**December 11, 2015**

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 6:11-15 | R, U | | |
| 6:19-22 | R, U | | |
| 8:17 - 9:10 | R, U | | |
| 9:17 - 10:1 | R, U, I | 10:2-21 | 10:22-11:10 |
| 11:13-25 | R, U | | |
| 13:1-4 | R, U | | |
| 13:24 - 14:17 | R, U | | |
| 14:22 - 15:1 | R, U | | |
| 21:20 - 22:8 | R, U | | |
| 24:14-18 | R, U | | |
| 24:20-21 | R, U | | |
| 24:24 - 25:10 | R, U, I | 25:11-14 | D, R, U |
| 25:15 - 26:2 | R, U, I | 26:3-4 | D, R, U |
| 26:5-13 | R, U | | |
| 32:23 - 33:5 | R, U | | |
| 33:7-12 | R, U | | |
| 33:25 - 34:12 | R, U, I | 34:13-14 | D, R, U |
| 34:15 | R, U | | |
| 34:21 - 35:4 | R, U, I | 35:5-7 | D, R, U |
| 35:8 | R, U | | |
| 36:5-16 | R, U, I | 36:17-18 | D, R, U |
| 36:19 | R, U | | |
| 37:8-11 | R, U, T | | |
| 37:18-20 | R, U, T | | |
| 37:22 - 38:9 | R, U, I | 38:10-12 | D, R, U |
| 38:13 | R, U | | |
| 40:3-18 | R, U | | |
| 41:5-11 | R, U, I | 41:12-14 | D, R, U |
| 41:15 | R, U | | |
| 41:24 - 42:17 | R, U | | |
| 46:15 - 47:7 | R, U | | |
| 47:12-20 | R, U | | |
| 48:10-20 | R, U | | |
| 50:18 - 51:15 | R, U | | |
| 51:24 - 52:4 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 52:8 - 53:6 | R, U | | |
| 54:5-11 | R, U | | |
| 54:13-18 | R, U | | |
| 54:20-25 | R, U | | |
| 56:22 - 57:22 | R, U | | |
| 57:24 - 58:6 | R, U | | |
| 58:8-9 | R, U | | |
| 59:5-18 | R, U | | |
| 60:16-24 | R, U, I | 60:25-61:10 | |
| 63:24 - 64:19 | R, U | | |
| 66:4-6 | R, U | | |
| 66:9 - 67:5 | R, U | | |
| 67:13-23 | R, U | | |
| 68:25 - 69:4 | R, U, I | 69:5-14 | |
| 69:15-22 | R, U | | |
| 69:24 - 70:1 | R, U | | |
| 71:14-16 | R, U | | |
| 71:18-24 | R, U | | |
| 74:3-22 | R, U | | |
| 75:25 - 76:9 | R, U | | |
| 76:11-23 | R, U | | |
| 77:16 - 78:6 | R, U | | |
| 78:8-10 | R, U | | |
| 80:5-7 | R, U | | |
| 80:10-14 | R, U | | |
| 82:12 - 83:17 | R, U | | |
| 83:19-25 | R, U | | |
| 84:12 - 85:5 | R, U, I | 85:6-14 | |
| 85:15-25 | R, U | | |
| 86:4-6 | R, U | | |
| 86:8-23 | R, U | | |
| 89:8 - 90:2 | R, U | | |
| 90:10-13 | R, U | | |
| 90:23 - 91:17 | R, U, I | 91:18-25 | |
| 94:1-17 | R, U | | |
| 95:15-18 | R, U | | |
| 96:2-3 | R, U | | |
| 96:5-10 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 96:12-14 | R, U | | |
| 99:19-23 | R, U | | |
| 100:3-10 | R, U | | |
| 100:12-14 | R, U, I | 100:15-16; 100:18-21 | |
| 101:4-20 | R, U | | |
| 102:11 - 103:5 | R, U | | |
| 103:20-24 | R, U | | |
| 106:4-14 | R, U | | |
| 106:16 - 107:3 | R, U | | |
| 107:5-11 | R, U | | |
| 107:13-21 | R, U | | |
| 107:24 - 108:4 | R, U | | |
| 108:6 | R, U | | |
| 108:14 - 111:18 | R, U | | |
| 111:20-23 | R, U | | |
| 111:25 - 112:3 | R, U | | |
| 112:8-14 | R, U | | |
| 112:16-21 | R, U | | |
| 112:23 - 113:12 | R, U | | |
| 113:14 - 114:3 | R, U | | |
| 114:6-15 | R, U | | |
| 114:24 - 115:6 | R, U | | |
| 115:10-13 | R, U | | |
| 115:16 - 116:3 | R, U, I | 116:4-6; 116:9-11 | |
| 116:12 | R, U | | |
| 116:14-19 | R, U | | |
| 116:21 - 117:6 | R, U | | |
| 117:8-14 | R, U | | |
| 117:17-25 | R, U | | |
| 118:2 - 119:2 | R, U | | |
| 119:4 - 120:3 | R, U | | |
| 120:7-14 | R, U, I | 120:15-20 | |
| 120:25 - 121:9 | R, U | | |
| 121:11-17 | R, U | | |
| 121:19-24 | R, U | | |
| 122:2-7 | R, U | | |
| 123:1-3 | R, U | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 123:5-7 | R, U | | |
| 123:9-14 | R, U | | |
| 123:16-17 | R, U | | |
| 123:19-21 | R, U | | |
| 123:23 - 124:9 | R, U | | |
| 124:11-21 | R, U | | |
| 125:5-8 | R, U, O, T | | |
| 125:11-17 | R, U, O, T | | |
| 126:20 - 127:15 | R, U, O, T | | |
| 127:18-25 | R, U, O, T, I | 126:11-14; 126:17-19 | 125:18-126:10 |
| 128:2-7 | R, U, O, T | | |
| 128:9 - 129:5 | R, U, O, T, I | 129:6-11 | |
| 129:12-21 | R, U, O, T | | |
| 129:24-25 | R, U, O, T, I | 130:1-8 | |
| 130:11 - 131:5 | R, U, O, T, I | 131:6-9 | |
| 131:10 - 132:13 | R, U, O, T, I | 131:6-9 | |
| 132:15-21 | R, U, O, T | | |
| 132:23 - 133:4 | R, U, O, T | | |
| 133:6-7 | R, U, O, T | | |
| 134:16 - 135:9 | R, U, O, T, I | 135:10-12 | |
| 135:13-22 | R, U, O, T, I | 140:6-18 | |
| 135:24 - 136:4 | R, U, O, T, I | 140:6-18 | |
| 136:6-12 | R, U, O, T, I | 140:6-18 | |
| 136:15 - 138:13 | R, U, O, T, I | 140:6-18 | |
| 138:16 - 139:3 | R, U, O, T, I | 140:6-18 | |
| 139:5-17 | R, U, O, T, I | 140:6-18 | |
| 139:19 - 140:5 | R, U, O, T, I | 140:6-18 | |
| 141:5-25 | R, U, O, T, I | 142:1-6 | |
| 142:7 - 143:3 | R, U, O, T | | |
| 143:7-9 | R, U, O, T | | |
| 143:11 - 144:8 | R, U, O, T | | |
| 144:11-16 | R, U, O, T | | |
| 144:18-24 | R, U, O, T | | |
| 145:2-5 | R, U, O, T | | |
| 145:7-12 | R, U, O, T | | |
| 145:14-17 | R, U, O, T | | |
| 145:20-23 | R, U, O, T | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 146:3-23 | R, U, O, T, I | 146:24-147:2 | |
| 147:3 - 148:15 | R, U, O, T | | |
| 148:17-19 | R, U, O, T | | |
| 148:21-24 | R, U, O, T | | |
| 149:1-5 | R, U, O, T | | |
| 149:7-24 | R, U, O, T | | |
| 150:1-7 | R, U, O, T | | |
| 150:9-15 | R, U, O, T | | |
| 150:17-18 | R, U, O, T | | |
| 152:7-24 | R, U, O, T, I | 152:25-153:2 | |
| 153:3-9 | R, U, O, T | | |
| 153:11-15 | R, U, O, T | | |
| 153:17-25 | R, U, O, T | | |
| 154:3 - 155:19 | R, U, O, T | | |
| 155:21 - 156:4 | R, U, O, T | | |
| 156:7-16 | R, U, O, T | | |
| 156:19 - 157:4 | R, U, O, T | | |
| 157:6-15 | R, U, O, T | | |
| 158:10 - 159:20 | R, U, O, T | | |
| 159:22 - 160:4 | R, U, O, T | | |
| 160:6-9 | R, U, O, T | | |
| 160:13-15 | R, U, O, T | | |
| 163:6 - 164:16 | R, U, O, T, I | 164:20-22 | |
| 164:18-19 | R, U, O, T, I | 164:20-22 | |
| 164:23 - 165:8 | R, U, O, T, I | 166:21-23 | |
| 165:10-16 | R, U, O, T, I | 166:21-23 | |
| 165:18-24 | R, U, O, T, I | 166:21-23 | |
| 166:2-20 | R, U, O, T, I | 166:21-23 | |
| 166:24 - 167:5 | R, U, O, T | | |
| 167:8-21 | R, U, O, T | | |
| 167:23 - 168:15 | R, U, O, T | | |
| 168:17-24 | R, U, O, T | | |
| 169:1-6 | R, U, O, T | | |
| 169:9-16 | R, U, O, T | | |
| 169:19 - 170:4 | R, U, O, T | | |
| 170:6-9 | R, U, O, T | | |
| 170:11-17 | R, U, O, T | | |
| 170:20-21 | R, U, O, T | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 170:24 - 171:10 | R, U, O, T | | |
| 171:12 | R, U, O, T | | |
| 171:14 - 172:23 | R, U, O, T | | |
| 173:12 - 174:15 | R, U, O, T | | |
| 174:17-23 | R, U, O, T | | |
| 174:25 - 175:21 | R, U, O, T | | |
| 175:23 - 178:14 | R, U, O, T, I | 179:7-9 | |
| 178:16 - 179:6 | R, U, O, T, I | 179:7-9 | |
| 179:10-12 | R, U, I | 179:18-23 | |
| 179:14-17 | R, U, I | 179:18-23 | |
| 179:24 - 180:16 | R, U, O, T | | |
| 180:18 - 181:12 | R, U, O, T | | |
| 181:18 - 182:1 | R, U, O, T, I | 182:2-4; 182:6-7 | |
| 182:8-23 | R, U, O, T | | |
| 182:25 - 183:6 | R, U, O, T | | |
| 183:8-13 | R, U, O, T | | |
| 183:15 - 184:16 | R, U, O, T | | |
| 184:18 - 185:1 | R, U, O, T | | |
| 185:3-8 | R, U, O, T | | |
| 185:14-19 | R, U, O, T | | |
| 185:24 - 186:15 | R, U, O, T | | |
| 186:17-23 | R, U, O, T | | |
| 186:25 - 187:5 | R, U, O, T | | |
| 187:7-9 | R, U, O, T | | |
| 187:19 - 188:18 | R, U, O, T | | |
| 189:4 - 190:1 | R, U, O, T, I | 190:2-4 | |
| 190:5-20 | R, U, O, T, I | 190:2-4 | |
| 190:22 - 191:13 | R, U, O, T, I | 190:2-4 | |
| 191:15-23 | R, U, O, T | | |
| 191:25 - 192:13 | R, U, O, T | | |
| 192:15-24 | R, U, O, T | | |
| 193:1-15 | R, U, O, T | | |
| 193:17-22 | R, U, O, T, I | 193:23-194:1; 194:4-5 | |
| 194:6-13 | R, U, O, T | | |
| 194:15 - 195:7 | R, U, O, T | | |
| 195:9 - 196:5 | R, U, O, T | | |
| 196:7-14 | R, U, O, T | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 196:16-17 | R, U, O, T | | |
| 198:6 - 201:15 | R, U, O, T | | |
| 201:17 - 202:3 | R, U, O, T | | |
| 202:5-19 | R, U, O, T | | |
| 202:21-23 | R, U, O, T | | |
| 202:25 | R, U, O, T | | |
| 203:6 - 204:3 | R, U, O, T | | |
| 204:5-19 | R, U, O, T, I | 204:20-22; 204:24 | 204:25-205:3 |
| 205:4-15 | R, U | | |
| 205:21 - 206:4 | R, U | | |
| 207:15 - 209:5 | R, U, O, T, I | 213:1; 213:3-11 | |
| 209:7 - 212:10 | R, U, O, T, I | 213:1; 213:3-11 | |
| 212:12-22 | R, U, O, T, I | 213:1; 213:3-11 | |
| 212:25 | R, U, O, T, I | 213:1; 213:3-11 | |
| 213:12-14 | R, U, O, T, I | 213:1; 213:3-11 | |
| 213:16-18 | R, U, O, T, I | 213:1; 213:3-11 | |
| 216:6-22 | R, U | | |
| 216:24 - 217:8 | R, U | | |
| 218:1-4 | R, U | | |
| 218:6 - 219:6 | R, U | | |
| 221:10 - 222:4 | R, U | | |
| 222:6-7 | R, U, I | 222:8-15 | 222:16-23 |
| 223:4-6 | R, U | | |
| 223:8-10 | R, U, I | 223:11-14 | 223:15-18 |
| 223:20 - 225:1 | R, U, T, I | 225:2-8 | |
| 225:9-21 | R, U, O, T | | |
| 225:23 - 226:4 | R, U, O, T | | |
| 226:6-11 | R, U, O, T | | |
| 226:13-20 | R, U, O, T | | |
| 226:22-23 | R, U, O, T | | |
| 227:1-25 | R, U, O, T | | |
| 228:2-25 | R, U, O, T | | |
| 229:2-4 | R, U, O, T | | |
| 229:13 - 230:7 | R, U, O, T, I | 230:8-9 | |
| 230:12 - 232:3 | R, U, O, T | | |
| 232:5-14 | R, U, O, T | | |
| 232:16 - 233:18 | R, U, O, T | | |
| 233:20 - 234:7 | R, U, O, T | | |

Plaintiffs' Witness List & Deposition Designations

| Plaintiffs' Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections and Counter-Counter Designations to Defendants' Counter-Designations |
|---|---|---|---|
| 234:9-13 | R, U, O, T | | |
| 234:15-21 | R, U, O, T | | |
| 234:23-235:1 | R, U, O, T, I | 235:2-7 | |
| 235:12 - 236:4 | R, U, O, T | | |
| 236:6-15 | R, U, O, T, I | 236:16-19; 237:2-5 | |
| 237:6 - 238:10 | R, U, O, T | | |
| 238:12-24 | R, U, O, T | | |
| 239:2-4 | R, U, O, T | | |
| 239:11 - 240:6 | R, U, O, T | | |
| 240:8-20 | R, U, O, T | | |
| 240:22 - 241:18 | R, U, O, T | | |
| 241:20 - 242:2 | R, U, O, T | | |
| 242:4-9 | R, U, O, T, I | 242:10-18 | |
| 242:19-22 | R, U, O, T | | |
| 242:25 - 243:8 | R, U, O, T | | |
| 243:10-16 | R, U, O, T | | |
| 243:18 - 244:1 | R, U, O, T | | |
| 244:4 - 245:10 | R, U, O, T | | |
| 245:12 - 246:1 | R, U, O, T, I | 246:2-9; 246:11-24; 247:1-4 | |
| 247:5-20 | R, U, O, T, I | 246:2-9; 246:11-24; 247:1-4 | |
| 247:22 - 248:12 | R, U, O, T | | |
| 248:14-20 | R, U, O, T | | |
| 248:22 - 249:1 | R, U, O, T | | |
| 250:24 - 251:9 | R, U, O, T | | |
| 251:11-17 | R, U, O, T | | |
| 251:19-22 | R, U, O, T | | |
| 251:24 - 252:6 | R, U, O, T | | |

Plaintiffs' Witness List & Deposition Designations

Key to Deposition Designation Objections

| LETTER | OBJECTION | APPLICABLE RULE(S) |
|:---:|:---|:---:|
| A | Requires authentication or identification | FRE 901 |
| B | Best evidence rules prohibit introduction | FRE 1001-1002 |
| C | Improper compilation of separate documents | FRE 403, 901 |
| D | Improper designation (designation is neither a question or testimony) | FRE 401, 402 |
| E | Improper examination (vague, ambiguous, loaded, leading, etc.) | FRE 402, 403, 602, 611 |
| F | Lack of foundation/personal knowledge (including calls for speculation) | FRE 402, 403, 602, 611 |
| H | Hearsay if offered for the truth of the matter asserted | FRE 801, 802 |
| I | Incomplete document or testimony | FRE 106, 403 |
| M | Offer or discussion for settlement or compromise | FRE 408 |
| N | Exhibit not produced in discovery | FRE 403 |
| O | Improper opinion testimony | FRE 701-704 |
| P | Privileged or attorney work product | FRE 501, 502 |
| R | Lack of relevance | FRE 401, 402 |
| S | Summary requiring underlying data or information | FRE 1006 |
| T | Beyond the scope of the Rule 30(b)(6) topic for which a witness has been designated | FRE 602, FRCP 30(b)(6) |
| U | Unduly prejudicial, wasteful, confusing, misleading or cumulative | FRE 403 |

EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| DUCHESNAY INC. and DUCHESNAY USA INC., | |
| Plaintiffs, | |
| v. | Case No. 14-912-SLR-SRF (Consolidated) |
| ACTAVIS LABORATORIES FL, INC., ACTAVIS, INC., ACTAVIS PHARMA INC., and MYLAN PHARMACEUTICALS INC. | |
| Defendants. | |

**EXHIBIT I**

**DEFENDANTS' LIST OF WITNESSES TO BE CALLED LIVE OR BY DEPOSITION**

Pursuant to Local Rule 16.3(c)(7), Defendants Actavis Laboratories FL, Inc., Actavis, Inc., Actavis Pharma Inc. (collectively "Actavis") and Mylan Pharmaceuticals Inc. ("Mylan") (collectively, "Defendants") expect to call some or all of the witnesses identified below either live or by deposition (transcript or video).

1.      Defendants reserve the right to: (1) supplement this list; (2) call anyone appearing on Plaintiffs' witness lists or otherwise designated as a trial witness by Plaintiffs; (3) call additional witnesses in rebuttal to those witnesses called by Plaintiffs; (4) call additional witnesses to the extent necessary to provide foundational testimony if Plaintiffs contest the authenticity or admissibility of any materials to be offered at trial; (5) call additional witnesses to respond to issues raised after the submission of this list; (6) call any witness for purposes of impeachment; (7) substitute witnesses for any listed witnesses, should any of the listed witnesses become unavailable for trial; (8) offer deposition testimony for listed witnesses, should any of the listed witnesses become unavailable; (9) call additional witnesses in response to changes made by Plaintiffs to their arguments, witness lists, or other positions; and (10) revise this list in light of further rulings by the Court or any other changed circumstances.

2.      Defendants also reserve the right to amend this list to add or remove witnesses consistent with the Court's Scheduling Order, Guidelines for Civil Trials and Local Civil Rule 16.  Defendants further reserve the right to use any designations identified by Plaintiffs on their list of designations.  A list of Defendants' deposition designations is attached as Exhibit 11 to the Proposed Joint Pretrial Order.

3.      By identifying these witnesses, Defendants are not required to call them at trial, are not representing that the witnesses are available for trial, and are not limited in the manner in which such testimony is presented at trial.

## I.      Expert Witnesses

Below are the expert witnesses Defendants may present at trial.  The listed experts' more specific specialties and matters of testimony are set forth in detail in their expert reports that have been served in this case.  Defendants include in their expert witness list those fact witnesses listed below, to the extent that the testimony of those fact witnesses, because of its technical nature, may be considered hybrid fact/expert testimony:

1.      Linda A. Felton, Ph.D.
Pharmaceutical formulation

2.      Anthony Scialli, M.D.
Treatment of patients with nausea and vomiting during pregnancy

3.      Harry C. Boghigian
Commercialization, marketing and sales of pharmaceutical products

4.      Michael Mayersohn, Ph.D.
Pharmacokinetics, pharmacodynamics, pharmaceutics and biopharmaceutics

5.      Daniel W. Apley, Ph.D.
Statistical analysis and applied statistics

## II.     Fact Witnesses

Below are the fact witnesses Defendants jointly may present at trial:

1.      Eric Gervais

2.      Frank Greaves

3.      Michael Gallo

Below are the fact witnesses Actavis may present at trial:

1.      Craig E. Jones

2.      Suparna Mukherjee

3.      Sandeep Pandita

4.      Guocai Tang

5.      Janet Vaughn

Below are the fact witnesses Mylan may present at trial:

1.      Santanu Chakraborty

2.      David Mitchell

3.      Joseph Sobecki

## Deposition Testimony of Michael Gallo
### December 3rd, 2015

| | | |
|---|---|---|
| 9 : 13 - 15 | 78 : 5 - 19 | 158 : 14 - 19 |
| 12 : 19 - 21 | 102 : 19 - 20 | 160 : 5 - 7 |
| 13 : 2 - 5 | 102 : 22 - 25 | 160 : 10 - 11 |
| 14 : 9 - 17 | 103 : 5 - 9 | 161 : 7 - 11 |
| 16 : 3 - 10 | 103 : 23 - 104 : 8 | 161 : 14 - 15 |
| 17 : 2 - 9 | 104 : 10 - 14 | 161 : 22 - 162 : 1 |
| 18 : 23 - 19 : 4 | 107 : 6 - 22 | 162 : 4 - 13 |
| 19 : 9 - 12 | 108 : 15 - 17 | 162 : 16 |
| 19 : 20 - 22 | 108 : 19 - 25 | 256 : 11 - 18 |
| 20 : 2 - 9 | 109 : 5 - 8 | 257 : 4 - 14 |
| 22 : 5 - 14 | 109 : 11 - 16 | 257 : 24 - 258 : 4 |
| 28 : 14 - 29 : 4 | 109 : 19 - 25 | 258 : 9 - 13 |
| 29 : 14 - 22 | 110 : 3 - 9 | 259 : 2 - 5 |
| 29 : 25 - 30 : 13 | 110 : 12 - 14 | 260 : 15 - 20 |
| 51 : 10 - 15 | 135 : 3 - 5 | 263 : 16 - 24 |
| 60 : 2 - 16 | 135 : 9 - 10 | 264 : 2 - 13 |
| 60 : 25 - 61 : 18 | 135 : 15 - 19 | 264 : 21 - 265 : 4 |
| 66 : 5 - 8 | 135 : 25 - 136 : 14 | 265 : 7 - 17 |
| 66 : 10 - 13 | 136 : 19 - 137 : 2 | 265 : 22 |
| 66 : 16 - 19 | 138 : 22 - 139 : 3 | 265 : 24 - 25 |
| 66 : 22 - 23 | 139 : 12 - 25 | 266 : 2 - 6 |
| 67 : 3 - 5 | 140 : 4 - 7 | 266 : 11 - 267 : 18 |
| 67 : 9 - 11 | 142 : 19 - 20 | 279 : 2 - 6 |
| 68 : 4 - 11 | 142 : 25 - 143 : 6 | 279 : 9 - 17 |
| 68 : 16 - 20 | 143 : 13 - 16 | |
| 68 : 24 - 25 | 143 : 19 - 22 | |
| 69 : 9 - 15 | 143 : 25 - 144 : 8 | |
| 69 : 21 - 70 : 21 | 144 : 21 - 22 | |
| 70 : 23 - 71 : 20 | 144 : 25 - 145 : 1 | |
| 71 : 22 - 72 : 2 | 146 : 7 - 9 | |
| 72 : 7 - 17 | 146 : 11 - 14 | |
| 73 : 8 - 74 : 4 | 146 : 17 - 20 | |
| 74 : 9 - 15 | 148 : 21 - 22 | |
| 74 : 24 - 25 | 150 : 6 - 12 | |
| 75 : 2 - 5 | 150 : 19 - 151 : 6 | |
| 75 : 9 - 16 | 156 : 21 - 157 : 7 | |
| 75 : 24 - 76 : 4 | 157 : 18 - 22 | |
| 76 : 16 - 25 | 158 : 2 - 5 | |
| 77 : 8 - 13 | 158 : 8 - 11 | |

**Deposition Testimony of Eric Gervais**
**November 23rd – 25th, 2015**

| | | |
|---|---|---|
| 7 : 2 - 15 | 78 : 5 - 9 | 147 : 10 - 148 : 7 |
| 9 : 3 - 15 | 80 : 10 - 15 | 158 : 4 - 13 |
| 14 : 3 - 6 | 80 : 17 - 20 | 159 : 10 - 160 : 24 |
| 14 : 8 - 11 | 81 : 25 - 82 : 4 | 161 : 6 - 11 |
| 14 : 13 - 16 | 82 : 7 - 13 | 161 : 13 - 23 |
| 15 : 25 - 16 : 2 | 82 : 16 - 83 : 11 | 162 : 1 - 6 |
| 16 : 3 - 4 | 83 : 13 | 162 : 7 - 11 |
| 16 : 25 - 17 : 10 | 83 : 17 - 23 | 165 : 20 - 25 |
| 18 : 5 - 8 | 86 : 11 - 16 | 166 : 2 - 8 |
| 18 : 10 - 13 | 86 : 22 - 24 | 170 : 8 - 12 |
| 20 : 14 - 19 | 87 : 1 - 3 | 171 : 11 - 172 : 1 |
| 20 : 21 - 22 | 87 : 12 - 22 | 172 : 24 - 173 : 11 |
| 24 : 16 - 20 | 91 : 5 - 8 | 174 : 2 - 6 |
| 24 : 23 - 24 | 91 : 11 - 16 | 174 : 8 - 175 : 3 |
| 30 : 23 - 31 : 1 | 94 : 13 - 14 | 176 : 8 - 24 |
| 31 : 6 - 13 | 94 : 23 - 25 | 177 : 7 |
| 31 : 19 - 23 | 97 : 19 - 98 : 1 | 177 : 14 - 178 : 18 |
| 32 : 18 - 23 | 98 : 15 - 23 | 178 : 21 - 179 : 6 |
| 36 : 9 - 21 | 99 : 3 - 8 | 181 : 18 - 182 : 8 |
| 36 : 24 | 99 : 20 - 100 : 1 | 182 : 10 - 13 |
| 37 : 16 - 20 | 100 : 4 - 13 | 182 : 15 - 16 |
| 37 : 22 - 24 | 102 : 9 - 21 | 182 : 18 |
| 39 : 9 - 12 | 102 : 23 - 103 : 5 | 183 : 10 - 17 |
| 44 : 17 - 22 | 103 : 13 - 21 | 184 : 1 - 5 |
| 45 : 5 - 9 | 103 : 23 - 104 : 9 | 184 : 13 - 185 : 1 |
| 45 : 15 - 46 : 2 | 104 : 11 - 16 | 185 : 14 - 23 |
| 49 : 2 - 12 | 106 : 10 - 25 | 186 : 3 - 9 |
| 52 : 7 - 10 | 109 : 4 - 23 | 186 : 11 - 14 |
| 53 : 19 - 54 : 6 | 111 : 4 - 112 : 6 | 186 : 18 - 21 |
| 54 : 19 - 23 | 115 : 8 - 18 | 186 : 23 - 187 : 3 |
| 55 : 24 - 56 : 22 | 115 : 24 - 25 | 187 : 5 - 9 |
| 60 : 23 - 61 : 1 | 116 : 2 - 3 | 188 : 6 - 11 |
| 63 : 8 - 11 | 116 : 16 - 117 : 9 | 188 : 22 - 24 |
| 63 : 16 - 64 : 2 | 117 : 12 - 118 : 1 | 189 : 16 - 190 : 1 |
| 64 : 4 - 10 | 118 : 4 - 18 | 191 : 9 - 16 |
| 67 : 12 - 17 | 118 : 21 - 23 | 193 : 14 - 194 : 9 |
| 67 : 19 - 20 | 119 : 25 - 120 : 5 | 200 : 9 - 12 |
| 68 : 7 - 12 | 123 : 9 - 13 | 201 : 18 - 202 : 3 |
| 69 : 1 - 5 | 123 : 15 - 124 : 19 | 202 : 10 - 12 |
| 69 : 7 - 21 | 125 : 18 - 23 | 202 : 14 - 16 |
| 69 : 23 - 70 : 9 | 130 : 25 - 131 : 10 | 202 : 19 - 25 |
| 70 : 13 - 16 | 131 : 22 - 23 | 203 : 3 - 13 |
| 70 : 20 - 25 | 135 : 11 - 15 | 205 : 1 - 2 |
| 72 : 7 - 12 | 135 : 17 - 22 | 205 : 7 - 11 |
| 72 : 14 - 17 | 135 : 24 - 136 : 10 | 205 : 21 - 25 |
| 75 : 7 - 9 | 142 : 18 - 21 | 206 : 9 - 13 |
| 75 : 11 - 12 | 142 : 24 - 25 | 206 : 15 |
| 76 : 15 - 18 | 144 : 20 - 24 | 206 : 23 - 207 : 5 |
| 76 : 20 - 77 : 12 | 145 : 1 - 6 | 209 : 19 - 23 |
| 77 : 24 - 78 : 3 | 146 : 21 - 147 : 3 | 210 : 10 - 15 |

Defendants' Deposition Designations

| | | |
|---|---|---|
| 210 : 18 - 19 | 362 : 20 - 25 | |
| 210 : 21 - 24 | 367 : 9 - 18 | |
| 211 : 7 - 11 | 370 : 14 - 24 | |
| 214 : 6 - 7 | 373 : 9 - 18 | |
| 222 : 6 - 13 | 373 : 20 - 24 | |
| 223 : 11 - 15 | 378 : 8 - 17 | |
| 223 : 18 | 380 : 3 - 10 | |
| 225 : 11 - 226 : 11 | 380 : 18 - 19 | |
| 226 : 14 - 20 | 380 : 25 - 381 : 6 | |
| 226 : 23 - 227 : 3 | 381 : 9 - 18 | |
| 227 : 6 - 10 | 381 : 21 - 382 : 7 | |
| 227 : 13 - 18 | 382 : 9 - 10 | |
| 235 : 11 - 15 | 383 : 14 - 21 | |
| 235 : 21 - 236 : 2 | 387 : 18 - 388 : 18 | |
| 236 : 5 - 8 | 389 : 9 - 12 | |
| 236 : 11 - 13 | 389 : 15 - 16 | |
| 236 : 15 - 16 | 389 : 24 - 390 : 4 | |
| 236 : 18 - 21 | 390 : 14 - 21 | |
| 237 : 5 - 17 | 390 : 23 - 391 : 7 | |
| 237 : 24 | 392 : 7 - 10 | |
| 248 : 13 - 16 | 392 : 13 - 25 | |
| 248 : 19 - 21 | 393 : 8 - 15 | |
| 249 : 8 - 17 | 397 : 18 - 398 : 1 | |
| 252 : 6 - 10 | 398 : 6 | |
| 256 : 6 - 257 : 9 | 403 : 17 - 24 | |
| 262 : 14 - 25 | 407 : 25 - 408 : 1 | |
| 263 : 3 - 12 | 408 : 4 - 6 | |
| 263 : 18 | 408 : 10 - 18 | |
| 266 : 15 - 16 | 409 : 8 - 11 | |
| 266 : 18 - 25 | 409 : 13 - 17 | |
| 267 : 4 - 8 | 410 : 18 - 411 : 5 | |
| 267 : 10 - 13 | 411 : 7 | |
| 271 : 6 - 7 | 412 : 8 - 413 : 4 | |
| 271 : 9 - 14 | | |
| 271 : 17 - 21 | | |
| 272 : 9 - 15 | | |
| 273 : 23 - 274 : 2 | | |
| 275 : 5 - 13 | | |
| 281 : 15 - 17 | | |
| 282 : 1 - 2 | | |
| 282 : 9 - 12 | | |
| 282 : 19 - 20 | | |
| 283 : 10 - 19 | | |
| 290 : 9 - 19 | | |
| 291 : 20 - 292 : 7 | | |
| 338 : 1 - 5 | | |
| 341 : 12 - 16 | | |
| 342 : 13 - 343 : 19 | | |
| 352 : 1 - 2 | | |
| 360 : 3 - 6 | | |
| 360 : 24 - 361 : 7 | | |
| 361 : 20 - 25 | | |
| 362 : 5 - 17 | | |

**Deposition Testimony of Frank Greaves**
**December 14th, 2015**

| | | |
|---|---|---|
| 7 : 1 - 3 | 58 : 21 - 59 : 7 | 114 : 25 |
| 9 : 5 - 16 | 60 : 6 - 61 : 21 | 115 : 3 - 22 |
| 10 : 20 - 11 : 6 | 62 : 21 - 63 : 13 | 116 : 8 - 117 : 6 |
| 11 : 20 - 12 : 6 | 64 : 5 - 66 : 1 | 117 : 9 - 11 |
| 12 : 25 - 13 : 3 | 71 : 4 - 7 | 117 : 17 - 19 |
| 14 : 12 - 15 | 71 : 9 - 72 : 3 | 118 : 3 |
| 17 : 5 - 24 | 73 : 20 - 25 | 122 : 2 - 5 |
| 23 : 8 - 24 : 2 | 74 : 12 - 75 : 10 | 122 : 7 - 14 |
| 24 : 5 - 15 | 75 : 24 - 76 : 1 | 122 : 17 - 18 |
| 25 : 2 - 6 | 76 : 6 - 9 | 122 : 21 - 123 : 1 |
| 25 : 8 | 76 : 11 | 123 : 3 - 5 |
| 26 : 5 - 9 | 76 : 13 - 24 | 123 : 8 |
| 26 : 12 - 17 | 81 : 1 - 4 | 124 : 16 - 19 |
| 26 : 20 - 24 | 81 : 6 - 21 | 124 : 22 - 23 |
| 27 : 11 - 14 | 82 : 23 - 83 : 3 | 127 : 3 - 7 |
| 27 : 16 | 83 : 5 - 20 | 127 : 11 - 12 |
| 27 : 18 - 21 | 86 : 14 - 22 | 131 : 17 - 21 |
| 27 : 23 | 89 : 4 - 7 | 131 : 24 - 132 : 2 |
| 28 : 3 - 10 | 89 : 9 | 132 : 4 - 7 |
| 29 : 10 - 12 | 90 : 4 - 8 | 132 : 11 - 23 |
| 29 : 14 | 90 : 23 - 25 | 133 : 5 - 7 |
| 29 : 16 - 30 : 10 | 92 : 10 - 13 | 135 : 11 - 15 |
| 31 : 17 - 22 | 92 : 16 - 18 | 135 : 18 - 24 |
| 31 : 24 | 93 : 16 - 18 | 139 : 9 - 14 |
| 32 : 1 - 5 | 93 : 20 - 23 | 140 : 9 - 11 |
| 32 : 7 - 9 | 94 : 16 - 19 | 140 : 15 - 141 : 10 |
| 32 : 11 - 16 | 94 : 21 - 23 | 144 : 7 - 11 |
| 32 : 22 - 25 | 94 : 25 | 145 : 1 - 5 |
| 33 : 2 | 95 : 7 - 8 | 145 : 9 - 12 |
| 33 : 25 - 34 : 5 | 96 : 23 - 25 | 145 : 14 - 146 : 1 |
| 34 : 7 - 9 | 97 : 11 - 14 | 146 : 3 - 4 |
| 34 : 12 | 98 : 10 - 13 | 146 : 8 - 10 |
| 34 : 15 - 19 | 98 : 16 - 18 | 146 : 12 - 18 |
| 34 : 21 | 98 : 20 - 23 | 146 : 20 - 25 |
| 35 : 22 - 24 | 98 : 25 - 99 : 3 | 147 : 3 |
| 36 : 25 - 37 : 5 | 99 : 23 - 100 : 6 | 147 : 5 - 7 |
| 37 : 3 - 7 | 104 : 19 - 24 | 147 : 10 - 11 |
| 37 : 18 - 38 : 2 | 105 : 10 - 15 | 148 : 1 - 4 |
| 38 : 10 - 17 | 106 : 3 - 5 | 148 : 6 - 7 |
| 38 : 23 - 39 : 5 | 106 : 9 - 10 | 148 : 9 - 11 |
| 39 : 18 - 23 | 106 : 12 - 107 : 4 | 148 : 15 - 24 |
| 41 : 11 - 17 | 108 : 7 - 12 | 149 : 1 - 3 |
| 41 : 20 - 25 | 108 : 24 - 109 : 4 | 149 : 5 - 7 |
| 42 : 2 - 3 | 112 : 6 - 9 | 149 : 10 |
| 47 : 10 - 12 | 112 : 11 - 17 | 150 : 3 - 7 |
| 47 : 16 - 18 | 112 : 19 - 22 | 150 : 9 - 14 |
| 48 : 1 - 2 | 112 : 24 - 25 | 152 : 2 - 6 |
| 48 : 5 - 10 | 113 : 13 - 17 | 152 : 8 - 12 |
| 48 : 13 - 15 | 113 : 22 - 114 : 3 | 154 : 18 - 157 : 15 |
| 48 : 17 | 114 : 17 - 22 | 159 : 10 - 16 |

Defendants' Deposition Designations

| | | |
|---|---|---|
| **48 : 19 - 24** | | |
| **159 : 18 - 19** | | |
| **159 : 24 - 160 : 4** | | |
| **160 : 7** | | |
| **160 : 21 - 25** | | |
| **161 : 2 - 11** | | |
| **162 : 15 - 22** | | |
| **162 : 25 - 163 : 1** | | |
| **167 : 5 - 10** | | |
| **169 : 13 - 18** | | |
| **173 : 15 - 25** | | |
| **175 : 19 - 177 : 20** | | |
| **178 : 5 - 13** | | |
| **178 : 15 - 180 : 8** | | |
| **181 : 16 - 20** | | |
| **181 : 23 - 24** | | |
| **183 : 15 - 21** | | |
| **184 : 4 - 8** | | |
| **184 : 17 - 24** | | |
| **186 : 12 - 25** | | |
| **187 : 23 - 188 : 6** | | |
| **189 : 18 - 23** | | |
| **189 : 25** | | |
| **191 : 12 - 15** | | |
| **191 : 17** | | |
| **192 : 21 - 193 : 1** | | |
| **193 : 3 - 13** | | |
| **193 : 17 - 23** | | |
| **235 : 2 - 8** | | |
| **235 : 10 - 15** | | |
| **235 : 17 - 20** | | |
| **235 : 22** | | |
| **239 : 2 - 7** | | |
| **239 : 9 - 11** | | |
| **239 : 13 - 18** | | |
| **239 : 20 - 21** | | |
| **239 : 23 - 240 : 13** | | |
| **240 : 16 - 17** | | |
| **241 : 9 - 10** | | |
| **241 : 12 - 16** | | |
| **241 : 18 - 19** | | |
| **246 : 12 - 16** | | |
| **246 : 19 - 25** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Plaintiffs Duchesnay herein provide its list of objections and counter-designations to the Defendants' deposition designations, that Duchesnay may offer at the trial in this matter. Duchesnay's objections and counter-designations are listed by page and line number. Unless otherwise specified, all objections and counter-designations shall be automatically deemed to include any errata indicated for that page and line in the relevant errata sheets. Duchesnay specifically reserves its objections to the Defendants' designations and counter-designations to be raised at a later time, either at trial or according to a schedule to be set by the Court and/or the Federal Rules of Civil Procedure and Local Rules. Duchesnay also reserves the right to rely upon any testimony affirmatively designated for a witness by the Defendants, as well as any testimony otherwise designated or counter-designated by the Defendants, for example in the event that the Defendants elect to read less than all of their designated testimony into the record at trial. Duchesnay further reserves the right to provide objections to any counter-counter designations by Defendants. Specific objections are noted according to the following code:

| | |
|---|---|
| AC | Attorney-Client Privileged / Regards Retracted Privileged Document (Fed. R. Civ. P. 26(b)(1)) |
| AF | Assumes Facts Not in Evidence (Fed. R. Evid. 104(b)) |
| EX | Calls for Improper Expert Opinion (Fed. R. Evid. 104(a), 701) |
| I | Irrelevant (Fed. R. Evid. 401, 402) |
| ID | Improper Designation (Fed. R. Civ. P. 32; Fed. R. Evid. 402/403) |
| LC | Calls for Improper Legal Conclusions (Fed. R. Evid. 701) |
| LF | Lacks Foundation (Fed. R. Evid. 602, 901) |
| MC | Mischaracterizes Previous Testimony (Fed. R. Evid. 611(a)) |
| MD | Mischaracterizes Document (Fed. R. Evid 611(a)) |
| O | Overbroad (Fed. R. Evid. 403, 611(a)) |
| OS | Outside Scope of Noticed Topics (Fed. R. Evid. 403, 611(a)) |
| OT | Calls for Improper Opinion Testimony (Fed. R. Evid. 701) |
| PK | No Showing of Personal Knowledge (Fed. R. Evid. 602) |
| PVW | Probative Value Substantially Outweighed by Considerations of Waste of Time (Fed. R. Evid. 403, 611(a)) |
| R | Not relevant (Fed. R. Evid. 402) |
| S | Calls for Speculation (Fed. R. Evid. 403, 602, 611(a)) |
| V | Vague and Ambiguous (Fed. R. Evid. 611(a)) |

**Michael Gallo taken December 3, 2015**

Duchesnay's Objections to Defendants' Designations
279:9-17 (OS, LF, V).

Duchesnay's Counter-Designations to Defendants' Designations

| | | |
|---|---|---|
| 14:18-20 | 20:25-21:11 | 62:17-20 |
| 64:8-15 | 74:5-8 | 75:6-8 |
| 76:5-7 | 78:20-24 | 91:17-92:3 |
| 92:6-9 | 149:8-24 | 154:24-155:2 |
| 155:5-7 | 163:22-25 | 164:2-8 |
| 164:10 | 259:24-260:1 | |

**Eric Gervais taken November 23-25, 2015**

Duchesnay's Objections to Defendants' Designations
54:19-23; 55:24-56:22 (OS);
117:22-118:1; 118:4-18; 118:21-23 (V; LF);
183:10-17; 184:1-5 (R, PVW);
202:10-12; 202:14-16; 202:19-25; 203:3-13 (V, MC);
209:19-23; 210:10-15; 210:18-19; 210:21-24; 211:7-11 (V, LC);
222:6-13 (AC, PVW, R);
226:6-11; 226:14-20; 226:23-227:3; 227:6-10; 227:13-18 (AC);
235:11-15; 235:21-236:2; 236:5-8; 236:11-13 (AC, I, R, PVW);
237:5-17; 237:24 (AC);
248:13-16; 248:19-21; 249:8-17 (V, EX, OS, OT);
256:6-257:9 (AC);
262:14-25; 263:3-12; 263:18 (AC);
281:15-17; 282:1-2; 282:9-12; 282:19-20 (V, AC, LC);
361:20-25; 362:5-17; 362:20-25 (OS, PK, S);
389:9-12; 389:15-16 (MC);
410:18-411:5; 411:7 (V, AF, S); and
412:8-413:4 (EX).

Duchesnay's Counter-Designations to Defendants' Designations

| | | |
|---|---|---|
| 11:8-10 | 11:13-18 | 11:21-24 |
| 12:2-3 | 12:20-24 | 13:3-5 |
| 13:20-14:2 | 19:1-6 | 19:8-11 |
| 23:4-9 | 23:11-13 | 23:24 - 24:5 |
| 24:7 | 25:8-11 | 25:24-26:2 |
| 26:4-5 | 26:16-18 | 26:20-23 |
| 27:15-20 | 28:4-7 | 28:9-10 |
| 28:12-20 | 29:3-7 | 29:9-12 |
| 30:6-10 | 30:12-13 | 30:23-31:14 |
| 31:17-32:2 | 32:5-33:10 | 33:16-33:21 |
| 35:1-4 | 35:10-14 | 35:17-18 |
| 35:20-21 | 35:23-37:12 | 37:16-20 |
| 37:22-24 | 42:20-22 | 42:25-43:6 |
| 45:5-46:9 | 46:11-14 | 47:13-48:2 |
| 48:10-14 | 49:13-20 | 49:22-50:2 |
| 50:4-11 | 50:21-51:1 | 51:3-9 |
| 51:20-22 | 51:24-52:3 | 52:7-10 |
| 52:14-24 | 57:24-58:3 | 58:15-16 |
| 59:1-14 | 62:1-9 | 62:14-63:11 |
| 63:13-19 | 63:21-64:2 | 64:4-10 |
| 64:11-19 | 65:22-66:2 | 66:4-8 |
| 68:13-23 | 68:25 | 70:1 - 71:17 |

Duchesnay's Objections and Counter-Designations
to the Defendants' Deposition Designations

| | | |
|---|---|---|
| 72:7-12 | 72:14-17 | 73:8-74:3 |
| 74:5-6 | 76:24-77:12 | 77:24-78:3 |
| 78:5-9 | 78:22-79:1 | 79:4-23 |
| 82:8-13 | 82:16-83:3 | 83:24-84:8 |
| 84:10-14 | 84:16-25 | 85:2-6 |
| 86:11-24 | 86:25-88:2 | 88:4-10 |
| 90:5-9 | 91:5-8 | 91:11-22 |
| 91:25-92:11 | 95:1-5 | 95:15-25 |
| 96:3-9 | 96:13-16 | 98:15-23 |
| 99:3-8 | 100:9-22 | 101:4-17 |
| 101:20-102:7 | 103:15-21 | 103:23-104:3 |
| 106:10 - 107:22 | 109:4-23 | 109:24 - 110:11 |
| 111:4-112:6 | 115:5-18 | 117:5-9 |
| 117:12-21 | 118:24-119:5 | 119:10-19 |
| 120:6-8 | 120:10-15 | 122:23-123:1 |
| 123:6-13 | 123:15 | 123:24 -124:15 |
| 125:9-12 | 125:14-17 | 125:24-126:4 |
| 126:6-11 | 126:17-22 | 126:25-127:7 |
| 127:18-23 | 127:25-128:5 | 128:12-17 |
| 129:1-14 | 130:6-15 | 130:18-131:10 |
| 132:23-133:2 | 133:4-6 | 133:23-134:6 |
| 134:15-18 | 134:24-135:5 | 135:8-10 |
| 136:6-10 | 136:11-18 | 139:14-19 |
| 140:20-141:4 | 141:5-142:21 | 142:24-143:2 |
| 143:5-19 | 143:23-144:3 | 144:20-24 |
| 145:1-10 | 145:12-20 | 145:22-146:3 |
| 147:10 - 148:7 | 160:25-161:11 | 161:13-20 |
| 162:18-163:7 | 163:9-21 | 165:20-25 |
| 166:2-13 | 166:17-22 | 167:15-25 |
| 170:14-15 | 171:11-23 | 172:24-173:16 |
| 173:18-19 | 175:12-16 | 175:18-177:6 |
| 177:16-178:18 | 178:21-179:6 | 180:22-181:17 |
| 182:3-8 | 182:10-13 | 182:15 |
| 185:3-5 | 186:15-17 | 188:1-5 |
| 188:13-15 | 188:18-20 | 188:25-189:4 |
| 189:16-190:11 | 190:13-192:16 | 193:14-194:2 |
| 195:16-196:19 | 197:7-198:1 | 198:16-199:16 |
| 201:7-13 | 203:22-204:23 | 205:4-16 |
| 205:21-206:13 | 206:15-207:5 | 207:13-17 |
| 211:2-6 | 211:16-19 | 211:21-212:10 |
| 212:16 | 217:1-6 | 217:14-18 |
| 217:21-218:14 | 220:4-6 | 220:15-17 |
| 226:12 | 226:21 | 227:4 |

Duchesnay's Objections and Counter-Designations
to the Defendants' Deposition Designations

| | | |
|---|---|---|
| 227:11 | 227:19 | 235:20 |
| 236:3 | 236:14 | 237:18-23 |
| 248:22-249:7 | 249:18-250:5 | 253:5-253:20 |
| 254:2-12 | 263:21-264:7 | 264:9-24 |
| 265:2-24 | 271:9-14 | 271:17-272:3 |
| 272:5-17 | 272:24-273:4 | 273:6-12 |
| 274:5-13 | 274:16-275:4 | 282:3-8 |
| 283:10-19 | 285:11-287:19 | 312:6-8 |
| 312:10-19 | 313:18-22 | 314:1-10 |
| 317:8-19 | 317:23-318:1 | 321:4-7 |
| 321:10-322:19 | 323:7-11 | 323:14-18 |
| 335:4-20 | 336:20-337:1 | 337:4-11 |
| 338:6-8 | 338:10-12 | 339:16-17 |
| 341:25-342:5 | 342:7-345:1 | 345:6-346:7 |
| 346:18-24 | 348:6-18 | 350:23-351:18 |
| 351:21-22 | 356:4-23 | 362:18-19 |
| 365:9-13 | 365:15-366:1 | 366:10-16 |
| 366:18-367:18 | 367:21-368:2 | 368:4-369:10 |
| 370:14-371:13 | 371:20-25 | 372:2-12 |
| 372:21-373:5 | 373:7-373:18 | 373:20-24 |
| 376:6-8 | 376:10-14 | 376:16-25 |
| 377:2-10 | 380:20-22 | 380:25-381:1 |
| 382:15-18 | 382:23-383:10 | 383:14-19 |
| 387:10-15 | 387:18-24 | 388:2-7 |
| 388:10-16 | 391:16-19 | 391:21-392:4 |
| 392:6-10 | 392:13-25 | 393:8-15 |
| 401:18-402:8 | 402:13-14 | 402:23-403:10 |
| 403:14-16 | 403:25-404:7 | 404:9-14 |
| 405:17-22 | 406:1-15 | 406:17-19 |
| 407:2-16 | 409:18-410:2 | 410:12-17 |
| 413:5-19 | | |

**Frank Greaves taken December 14, 2015**

Duchesnay's Objections to Defendants' Designations
39:18-23 (V, O);
41:11-17 (V, LF, O);
41:20-25; 42:2-3 (V, LF, O);
71:4-7; 71:9-72:3 (V, LF, PK);
86:14-22 (V, LF, R, S);
92:10-13; 92:16-18 (V, EX, LC, O);
98:10-13; 98:16-18 (V, EX);
99:23-100:6 (V, EX, LF);
112:6-9; 112:11-17; 112:19-22; 112:24-25 (V, EX, S, O, LF);
114:17-22; 114:25 (V, EX);
123:3-5; 123:8 (V, EX, O);
135:11-15; 135:18-24 (V, EX, OT, S);
139:9-14 (V, EX, OT, S);
145:1-5 (V, MD, LF);
146:8-10; 146:12-18 (V, AF, EX, S, OT);
146:20-25; 147:3; 147:5-7; 147:10-11 (V, EX);
159:10-16; 159:18-19; 159:24-160:4 (V, EX, S, OT);
162:15-22; 162:25-163:1 (EX, S, V, OT, LC); and
235:2-8; 235:10-15; 235:17-20; 235:22 (V, AF, MD, S).

Duchesnay's Counter-Designations to Defendants' Designations

| 8:9-15 | 9:1-4 | 16:14-23 |
|---|---|---|
| 20:4-8 | 20:10-19 | 23:6-24:4 |
| 25:10-21 | 25:23-26:3 | 27:1-2 |
| 28:3-6 | 33:4-6 | 33:8-14 |
| 34:11 | 37:6-7 | 38:4 |
| 38:6-8 | 38:18-22 | 40:14-22 |
| 40:23-41:3 | 41:5-9 | 42:9-15 |
| 44:1-6 | 44:8-45:4 | 46:18-23 |
| 46:25-47:1 | 47:14-15 | 47:19-21 |
| 47:24-25 | 48:3-4 | 51:6-10 |
| 51:12-16 | 51:18-22 | 51:24-52:4 |
| 55:18-22 | 55:24-56:3 | 56:5-8 |
| 56:10-19 | 57:12-18 | 57:23-24 |
| 58:1-3 | 58:18-20 | 59:8-18 |
| 62:3-5 | 66:3 | 67:3-6 |
| 67:8-9 | 76:25-77:4 | 80:5-7 |
| 80:9-21 | 80:23-81:4 | 81:6-21 |
| 83:21-84:2 | 84:3-6 | 85:2-3 |
| 85:5-10 | 86:24-87:8 | 87:23-88:12 |
| 88:14-89:1 | 89:4-7 | 89:11-14 |

Duchesnay's Objections and Counter-Designations
to the Defendants' Deposition Designations

| | | |
|---|---|---|
| 89:16-90:2 | 90:4-8 | 90:11:14 |
| 90:16-21 | 90:23-25 | 91:2-4 |
| 91:8-9 | 91:11-22 | 95:2-4 |
| 107:13-17 | 107:19-108:5 | 108:7-12 |
| 108:14-22 | 109:5 | 109:7 |
| 109:9-17 | 109:19-25 | 110:2-5 |
| 110:7-8 | 110:11-16 | 110:24-111:7 |
| 113:19 | 113:22-114:3 | 117:2-6 |
| 117:9-15 | 117:22-118:3 | 118:6-8 |
| 118:25-119:8 | 119:13-14 | 119:16-20 |
| 119:25-120:2 | 123:20-22 | 124:5-15 |
| 124:24-125:8 | 126:3-7 | 126:10 |
| 126:12-15 | 126:18-25 | 127:3-7 |
| 127:11-12 | 128:19-22 | 128:25 |
| 131:12-16 | 131:17-21 | 131:24-132:2 |
| 132:4-7 | 139:17-19 | 144:3-5 |
| 144:13-18 | 144:20-21 | 145:9-12 |
| 145:14-146:1 | 146:3-10 | 147:13-14 |
| 152:18-22 | 152:25-153:11 | 153:18-22 |
| 153:24 | 159:20-22 | 160:13-15 |
| 160:17-18 | 163:3-7 | 163:10-12 |
| 163:14-22 | 165:7-13 | 165:15-18 |
| 165:20-23 | 166:1-4 | 166:12-15 |
| 166:17-167:3 | 167:23-168:5 | 168:7-21 |
| 168:24-169:5 | 169:7 | 170:5-10 |
| 177:21-178:7 | 183:12-184:3 | 186:2-11 |
| 187:1-12 | 187:15-21 | 188:7-19 |
| 188:21-25 | 189:2-6 | 189:8-13 |
| 190:1-2 | 190:5-9 | 190:12-191:3 |
| 191:5-10 | 192:21-193:1 | 193:3-23 |
| 194:2-7 | 194:9-13 | 194:15-18 |
| 194:20-24 | 195:1-16 | 197:6-198:10 |
| 199:6-16 | 206:4-6 | 206:8-20 |
| 207:3-11 | 207:23-209:5 | 210:11-22 |
| 211:24-212:1 | 214:10-16 | 214:19-24 |
| 215:6-9 | 217:13-218:2 | 218:10-16 |
| 221:25-223:22 | 225:10-17 | 226:7-9 |
| 226:13-22 | 227:1-18 | 227:24-228:22 |
| 229:8-24 | 230:3-14 | 232:23-233:8 |
| 233:10-15 | 234:3-6 | 234:9-12 |
| 234:23-235:1 | 237:11-15 | 237:17-23 |
| 237:25-238:5 | 238:7-238:23 | 239:13-18 |
| 239:20-240:13 | 240:16-25 | 241:3-16 |

Duchesnay's Objections and Counter-Designations
to the Defendants' Deposition Designations

| | | |
|---|---|---|
| 241:18-19 | 241:21-242:4 | 242:7-15 |
| 242:18-25 | 243:2-14 | 243:17-244:1 |
| 244:3-15 | 244:19-21 | 244:24-245:12 |
| 245:18-24 | 246:2-6 | |

# EXHIBIT J

Plaintiffs' Brief Statement of Intended Proofs

A brief statement of the main issues and points that Duchesnay intends to prove at trial is set forth below.  This brief statement is not intended to be exhaustive and, in addition to what is set out, Duchesnay may prove any matters identified in its pleadings, in its interrogatory responses, and in the reports of its expert witnesses.  Duchesnay also intends to offer proofs, including responses or rebuttals to Defendants' proofs, on the issues of fact and law identified by the parties in this Proposed Pretrial Order.  Duchesnay further intends to offer evidence as necessary to rebut Defendants' allegations of invalidity on which they have the burden of proof.

## I.    Ownership and Standing

A.    Duchesnay has entered into a stipulation (DI 171) with the Actavis Defendants, which Duchesnay and Actavis agree renders unnecessary any proof at trial by Duchesnay of ownership of the '695 Patent, but only to the extent the Court finds that Eric Gervais is the sole inventor of the '695 Patent.  In that Stipulation, Actavis also does not contest that if Eric Gervais is found to be the sole inventor of the '695 Patent, then Duchesnay is the owner of the '695 Patent and has standing to sue with respect to the '695 Patent.

B.    Duchesnay has entered into a stipulation (DI 174) with Mylan, which Duchesnay and Mylan agree renders unnecessary any proof at trial by Duchesnay of ownership of the '695 Patent, but only to the extent the Court finds that Eric Gervais is the sole inventor of the '695 Patent.  Duchesnay believes that Stipulation renders unnecessary any proof at trial that it has standing to sue with respect to the '695 Patent and its current inventorship.  Should Mylan contest standing with Eric Gervais as the sole

inventor of the '695 Patent, Duchesnay reserves the right to present proofs to the Court to confirm its standing to sue.

C.      In the event that the Court finds that Eric Gervais is not the sole inventor of the '695 Patent, Duchesnay will present proofs to prove that it owns the '695 Patent and has proper standing to sue for infringement and maintain this lawsuit against Defendants.

## II.    Infringement of the '695 Patent

A.      Duchesnay has entered into a stipulation (DI 171) with the Actavis Defendants, which Duchesnay and Actavis agree renders unnecessary any proof at trial by Duchesnay that the generic doxylamine succinate and pyridoxine hydrochloride product that is currently the subject of Actavis's ANDA No. 205811 ("Actavis's Generic Product"), and its use, is covered by and infringes claims 1, 2, 17-22, and 26-30 of the '695 Patent (the "Actavis-Asserted Claims"), to the extent those claims are valid and enforceable.  Accordingly, Duchesnay does not believe that it needs to present any proofs at trial as to infringement of the Actavis-Asserted Claims by Actavis's Generic Product.

B.      Duchesnay has entered into a stipulation (DI 174) with Mylan, which Duchesnay and Mylan agree renders unnecessary any proof at trial by Duchesnay of infringement of claims 1, 2, 5, 6, 21, 22, and 26-30 of the '695 Patent ("the Mylan-Asserted Claims"), to the extent those claims are valid and enforceable, by Mylan's doxylamine succinate and pyridoxine hydrochloride delayed-release tablets, 10mg/10mg, that are the subject of ANDA No. 207825 ("Mylan's Generic Product").  Accordingly,

Duchesnay does not believe that it needs to present any proofs at trial as to infringement

of the Mylan-Asserted Claims by Mylan's Generic Product.


## III.     Defendants' Invalidity Positions

### A.     Improper Inventorship

1.     Duchesnay will present evidence, proofs, and arguments showing that

Defendants have not shown by clear and convincing evidence that any person(s) other

than Eric Gervais conceived the subject matter claims in the '695 Patent, such that the

'695 Patent is not invalid under 35 U.S.C. §§ 101 or 102(f) (pre-AIA).

### B.     Derivation

2.     Duchesnay will present evidence, proofs, and arguments showing that

Defendants have not shown by clear and convincing evidence that Eric Gervais derived

the subject matter claimed in the '695 Patent from any other persons, such that the '695

Patent is not invalid under 35 U.S.C. §§ 101 or 102(f) (pre-AIA).

### C.     Obviousness

3.     Duchesnay will present evidence, proofs, and arguments showing that

Defendants have not shown by clear and convincing evidence that claims 1, 2, 5, 6, 17-

22, and 26-30 of the '695 Patent are obvious, such that they are not invalid under 35

U.S.C. § 103.

4.     In the Stipulations (DI 171 and 174) entered into by the parties, neither

Actavis nor Mylan contest that Duchesnay's Diclegis® product that is currently the

subject of NDA No. 21-876 meets all limitations by, and falls within the scope of, claims

1, 2, 5, 6, 17-22, and 26-30 of the '695 Patent.  Accordingly, Duchesnay does not believe

that it needs to present proofs at trial as to whether its Diclegis® product meets the scope

of, and is an embodiment of, those claims.

     5.    Duchesnay will present evidence, proofs, and arguments showing that

secondary considerations confirm the non-obviousness of claims 1, 2, 5, 6, 17-22, and 26-

30 of the '695 Patent.  To the extent that Defendants attempt to show that those claims

are obvious even in light of Duchesnay's secondary considerations, including evidence of

long-felt need, unexpected results, industry praise, recognition of a problem, teaching

away, and/or copying, Duchesnay will rebut that showing.


## IV.    Relief

     Duchesnay requests the relief prayed for against Actavis and Mylan its complaints

and answers to counterclaims in this case.  In sum:

     A.    A judgment should be entered declaring that Actavis's Generic Product,

and its use, is covered by and infringes claims 1, 2, 17-22, and 26-30 of the '695 Patent.

     B.    A judgment should be entered declaring that Mylan's Generic Product,

and its use, is covered by and infringes claims 1, 2, 5, 6, 21, 22, and 26-30 of the '695

Patent.

     C.    A judgment should be entered declaring that claims 1, 2, 5, 6, 17-22, and

26-30 of the '695 Patent are valid and enforceable.

     D.    An order should issue that the effective date of any FDA approval of

Actavis's Generic Product and of Mylan's Generic Product shall be no earlier than the

expiration date of the '695 Patent and any additional periods of exclusivity, in accordance

with 35 U.S.C. §271(e)(4)(A).

E.      An order should issue that Actavis and Mylan, and all persons acting in concert with them, shall be enjoined from commercially manufacturing, using, offering for sale, or selling Actavis's Generic Product and Mylan's Generic Product within the United States, until the expiration of the '695 Patent, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283.

F.      This is an exceptional case pursuant to 35 U.S.C. §§ 285 and 271(e)(4), entitling Duchesnay (not Defendants) to an award of attorney's fees, costs, expenses, and disbursements.

# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DUCHESNAY INC. and DUCHESNAY USA INC., | |
| Plaintiffs, | |
| v. | Case No. 14-912-SLR-SRF (Consolidated) |
| ACTAVIS LABORATORIES FL, INC., ACTAVIS, INC., ACTAVIS PHARMA INC., and MYLAN PHARMACEUTICALS INC. | |
| Defendants. | |

**EXHIBIT K**

**DEFENDANTS' BRIEF STATEMENT OF INTENDED PROOFS**

A summary of the main issues and points defendants Actavis Laboratories FL, Inc., Actavis, Inc., Actavis Pharma Inc., and Mylan Pharmaceuticals Inc. (collectively, "Defendants") intend to prove at trial is set forth below.  This summary is not intended to be exhaustive and, in addition to what is set out, Defendants reserve the right to prove any matters identified in pleadings, interrogatory and other discovery responses, and expert reports.  Defendants intend to offer proof on the issues of fact and issues of law identified by the parties in the Joint Pretrial Order.  Defendants may also provide additional proof to rebut any proof offered by plaintiffs Duchesnay Inc. and Duchesnay USA Inc. (collectively, "Plaintiffs") before and during trial, in response to rulings by the Court, or for other good cause.

I.     OWNERSHIP AND STANDING

1.     Upon having proved improper inventorship and/or derivation by clear and convincing evidence, Defendants will rebut Plaintiffs' purported proofs that Duchesnay Inc. owns the '695 patent and that Plaintiffs have proper standing to maintain this lawsuit.

II.    INVALIDITY

A.     Improper Inventorship

1.     Defendants will prove by clear and convincing evidence that parties other than the sole named inventor of the '695 patent conceived the subject matter claimed in the '695 patent, rendering the patent invalid under 35 U.S.C. §§ 101 and 102(f) (pre-AIA).

B.     Derivation

2.     Defendants will prove by clear and convincing evidence that the sole named inventor of the '695 patent derived the subject matter claimed in the '695 patent from other parties, rendering the patent invalid under 35 U.S.C. §§ 101 and 102(f) (pre-AIA).

      C.      <u>Obviousness</u>

      3.      Defendants will prove by clear and convincing evidence that claims 1, 2, 17-22 and 26-30 of the '695 patent (the "Asserted Claims") are obvious under 35 U.S.C. § 103 and are invalid.

      4.      Defendants will also show that secondary considerations confirm the obviousness of the Asserted Claims.  To the extent that Plaintiffs attempt to show that the Asserted Claims are not obvious with evidence of secondary considerations, including evidence of long-felt need, unexpected results, industry praise, recognition of a problem, teaching away and copying, Defendants will rebut that showing.

III.     <u>RELIEF</u>

      5.      A judgment should be entered declaring the asserted claims of the '695 patent invalid.

      6.      This is an exceptional case pursuant to 35 U.S.C. § 285, entitling Defendants to an award of attorneys' fees.

      7.      Defendants should be awarded fees and costs.